IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DREW HERIOT and
DREW PICTURES PTY LTD.,

        Plaintiffs,

        vs.

RHONDA BYRNE, THE SECRET LLC
(AKA TS HOLDINGS LLC), PRIME TIME
US INC., TS PRODUCTION HOLDINGS
LLC, TS PRODUCTION LLC,
TS MERCHANDISING LTD., and
ROBERT E. RAINONE, JR.,

        Defendants.

Civil Case No. 08CV2272

The Honorable Suzanne B. Conlon

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

David S. Elkins
Joseph A. Meckes
Joseph P. Grasser
SQUIRE, SANDERS & DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043
Telephone:  (650) 856-6500
Facsimile:   (650) 843-8777

Jack J. Carriglio
James G. Arigionis
MECKLER BULGER & TILSON
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  (312) 474-7900
Facsimile:   (312) 474-7898

Attorneys for Defendants
RHONDA BYRNE, TS RER LLC
(erroneously named as "THE SECRET LLC"
and "TS HOLDINGS LLC"), PRIME TIME
US INC., TS PRODUCTION HOLDINGS
LLC, TS PRODUCTION LLC,
TS MERCHANDISING LTD., and
ROBERT E. RAINONE, JR.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 1

III.  ARGUMENT .................................................................................................................. 4

    A.    The Court Should Dismiss This Action For Forum Non Conveniens ................... 4

        1.    The Law Governing Forum Non Conveniens ............................................. 4

        2.    The Federal Court Of Australia Is Both An Available And Adequate Alternative Forum ..................................................................... 5

        3.    The Private Interest Factors Weigh in Favor of Dismissal ....................... 6

            a.    The Key Witnesses And Evidence Are Located In Australia ..........6

            b.    Plaintiffs' Choice Of Forum Is Not Entitled To Deference ..........7

        4.    The Public Interest Factors Weigh In Favor Of Dismissal ....................... 7

            a.    Copyright Ownership Here Is Governed By Australian Law ..........7

            b.    Other Public Interests Weigh Heavily In Favor Of Dismissal .......10

    B.    This Court Should Dismiss Or Stay This Action Based On The Pendency Of The Prior, Parallel Action In Australia ........................................................... 11

        1.    The Law Governing Abstention ............................................................... 11

        2.    All Abstention Criteria Are Met Here ..................................................... 12

    C.    Because Heriot Pleads No Claim In His Own Right, He Lacks Standing To Sue And All Of His Claims Must Be Dismissed ............................................ 13

    D.    Plaintiffs Plead No Claims Against Robert Rainone ........................................... 14

IV.  CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Bell Atl. Corp. v. Twombly,*
    __ U.S. __, 127 S. Ct. 1955 (2007)....................................................................13

*Chelios v. Nat'l Hockey League Players' Ass'n*,
    2007 U.S. Dist. LEXIS 4260 (N.D. Ill., Jan. 18, 2007) ......................................7

*In re Chicago Flood Lit.,*
    819 F. Supp. 762 (N.D. Ill 1993) ......................................................................12

*Colorado River Conservation District v. U.S.,*
    424 U.S. 800 (1976)............................................................................................11

*Dae Han Video Prod., Inc. v. Dong San, Chun,*
    1990 U.S. Dist. LEXIS 18496 (E.D. Va. 1990)...................................................8

*EEOC v. Concentra Health Care Servs., Inc.,*
    496 F.3d 773 (7th Cir. 2007) ............................................................................13

*Films by Jove, Inc. v. Berov,*
    154 F. Supp. 2d 432 (E.D.N.Y. 2001) ................................................................8

*Finova Cap. Corp v. Ryan Helicopters U.S.A., Inc.,*
    180 F.3d 896 (7th Cir. 1999) ......................................................................11, 12

*ISI Int'l, Inc. v. Borden Ladner Gervais,*
    2001 U.S. Dist. LEXIS 18202 (N.D. Ill. Nov. 6, 2001) ....................................10

*Ingersoll Milling Mach. Co. v. Granger,*
    833 F.2d 680 (7th Cir. 1987) ............................................................................11

*Itar-Tass Russian News Agency v. Russian Kurier*
    153 F.3d 82 (2d Cir. 1998)...............................................................................7, 8

*Jackson v. E.J. Brach Corp.,*
    176 F.3d 971 (7th Cir. 1999) ............................................................................13

*Kamel v. Hill-Rom Co., Inc.,*
    108 F.3d 799 (7th Cir. 1997) .....................................................................4, 7, 10

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1947)..............................................................................................5

*Royal Sun Alliance Ins. of Canada v. Century Int'l Arms, Inc.,*
    466 F.3d 88 (2d Cir. 2006).................................................................................11

## TABLE OF AUTHORITIES
## CON'T

**Page**

*Valinote v. Ballis,*
    295 F.3d 666 (7th Cir. 2002) ............................................................................14

## FEDERAL STATUTES

17 U.S.C. §101 ..........................................................................................................9

17 U.S.C. §501 ..........................................................................................................9

## MISCELLANEOUS

*Nimmer On Copyright* (2007) ...........................................................................8, 14

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT.

The movie *The Secret* has become a phenomenon worldwide, but it was conceived, produced, substantially filmed, edited, finished and initially published in Australia, by an Australian production company using Australian crews and equipment and intended for broadcast on Australian television.  Plaintiff Drew Pictures Pty Ltd. ("Drew Pictures"), an Australian corporation, seeks a declaration that the contributions of its Australian shareholder (plaintiff Drew Heriot) to the movie *The Secret* gives Drew Pictures ownership rights in the movie and its derivative works (collectively the "Works").  Because plaintiffs present issues that are properly decided by the Federal Court of Australia—before which the same issues have been litigated by virtually the same parties since October 2007—the Court should dismiss this action.

Whether Drew Pictures has any rights in *The Secret* has been the subject of litigation in Australia for over seven months (the "Australian Action").  Cmplt. ¶57.  Because Australia has the closest relationship to the central facts and is the country whose law will apply to resolution of the critical issues, the Court should dismiss plaintiffs' Complaint for *forum non conveniens*. Alternatively, the Court should dismiss or stay this action pending the outcome of the Australian Action under the abstention doctrine because the latter is a pending "parallel action" that will most efficiently determine the issues alleged by plaintiffs in their Complaint.

Finally, Heriot's claims should be dismissed.  Plaintiffs allege that Drew Pictures, not Heriot, is the owner of the copyright at issue.  He thus lacks standing.  The Court should also dismiss all claims against Robert Rainone; he is alleged to be nothing more than a shareholder or member of the companies accused of infringement.

## II.      FACTUAL AND PROCEDURAL BACKGROUND.

Rhonda Byrne, an Australian television producer, conceived *The Secret* in 2004, envisioning it as a documentary series for Australian television.  Cmplt. ¶¶19-20.  At that time, Heriot was working for Byrne's Australian production company, Prime Time Productions Holdings Pty. Ltd. ("PTP"), directing various shows for broadcast on Australian TV.  *Id.* ¶¶16-18.  Heriot worked full time for PTP under a Consultancy Agreement among PTP, Drew Pictures

and Heriot governed by Australian law.  *Id*. ¶18; Harrington Decl. Ex. A ¶8.  Even after the time plaintiffs contend the Consultancy Agreement lapsed in October 2004, Heriot continued to work full time at PTP under Byrne's direction and, throughout the time he worked on *The Secret,* PTP continued to pay for those services.  Cmplt. ¶22; Harrington Decl. ¶5.

Plaintiffs allege that for the next "several months," Heriot worked on the concept of *The Secret* in Australia together with Ms. Byrne and another Australian, Paul Harrington.  Cmplt. ¶21.  Heriot and the other members of the PTP team always understood that *The Secret*— whether as a series or television special—was intended for broadcast on Australian television pursuant to a Commission Agreement with the Australian Nine Network.  Cmplt. ¶¶16-18, 26, 33; Harrington Decl. ¶6.  Indeed, the Commission Agreement expressly required that *The Secret* qualify as an "Australian program" under Australian Broadcast Authority guidelines.  Harrington Decl. ¶6.  Heriot made all of his alleged initial contributions to *The Secret*, including the so-called "Rundowns" and "Questions for Interview Subjects," while physically located in Australia.  Cmplt. ¶¶21-25, 29-30.

After detailed preparation for filming was completed in Australia, Heriot, Byrne and an Australian film crew traveled to the United States to film some of the interviews to be used in *The Secret.*  Cmplt. ¶¶27-29; Harrington Decl. ¶7.  Of the over 120 persons who worked as crewmembers on *The Secret*, only about twelve were Americans (principally technicians, caterers and makeup artists).  Harrington Decl. ¶9.  Similarly, out of about one hundred cast members, eighty percent or so were Australians filmed in Australia.  *Id*. ¶11.  Filming in the U.S. consumed a total about twenty work days.  *Id*. ¶8.  All told, American cast and crew members contributed about 51 total work days, compared to over *3,000* work days contributed by Australians.  *Id*. ¶12.  Because *The Secret* was intended for Australian television, all filming was done on equipment that used the "PAL" standard used in Australia (the "NTSC" standard is used in the U.S).  *Id*. ¶13.

Heriot was in the U.S. for only eleven of the twenty filming days here.  *Id*. ¶8.  Before filming in the U.S. was complete, Heriot was instructed to return to Australia to help begin "the

process of editing the documentary." Cmplt. ¶29; Harrington Decl. ¶8.  Plaintiffs contend that from August 2005 to January 2006, Heriot and others worked in Australia to complete the film. Cmplt. ¶¶29-32.

In January 2006—after virtually all of Heriot's alleged contribution to *The Secret* was finished—Nine Network decided to defer broadcasting *The Secret*.  Cmplt. ¶¶33-34.  It was decided to allow distributors "release *The Secret* as a DVD and to sell streaming versions on the internet." *Id.* ¶33.  Plaintiffs contend that Heriot worked with another Australian, Marc Goldenfein, and Vividas Pty. Ltd., an Australian company ("Vividas"), "to develop an internet distribution model" for the film.[1] *Id.*  Vividas was, in fact, hired to convert the film to a format that could be streamed over the Internet.  PTP delivered the master tapes for *The Secret* and later for *The Secret* (extended edition) to Vividas in Melbourne, Australia; Vividas converted the films as planned.  Harrington Decl. ¶15.

*The Secret* was first shown in its substantially finished form in Australia in November 2005, at screenings for Nine Network executives in Melbourne.  Harrington Decl. ¶17.  PTP employees in Australia were also given VHS copies of *The Secret*, which were played at multiple private screenings in Australia in January 2006, including private screenings hosted by Heriot himself. *Id.* ¶18.  Beginning in March 2006, *The Secret* was made available worldwide for retail viewing over the Internet (using the Vividas technology) for a small fee.  Cmplt. ¶37.  DVDs of the movie were offered for sale shortly thereafter. *Id.*

Before the movie's DVD and Internet distribution, PTP transferred its rights in *The Secret* to Byrne, and she transferred her interest to defendant TS Production LLC ("TS Production").  Rainone Decl. ¶8.  In May 2006, TS Production engaged Prime Time US Inc. ("PTUS") to create a book based on *The Secret*, and later engaged PTP to create an extended version of the movie. *Id* ¶9.  TS Production registered its copyrights in the book and *The Secret* (extended edition). *Id.*  Because *The Secret* (extended edition) quickly replaced the original,

---

[1] Marc Goldenfein is a citizen and resident of Australia.  Harrington Decl. ¶16.  While Heriot did not have substantial contact with Vividas, any contact he did have would have been solely in Australia. *Id.*

neither PTP nor TS Production sought immediate copyright registration in the U.S. for the original version. *Id.* TS Production licensed rights to the book to Simon & Schuster and licensed rights to film versions of *The Secret* to TS Merchandising Ltd. and other distribution companies. *Id.* PTP still has at its Melbourne headquarters nearly all raw film footage, edits, transcripts and other documents and materials used in making *The Secret*. Harrington Decl. ¶20.

In September 2007, TS Production learned that Drew Pictures had sought U.S. copyright registration for the original version of *The Secret*. Rainone Decl. ¶2. In response to a letter from TS Production, Drew Pictures argued through its lawyers that, as a matter of *Australian* copyright law, Drew Pictures was a co-owner of the screenplay and any derivative works. *Id* Ex. A. TS Production promptly filed suit in Australia over seven months ago, on October 18, 2007, to determine its ownership of all rights to *The Secret*. *Id.* Ex. B. Throughout those proceedings, Drew Pictures and Heriot have contended that their rights derive from Australian law and have informed the Australian court that they intended to assert cross-claims against TS Production arising under Australian law. *Id.* Exs. A and D¶33.

## III.   ARGUMENT.

### A.   THE COURT SHOULD DISMISS THIS ACTION FOR *FORUM NON CONVENIENS.*

"The principle of *forum non conveniens* comes down to this: a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill-Rom Co., Inc.*, 108 F. 3d 799, 802 (7th Cir. 1997). The convenience of the parties and the ends of justice are best served here by having these predominantly Australian parties litigate their predominately Australian dispute over the ownership of *The Secret*—an issue governed by Australian law—in Australia, where they in fact have been litigating the same issue in earnest since October 2007.

#### 1.   THE LAW GOVERNING FORUM NON CONVENIENS.

Under the *forum non conveniens* doctrine, "a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Id.* In deciding a motion to dismiss based on *forum non conveniens*, the Court must

first determine whether an adequate alternative forum exists. If so, the Court must then determine whether the private and public interest factors warrant dismissal. *Id.* at 802-803.

An alternative forum must be both (i) available and (ii) adequate. *Id.* at 802 (citation omitted). A "forum is available if all parties are amenable to process and are within the forum's jurisdiction." *Id.* at 803. A "forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Id.* Once a court determines that an alternative forum exists, it must then balance private and public interest factors to determine whether dismissing the case will "best serve[] the convenience of the parties and the ends of justice." *Id.* at 802-803. The "private factors" and "public factors" to be weighed are as follows:

| Private Factors | Public Factors |
|---|---|
| • Ease of access to sources of proof; <br> • Availability of compulsory process for the attendance of unwilling witnesses; <br> • The cost of obtaining the attendance of willing witnesses; <br> • The possibility of viewing the premises, if necessary; and <br> • All other practical problems that make trial of a case easy, efficient and economical. | • Court congestion; <br> • The local interest in having localized disputes decided at home; <br> • The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; <br> • The avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and <br> • The unfairness of burdening citizens in an unrelated forum with jury duty. |

*Id.* at 803 (citations omitted). The Supreme Court has "repeatedly emphasized the need to retain flexibility" in considering these factors, without emphasis on any single factor. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249-50 (1947).

### 2. THE FEDERAL COURT OF AUSTRALIA IS BOTH AN AVAILABLE AND ADEQUATE ALTERNATIVE FORUM.

Australia is an available forum because the principal parties in this action are already litigating the same issues there. As plaintiffs recently stated through counsel, their Complaint here "raises the same issues for determination as were raised" by TS Production in the Australian Action last October. Rainone Decl. Ex. F ¶5(c). Moreover, in February 2008, counsel told the Australian court that plaintiffs had "instructed" them to prepare a cross-claim in Australia against TS Production and Byrne, alleging, among other things, infringement of Drew Pictures' alleged

copyright to the Works as a matter of Australian law. *Id.* Ex. D ¶33. Neither Heriot nor Drew Pictures has ever claimed that the Australian court is not competent to rule on these issues or that it lacks jurisdiction over them. Moreover, all defendants here agree to be subject to personal jurisdiction in Australia for purposes of resolving the parties' dispute, and have authorized TS Production's Australian counsel to accept service on their behalf. Rainone Decl. ¶10-12; Byrne Decl. ¶2-3; Zyck Decl. ¶2-3.

Australia is also an adequate forum. Plaintiffs can seek the same relief in Australia, another common law country, as asserted here.

### 3. THE PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF DISMISSAL.

#### a. The Key Witnesses And Evidence Are Located In Australia.

*The Secret* was conceived, filmed and finished almost entirely in Australia by an Australian company with an Australian crew using Australian equipment for an Australian television network. Consequently, virtually all of the dozens of witnesses and voluminous evidence relevant to Drew Pictures' ownership claim are located in Australia.

Threshold issues regarding Heriot's employment status with PTP, his relative contribution to *The Secret* and the parties' alleged intent that Heriot be considered a co-creator will require testimony from employees of PTP (who currently reside in Australia), the Australian film crews and other contributors who worked alongside Heriot while filming *The Secret*. This would include literally dozens of creative crew members who reside in Australia, who are not employed by any party and who are not subject to compulsory process in this Court.

Moreover, all of the raw footage filmed by PTP in the production of *The Secret,* all of the rough drafts and edits, and all of the documents relevant to Heriot's employment relationship with PTP are also located in Australia. Allowing the action to go forward here will create a logistical quagmire, requiring defendants to obtain voluminous records and testimony from half a world away, at enormous expense, simply to rebut Drew Pictures' spurious claim of ownership in *The Secret*—an an issue that is already properly before an Australian court.

b.      **Plaintiffs' Choice Of Forum Is Not Entitled To Deference.**

Drew Pictures is an Australian company with its principal place of business in Ivanhoe,

Victoria, Australia.  Cmplt. ¶2, Harrington Decl. ¶4.  Heriot is an Australian national who claims

to have moved to Southern California after "Byrne told Heriot to come to the United States on an

I Visa sponsored by Prime Time" *after* his alleged role in creating *The Secret* was complete.

Cmplt. ¶¶ 1, 36.  As both plaintiffs are Australian citizens, and neither is present in this District,

their choice of this forum is accorded little or no deference.  *Chelios v. Nat'l Hockey League

Players' Ass'n*, 2007 U.S. Dist. LEXIS 4260, *15 (N.D. Ill., Jan. 18, 2007).  In any event, as

shown in Section III.C. below, Heriot has not alleged a valid claim against any defendant,

making his presence in California irrelevant in analyzing deference to choice of forum.

4.      THE PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF DISMISSAL.

a.      **Copyright Ownership Here Is Governed By Australian Law.**

In analyzing the *forum non conveniens* public factors, the Court should avoid

"unnecessary problems in conflicts of laws or in the application of foreign law" and try to ensure

the case proceeds "in a forum that is at home with the law that must govern the action."  *Kamel*,

108 F. 3d at 802-803.  Here, Drew Pictures' claims that it owns or co-owns all or parts of *The

Secret* will be governed by Australian law.[2]

The leading authority on choice of law for international disputes over copyright

ownership holds that the laws of the country with the most significant relationship to the creation

of the work govern disputes over ownership of the work.  *Itar-Tass Russian News Agency v.

Russian Kurier*, 153 F.3d 82, 89-90 (2d Cir. 1998).  In a matter of first impression, the *Itar-Tass*

court observed that "[c]hoice of law issues in international copyright cases have been largely

ignored in the reported decisions and dealt with rather cursorily by most commentators."  *Id*. at

88.  The court thus approached its conflicts of law analysis methodically, first looking to

Congress's Berne Convention Implementation Act of 1988, which amended the Copyright Act to

---

[2] Although plaintiffs allege that Drew Pictures' ownership claim is a matter of U.S. copyright law (*see*
Complaint ¶¶61-63), they previously admitted that Drew Pictures' ownership rights in *The Secret*, if any,
are a matter of Australian law.  *See* Rainone Decl. Exs. A and D ¶33.

provide that "[n]o right or interest in a work eligible for protection under this title may be claimed by virtue of . . . the provisions of the Berne Convention . . . . Any rights in a work eligible for protection under this title that derive from this title . . . shall not be expanded or reduced by virtue of . . . the provisions of the Berne Convention."[3]  *Id.* at 90 (quoting 17 U.S.C. §104(c)).  In other words, the court ruled that a putative copyright owner could not have rights he would not otherwise have by virtue of this country's adoption of the Berne Convention other than those that previously existed under the Copyright Act generally.[4]  The *Itar-Tass* court then determined, however, that the Copyright Act does not specify which law should apply to the determination of copyright ownership when a work is created overseas but protection is sought here.  *Id.*; *accord*, Melvin D. Nimmer, *Nimmer On Copyright* (2007) ("Nimmer") §17.05.

Consequently, *Itar-Tass* held that federal common law determines what law should apply. 153 F.3d at 90.  Noting that "copyright is a form of property," the court applied the "usual rule . . . that the interests of the parties in property are determined by the law of the state with 'the most significant relationship' to the property and the parties."  *Id.* (citing Rest. 2d Conflict of Laws §222).  Thus, under federal common law, a court must apply the "most significant relationship" test to determine initial ownership of copyright.  *Itar-Tass*, 153 F.3d at 90-91; *Films by Jove, Inc. v. Berov*, 154 F. Supp. 2d 432, 448 (E.D.N.Y. 2001) (applying Russian law to determine initial ownership of animated films made in Russia); *Dae Han Video Prod., Inc. v. Dong San, Chun*, 1990 U.S. Dist. LEXIS 18496, *9 n.3 (E.D. Va. 1990) (applying Korean law to determine that licensor lacked rights in Korean television shows).

---

[3] The United States and Australia are parties to the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention").  The Berne Convention requires equal recognition of copyrights among signatory nations, gives minimum levels of protection for copyright holders and provides for the automatic existence of copyrights without the requirement of registration (though the U.S. requires registration as a prerequisite to enforce a copyright in district court and to obtain statutory damages.)

[4] Article 14*bis* section 2(a) of the Berne Convention gave signatory states the option of legislating ownership of copyrights in movies:  "Ownership of copyright in a cinematographic work shall be a matter for legislation in the country where protection is claimed."  Berne Convention (Paris Text, 1971).  Unlike Australia, the U.S. never enacted such legislation.

Australia is the country with the most significant relationship to the property and the parties here. *The Secret* was conceived in Australia by Byrne, an Australian citizen then residing in Australia. *The Secret* was produced by PTP, an Australian company. The vast majority of the film crew—including Heriot—were Australian citizens residing in Australia. Drew Pictures, which claims ownership of *The Secret,* is an Australian company based in a Melbourne suburb.[5] Drew Pictures, Heriot and PTP were parties to a Consultancy Agreement entered into in Australia and governed by Australian law. Harrington Decl. ¶4, Ex. A. Australia is the locale of almost all work on *The Secret*; of the twelve months of its production time during which plaintiffs claim Heriot contributed to *The Secret,* only a few days were spent by crewmembers working outside of Australia.

Plaintiffs acknowledge that Heriot's various alleged contributions—including the promotional trailers, the "Rundowns," the "Questions for Interview Subjects," the "2hr Paper Edit," the "tranSCRIPT" and various other "creations"—*all* occurred in Australia, not the United States. Cmplt. ¶¶22, 24, 25, 29, 30. Heriot himself only participated in eleven of the twenty filming days in the U.S. Harrington Decl. ¶8. Moreover, from the beginning Heriot believed that the work being produced was intended for broadcast in Australia—like every other project Heriot had worked on for PTP. Cmplt. ¶¶16-18, 26; Harrington Decl. ¶6. PTP first published *The Secret* to Australian audiences in Australia. *Id.* ¶¶17-18. Australia is unquestionably the country with the "most significant relationship" to the creation of *The Secret*.

---

[5] If, as TS Production submits in the Australian Action, Heriot is a *de facto* employee of PTP, any contributions he made would be deemed a work made for hire, leaving Drew Pictures without a claim— whether the law of Australia or the U.S. applies. *See* 1 Sherman, Lahore. et al., INTERNATIONAL COPYRIGHT LAW & PRACTICE, Australia, (2007) §4[1][b][i][A] at AUS-43 and §4[1][b][ii][B] at AUS-46 (noting that in Australia ownership of a literary work (e.g., a book) is held by the employer while ownership of a film is held by the "maker," i.e., the production company.); 17 U.S.C. §101 (defining "work made for hire" as, among other things, "a work prepared by an employee within the scope of his or her employment.").

Because Australian law will determine whether Drew Pictures has any rights to *The Secret*, this factor weighs heavily in favor of dismissal.[6] "To ensure a correct application of [another country's] law, this court should not 'delve into the tenets of an unfamiliar legal system.'" *ISI Int'l, Inc. v. Borden Ladner Gervais,* 2001 U.S. Dist. LEXIS 18202, *10 (N.D. Ill. Nov. 6, 2001) (quoting *Kamel,* 108 F.3d at 805). Given that the Australian court already has jurisdiction over these same parties for what are admittedly the "same issues," the same reasoning applies here with even greater force.

> b.    **Other Public Interests Weigh Heavily In Favor Of Dismissal.**

Other "public factors" include consideration of the relative congestion of the two courts, the existence (or non-existence) of any local interest in the case, and whether local juries should be burdened with deciding the parties' dispute. Here, each factor weighs in favor of dismissal.

First, the courts of this District are far more congested than the Federal Court of Australia, where the earlier action involving what are admittedly the "same issues" is now pending. Each district judge in this District has an average docket of 368 pending cases. Meckes Decl. Ex. A. The Federal Court of Australia is much less congested, averaging about 66 cases per judge. *Id.* ¶3, Ex. B at 89. The courts' relative levels of congestion are reflected in the relative durations of cases in each court from commencement to disposition. Cases in this District take about 2.5 years to get to trial, while 65% of cases in the Australian Federal Court are resolved within six months and 83.8% of cases are resolved within one year. *Id.* at 93. Only 5.7% of the cases in Australian courts last longer than two years. *Id.*

Second, Illinois has *no* interest in determining the central issue of this case: whether Drew Pictures—a foreign corporation with no operations in or apparent contacts with this state— co-owns a film conceived and produced in Australia for broadcast on Australian television. Juries in this District should not be burdened with such a dispute, particularly when a proceeding

---

[6] Plaintiffs brought their case in this forum, rather than as a cross-claim in Australia, because as a matter of Australian law the copyright to a film is owned by the producer of a film—here PTP. 1 INTERNATIONAL COPYRIGHT LAW & PRACTICE, Australia (2007) §4[1][b][ii][B] at AUS-46 (citing Australia Copyright Act of 1968 ("C.A.") §§22(4) and 98(1)-(2)).

involving the very "same issues" and substantially the same parties has been pending for over seven months in the Australian Federal Court. Australia, meanwhile, has a substantial interest in ensuring that its citizens' rights in films and other works created by Australian citizens in Australia are afforded the protections provided under Australian law.

Because Australia is not only an adequate alternative forum, but also the forum that will be most convenient to all of the parties and witnesses, this Court should dismiss this action for *forum non conveniens.*

**B.    THIS COURT SHOULD DISMISS OR STAY THIS ACTION BASED ON THE PENDENCY OF THE PRIOR, PARALLEL ACTION IN AUSTRALIA.**

**1.    THE LAW GOVERNING ABSTENTION.**

Permitting the Australian Action to run its course will resolve the central issue here: whether Drew Pictures has any ownership rights in *The Secret.* The Court thus has an independent basis to dismiss or, at a minimum, stay this action under the abstention doctrine.

When parallel proceedings in another state or country involve the same issues, a district court may, "for reasons of wise judicial administration," dismiss an action to ensure due regard for "the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Conservation District v. U.S.*, 424 U.S. 800, 817-18 (1976). While this issue typically arises "in the context of parallel state proceedings . . . in the interests of international comity, [courts] apply the same general principles with respect to parallel proceedings in a foreign court." *Finova Cap. Corp v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (citing *Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 685 (7th Cir. 1987)).[7]

Determining abstention requires a two-step analysis. First, the Court must "determine whether the federal and foreign proceedings are in fact parallel." *Finova*, 180 F.3d at 898. "Parallel" does not necessarily mean "identical." *Royal Sun Alliance Ins. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006). Rather, "[s]uits are parallel if substantially the

---

[7] While the *Colorado River* Court based its decision on the principle of deference to parallel proceedings only after finding that the "case falls within none of the abstention categories" (424 U.S. at 817), such deference is usually called "abstention." *See Finova*, 180 F.3d at 898.

same parties are litigating substantially the same issues simultaneously in two fora." *Finova*, 180

F.3d at 898 (citation omitted); *In re Chicago Flood Lit.,* 819 F. Supp. 762, 764 (N.D. Ill 1993)

("identity of parties in both forums" is not needed for the action to be parallel).

If the two actions are parallel, the Court's "next task is to balance the considerations that

weigh in favor of, and against, abstention." *Finova*, 180 F.3d at 898. The Seventh Circuit has

considered several:

> (1) the identity of the court that first assumed jurisdiction over the
> property; (2) the relative inconvenience of the federal forum;
> (3) the need to avoid piecemeal litigation; (4) the order in which
> the respective proceedings were filed; (5) whether federal or
> foreign law provides the rule of decision; (6) whether the foreign
> action protects the federal plaintiff's rights; (7) the relative progress
> of the federal and foreign proceedings; and (8) the vexatious or
> contrived nature of the federal claim.

*Finova*, 180 F.3d at 898-899 (citations omitted).

### 2.     ALL ABSTENTION CRITERIA ARE MET HERE.

All criteria are satisfied here. As a threshold matter, this action is parallel to the

preexisting one in Australian Federal Court. Plaintiffs have admitted in the Australian Action

that each case shares the same principal issue: whether Drew Pictures holds any property rights

in *The Secret*. Rainone Decl. Ex. F. Although plaintiffs added defendants to this action who are

not named parties in the Australian action—Rhonda Byrne, TS Merchandising, TS Production

Holdings, PTUS and Robert Rainone—each is collateral to the principal issue in dispute. Their

joinder does not affect the parallel nature of these actions. *See In re Chicago Flood Litigation,*

819 F. Supp. at 764.

The other factors cited by the Seventh Circuit also cut in favor of abstention. The first

court to assume jurisdiction was the Australian Federal Court. And, as shown in the discussion

of *forum non conveniens*, the Australian Federal Court is also the more convenient forum given

that the vast majority of witnesses and documents are located there. That action has been well

underway for months, with Drew Pictures' and Heriot's active participation. According to

comparative statistics, the forum "Down Under" is less congested and thus faster than this

- 12 -

District.  Meckes Decl. ¶¶ 2-3, Exs. A-C.  Having the Australian Federal Court determine, under its own law, the threshold issue of whether Drew Pictures has any ownership right in *The Secret* will better serve the fair and efficient administration of justice than proceeding with plaintiffs' claims here.  The Court should thus abstain from acting and dismiss this action, or, in the alternative, stay it pending the outcome of proceedings in Australia.

### C.    BECAUSE HERIOT PLEADS NO CLAIM IN HIS OWN RIGHT, HE LACKS STANDING TO SUE AND ALL OF HIS CLAIMS MUST BE DISMISSED.

Plaintiffs' allegations demonstrate that Heriot has no claim of his own.  Because he lacks standing to assert claims under a copyright he admits he does not own, the Court should dismiss each of Heriot's claims under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Plaintiffs allege that "[a]t all times during the creation of the Works, Heriot was an employee of Drew Pictures Pty Ltd.," and that "by virtue of its employment of Heriot, Drew Pictures is the owner of Heriot's interest in the Works."  Cmplt. ¶¶1-2.  The copyright that allegedly forms the basis of the Complaint was registered by "Drew Pictures Pty Ltd as the employer for hire of Drew Heriot, who was the co-author of the screenplay and the director of the movie."  Id. ¶55.  Heriot thus does not claim—and cannot claim—any ownership in the copyrights over the subject works.  He therefore lacks standing to bring the claims he asserts.

On a Rule 12(b)(6) motion, the Court must accept as true all well-pled facts and draw all reasonable inferences from those facts in favor of the plaintiff.  *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 977-78 (7th Cir. 1999).  A challenged claim must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* __ U.S. __, 127 S. Ct. 1955, 1974 (2007).  Heriot must provide enough detail to give defendants fair notice of his claims and he must show that his claims are plausible—rather than merely speculative—such that relief is warranted.  *EEOC v. Concentra Health Care Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).

Plaintiffs allege four counts.  In Count I, they seek a judicial declaration that Drew Pictures is a co-owner of the Works and that, therefore, "Defendants have a duty to account to

Plaintiffs for all profits arising, directly or indirectly, from Defendants' exploitation of the Works." Cmplt. ¶68. Alleging that Drew Pictures, but not Heriot, is the owner of the Works is an admission that Heriot has no personal right to any such declaration or any accounting. Count II for "equitable accounting, and Count IV, for "unjust enrichment," fare no better for the same reason. Finally, Count III alleges that Defendants are infringing copyrights purportedly owned by Drew Pictures, not Heriot. *Id.* ¶77. Only "legal or beneficial owner[s]" of copyrights, however, are entitled to bring actions for infringement. 17 U.S.C. §501. Heriot thus has no claim under Count III or any other asserted count.

### D.    PLAINTIFFS PLEAD NO CLAIMS AGAINST ROBERT RAINONE

Plaintiffs name Robert Rainone as a defendant but assert no cognizable claim against him. Plaintiffs allege simply that Rainone "is the recipient of profits" through his ownership interest in various business entities involved in the creation and marketing of *The Secret.* Cmplt. ¶9. Plaintiffs purport that Rainone and others "entered into a scheme to fraudulently transfer intellectual property rights in *The Secret*," and to "defraud Heriot and Drew Pictures of their investment." Cmplt. ¶40. But plaintiffs do not assert fraud or any other tort claims against Rainone or anyone else.[8]

Plaintiffs' putative claims against all "Defendants" collectively allege a right to a declaration of co-ownership of *The Secret*, an accounting, or, in the alternative, damages for copyright infringement and unjust enrichment. These claims fail as to Rainone because he is not alleged to be a co-owner from whom an accounting is available. A putative co-owner of a joint work is only entitled to an accounting from the other co-owner. *See Nimmer* §6.12[b], at 6-38.6 and cited cases ("A right of accounting may be enforced only as against the joint owner-licensor."). Rainone's status as a shareholder or member of entity defendants does not render him co-liable with the entity defendants under the facts alleged. *Valinote v. Ballis*, 295 F.3d 666,

---

[8] Plaintiffs would be required to support their "fraudulent scheme" allegations with the factual specificity required by Rule 9(b) if they actually were attempting to state a claim for fraud. The lack of such specificity shows that these statements are baseless and merely asserted for pejorative effect.

668 (7th Cir. 2002).  Nor is he alleged to infringe any of Drew Pictures' alleged copyrights on an individual basis.  All claims against Rainone must be dismissed.

**IV.    <u>CONCLUSION</u>**

     The central issue of this action—Drew Pictures' purported ownership or co-ownership of rights in and to *The Secret*—is, according to plaintiffs, the "same issue" presented for resolution in the earlier-filed Australian Federal Court proceeding.  Plaintiffs have actively engaged in that proceeding.  Whether Plaintiffs filed the present action to avoid the impact of Australian law (which clearly vests the movie's producer, PTP, with all ownership rights in and to *The Secret*), or whether they filed this action for some other tactical purpose, is unimportant.  What is important is that this case meets all of the criteria for dismissal, whether under *forum non conveniens* or the abstention doctrine.  If the Court believes dismissal is not warranted, then it should exercise its discretion under the abstention doctrine to stay this case pending the outcome of proceedings in Australia.  Finally, in the event the entire action is not dismissed, all claims asserted by Heriot and all claims asserted against Rainone should be dismissed under Rule 12(b)(6).

Dated:  June 4, 2008

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By:  /s/ David S. Elkins
     David S. Elkins