IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DREW HERIOT and<br>DREW PICTURES PTY LTD.,<br><br>      Plaintiffs,<br><br>      vs.<br><br>RHONDA BYRNE, THE SECRET LLC<br>(AKA TS HOLDINGS LLC), PRIME TIME<br>US INC., TS PRODUCTION HOLDINGS<br>LLC, TS PRODUCTION LLC,<br>TS MERCHANDISING LTD., and<br>ROBERT E. RAINONE, JR.,<br><br>      Defendants. | Civil Case No. 08CV2272<br><br>The Honorable Suzanne B. Conlon |

**DECLARATION OF ROBERT E. RAINONE, JR., IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

David S. Elkins
Joseph A. Meckes
Joseph P. Grasser
SQUIRE, SANDERS & DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043
Telephone:  (650) 856-6500
Facsimile:   (650) 843-8777

Jack J. Carriglio
James G. Argionis
MECKLER BULGER & TILSON
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  (312) 474-7900
Facsimile:   (312) 474-7898

Attorneys for Defendants
RHONDA BYRNE, TS RER LLC
(erroneously named as "THE SECRET LLC"
and "TS HOLDINGS LLC"), PRIME TIME
US INC., TS PRODUCTION HOLDINGS
LLC, TS PRODUCTION LLC,
TS MERCHANDISING LTD., and
ROBERT E. RAINONE, JR.

I, Robert E. Rainone, Jr., declare as follows:

1.      I am president of defendants TS Production Holdings LLC, Prime Time US Inc., and TS RER LLC.  I am also managing director of defendant TS Production LLC.  The matters set forth below are within my personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

2.      In September 2007, TS Production LLC learned that Drew Pictures had sought copyright registration for the original version of *The Secret*.  In response to a letter from counsel for TS Production LLC, Drew Pictures' intellectual property counsel at Kenyon & Kenyon argued that, as a matter of *Australian* copyright law, Drew Pictures was a co-owner of the screenplay and any derivative works.  A true and correct copy of the October 11, 2007 letter from Kenyon & Kenyon is attached hereto as Exhibit A.

3.      TS Production LLC promptly filed suit in Australia on October 18, 2007, to determine its ownership of all rights to *The Secret*.  Attached hereto as Exhibit B is a true and correct copy of the October 18, 2007 Statement of Claim filed in Australia by TS Production LLC.  The on-going litigation in Australia between TS Production LLC, on one hand, and Drew Pictures Pty Ltd. and Drew Heriot, on the other, is referred to herein as the "Australian Action."

4.      Attached hereto as Exhibit C is a true and correct copy of the February 2008 Amended Statement of Claim filed by TS Production LLC in the Australia Action.

5.      Attached hereto as Exhibit D is a true and correct copy of a February 8, 2008 affidavit (without exhibits) submitted by Peter Selvay of the law firm Mallesons Stephen Jaques to the federal magistrate's court in Australia in connection with the Australian Action.

6.      Attached herto as Exhibit E is a true and correct copy of an April 23, 2008 letter from Peter Selvay of the law firm Mallesons Stephen Jaques stating that "the USA complaint raises the same issues for determination as are raised in this proceeding."

7.      Attached hereto as Exhibit F is a true and correct copy of an April 23, 2008 affidavit with Exhibit PJTS-1 thereto that was submitted by Peter Selvay of the law firm

Mallesons Stephen Jaques to the federal magistrate's court in Australia in connection with the Australian Action.

8.      Before *The Secret* was distributed to the public worldwide over the internet or through DVD sales, Prime Time Production Holdings Pty Ltd. ("PTP") transferred its ownership rights in *The Secret* to Rhonda Byrne, who then transferred her interest to TS Production LLC, which is the current owner of all copyrights to *The Secret.*

9.      In May 2006, TS Production LLC commissioned Prime Time US Inc. to create a book based on *The Secret* and later engaged PTP to create an extended version of the movie.  TS Production LLC registered its copyrights in the book and *The Secret* (extended edition).  Because *The Secret* (extended edition) quickly replaced the original, neither PTP nor TS Production LLC sought immediate copyright registration in the U.S. for the original version.  TS Production LLC licensed rights to both film versions of *The Secret* to TS Merchandising Ltd., an independently owned and operated distribution company, and other distribution companies.  TS Production LLC licensed rights to the book to Simon & Schuster.

10.     As  president of TS Production Holdings LLC, Prime Time US Inc. and TS RER LLC, I have been authorized to agree, and do agree, that these companies will submit to personal jurisdiction in the courts of Australia in connection with the claims alleged in the Complaint in this action or any other claims based on alleged ownership by Drew Pictures Pty Ltd. in *The Secret* or any part thereof.

11.     TS Production Holdings LLC, Prime Time US Inc. and TS RER LLC have authorized Leon Zwier of the law firm Arnold, Bloch & Liebler to accept service of process in any action initiated against then based on alleged ownership or co-ownership by Drew Pictures Pty Ltd. in *The Secret* or any part thereof.

12.     I also agree, in my individual capacity, to submit to personal jurisdiction in the Australian courts in connection with the claims alleged in the Complaint in this action or any other claims based on alleged ownership by Drew Pictures Pty Ltd. in *The Secret* or any part

thereof and authorize Leon Zwier of the law firm Arnold, Bloch & Liebler to accept service of process in such an action on my behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2008 in Chicago, Illinois.

Robert E. Rainone, Jr.

## <u>CERTIFICATE OF SERVICE</u>

Under penalties as provided by law, the undersigned, an attorney, hereby certifies and states that he caused a true and accurate copies of the following accompanying documents:

- *Defendants' Notice of Motion;*

- *Defendants' Motion to Dismiss or, in the Alternative, to Stay Proceedings;*

- *Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the Alternative, to Stay Proceedings;*

- *Declaration of Rhonda Byrne in Support of Motion to Dismiss or, in the Alternative, to Stay Proceedings;*

- *Declaration of Paul Harrington in Support of Motion to Dismiss or, in the Alternative, to Stay Proceedings;*

- *Declaration of Joseph A. Meckes in Support of Motion to Dismiss or, in the Alternative, to Stay Proceedings;*

- *Declaration of Robert E. Rainone, Jr. in Support of Motion to Dismiss or, in the Alternative, to Stay Proceedings*; and

- *Declaration of Donald J. Zyck in Support of Motion to Dismiss or, in the Alternative, to Stay Proceedings*

to be served upon the counsel listed below via the United States District Court for the Northern District of Illinois, Eastern Division's CM/ECF electronic filing system and by electronic mail on this 4th day of June, 2008.

Paul L. Price
(plp@heplerbroom.com)
Hepler, Broom, MacDonald, Hebrank, True &
  Noce, LLC
150 N. Wacker Drive, Suite 3100
Chicago, Illinois  60606

Mark S. Werbner
(mwerbner@swtriallaw.com)
Darren P. Nicholson
(dnicholson@swtriallaw.com)
Sayles |Werbner, P.C.
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270


By  /s/ David S. Elkins

# RAINONE DECLARATION EXHIBIT A



**KENYON & KENYON LLP**
Intellectual Property Law

Jonathan D. Reichman
Direct 212.908.6256
jreichman@kenyon.com

One Broadway
New York, NY 10004-1007
212.425.7200
Fax 212.425.5288

October 11, 2007

<u>VIA FACSIMILE (216-479-8780)</u>

Suzanne K. Ketler, Esq.
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114-1304

Re:   <u>"The Secret" (Original Edition)</u>

Dear Ms. Ketler:

This is in further response to your September 25, 2007 letter.

We believe that Drew Pictures Pty. Ltd. ("DPPL") has the right to register its copyright interest in "The Secret Original Edition" based upon the contributions of its employee Drew Heriot. (A photocopy of this registration is attached hereto as Exhibit "A".)

As you acknowledge, DPPL, acting through Mr. Heriot, contributed services as director and editor of "The Secret Original Edition." [1] Mr. Heriot, acting on behalf of DPPL, was also co-author of the screenplay. Neither Mr. Heriot nor DPPL was ever an employee of Prime Time Productions Pty Ltd ("PTP"), or any other entity associated with Rhonda Byrne. Rather, DPPL was an independent contractor, and Mr. Heriot was an employee of DPPL, not PTP. Moreover, at no time did Mr. Heriot or DPPL enter into a written assignment with PTP (or any other entity associated with Ms. Byrne) with respect to the above-described contributions.

We regard your citations to the Australian Copyright Act 1968 as inapposite. The Act makes clear that, absent an employer/employee relationship or a written assignment, DPPL is (i) a co-owner of the copyright comprised in the screenplay (Sections 35, 78) and (ii) the owner of part of the copyright in the film itself (Sections 98(4), 98(6)). Additionally, Section 21 of the Act gives DPPL, as co-owner of the screenplay's copyright, an interest in adaptation of the screenplay into a film. Furthermore, DPPL's copyright interests would apply to any and all

---

[1]      While you state that "Mr. Heriot worked as one of four directors of 'The Secret Original Edition,'" the contributions of the other three directors -- Damien McLindon, Sean Byrne and Marc Goldenfein -- were minor in relation to Mr. Heriot's. Consistent with their relative contributions, only Mr. Heriot was given full page credit as director.

NY01 1419359 v2

Suzanne K. Ketler, Esq.
October 11, 2007
Page 2



derivative works, including without limitation "The Secret Extended Edition," and "The Secret" book published by Atria Books.

Mr. Heriot's contributions were made based upon DPPL's and Ms. Byrne's agreement and understanding that DPPL would share in the back-end. However, Ms. Byrne never followed through on her commitment in this regard, and she subsequently cut off all further communications with Mr. Heriot -- after Mr. Heriot took a number of steps on her behalf, including relocating from Australia to Los Angeles.

Consequently, we believe that DPPL is entitled to compensation from exploitation of "The Secret", in all its forms, based upon its above-described copyright interests, and the above-described agreement. We therefore request an accounting of all revenues derived from such exploitation, so that DPPL can make a determination of such appropriate compensation.

Finally, please note that we too would prefer to resolve this matter amicably, and therefore look forward to your favorable response.

The foregoing is without prejudice to all of DPPL's rights and remedies in connection with this matter, which are hereby expressly reserved.

Very truly yours,

Jonathan D. Reichman

Enclosure
cc: Mr. Drew Heriot

# EXHIBIT A

10/11/2007 12:43 FAX          KENYON & KENYON                    ☑005
0-2007  15:09      REC & PROC DIV              2027071899   P.02/03

~~ificate of Registration~~

This Certificate issued under the seal of the Copyright
Office in accordance with title 17, United States Code,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## PA 1-355-437

**Effective date of
registration:**

**September 10, 2007**

## Title

| | |
|---|---|
| **Title of Work:** | The Secret |
| **Nature of Work:** | Motion Picture |

## Completion/Publication

| | | |
|---|---|---|
| **Year of Completion:** | 2006 | |
| **Date of 1st Publication:** | March 26, 2006 | **Nation of 1st Publication:** United States |

## Author

| | |
|---|---|
| ■    **Author:** | Drew Pictures Pty. Ltd. |
| **Author Created:** | screenplay and motion picture production |
| **Work made for hire:** | Yes |
| **Domiciled in:** | Australia |
| **Anonymous:** | No         **Pseudonymous:** No |

## Copyright claimant

| | |
|---|---|
| **Copyright Claimant:** | Drew Pictures Pty. Ltd. |
| | Unit 1/9 Ashby Grove, Ivanhoe 3079, Victoria, Australia |

## Limitation of copyright claim

| | |
|---|---|
| **Previously registered:** | No |

## Certification

| | |
|---|---|
| **Name:** | Drew Heriot |
| **Date:** | August 23, 2007 |

| | |
|---|---|
| **Correspondence:** | Yes |

# RAINONE DECLARATION EXHIBIT B

IN THE FEDERAL MAGISTRATES COURT OF AUSTRALIA
VICTORIA DISTRICT REGISTRY

No.        of 2007

BETWEEN

**TS PRODUCTION LLC**

MLG 1435 207

Applicant

and

**DREW PICTURES PTY LTD
(ACN 088 783 000)**

First Respondent

and

**ANDREW HERIOT
(also known as DREW HERIOT)**

Second Respondent

## STATEMENT OF CLAIM

1    The Applicant is and was at all material times:

    (a)    a company incorporated in Hungary;

    (b)    entitled to sue in its abovementioned corporate name;

    (c)    engaged in the business of marketing, distribution and supply
        in Australia and other countries of the world of a range of

---

Date of Document :      October 2007
Filed on behalf of: The Applicant
Prepared by:
**Marshalls & Dent
Solicitors**
Level 13, 459 Little Collins Street
MELBOURNE  VIC  3000

Solicitor's Code: 396
Tel: (613) 9670 5000
Fax: (613) 9642 0409
Ref: RSM:SBM:50340
Attention: Bryce Menzies

PRIME TIME 50340 The Secret\20071010-001

self-help and motivational products including a book, compact disc, DVD and other literature known by the title and/or brand "The Secret";

(d)    the owner of copyright in the cinematograph film titled "The Secret (Original Edition)" which is also known by the simple title "The Secret" ("the Film");

(e)    the owner of all intellectual property rights including copyright in, inter alia, any writings for "The Secret" ("the Works").

### Particulars

The original owner of copyright in the Film and the Works was Prime Time Production Holdings Pty Ltd ("Prime") by virtue of ss 22(4) and 98(2) of the Copyright Act 1968 (Cth), as it was the maker of the Film and by virtue of s 35(6) of the Copyright Act 1968 (Cth) as it was the party contracting for the services of others. Prime assigned copyright in the Film and the Works to Rhonda Byrne by a written agreement dated 22 March 2006 (and subsequently confirmed by a written deed of assignment dated 23 April 2007) and Rhonda Byrne assigned copyright in the Film to the Applicant pursuant to such written assignment and pursuant to a contribution agreement dated 11 April 2006 (and subsequently confirmed by a written deed of assignment dated 23 April 2007).

2    The First Respondent is and was at all material times:

(a)    a company duly incorporated pursuant to the laws of Australia;

(b)    liable to be sued in its abovementioned corporate name;

(c)    the entity used by the Second Respondent for the supply of the Second Respondent's consultancy services.

3    The Second Respondent is and was at all material times:

(a)    an Australian citizen;

(b)    a director of the First Respondent.


## The Conduct Complained Of

4    The First Respondent wrongly an/or falsely claims:

(a)    to be the owner of copyright in the Film and a screenplay for the Film;

(b)    alternatively, to have a copyright claim in the Film and a screenplay for the Film.

### Particulars

The First Respondent has made an application to the US Copyright Office for registration of a copyright claim in the Film and a screenplay for the Film. The said application has led to (non-conclusive) registration (PA 1-355-437).


5    The Second Respondent wrongly and/or falsely claims:

(a)    that the First Respondent is the owner of copyright in the Film and a screenplay for the Film;

(b)    that the First Respondent has a copyright claim in the Film and a screenplay for the Film.

### Particulars

The Second Respondent is a director and the executive officer of the First Respondent and responsible for the application to the US Copyright Office for registration of a copyright claim in the Film and a screenplay for the Film. The application to the US Copyright Office could not be made without the Second    Respondent's    knowledge    and

support.

6      In the premises, the Applicant is a person aggrieved.

### Particulars

The Applicant has also applied to the US Copyright Office for registration of a copyright claim in the Film and its claim is in conflict with the First Respondent's claim.

Furthermore, the Applicant cannot run its business affairs in an orderly fashion whilst there is a conflict and/or a false and/or competing claim to copyright in the Film or the Works.

**AND THE APPLICANT CLAIMS THE RELIEF SPECIFIED IN THE APPLICATION FILED HEREWITH**

Dated:                                    18   October 2007

......................................................
**Marshalls & Dent**
**Solicitors**
Solicitors for the Applicant

This statement of Claim was prepared by James G Samargis, Barrister

## CERTIFICATE OF LEGAL REPRESENTATIVE

I, Robert Bryce Menzies, certify to the Court that the factual and legal material available to me at present provides a proper basis for each allegation in the Statement of Claim dated 18 October 2007.

Dated: 18 October 2007

Robert Bryce Menzies

Marshalls & Dent

# RAINONE DECLARATION
# EXHIBIT C

IN THE FEDERAL MAGISTRATES COURT OF AUSTRALIA
VICTORIA DISTRICT REGISTRY

No. MLG 1435 of 2007

**TS PRODUCTION LLC**

Applicant

and

**DREW PICTURES PTY LTD (ACN 088 783 000)**

First Respondent

and

**DREW HERIOT**

Second Respondent

### AMENDED STATEMENT OF CLAIM

**(amended pursuant to the orders of O'Dwyer FM made 8 November 2007)**

## PARTIES

1.  The Applicant (**TS Production**) is and at all material times was:

    (a)   a company duly incorporated pursuant to the laws of Hungary;

    (b)   entitled to sue in its corporate name; and

    (c)   since April 2006, engaged in the business of licensing rights for the
          marketing, distributing and supplying, in Australia, and other countries, of a

| | |
|---|---|
| Date of document: | February 2008 |
| Filed on behalf of: | The Applicant |
| Prepared by: | |
| Arnold Bloch Leibler | Solicitor's Code: |
| Lawyers and Advisors | DX: 38455 Melbourne |
| 333 Collins Street | Tel: (03) 9229 9999  Fax: (03) 9229 9900 |
| MELBOURNE  VIC  3000 | Ref: LZ/VED |

range of self-help and motivational products by the title of and/or using the brand "The Secret" including the Film (as defined in paragraph 5 below) and, since November 2006, the Book (as defined in paragraph 13 below).

2.    The First Respondent (**Drew Pictures**) is and at all material times was:

    (a)    a company duly incorporated pursuant to the laws of Australia; and

    (b)    liable to be sued in its corporate name.

3.    The Second Respondent (**Heriot**):

    (a)    is and at all material times was a director of Drew Pictures, and until 9 February 2007 the sole director; and

    (b)    is and at all material times was the sole shareholder of Drew Pictures.

4.    Prime Time Productions Holdings Pty Ltd (ACN 064 980 472) (**Prime Time**) is and at all material times was a company duly incorporated pursuant to the laws of Australia.

**MAKING OF THE FILM**

5.    Between July 2004 and January 2006, Prime Time, in Victoria, made all arrangements necessary for the making of, and did the things necessary for the production of, the first copy of a cinematograph film, within that term as defined in section 10(1) of the *Copyright Act* 1968 (Cth) (the **Act**), titled "The Secret (Original Edition)" which is also known by the simple title "The Secret" (the **Film**).

**PARTICULARS**

A copy of the Film is in the possession of TS Production's solicitors and may be inspected at their offices during business hours by appointment.

Prime Time produced the Film and without limitation did, or caused to be done, the following in relation to the Film:

    (a)    creation of the concept;

    (b)    retaining talent;

    (c)    filming;

    (d)    editing;

    (e)    financing, including by virtue of negotiating, procuring and entering into a commission agreement with Nine Network Australia Pty Ltd dated 5 July 2005, a copy of which is in the possession of TS Production's solicitors and may be inspected at their offices during business hours by appointment; and

    (f)    all production work.

6.    By reason of the matters alleged in paragraph 5 above, Prime Time, for the purposes of the Act:

    (a)    pursuant to section 22(4)(a) of the Act, between July 2004 and January 2006 made the Film; and

    (b)    pursuant to section 22(4)(b) of the Act, was the maker of the Film.

**COPYRIGHT IN THE FILM**

7.    By reason of the matters alleged in paragraph 4 above, Prime Time, throughout the entirety of the period during which, for the purposes of the Act, the Film was made, was a "qualified person" within the meaning of that term in Part IV of the Act as defined in section 84 of the Act.

8.    By reason of the matters alleged in paragraphs 5 and 7 above, pursuant to section 90(1) of the Act copyright under the Act subsists in the Film and has subsisted since the Film was made.

9.    Further or alternatively to paragraph 8 above, by reason of the matters alleged in paragraph 5 above, pursuant to section 90(2) of the Act copyright under the Act subsists in the Film and has subsisted since the Film was made.

10.    Heriot:

    (a)    was director of the Film within the meaning of that term as used in section 98 of the Act; and

    (b)    within the meaning of section 98(5) of the Act, directed the Film under the terms of his employment under a contract of service with Prime Time.

4

### PARTICULARS

Heriot commenced employment under a contract of service with Prime Time in February 2002 and was in that employment at all times between July 2004 and January 2006. Particulars of the contract will be provided.

11. There was no agreement between Heriot and Prime Time to the contrary of the provision in section 98(5) of the Act that in the circumstances alleged in paragraph 10 above Prime Time is substituted for the director for the purposes of section 98(4) of the Act.

12. By reason of the matters alleged in paragraphs 6(b), 10 and 11 above, pursuant to sections 98(2), 98(4), 98(5) and 98(6) of the Act the owner of all of the copyright under the Act subsisting in the Film was, as at the making of the Film, Prime Time.

### MAKING OF THE BOOK

13. In July and August 2006 Byrne:

    (a)    created, prepared and wrote, and was thereby the author of; and

    (b)    reduced to writing,

    a book entitled "The Secret" (the **Book**).

### PARTICULARS

A copy of the Book is in the possession of TS Production's solicitors and may be inspected at their offices during business hours by appointment.

14. For the purposes of the Act, the Book is an original "literary work", and accordingly an original "work", as defined in section 10(1) of the Act.

15. By reason of the matters alleged in paragraph 13(b) above, for the purposes of the Act, pursuant to section 22(1) of the Act the Book was made in July and August 2006.

**COPYRIGHT IN THE BOOK**

16.   Byrne was at all times in July and August 2006 an Australian citizen.

17.   By reason of the matters alleged in paragraphs 15 and 16 above, Byrne was, at all times during the period that the Book was made, a "qualified person" within the meaning of section 32(4) of the Act.

18.   From November 2006 TS Production (as it has been and is entitled to do, by reason of the matters alleged in paragraphs 24 and 25 below) has licensed to a publishing company the right to supply, and that company has supplied, reproductions of the Book to the public, and accordingly, within the meaning of section 29(1) of the Act, for the purposes of the Act the Book has been published.

19.   By reason of the matters alleged in paragraphs 13, 14, 17 and 18 above, pursuant to section 32(2) of the Act copyright under the Act subsists in the Book and has subsisted since the Book was made.

20.   By reason of the matters alleged in paragraphs 13 and 19 above, pursuant to section 35(2) of the Act the owner of the copyright under the Act subsisting in the Book was, as at the making of the Book, Byrne.

**ASSIGNMENT AND TRANSFER OF COPYRIGHT**

21.   By:

   (a)   purchase agreement between Prime Time and Byrne dated 22 March 2006, Prime Time sold to Byrne and Byrne purchased from Prime Time, on the terms and conditions of that agreement, certain intellectual property of Prime Time, including all of its right, title and interest in the copyright under the Act in the Film (the **Film Copyright**); and

   (b)   contribution agreement between Byrne and TS Production dated 11 April 2006, Byrne assigned, transferred and conveyed, amongst other things, the Film Copyright to TS Production effective as of 11 April 2006.

### PARTICULARS

A copy of both agreements is in the possession of TS Production's solicitors and may be inspected at their offices during business hours by appointment.

22. Alternatively to paragraph 21 above, by:

   (a)  deed of assignment between Prime Time and Byrne dated 23 April 2007, Prime Time assigned to Byrne, effective as and from 22 March 2006, certain copyright including the Film Copyright; and

   (b)  deed of assignment between Byrne and TS Production dated 23 April 2007, Byrne assigned to TS Production, effective as and from 11 April 2006, certain copyright including the Film Copyright.

### PARTICULARS

A copy of both deeds is in the possession of TS Production's solicitors and may be inspected at their offices during business hours by appointment.

23. By reason of the matters alleged in paragraph 21 above, alternatively paragraph 22, as of 11 April 2006 TS Production became the owner of all of the copyright under the Act in the Film, and it continues to be such owner.

24. As of 15 June 2006 Byrne and Prime Time US Inc, a corporation incorporated under the laws of Delaware in the United States of America, entered into an Independent Contractor Agreement under which, on the terms and conditions of that agreement, Byrne contracted to write the Book for Prime Time US Inc acting on behalf of TS Production.

### PARTICULARS

The agreement is in writing.  A copy is in the possession of TS Production's solicitors and may be inspected at their offices during business hours by appointment.

25. Pursuant to clause 3 of the agreement referred to in the preceding paragraph, Byrne transferred and/or assigned to TS Production all of the copyright arising under the

Act in the Book, and TS Production thereby became and it continues to be the owner of all of the copyright under the Act in the Book.

## RESPONDENTS' WRONGFUL CLAIMS AND APPLICANT'S ENTITLEMENT TO RELIEF

26.    Wrongfully, and contrary to the rights of TS Production alleged in paragraph 23 above, the Respondents claim that Drew Pictures owns copyright under the Act in the Film.

### PARTICULARS

(1)    Letter from Kenyon & Kenyon LLP, attorneys, on behalf of the Respondents, to Squire, Sanders & Dempsey LLP, attorneys, on behalf of TS Production, dated 11 October 2007.

(2)    Letter from Mallesons Stephen Jacques, solicitors, on behalf of the Respondents, to Marshalls & Dent, solicitors, on behalf of TS Production, dated 13 November 2007.

A copy of each letter is in the possession of TS Production's solicitors and may be inspected at their offices during business hours by appointment.

27.    Unless restrained by this Honourable Court, the Respondents will continue to claim that Drew Pictures owns copyright under the Act in the Film and will or may act inconsistently with the rights of TS Production under the Act as owner of that copyright.

### PARTICULARS

The matters alleged are to be inferred from the contents of the letters referred to in the particulars subjoined to the preceding paragraph. Further particulars may be provided.

28.    Wrongfully, and contrary to the rights of TS Production alleged in paragraph 25 above, the Respondents claim that Drew Pictures owns copyright under the Act in the Book.

### PARTICULARS

Letter from Kenyon & Kenyon LLP, attorneys, on behalf of the Respondents, to Squire, Sanders & Dempsey LLP, attorneys, on behalf of TS Production, dated 11 October 2007, a copy of which is in the possession of TS Production's solicitors and may be inspected at their offices during business hours by appointment.

29.   Unless restrained by this Honourable Court, the Respondents will continue to claim that Drew Pictures owns copyright under the Act in the Book and will or may act inconsistently with the rights of TS Production under the Act as owner of that copyright.

**PARTICULARS**

The matters alleged are to be inferred from the contents of the letter referred to in the particulars subjoined to the preceding paragraph. Further particulars may be provided.

30.   In the premises of paragraphs 23 and 25-29 above, TS Production is entitled to the relief claimed herein.

**AND THE APPLICANT CLAIMS:**

A.   A declaration that the Applicant is the owner of all of the copyright under the *Copyright Act* 1968 (Cth) in the film titled "The Secret (Original Edition)" also known by the simple title "The Secret".

B.   An injunction restraining the Respondents from asserting any claim to copyright under the *Copyright Act* 1968 (Cth) in the film titled "The Secret (Original Edition)" also known by the simple title "The Secret", and from acting in a manner infringing any of the rights of the Applicant under that Act as owner of that copyright.

C.   A declaration that the Applicant is the owner of all of the copyright under the *Copyright Act* 1968 (Cth) in the Book (as defined in paragraph 13 of the Amended Statement of Claim).

D.   An injunction restraining the Respondents from asserting any claim to copyright under the *Copyright Act* 1968 (Cth) in the Book, and from acting in a manner infringing any of the rights of the Applicant under that Act as owner of that copyright.

E.   Costs.

F.    Such further or other orders as to the Court might seem appropriate.

DATED:         February 2008

A. J. MYERS

D. J. BATT

Arnold Bloch Leibler
Solicitors for the Applicant

# RAINONE DECLARATION EXHIBIT D

**IN THE FEDERAL MAGISTRATES COURT OF AUSTRALIA**
**REGISTRY: VICTORIA**

File number: MLG1435/07

### TS PRODUCTION LLC
Applicant

### DREW PICTURES PTY LTD (ACN 088 783 000)
First Respondent

### DREW HERIOT
Second Respondent

### AFFIDAVIT

On 8 February 2008, I, **PETER JOHANNES TIBOR SELVAY**, of Level 50, 600 Bourke Street, Melbourne in the State of Victoria, Solicitor, **SOLEMNLY AND SINCERELY AFFIRM** that:

1      I am a solicitor employed by Mallesons Stephen Jaques (**"Mallesons"**), the solicitors for the Respondents.  I assist with the carriage of this matter under supervision of my principals.

2      I make this affidavit from my own knowledge, except where I have stated otherwise. Where I depose to matters based on information and belief, I believe those matters to be true.

3      I make this affidavit in support of the Respondents' application to transfer this proceeding to the Federal Court of Australia pursuant to s 39 of the *Federal Magistrates Court of Australia Act 1999*.

---

Filed on behalf of the Respondents by:
**MALLESONS STEPHEN JAQUES**
Level 50
600 Bourke Street
MELBOURNE  VIC  3000

DX 101
T+ 61 3 9643 4000
F+ 61 3 9643 5999
Ref: P Selvay/N Hickey

**Background to "The Secret"**

4      I am informed by the Second Respondent that between 2002 and 2006 the First Respondent acted as a freelance consultant to Prime Time Productions Holdings Pty Ltd ("**Prime Time**") in relation to various film and television projects. In providing those services the Second Respondent was an employee of the First Respondent.

5      I am informed by the Second Respondent that the services provided by the Respondents to Prime Time included:

   (a)      directing 8 episodes of "Loves Me, Loves Me Not" for the Nine Network;

   (b)      producing and directing 7 episodes of "Sensing Murder" for Channel Seven and the Ten Network; and

   (c)      writing, directing, and assisting in the development of the film known as "The Secret" ("**the Film**").

6      The Film is a documentary-style narrative presentation of a philosophy known as "the law of attraction", told through a series of interviews with authors and inspirational speakers, interspersed with short dramatized episodes and quotations from prominent historical figures.

7      The Film was shot in Australia and the United States, with post-production work undertaken in Melbourne. I am informed by the Second Respondent that the role of the Second Respondent in the creation of the Film included:

   (a)      interviewing and directing the interviews of most of the 55 potential subjects of the film;

   (b)      compiling the transcripts of the interviews and editing and ordering the interviews for presentation in the Film;

   (c)      co-writing the dramatic scenes used to illustrate the interviews; and

   (d)      directing the majority of the dramatic scenes.

2

8       The Film was released in March 2006, for download on a pay-per-view basis from "The Secret" websites (www.whatisthesecret.tv and www.thesecret.tv) and for purchase on DVD. A book of the Film was released approximately six months later ("**the Book**"). The Book combines the transcripts of the interviews appearing in the Film with commentary written by Rhonda Byrne, the executive producer of the Film. The Film was also broadcast in Australia on the Nine Network in February 2007.

9       In October 2007 a revised version of the Film was released, known as "The Secret Extended Edition" (the first version of the Film has come to be referred to as "The Secret Original Edition"). I am informed by the Second Respondent that the difference between the two versions is that in the revised version the footage and dialogue of one of the original interviewees has been removed and replaced by other interviewees who provided similar dialogue. I am informed by the Second Respondent that this occurred because of a dispute between the original interviewee and Rhonda Byrne. Now produced and shown to me and marked "**Annexure A**" is a newspaper article in relation to the revised version of the Film.

10      The Film and the Book have been extremely successful in Australia, the United States and other countries. According to media reports, approximately two million DVDs of the Film had been sold as at 13 April 2007. Similarly, The Secret "Product Fact Sheet" (which can be downloaded at: www.thesecret.tv/newsroom.html) reports that as at 20 November 2007 "*more than nine million copies of the Book are in print worldwide in English and a multitude of other languages*". Now produced and shown to me and marked "**Annexure B**" is a collection of media reports in relation to the Film and the Book, as well as The Secret "Product Fact Sheet".

11      Based on the sales figures referred to above and the recommended retail prices of the DVD of the Film (USD$34.95) and the Book (USD$23.95) I estimate that gross revenue to date from sales of the DVD of the Film (excluding revenue from pay-per-view online and television broadcasts) is more than USD$69.9 million and from sales of the Book is more than USD$215.55 million. Now produced and shown to me and marked "**Annexure C**" is an extract from "The Secret" website showing the recommended retail prices for the Book and the Film.

12      I am informed by the Second Respondent that the Respondents have not assigned any of the intellectual property rights they may have in relation to the Book or the Film.

3

13     Further, I am informed by the Second Respondent that in approximately June 2005 the Respondents and Prime Time agreed that in addition to any consultancy fees received in relation to the project:

   (a)     the Respondents would receive 1 percent of net profits arising out of all sales of the Film, the Book and associated products; and

   (b)     the Respondents would receive a further 3 percent of net profits on satisfaction of certain conditions, which conditions were satisfied by the Second Respondent.

14     I am informed by the Second Respondent that the Respondents have never received any payments in the nature of profits or royalties in relation to the Film, the Book or any associated products.

**The Respondents' copyright registration in the United States**

15     I am informed by Jonathan Reichman, an attorney with Kenyon and Kenyon LLP in the United States, that on 31 August 2007 he lodged an application for registration under the *US Copyright Act of 1976* (title 17, US Code) with the US Copyright Office on behalf of the First Respondent. Now produced and shown to me and marked **"Annexure D"** is a copy of the application.

16     I am informed by Mr Reichman that on 10 September 2007 the application proceeded to registration. Now produced and shown to me and marked **"Annexure E"** is a copy of the Certificate of Registration issued by the US Copyright Office.

17     The website of the US Copyright Office states that registration is not a condition for copyright protection under US law but has the following advantages:

   (a)     registration establishes a public record of the copyright claim;

   (b)     before an infringement suit may be filed in court, registration is necessary for works of US origin;

   (c)     if made before or within 5 years of publication, registration will establish prima facie evidence in court of the validity of the copyright and of the facts stated in the certificate;

4

(d)    if registration is made within 3 months after publication of the work or prior to an infringement of the work, statutory damages and attorney's fees will be available to the copyright owner in court actions. Otherwise, only an award of actual damages and profits is available to the copyright owner; and

(e)    registration allows the owner of the copyright to record the registration with the US Customs Service for protection against the importation of infringing copies.

18    I am also informed by Mr Reichman that registration of a work allows the recording in the US Copyright Office of a transfer or other document concerning such work to constitute constructive notice. Now produced and shown to me and marked **"Annexure F"** is an extract from a circular published by the US Copyright Office entitled "Copyright Basics" in relation to the effect of copyright registration under US law.

**Application to transfer to the Federal Court of Australia**

19    On 6 November 2007 Mallesons wrote to the then solicitors for the Applicant, Marshalls & Dent, in relation to a proposal to transfer this matter to the Federal Court of Australia.

20    By letter to Mallesons dated 7 November 2007 Marshalls & Dent indicated that the Applicant could not consider the proposal until receipt of the Respondents' Defence and any Cross-Claim.

21    On 8 November 2007 Federal Magistrate O'Dwyer made timetabling orders for the further conduct of this matter. Order 2 of those orders required the Applicant to file and serve any Amended Statement of Claim by 15 November 2007. As set out below, the Amended Statement of Claim has not been filed by the Applicant.

22    By letter to Marshalls & Dent dated 13 November 2007 Mallesons outlined in detail the Respondents' objections to the Statement of Claim filed in the proceeding.

23    On 14 November 2007 Arnold Bloch Leibler ("ABL") served a Notice of Change of Solicitors. By letters to Mallesons dated 14 November 2007 and 22 November 2007 ABL confirmed that the Applicant would file and serve an Amended Statement of Claim and proposed an extension of the timetable set down by Federal Magistrate O'Dwyer on 8 November 2007.

5

24    By letter to ABL dated 23 November 2007 Mallesons indicated that the proposed amendments to the timetable were acceptable and noted that the Applicant's lateness in filing its Amended Statement of Claim might impact on the ability of the Respondents to file a Defence and any Cross-Claim by 21 December 2007.

25    By letter to Mallesons dated 29 November 2007 ABL indicated that it was having difficulty obtaining instructions required to finalise the Amended Statement of Claim and proposed a further amendment to the timetable.

26    By letter to ABL dated 30 November 2007 Mallesons indicated that the proposed amendments were acceptable provided that the Applicant filed its Amended Statement of Claim in accordance with the timetable.

27    By letter to ABL dated 21 December 2007 Mallesons noted that it was yet to receive an Amended Statement of Claim and indicated that the Respondents were seriously concerned about the Applicant's delay.

28    By letter to Mallesons dated 14 January 2008 ABL confirmed that the Applicant still intended to file and serve an Amended Statement of Claim and proposed a further amendment to the timetable.

29    By letter to ABL dated 16 January 2008 Mallesons stated that it did not sanction the Applicant's delay and suggested that the better course was for the Applicant to file and serve its Amended Statement of Claim as soon as possible.

30    Now produced and shown to me and marked **"Annexure G"** is a copy of the correspondence between Mallesons and the solicitors for the Applicant referred to in paragraphs 19 to 29 above.

31    As at the date of swearing this affidavit, Mallesons has not received a copy of the Applicant's Amended Statement of Claim.

32    When the Amended Statement of Claim is received, the Respondents have instructed Mallesons to prepare a Cross-Claim against the Applicant and against Prime Time and its director Rhonda Byrne in relation to the matters set out in paragraphs 12 to 14 above.

6

33      I anticipate that the Respondents' Cross-Claim will include claims for:

(a)      infringement of the Respondents' copyright in the literary and/or dramatic work comprising the screenplay for the Film;

(b)      infringement of the Respondents' "director's" copyright under ss 98(4) and 98(6) of the *Copyright Act 1968* (Cth);

(c)      breach of contract; and

(d)      misleading or deceptive conduct contrary to s 52 of the *Trade Practices Act 1974* (Cth).

34      I consider that this matter is appropriate for transfer to the Federal Court of Australia on the following grounds:

(a)      based on the relief sought in the Application, the proceeding will require the parties to adduce evidence and the Court to make findings in relation to the rights of the parties as a matter of US law;

(b)      the proceeding will involve consideration of the nature of directors' copyright under s 98 of the *Copyright Act*, which to my knowledge has not been the subject of prior consideration in this or any other Court;

(c)      given the complexity of the factual and legal issues, the hearing of the proceeding is likely to take well in excess of two days and may involve evidence from witnesses resident in the United States;

(d)      based on the matters in paragraph 11 above, the relief sought in the Respondents' Cross-Claim is likely to exceed this Court's jurisdictional limit for trade practices matters of $750,000; and

(e)      in the Federal Court the proceeding would be eligible for inclusion in that Court's pilot Fast Track List, which aims to fix a trial date between two and five months after the first directions hearing. Now produced and shown to me and marked **"Annexure H"** is a copy of the Federal Court's Notice to Practitioners in relation to the operation of the Fast Track List.

7

35 I am informed by Natalie Hickey, the partner with the care and conduct of this matter, that on 17 January 2008 she spoke to Registrar Caporale of the Federal Court in relation to the suitability of this matter for the Fast Track List in the Federal Court. I am informed by Ms Hickey that Registrar Caporale instructed her to contact him directly to discuss its entry if the matter was transferred by this Court.

**AFFIRMED** by **PETER JOHANNES TIBOR SELVAY** )
 )
at Melbourne in the State of Victoria )
this 8th day of February 2008 )

Before me: ...................................................................

Rebecca Taube
Level 50, 600 Bourke Street, Melbourne, Vic. 3000
An Australian Legal Practitioner within the meaning
of the Legal Profession Act 2004.

8

# RAINONE DECLARATION EXHIBIT E

JTV-25

# MALLESONS STEPHEN JAQUES

**Confidential communication**

| | |
|---|---|
| Attention Mr Leon Zwier / Mr Justin Vaatstra | 23 April 2008 |
| | Peter Selvay |
| Arnold Bloch Leibler | Solicitor |
| Level 21 | Direct line |
| 333 Collins Street | +61 3 9643 4363 |
| Melbourne Vic 3000 | |
| **Fax (03) 9229 9900** | Natalie Hickey / |
| | John Swinson |
| | Partners |

Dear Sirs

**Drew Pictures Pty Ltd & Anor ats TS Productions LLC**
**Federal Magistrates' Court Proceeding No. 1435 of 2007**

We refer to your letter dated 21 April 2008, attaching proposed minutes of consent orders.

Our clients have recently instituted proceedings against your client, as well as persons and entities related to your client, in the United States District Court for the Northern District of Illinois, Eastern Division, in the United States of America ("USA").

The proceedings instituted in the USA raise the same issues for determination as are raised in this proceeding (plus a variety of further or additional matters). In the circumstances, our clients consider that these proceedings ought be stayed or dismissed.

Our clients consider that the USA is the proper forum to adjudicate the issues raised in these proceedings. Accordingly, we propose that timetabling orders be made for our clients to apply for these proceedings to be stayed or dismissed, before any other steps are taken in these proceedings. Our clients intend to make this application on the basis that the USA complaint raises the same issues for determination as are raised in this proceeding, and in order to prevent the unnecessary waste of duplicated costs.

Please find attached an affidavit affirmed by Peter Selvay that our clients intend to rely upon at the directions hearing scheduled for Thursday, 24 April 2008. Exhibited to that affidavit as "PJTS-1" are proposed minutes of orders that our clients intend to seek at Thursday's hearing.

Please let us know whether the proposed minutes of orders are acceptable to your client. If so, we will provide you with a clean version of those orders for you to sign.

Yours faithfully

*Mallesons Purle*

Level 50 Bourke Place 600 Bourke Street Melbourne VIC 3000 Australia     T +61 3  9643 4000
DX 101 Melbourne ABN 22 041 424 954  mel@mallesons.com  www.mallesons.com     F +61 3  9643 5999

9407605_1.doc / <NEW> 000 / PJSELVAY                                    Page 1 of 36

# RAINONE DECLARATION EXHIBIT F

IN THE FEDERAL COURT OF AUSTRALIA
VICTORIA DISTRICT REGISTRY

VID 122 of 2008

TS PRODUCTION LLC
                                        Applicant


DREW PICTURES PTY LTD
(ACN 088 783 000)
                                        First Respondent

DREW HERIOT
                                        Second Respondent

AFFIDAVIT

On 23 April 2008, I, **PETER JOHANNES TIBOR SELVAY** of Level 50, Bourke Place, 600 Bourke Street, Melbourne, in the State of Victoria, Solicitor, **SOLEMNLY AND SINCERELY AFFIRM THAT:**

1      I am a solicitor employed by Mallesons Stephen Jaques ("**Mallesons**"), the solicitors for the Applicants.  I assist with the care and carriage of this matter under the supervision of my principals.

2      I make this affidavit from my own knowledge, except where I have stated otherwise.  Where I depose to matters based on information and belief, I believe those matters to be true.

3      I make this affidavit in support of the Respondents' minutes of proposed orders, which are now produced and shown to me and marked "**PJTS-1**".

**Legal proceedings instituted in the United States of America**

4      I am instructed of the following matters:

(a)      the Respondents have retained Sayles Werbner PC, a trial law firm, to act for the Respondents in the United States of America ("**USA**");

---

Filed on behalf of the Applicants by:
Mallesons Stephen Jaques
Level 50
Bourke Place
600 Bourke Street
Melbourne  Vic  3000

| DX | : | DX 101 Melbourne |
| Telephone | : | T +61 3 9643 4000 |
| Facsimile | : | F +61 3 9643 5999 |
| Reference | : | N Hickey / P Selvay |
| Matter no | : | 03 5129 5252 |

9407436

1

(b)    on 21 April 2008, Sayles Werbner PC caused to be filed, on behalf of the Respondents, a Complaint in the United States District Court for the Northern District of Illinois, Eastern Division, in the USA. Now produced and shown to me and marked "**PJTS-2**" is a copy of the Complaint as filed by the Respondents in the USA. The Complaint concerns the ownership of copyright in the screenplay, film and book known as "The Secret", as well as a variety of further or additional matters;

(c)    as a matter of courtesy, on 22 April 2008, Sayles Werbner PC sent a copy of the Complaint to Squire, Sanders & Dempsey, a law firm based in the USA which has previously acted for all of the defendants named in the Complaint. Now produced and shown to me and marked "**PJTS-3**" is a copy of the letter of service sent by Sayles Werbner PC to Squire, Sanders & Dempsey; and

(d)    each defendant will be required to file a response within 20 calendar days of being served with the Complaint and the USA District Court will then set a scheduling conference within 60 days of each defendant entering such a response.

5    Having reviewed the Complaint filed by Sayles Werbner PC in the USA, I note that:

(a)    the plaintiffs named in the Complaint are the Respondents in this proceeding;

(b)    the defendants named in the Complaint are: Rhonda Byrne, The Secret LLC, Prime Time US Inc, TS Production LLC (the Applicant in this proceeding), TS Production Holdings LLC, TS Merchandising Ltd and Robert Rainone Jr; and

(c)    the Complaint raises the same issues for determination as are raised in this proceeding (as well as a variety of further or additional matters).

**AFFIRMED** by **PETER JOHANNES TIBOR**    )
**SELVAY**
at  *Melbourne*  in the State of Victoria    )
this 23rd day of  *April*  2008    )

Before me:

Rebecca Taube
Level 50, 600 Bourke Street, Melbourne, Vic. 3000
An Australian Legal Practitioner within the meaning
of the Legal Profession Act 2004.

2

**IN THE FEDERAL COURT OF AUSTRALIA**
**VICTORIA DISTRICT REGISTRY**

VID 122 of 2008

**TS PRODUCTION LLC**
                                   Applicant


**DREW PICTURES PTY LTD**
**(ACN 088 783 000)**
                                   First Respondent

**DREW HERIOT**
                                   Second Respondent


**EXHIBIT**

**"PJTS-1"**

This is the exhibit marked **"PJTS-1"** referred to in the affidavit of **PETER JOHANNES TIBOR**
**SELVAY** affirmed on 23 April 2008.

Before me:.................................................

Rebecca Taube
Level 50, 600 Bourke Street, Melbourne, Vic. 3000
An Australian Legal Practitioner within the meaning
of the Legal Profession Act 2004.

*PJTS - 1*

IN THE FEDERAL COURT OF AUSTRALIA
VICTORIA DISTRICT REGISTRY

VID 122 of 2008

### TS PRODUCTION LLC
Applicant

### DREW PICTURES PTY LTD
### (ACN 088 783 000)
First Respondent

### DREW HERIOT
Second Respondent

## MINUTES OF PROPOSED ORDERS

1.    The Respondents file and serve any application to stay or dismiss the proceeding, together with any affidavits in support, by 4.00pm on 23 May 2008.

2.    The Applicant file and serve any affidavits in response by 4.00pm on 6 June 2008.

3.    Any application to stay or dismiss the proceeding be fixed for hearing on [*date*].

4.    Liberty to apply.

5.    Costs reserved.

DATED:        April 2008

....................................................
**ARNOLD BLOCH LEIBLER**
Solicitors for the Applicant

....................................................
**MALLESONS STEPHEN JAQUES**
Solicitors for the Respondents