# DECLARATION OF JOHN V. SWINSON

## EXHIBIT B

Exhibit B[...] Inglis v. Commonwealth Trading Bank of Australia 20 FLR 30

Applied. In re Trepca Mines Ltd. [1960] 1 W.L.R. 1273 | Applied in Hesperides Hotels v Aegean Turkish [1978] 1 All ER 277 | Applied and explained in Hesperides Hotels v Muftizade [1978] 2 All ER 1168

Considered. Tyo v. Waddell (No. 2) [1977] 2 W.L.R. 496

Followed. Hesperides Hotels Ltd. v. Aegean Turkish Holidays Ltd. [1977] 3 W.L.R. 656, C.A.

Distinguished: Comparelli v Kogi [...]

[HOUSE OF LORDS.]

H. L. (E.) 1893 Sept. 8.

THE BRITISH SOUTH AFRICA COMPANY . . . . . . . . . . . . APPELLANTS;

AND

THE COMPANHIA DE MOÇAMBIQUE AND OTHERS . . . . . . . . . RESPONDENTS.

Followed. Hesperides Hotels Ltd. v. Aegean Turkish Holidays Ltd. [1978] Q.B. 205, C.A.

Followed. Hesperides Hotels Ltd. v. Aegean Turkish Holidays Ltd. [1978] 3 W.L.R. 378, H.L.(E.)

Followed. Hesperides Hotels Ltd. v. Aegean Turkish Holidays Ltd. [1979] A.C. 508, H.L.(E.)

*Jurisdiction—Trespass to Land—Land in Foreign Country—Declaration of Title to Land in Foreign Country—Defendant within Jurisdiction—Local Venue—Rules of Supreme Court Order* XXXVI. *r.* 1.

The Supreme Court of Judicature has no jurisdiction to entertain an action to recover damages for a trespass to land situate abroad; the rules of procedure under the Judicature Acts with regard to local venue (Order XXXVI. r. 1) did not confer any new jurisdiction.

The decision of the Court of Appeal ([1892] 2 Q. B. 358) reversed and the decision of Lawrance and Wright JJ. restored.

APPEAL from an order of the Court of Appeal (1).

In an action by the respondents against the appellants the plaintiffs by their statement of claim alleged (inter alia) that the plaintiff company was in possession and occupation of large tracts of land and mines and mining rights in South Africa; and that the defendant company by its agents wrongfully broke and entered and took possession of the said lands, mines and mining rights, and ejected the plaintiff company, its servants, agents and tenants therefrom; and also took possession of some of the plaintiffs' personal property and assaulted and imprisoned some of the plaintiffs.

Alternatively the plaintiffs alleged in paragraph 16 that the defendants did the above acts maliciously and without any just cause or excuse and with intent to injure and destroy the plaintiffs' trade and to deprive the plaintiffs of their lands, mines and mining rights and to put an end to their existence as a trading company in South Africa.

The plaintiffs claimed (inter alia) (1.) a declaration that the

(1) [1892] 2 Q. B. 358.

plaintiff company were lawfully in possession and occupation of the lands, mines and mining rights and other property; (2.) an injunction restraining the defendant company from continuing to occupy or from asserting any title to the said lands, mines and mining rights, and from withholding and keeping possession of the said other property; (3.) £250,000 damages.

The statement of defence in paragraph 1—as to so much of the statement of claim as alleged a title in the plaintiff company to the lands, mines and mining rights, and alleged that the defendants by their agents wrongfully broke and entered the same, and claimed a declaration of title and an injunction—whilst denying the alleged title and the alleged wrongful acts, said that the lands, mines and mining rights were situate abroad, to wit in South Africa, and submitted that the Court had no jurisdiction to adjudicate upon the plaintiffs' claim; and in paragraph 2 submitted that as matter of law paragraph 16 of the statement of claim disclosed no valid cause of action. The allegations in paragraph 9 of the defence are sufficiently stated at the close of the judgment of Lord Herschell L.C.

In paragraph 2 of the reply the plaintiffs objected that paragraphs 1 and 9 of the defence were bad in law, and alleged that paragraph 1 did not shew that there was any Court other than that in which this action was brought having jurisdiction to adjudicate on the plaintiffs' said claims; and the plaintiffs further alleged that there was no competent tribunal having jurisdiction to adjudicate on the said claims in the country where the acts complained of were committed; and that the acts complained of were illegal according to the laws of the country where the same were committed.

An order having been made for the disposal of the points of law thus raised by the pleadings, the Queen's Bench Division (Lawrance and Wright JJ.) made an order that judgment be entered for the defendants dismissing the action so far as it claimed a declaration of title to land, and also so far as it claimed damages or an injunction in relation to trespass to land, and also as to such portion of paragraph 16 of the statement of claim as referred to trespass to land; the objections raised by paragraph 2 of the reply being overruled.

H. L. (E.)
1893
BRITISH SOUTH AFRICA COMPANY v. COMPANHIA DE MOÇAMBIQUE.

The Court of Appeal (Fry and Lopes L.JJ., Lord Esher M.R. dissenting) made an order which—after reciting that the plaintiffs by their counsel had abandoned their appeal so far as it related to a declaration that the plaintiff company were lawfully in possession and occupation of the lands, mines and mining rights and other property in the statement of claim mentioned, and also so far as it related to an injunction restraining the defendant company from continuing to occupy or from asserting any title to the said lands, mines and mining rights and from withholding and keeping possession of the said other property—ordered that the order of the Queen's Bench Division do stand affirmed as regards so much of the relief sought by the statement of claim as aforesaid; but as to the residue of the relief sought by the statement of claim declared that Her Majesty's Supreme Court has jurisdiction to entertain the same; and ordered that the question as to the plaintiffs' demurrer to the 9th paragraph of the defence do stand over until the trial of the action, to be dealt with by the judge at the trial.

The defendants appealed against this order except as to that part which affirmed so much of the decision of the Queen's Bench Division as aforesaid.

May 4, 5, 8, 12, 15, 16, 18. *Cohen* Q.C. and *Lord Robert Cecil* (*Hollams* with them) for the appellants:—

The question was in the first instance one of title, but the prayer for a declaration of title was abandoned and the case is now confined to trespass. The Courts have always refused to entertain cases of trespass to lands abroad; and apart from express words such as are not to be found in the Judicature Acts, the High Court cannot determine an action which previously to 1873 was outside its competence. Lopes L.J. held that the Courts of this country always had the inherent jurisdiction to try an action for trespass abroad; and Fry L.J. partly based his decision on the absence of any other Court which could entertain the action. But no change in the law of venue can supply the want of jurisdiction. By 3 & 4 Wm. 4 c. 42 s. 22 local actions were made triable in any county. It cannot be said that either this section or the Judicature Acts

increase the area of jurisdiction of our Courts. A legal fiction was it is true introduced, and jurisdiction was claimed and exercised in transitory actions which purported to be based either on statutes which could be found, or as Lord King said, on those which "had undoubtedly been lost." Consult 2 Bac. Abr. tit. Courts 384–5; Lord Hale's History of the Common Law p. 7–9. At one time it was thought that our Courts had no jurisdiction over transitory actions abroad: Co. Litt. book iii. c. 7, s. 440. Coke there referring to *Dowdale's Case* (1) said an obligation made beyond seas might be sued in England in what place the plaintiff will: e.g. at Bourdeaux in France, in Islington in the county of Middlesex. So in *Ward's Case* (temp. Charles I.) (2) it is said that Antwerp or "Callis Sands" may be taken to be a house in London. If not in England, it would be outside the jurisdiction. The Courts took cognisance of locality to this extent, that they could not hold Dovedale to be in London. It was not merely a question of venue—but one of jurisdiction. In *Jennings* v. *Hankyn* (2 James II.) (3) it was said: "This Court is of an universal jurisdiction and superintendency"; but that language was expressly confined to this country and did not apply to such a case as that of a plaintiff's declaring on a bond which "was made at Bourdeaux in France, for in such case this Court never had any jurisdiction." See Selden, Mare Clausum book ii. c. 24. In *Skinner* v. *East India Company* (4) it was held that the part of the claim which dealt with an island under the dominion of a foreign prince could not be maintained. But Lopes L.J. held that case inapplicable because there restitution and not damages was sought. In *Shelling* v. *Farmer* (5) Eyre C.J. held that the seizure of a house in the East Indies was not triable in England. Wright J. observed below that Lord Mansfield in *Mostyn* v. *Fabrigas* (6) seems to have had a misreport of *Shelling* v. *Farmer* (5) before him and declined to follow some of the dicta of Lord Mansfield in that case. *Mostyn* v. *Fabrigas* (6) and the cases there cited by Lord Mansfield have no application to a case where the title to land is raised. In

(1) 6 Rep. 47 b.
(2) Latch, 4.
(3) Carth. 11.
(4) 6 State Trials, 710.
(5) 1 Str. 646.
(6) 1 Cowp. 161.

H. L. (E.)
1893
BRITISH SOUTH AFRICA COMPANY v. COMPANHIA DE MOÇAMBIQUE.

*Doulson* v. *Matthews* (1) it was held that trespass will not lie in this country for entering a house in Canada. Eyre C.J. in *Ilderton* v. *Ilderton* (2) said (at p. 161): "Our books are full of cases upon the subject of venues and the doctrine is very nice and curious. It was anciently the opinion of lawyers, that a jury of one county could not try any matter arising within another county, and a foreign *county* was almost as formidable a thing in point of jurisdiction to try as a foreign *country* . . . . Of matters arising in a foreign country . . . . we have no proper original jurisdiction." In that case a marriage in Scotland was held to entitle to dower in England, but it was because the marriage only arose incidentally in the suit in dower "of which we have original jurisdiction."

[LORD HERSCHELL L.C. referred to the note to *Parker* v. *Crook* (3): "The words 'In Indibus Orientalibus' do not necessarily import the place to be out of England. There is a place called Holland in Lincolnshire, and there may be a Fort St. George in the parish of St. Martin's."]

In *Rafael* v. *Verelst* (4) De Grey C.J. speaks of crimes being in their nature local. Wright J. has sufficiently dealt with that case below. In *Can* v. *Cary* (5) it is said that "where an agreement is at land and a performance is at sea, it shall be tried where the agreement is made." And see *Buron* v. *Denman* (6). The true view of the law is expressed by Marshall C.J. in *Livingston* v. *Jefferson* (7); and see *Rundle* v. *Delaware and Raritan Canal* (8). Jurisdiction must not be assumed to exist, it must be proved in each case: *Mayor of London* v. *Cox* (9). In *The M. Moxham* (10) the question of jurisdiction was waived and the law of Spain was held to apply to a tort committed in Spain. In *Whitaker* v. *Forbes* (11) an action for arrears of rent-charge issuing out of land in Australia was held not to be maintainable. The decision was affirmed on appeal (12). Where

(1) 4 T. R. 503.
(2) 2 H. Bl. 145.
(3) 10 Mod. 255.
(4) 2 W. Bl. 1055.
(5) 12 Mod. 34.
(6) 2 Ex. 167.
(7) 1 Brockenbrough, 203, 206.
(8) 1 Wallace Jun. 275.
(9) Law Rep. 2 H. L. 239, 261.
(10) 1 P. D. 107-9.
(11) Law Rep. 10 C. P. 583.
(12) 1 C. P. D. 51.

jurisdiction has been acquired by a legal fiction the Courts will not extend it: *Norris* v. *Chambres* (1); *Reg.* v. *Keyn* (2). *White* v. *Sanborn* (3) decides that an action of covenant founded on privity of estate is local. In *Watts* v. *Kinney* (4) it was held that an action on the case for injury to real property situated in another State could not be maintained in the State of New York. Blackstone (vol. 3 p. 107) says: "As the Courts of Common Law have obtained a concurrent jurisdiction with the Court of Chivalry with regard to foreign contracts by supposing them made in England, so it is no uncommon thing for a plaintiff to feign that a contract really made at sea was made at the Royal Exchange or other inland place in order to draw the cognisance of the suit from the Courts of Admiralty to those of Westminster Hall. This the civilians exclaim against loudly as inequitable and absurd: and Sir Thomas Ridley hath very gravely proved it to be impossible for the ship in which such cause of action arises to be really at the Royal Exchange in Cornhill." In *Reg.* v. *Keyn* (2) Lindley L.J. expresses his opinion that the 28 Hen. 8, c. 15 did not extend the jurisdiction of the Commissioners either over a larger district or a larger class of persons; and see the observations of Lord Coleridge C.J. at p. 151. In that case all the judges who held that there was jurisdiction thought it necessary to prove that the particular Court had the jurisdiction.

The contention of the respondents, that the jurisdiction depends, not upon the place where the cause of action has arisen, but upon whether the person or thing against which the judgment is sought is within the territory of the nation in which the courts are situated, is too wide. The jurisdiction cannot depend simply on whether the defendant is or is not in England. At common law when the defendant was abroad the remedy was distringas or outlawry: see Report of Commissioners on Pleading 1851 pp. 5–7. The Court cannot order service of process abroad without statutory authority: per Bowen L.J. in *In re King & Co.'s Trade-mark* (5). No Court in this country has direct

(1) 3 D. F. & J. 583.
(2) 2 Ex. D. 63, 87.
(3) 6 New Hampshire Rep. 220.
(4) 6 Hill's New York Rep. 82.
(5) [1892] 2 Ch. 462, 482.

original jurisdiction with respect to real estate abroad: *Attorney-General* v. *Stewart* (1); Story's Conflict of Laws ss. 550–555.

[LORD HERSCHELL L.C. referred to Erskine's Institutes vol. 1 bk. i. tit. Jurisdiction, pp. 25, 33.]

The Courts may in some instances have extended their jurisdiction by a fiction; but if they recognised the claims of the respondents there would be no limit to their jurisdiction: *Norris* v. *Chambres* (2).

The respondents contend that the only difficulty in the jurisdiction to entertain an action for trespass to land abroad was one of procedure and has been removed by the Judicature Acts. Brett L.J. in *Britain* v. *Rossiter* (3) said: "The true construction of the Judicature Acts is that they confer no new rights: they only confirm the rights which previously were to be found existing in the Courts either of Law or of Equity; if they did more they would alter the rights of parties, whereas in truth they only change the procedure." So Bowen L.J. in *Macdonald* v. *Tacquah Gold Mines Company* (4) said that the Judicature Acts "do not give any right which did not previously exist, but only another mode of procedure." In *Westbury Rural Sanitary Authority* v. *Meredith* (5) Baggallay L.J. said at p. 309: "The Judicature Act does not confer on the High Court a jurisdiction which neither the Court of Chancery nor the Courts of Common Law possessed before it was passed." See per Cotton L.J. in *In re Mills' Estate* (6); and *In re Hawthorne* (7), where at p. 747 Kay J. said that he was not aware that a contested claim to foreign lands had ever been entertained by an English Court. See also *Ellis* v. *McHenry* (8).

[LORD HERSCHELL L.C. referred to *Ewing* v. *Orr Ewing* (9) per Earl of Selborne L.C. at p. 40.]

In *Earl of Derby* v. *Duke of Athole* (10) Lord Hardwicke held that in a plea to the jurisdiction it must be shewn what other

(1) 2 Mer. 143, 156.
(2) 29 Beav. 246, 53; 3 D. F. & J. 583.
(3) 11 Q. B. D. 123, 129.
(4) 13 Q. B. D. 535, 539.
(5) 30 Ch. D. 387.
(6) 34 Ch. D. 24, 33.
(7) 23 Ch. D. 743.
(8) Law Rep. 6 C. P. 228.
(9) 9 App. Cas. 34.
(10) 1 Ves. Sen. 202.

Case 1:08-cv-02272 Document 26 Filed 06/16/2008 Page 9 of 19

Court has jurisdiction; but that was explained in the same case in 2 Ves. Sen. at p. 356, where Lord Hardwicke expressed doubts. On this point see also *Nabob of Arcot* v. *East India Company* (1). The cases just cited only shew that a proper plea to the jurisdiction must specify the Court which has jurisdiction; but a plea in bar would be that no municipal Court had jurisdiction: *Doulson* v. *Matthews* (2); *Livingston* v. *Jefferson* (3). In *Penn* v. *Lord Baltimore* (4) it is said (at p. 446) that a plea to the jurisdiction must be offered at the outset. The actual decree in *Penn* v. *Lord Baltimore* (4) is given in Belt's Supplement (206) and is very special in its terms. In *Pike* v. *Hoare* (5) Lord Henley held that a will affecting lands in the Colonies "is not triable" in this country. If the respondents' contention were upheld the Courts would have unlimited jurisdiction in all cases everywhere arising between British subjects. In 2 Kent's Commentaries pp. 463–4 it is laid down that trespasses on real property are properly referable to the forum rei sitae. The limits of the jurisdiction are laid down in Story's Conflict of Laws s. 544. "The doctrine," he says, "of the English Courts of Chancery on this head of jurisdiction seems carried to an extent which may perhaps in some cases not find a perfect warrant in the general principles of international public law;" and he cites *Lord Cranstown* v. *Johnston* (6). See also *Taylor* v. *Barclay* (7).

To sum up, (1.) the Courts at Westminster had no original jurisdiction outside the realm, though in some cases they acquired jurisdiction by legal fiction. (2.) They have always refused to extend the fiction to cases of trespass to land. (3.) The Judicature Acts have only changed procedure and not extended jurisdiction; and such jurisdiction does not exist over lands abroad. (4.) Crimes are strictly local, and the Judicature Acts cannot have given jurisdiction over crimes wherever committed. The distinction between local and transitory actions is well illustrated in *Rogers* v. *Woodbury* (8). The jurisdiction in these matters is

(1) 3 Bro. C. C. 292, 302.
(2) 4 T. R. 503.
(3) 1 Brockenbrough, 203.
(4) 1 Ves. Sen. 444.
(5) 2 Eden, 182; Amb. 428.
(6) 3 Ves. 170; 5 Ves. 277.
(7) 2 Sim. 213.
(8) 15 Pickering (32 Massachusetts) 156.

H. L. (E.)
1893

British South Africa Company v. Companhia de Moçambique.

decided, not by principles of international law, but by those of our own municipal law: see per Cockburn C.J. in *Reg.* v. *Keyn* (1). Co. Litt. book iii. c. 7, s. 440; Selden's Mare Clausum (1635); Vaughan's Reports (1677 tit. "Process into Wales" 404) of which Lord Hardwicke said that they contained "a great deal of sound and useful learning"; the case cited in *Dowdale's Case* (2); *Sadock* v. *Burton* (3); *Ward's Case* (4); *Jennings* v. *Hankyn* (5); *Ilderton* v. *Ilderton* (6) (nearly twenty years after *Mostyn* v. *Fabrigas* (7)); *Skinner* v. *East India Company* (8); *Shelling* v. *Farmer* (9); *Rafael* v. *Verelst* (10); *Doulson* v. *Matthews* (11); *Mayor of London* v. *Cox* (12); *Phillips* v. *Eyre* (13); *The M. Morham* (14); *White* v. *Sanborn* (15); all shew that actions affecting real property and crimes are strictly local in their character and cannot be tried, when they affect foreign countries, in this country. The Court of Chancery extended the jurisdiction; but that extension was only within such limits as it could conveniently enforce. The jurisdiction was confined to cases of trust, fraud and contract. No case has been or can be cited in which there has been a declaration of title to land abroad. In *Fryer* v. *Bernard* (16) no doubt Lord Macclesfield granted a sequestration against the defendant in Ireland, but it was only after a sequestration in England and nulla bona returned; and it was based on the ground, no longer tenable, that "the Courts of justice here have a superintendent power over those in Ireland." In *Northern Indiana Railroad Company* v. *Michigan Central Railroad Company* (17) it was held that one State has no jurisdiction in a case in which the matter of controversy lies in another. In *Boyse* v. *Colclough* (18) it was held that a decree of the Court of Chancery in Ireland could not be pleaded in bar to a suit in the Court of Chancery in England. See *R.* v. *Harris* (19) as to

(1) 2 Ex. D. 63, at pp. 159, et seq.
(2) 6 Rep. 47 b.
(3) Yelv. 202.
(4) Latch, 4.
(5) Carth. 11.
(6) 2 H. Bl. 145, 162.
(7) 1 Cowp. 161.
(8) 6 State Trials, 710.
(9) 1 Str. 646.
(10) 2 W. Bl. 1055.
(11) 4 T. R. 503.
(12) Law Rep. 2 H. L. 239.
(13) Law. Rep. 6 Q. B. 1.
(14) 1 P. D. 107.
(15) 6 New Hampshire Rep. 220.
(16) 2 P. Wms. 261.
(17) 15 Howard (Sup. Ct. U.S.) 233.
(18) 1 K. & J. 124.
(19) 3 Burr. 1330.

changing the venue of a criminal information. An elaborate discussion on the question of jurisdiction under the old law will be found in Prynne's "Brief Animadversions" on the Fourth Part of the Institutes (1669) c. 22 pp. 90–97.

Sir *Henry James* Q.C. and *Bompas* Q.C. (*T. Willes Chitty* with them) for the respondents :—

There are two causes of action: first trespass, and secondly injury to business. No doubt the question of title comes in incidentally by way of evidence to prove the case. The following propositions, for which there is ample authority, establish the respondents' claim. (1.) The Queen's Courts have jurisdiction over all persons within the realm. (2.) Those Courts are open to all suitors who can enforce the jurisdiction against all subjects against whom personally effectual relief can be given. (3.) All personal actions can be maintained if the defendants are within the jurisdiction. Now an action of trespass to real property—an action quare clausum fregit—is a personal action. Actions are of three kinds—real, personal and mixed: 3 Steph. Com. 2nd ed. pp. 430, 466. A mixed action is defined in 2 Bracton (ed. by Juris) p. 137 as being for a thing and against a person. This action in no sense answers to that definition. The same principle applies in French law. See Code de Procédure Civile, liv. 2, tit. 2, s. 59; Boullenois, Traité de la Personalité, etc. 601. In *Holmes* v. *Barclay* (1) it was held that an action would lie in Louisiana, where French law prevails, for damage done to property in another State, though by the laws of the latter the action would be local. By the law of Louisiana it was personal. There is, however, another classification of actions into 1. Local: 2. Transitory. According to our law quare clausum fregit is a local action—but it is also personal and is sometimes called a personal-local action. It is indisputable that our Courts have jurisdiction in all personal actions where the defendant is domiciled in this country. The objection that the action is local is only one of procedure. There is no want of jurisdiction, and the difficulty of procedure is removed where there is a defendant domiciled in this country against whom judgment can

(1) 4 Louisiana Annual Rep. 63.

Case 1:08-cv-02272 Document 26 Filed 06/16/2008 Page 12 of 19

be enforced. The mere circumstance that the subject-matter of the action is abroad does not take away the jurisdiction. The case of crime committed abroad of course stands on a different basis, because the offence is against a foreign State. But the effect of holding that such an action as the present will not lie would be in many instances to prevent justice being done. If the wrong has been done, where is the action to be brought? If it was committed in a civilized country, the defendant might not be resident there. In the case of trespass to land in France, where is the Frenchman's remedy if the wrong-doer returns to England? In Erskine's Institutes of the Law of Scotland, i. p. 35 jurisdiction is said to be given by the defendant's being domiciled within the jurisdiction; and in *Graham* v. *Stevenson* (1788) (1) an action between Englishmen was entertained in the Court of Session —the cause of action being a combination to shut up an English inn on the ground that the defender was domiciled in Scotland.

The mere absence from the reports of cases in which the cause of action arose abroad is evidence, not of want of jurisdiction, but of defect of procedure. When that obstacle was removed, the jurisdiction became exercisable. The fact that a local action could not be tried in a different county was not due to any want of jurisdiction—the King's Courts had jurisdiction everywhere in the realm. Originally the jurors were witnesses: Stephen's Pleading, 7th ed. 429. The first case of a witness other than a juror is given in the Livre des Assises (ed. 1679) 23rd Edw. iii. p. 110, No. 11. The evil of trying transitory actions elsewhere than in the place of contract was remedied by the statute of 6 Rich. 2, c. 2. The distinction between "local" and "transitory" is explained in Stephen's Pleading, ed. 1824, p. 306 and in Gilbert's History of the Practice of Civil Actions to be one of venue and not of jurisdiction. It is the same rule which prevented a Warwickshire action from being tried in Worcestershire. You could not speak of "Capetown in the county of Warwick," because there would be a variance. In 2 Co. Litt. s. 440 it is said that a trial could be held by certificate without a jury where the thing was done beyond sea. See also *Mullineux's Case* (Michaelmas, 24 Eliz.) (2); Viner's Abridgment tit. Trial (m.f.)

(1) Hume's Decisions, 250. (2) Moore (1675), 178.

H. L. (E.)
1893
BRITISH SOUTH AFRICA COMPANY v. COMPANHIA DE MOÇAMBIQUE.

Verdict. There was held to be no variance if a videlicet were inserted between the name of a foreign place and the county in which it was proposed to found jurisdiction. See per Willes J. in *Mayor of London* v. *Cox* (1); 2 Y. B. Edw. 4, p. 9; *Richardson* v. *Locklin* (2); *Warren* v. *Webb* (3). In *Rex* v. *Burdett* (4) Abbott C.J. said: "There was a time, however, when it was supposed that a jury could not even in a civil action inquire into a matter that did not take place in their own county." In *Bruckshaw* v. *Hopkins* (5) a plaintiff was allowed to bring back the venue after plea pleaded. On the jurisdiction of Courts of Equity in such cases see Story's Conflict of Laws, ss. 531, 538, 550, 552, where he says: "Personal actions may rightfully be brought between natives in any competent tribunal of the realm: and between foreigners also, who have submitted to the jurisdiction; wherever the laws allow its exercise; and between natives and foreigners in like manner. But in all these cases the domicil of the party defendant is commonly supposed to be within the jurisdiction." There is no more difficulty in principle in trying the title to land than to a ship. In *Scott* v. *Lord Seymour* (6) it was held that a British subject may maintain an action against a fellow-subject for an assault committed abroad. In *Lloyd* v. *Guibert* (7) Willes J. says: "Exceptional cases, should they arise, must be dealt with upon their own merits"; and it was held that the law of a ship's nationality governed the contract of affreightment. In *Brown* v. *Gracey* (8), where a promissory note was made in Scotland and sued on in England, it was held incumbent on the defendant to shew any difference between the laws of the two countries. In *Whitaker* v. *Forbes* (9) Blackburn J. said: "I do not think this case raises any question as to jurisdiction. . . . The case turns on the technical distinction between local actions, where the trial must be local, and transitory actions, and the question is one of venue only." The same principle was adopted in *Way* v.

(1) Law Rep. 2 H. L. 239, 252.
(2) 6 B. & S. 777; 34 L. J. (Q.B.) 225.
(3) 1 Taunt. 379.
(4) 4 B. & Ald. 95, 171.
(5) 1 Cowp. 409.
(6) 1 H. & C. 219.
(7) Law Rep. 1 Q. B. 115, 129.
(8) Dow. & Ry. N. P. 41, note.
(9) Law Rep. 10 C. P. 583; 1 C. P. D. 51.

H. L. (E.)
1893

BRITISH
SOUTH AFRICA
COMPANY
v.
COMPANHIA DE
MOÇAMBIQUE.

*Yally* (1) and in *Dutch West India Company* v. *Van Moses* (2). In all these cases the difficulty was one of procedure—of variance. If the jurisdiction claimed involved an actual interference with foreign land, it would not be exercised. It is abundantly clear that there is an inherent jurisdiction in the Court, where, as here, the remedy sought is in personam; and that the only hindrance to its exercise is one of procedure which has been removed: *Livingston* v. *Jefferson* (3). *Pike* v. *Hoare* (4), where the Court refused an issue to try the validity of an English will because it affected lands in Pennsylvania, is doubted by the learned editors of the reports.

The jurisdiction of the Court is that of the Crown, which is complete over its subjects everywhere. That jurisdiction can be extended by Parliament. Down to Lord Mansfield's time it was doubted whether a tort committed abroad could be tried here. That doubt is now removed, and even an assault by a foreigner on a foreigner committed abroad may be tried by the Courts of this country. See Wheaton's International Law, 3rd Eng. edn. by Boyd, s. 140; Burge's Commentaries on Colonial and Foreign Laws, vol. 3, p. 1016. In *Castrique* v. *Imrie* (5) Blackburn J. at p. 429 and Lord Chelmsford at p. 448 approve Story's words in Conflict of Laws, s. 592; see also Code de Procédure Civile, liv. 2, tit. 2, s. 59; Story's Conflict of Laws, s. 550; Dalloz Jurisprudence Générale, Action, s. 2; *Hart* v. *Herwig* (6); *Schibsby* v. *Westenholz* (7) per Blackburn J. p. 159. That our Courts are the proper forum, the defendants being domiciled here, is shewn by *Roussillon* v. *Roussillon* (8) and *Copin* v. *Adamson* (9). *Cookney* v. *Anderson* (10) decided that Consolidated Order x. r. 7, empowering the Court to order service of a copy of a bill "in any suit" upon a defendant out of the jurisdiction, applies only to suits concerning land, stock or shares within 2 Wm. 4 c. 33 and 4 & 5 Wm. 4 c. 82. The jurisdiction was affirmed, but the restriction in the character of

(1) 2 Salk. 651.
(2) 1 Str. 612.
(3) 1 Brockenbrough, 203, 208.
(4) 2 Eden, 182; Amb. 428.
(5) Law Rep. 4 H. L. 414.

(6) Law Rep. 8 Ch. 860.
(7) Law Rep. 6 Q. B. 155.
(8) 14 Ch. D. 351, 370.
(9) 1 Ex. D. 17.
(10) 1 D. J. & S. 365.

Case 1:08-cv-02272 Document 26 Filed 06/16/2008 Page 15 of 19

H. L. (E.)
1893
BRITISH SOUTH AFRICA COMPANY v. COMPANHIA DE MOÇAMBIQUE.

the suit overruled by Lord Chelmsford L.C. in *Drummond* v. *Drummond* (1). It is sufficient if the Court at home has jurisdiction over either the person or the thing: *In re King & Company's Trade-mark* (2) per Bowen L.J. Down to the Judicature Acts, though there was no difficulty with respect to jurisdiction, there was a difficulty in regard to local actions and venue. That obstacle, by the abolition of local venue effected by Order XXXVI. r. 1, has now been removed.

[LORD HERSCHELL L.C. referred to *Whitaker* v. *Forbes* (3), *Doulson* v. *Matthews* (4) and *Neal* v. *DeGaray* (5).]

Whether the jurisdiction existed or not, the decisions in those cases must have been the same on the ground of procedure. *Mostyn* v. *Fabrigas* (6) distinctly lays down that these questions are not of jurisdiction, but of procedure. See, too, *Jackson* v. *Mayor of Barwick* (7).

There is no competent Court where the land is situate: there is no Court in the world, except in this country, where the action can be tried. In *R.* v. *Johnson* (8) Lord Ellenborough C.J. held that a plea to the jurisdiction cannot be merely negative but ought to give some other Court by which the matter may be tried. *In re Hawthorne, Graham* v. *Massey* (9) in which Kay J. refused to entertain an action for the purchase-money of foreign land is distinguishable, because there was no satisfactory evidence of the foreign law of real estate. But English Courts constantly enforce contracts made abroad, though the interpretation of the contract is governed by the local law. Paragraph 16 of the statement of claim is founded upon Bowen L.J.'s observations in *Mogul Steamship Company* v. *McGregor, Gow & Co.* (10). See also *Keeble* v. *Hickeringill* (11). The plaintiffs have not only local injuries but also transitory injuries to complain of: loss suffered in trade—breakage of furniture, assault and imprisonment, which are not the less personal and

(1) Law Rep. 2 Ch. 32.
(2) [1892] 2 Ch. 462, 483.
(3) Law Rep. 10 C. P. 583; 1 C. P. D. 51.
(4) 4 T. R. 503.
(5) 7 T. R. 243.
(6) 1 Sm. L. C. 9th Ed. p. 665.
(7) Sid. 381.
(8) 6 East, 583, 597.
(9) 23 Ch. D. 743.
(10) 23 Q. B. D. 598, 613.
(11) 11 East, 574, n.

H. L. (E.)
1893

BRITISH SOUTH AFRICA COMPANY v. COMPANHIA DE MOÇAMBIQUE

transitory because they arise out of trespass to land. In *Harvey* v. *Mayne* (1) the detention of a plaintiff was held illegal though he had defendant's goods in his possession. With respect to the allegations in paragraph 9 of the defence, the distinction between recognised and unrecognised foreign States is discussed in *Thompson* v. *Barclay* (2); *Thompson* v. *Powles* (3); *Taylor* v. *Barclay* (4). These cases are not altogether consistent with each other; but it is established that if the Sovereignty of an unrecognised State is set up in opposition to a recognised state—such as Portugal in the present case—the former will be disregarded: *Jones* v. *Garcia del Rio* (5), per Lord Eldon C.; *Dolder* v. *Bank of England* (6); *City of Berne* v. *Bank of England* (7); *Republic of Peru* v. *Dreyfus* (8); *Republic of Peru* v. *Peruvian Guano Company* (9). In *Martin* v. *Martin* (10) a mortgage of land in Demerara which was void by the law of Demerara, was enforced: the equity being held to attach only to the person and not to the estate. The Court had no difficulty in deciding though the title to foreign real estate was involved. So in *Cood* v. *Cood* (11) a contract between domiciled Englishmen relating to land abroad was held to be governed by English law and therefore cognisable by Courts in England, though it had been adjudicated upon by the Courts where the land was situate. A good title, if possession be held, is not necessary to maintain an action for trespass: *Graham* v. *Peat* (12). See also *Holmes* v. *Reg.* (13). *Ind, Coope & Co.* v. *Emmerson* (14) shews the enlargement of jurisdiction effected by the Judicature Acts.

If a judgment of a foreign Court was relied upon, it is admitted there would be jurisdiction: and it follows from this admission that if proof is given of the personal and transitory injuries the Court may award damages. If the respondents are not entitled

(1) Ir. Rep. 6 C. L. 417.
(2) 6 L. J. (O.S.) Ch. 93; 9 L. J. (O.S.) (Ch.) 215.
(3) 2 Sim. 194.
(4) 2 Sim. 213.
(5) 1 Turn. & R. 297, 299.
(6) 10 Ves. 352.
(7) 9 Ves. 347.
(8) 38 Ch. D. 348.
(9) 36 Ch. D. 489, 497.
(10) 2 Russ. & M. 507.
(11) 9 Jur. (N.S.) 1335.
(12) 1 East, 244.
(13) 31 L. J. (Ch.) 58.
(14) 12 App. Cas. 300.

H. L. (E.)
1893
BRITISH SOUTH AFRICA COMPANY v. COMPANHIA DE MOÇAMBIQUE.

to the whole of this claim, they are at least entitled to the relief claimed in paragraph 16.

*Cohen* Q.C. in reply.

The House took time for consideration.

Sept. 8. LORD HERSCHELL L.C. :—

My Lords, the principal question raised by this appeal is whether the Supreme Court of Judicature has jurisdiction to try an action to recover damages for a trespass to lands situate in a foreign country.

It is not in controversy that prior to the Judicature Acts no such jurisdiction could have been exercised; but it is asserted on behalf of the respondents that the only barrier to its exercise was the technical one, that the venue in such a case must be local, and that the rules made under the Judicature Acts which have abolished local venues have removed the sole impediment which prevented the Courts entertaining and adjudicating on cases of this description. This contention has been sustained by a majority of the Court of Appeal, reversing the judgment of the Queen's Bench Division, with which, however, the Master of the Rolls agreed.

The nature of the controversy between the parties renders it necessary to consider the origin of the distinction between local and transitory actions, and the development of the law which determined the venue or place of trial of issues of fact.

It was necessary originally to state truly the venue—that is, the place in which it arose—of every fact in issue, whether those on which the plaintiff relied, or any matter stated by way of defence; and if the places were different, each issue would be tried by a jury summoned from the place in which the facts in dispute were stated to have arisen. After the statute 17 Car. 2, c. 8, which provided that "after verdict judgment should not be stayed or reversed for that there was no right venue, so as the cause were tried by a jury of the proper county or place where the action was laid," the practice arose, which ultimately became regular and uniform, of trying all the issues by a jury of the

H. L. (E.)
1893
British South Africa Company v. Companhia de Moçambique.
Lord Herschell, L.C.

venue laid in the action, even though some of the facts were laid elsewhere. When juries ceased to be drawn from the particular town, parish, or hamlet where the fact took place, that is, from amongst those who were supposed to be cognisant of the circumstances, and came to be drawn from the body of the county generally, and to be bound to determine the issues judicially after hearing witnesses, the law began to discriminate between cases in which the truth of the venue was material and those in which it was not so. This gave rise to the distinction between transitory and local actions, that is, between those in which the facts relied on as the foundation of the plaintiff's case have no necessary connection with a particular locality and those in which there is such a connection. In the latter class of actions the plaintiff was bound to lay the venue truly; in the former he might lay it in any county he pleased. It was, however, still necessary to lay every local fact with its true venue on peril of a variance if it should be brought in issue. Where a local matter occurred out of the realm, a difficulty arose, inasmuch as it was supposed that the issue could not be tried, as no jury could be summoned from the place, and it was by the general rule essential that a jury should be summoned from the venue laid to the fact in issue. It was, however, early decided that, notwithstanding the general rule, such matters might be tried by a jury from the venue in the action, and thus the difficulty was removed and the form was introduced of adding after the statement of the foreign place the words, "To wit at Westminster in the county of Middlesex," or whatever else might happen to be the venue in the action.

The point arose in 30 & 31 Eliz., in an action of assumpsit on a policy of assurance (1). The plaintiff declared that the defendant at London "did assume that such a ship should sail from Melcomb Regis, in the county of Dorset, to Abvile in France safely, and that the said ship in sailing towards Abvile, scilicet in the river of Soame in the realm of France, was arrested by the King of France." The parties came to issue whether the ship was so arrested or not, and this issue was tried before the Chief Justice in London, and found for the plaintiff. It was moved in arrest of judgment, that this issue, arising from a place without the

(1) Cited in *Dowdale's Case*, 6 Rep. 47 b.

realm, could not be tried; and, if it could, it was contended the jury should come from Melcomb, "for by common intendment they may have best knowledge of the arrest." But it was resolved that the issue should be tried where the action was brought. "Here," it was said, "the promise was made here in London, which is the ground and foundation of the action; and therefore there is in this case of necessity it shall be tried, or otherwise it should not be tried at all."

It is, I think, important to observe that the distinction between local and transitory actions depended on the nature of the matters involved and not on the place at which the trial had to take place. It was not called a local action because the venue was local, or a transitory action because the venue might be laid in any county, but the venue was local or transitory according as the action was local or transitory. It will be seen that this distinction is material when the Judicature Rule upon which so much turns comes to be examined.

My Lords, I cannot but lay great stress upon the fact that whilst lawyers made an exception from the ordinary rule in the case of a local matter occurring outside the realm for which there was no proper place of trial in this country, and invented a fiction which enabled the Courts to exercise jurisdiction, they did not make an exception where the cause of action was a local matter arising abroad, and did not extend the fiction to such cases. The rule that in local actions the venue must be local did not, where the cause of action arose in this country, touch the jurisdiction of the Courts, but only determined the particular manner in which the jurisdiction should be exercised; but where the matter complained of was local and arose outside the realm, the refusal to adjudicate upon it was in fact a refusal to exercise jurisdiction, and I cannot think that the Courts would have failed to find a remedy if they had regarded the matter as one within their jurisdiction, and which it was proper for them to adjudicate upon.

The earliest authority of importance is *Skinner* v. *East India Company* (1). The House of Lords in that case referred it to the judges to report whether relief could be obtained in respect of

(1) 6 State Trials, 710, 719.