# DECLARATION OF  JOHN V. SWINSON

## EXHIBIT C

.

*Exhibit C*

[HIGH COURT OF AUSTRALIA.]

POTTER . . . . . . . . APPELLANT;
    PLAINTIFF,

AND

THE BROKEN HILL PROPRIETARY COM- ⎱ RESPONDENT.
    PANY LTD. . . . . . . ⎰
    DEFENDANT,

ON APPEAL FROM THE SUPREME COURT OF VICTORIA.

*International Law—Conflict of laws—Act of sovereignty—Grant of letters patent— Patent granted in one State of Commonwealth—Action for infringement brought in another State of Commonwealth—Patents Act 1899 (N.S.W.) (No. 19 of 1899).*

The grant of letters patent for an invention is a grant of a right to exclude others from manufacturing or using the particular invention within the territory of the State under whose laws it is granted, and the title to the right must devolve, as in the case of land, according to the laws of that State.

The grant of letters patent is an exercise of the sovereign power of the State, and therefore, as in the case of title to land, the validity of the grant is not examinable in the Courts of another State, except in cases where the question of that validity arises merely incidentally in an action otherwise cognizable by the Courts of that other State.

The circumstance that patent rights cannot be enforced against a person who can prove that the invention was not novel does not exclude the operation of the above rule.

The grant of letters patent is within the powers of sovereignty conferred upon the State of New South Wales by its Constitution, and a grant of such letters under the *Patents Act* 1899 (N.S.W.) is an exercise of such powers.

It is competent for the Courts of one State to inquire as to the limits of the rights of sovereignty possessed by another State. If the act in question purports to be done within those limits, the case is in principle the same as one of an act done in the exercise of an unlimited sovereignty.

An action was brought in Victoria alleging an infringement in New South Wales by the defendants, a Victorian Company carrying on mining operations in New South Wales, of the plaintiff's New South Wales patent, and claiming

H. C. OF A.
1906.
⌇
MELBOURNE,
1905
*Nov.* 23, 24.
1906
*Feb.* 27, 28.
*Mar.* 1, 2, 20.
⎯⎯
Griffith C.J.,
Barton and
O'Connor JJ.

480                          HIGH COURT                        [1906.

H. C. of A.
1906.
⌣
POTTER
v.
BROKEN HILL
PROPRIETARY
Co. LTD.

an injunction and damages. The defendant by its defence alleged that the plaintiff's patent was invalid on various grounds.

*Held*, that the plaintiff's cause of action was not justiciable in Victoria.

Decision of the Full Court, *Potter v. The Broken Hill Proprietary Co. Ltd.*, (1905) V.L.R., 612; 27 A.L.T., 74, affirmed.

APPEAL from the Supreme Court of Victoria.

An action was brought in the Supreme Court of Victoria by Charles Vincent Potter against the Broken Hill Proprietary Co. Ltd., and in the statement of claim it was alleged in paragraphs 1 to 6 that the plaintiff carried on business in Melbourne, in the State of Victoria, where he was resident and domiciled; that the defendant Company was duly incorporated and registered in Victoria under the provisions of the *Companies Acts*, and that its head office and its registered office under these Acts were situated in Melbourne, where its business was carried on, directed and managed by a board of directors with a secretary and other officers under their control; that the defendant company owned large mines at Broken Hill, in the State of New South Wales, the sulphide ores from which they had treated by methods which, prior to their use of the plaintiff's invention, had been ineffective to extract the whole of the valuable metals therein; that during the year 1901 the plaintiff had discovered a new and improved process for the extraction or separation of metals from sulphide ores; and that on 29th November, 1901, the plaintiff had duly obtained in New South Wales a patent for his invention, being Patent No. 11,575. In paragraphs 7 and 8 it was alleged that after the plaintiff had obtained such patent, the defendant company alleged that its manager, G. D. Delprat, had invented a new and improved process for separating the metals in sulphide ores from the crude ores, but that such alleged invention was really the plaintiff's process with some colourable variations consisting of the using well known chemical equivalents so as to make the process appear different; and that Delprat, acting for and on behalf of the defendant company, had applied for in New South Wales a patent for his alleged invention, which, although opposed by the plaintiff, was granted, the officers intimating that, as chemical questions were involved, the matter should be decided by an action in the Courts.

In paragraph 9 it was then alleged that "the defendant company has infringed, and will, unless restrained by an injunction of this Honourable Court, continue to infringe the said patent, of which the plaintiff is the first inventor, granted in New South Wales as aforesaid, by using and working at its said mine the said alleged invention referred to in paragraphs 7 and 8 hereof."

The plaintiff claimed :—

" A declaration that the process referred to in paragraph 7 and 8 as an alleged invention of the said Delprat," and also the process referred to in paragraph 11 as another alleged invention of the said Delprat, is each of them an infringement of the plaintiff's patent No. 11,575 in the State of New South Wales.

" An injunction to restrain the defendant, its agents, or servants, from infringing the said patent No. 11,575 in the State of New South Wales at its mines at Broken Hill.

" An account of all profits made by the defendant by the use of the said processes or either of them, the alleged inventions of the said Delprat, at its mines at Broken Hill.

" £50,000 damages for infringement of the New South Wales patent."

There were similar claims in respect of an alleged infringement of a patent granted in Victoria to the plaintiff for the same invention.

By its defence the defendant Company denied infringement of the plaintiff's patents, and alleged that such patents were invalid on various grounds. By paragraph 6 the defendant said :—" It denies each and every allegation contained in paragraph 9 of the statement of claim, and it will contend further with regard to such allegations that they allege no cause of action justiciable in this State, and that such alleged cause of action is not justiciable here."

An order was made, on the application of the plaintiff, that the points of law raised by paragraph 6 of the defence should be set down for hearing before the trial of the action, and such points were subsequently referred to the Full Court.

The Full Court held (*Hodges* and *Hood* JJ., *à Beckett* J. dissent-

H. C. of A.
1906.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.

482                         HIGH COURT                    [1906.

H. C. of A.
1906.

POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

ing), that the cause of action was not justiciable in Victoria: *Potter v. The Broken Hill Proprietary Co. Ltd.* (1).

From this decision the plaintiff now appealed" to the High Court.

*Higgins* K.C. and *Mitchell* K.C., (*Purves* K.C., with them,) for the plaintiff appellant. An action will lie in Victoria for an infringement of a New South Wales patent. The action is primarily an equitable one for an injunction and accounts. The Courts of Chancery were never hampered by local venue. An action is not local to New South Wales unless it is local as between different parts of New South Wales or of England. At least so far as England is concerned, an action for infringement of a patent is transitory and the venue can be laid in any country : *Webster on Patents*, p. 108 (note *a*); *Webster's Patent Reports*, p. 214 (*n*); *Cameron v. Gray* (2); *Hindmarch on Patents*, p. 655 (*n*). A patent is incorporeal personal property : *Rafael v. Verelst* (3); *Hindmarch on Patents*, p. 233. In *Smelting Company of Australia v. Commissioners of Inland Revenue* (4), it was held that a New South Wales patent is not property locally situated out of the United Kingdom within the meaning of the *Stamp Act* 1891 (54 & 55 Vict. c. 39). In the same way it was held in *Muller & Co.'s Margarine Ltd. v. Commissioners of Inland Revenue* (5), that the goodwill of a business is personal property. The decision in *British South Africa Co. v. Companhia de Moçambique* (6) that an action for trespass to foreign land will not lie in England, is based on the ground that before the *Judicature Act* 1883 the Courts would not entertain such an action, and that that Act made no change in that respect. The reason the Court would not entertain such an action was the impossibility of enforcing a judgment. So an action to enforce a rent charge on foreign land would not lie: *Whitaker v. Forbes* (7). Such an action being founded on privity of estate is local. Those difficulties do not arise in the case of an infringement of a patent. The remedy can

(1) (1905) V.L.R., 612; 27 A.L.T., 74.
(2) 6 T.R., 363.
(3) 2 Wm. Bl., 1055.
(4) (1896) 2 Q.B., 179; (1897) 1 Q.B., 175.

(5) (1900) 1 Q.B., 310; (1901) A.C., 217.
(6) (1892) 2 Q.B., 358; (1893) A.C., 602.
(7) L.R. 10 C.P., 583; 1 C.P.D., 51.

be enforced against the defendant in person and his property in
the jurisdiction. See *Lord Cranstown v. Johnston* (1); *Buenos Ayres and Ensenada Port Railway Co.* v. *Northern Railway Co. of Buenos Ayres* (2); *Bullen and Leake on Pleadings*, 3rd ed., p. 2. An action for infringement of a patent is a personal action, and being so is transitory. In *R.* v. *Halifax County Court Judge* (3), it was held that, for the purposes of the English *County Courts Act* 1888 (51 & 52 Vict. c. 43) sec. 56, an action for infringement of a patent was a personal action, but that a patent being a franchise the County Court had no jurisdiction.

[GRIFFITH C.J.—Are not all franchises local to the State ?]

A franchise for a market is local. But a patent accompanies the proprietor of it and is his personal property.

[GRIFFITH C.J.—Is it not just as local as any right given by a Statute ?]

The right of sole making and vending is confined to New South Wales, but it does not follow that, if that right is infringed, the remedy is confined to New South Wales. [On this point counsel also referred to *Duder* v. *Amsterdamsch Trustees Kantoor* (4); *Livingston* v. *Jefferson* (5); *Thompson* v. *Mendelssohn* (6); *Mayor &c. of Berwick* v. *Ewart* (7); *R.* v. *Cowle* (8); *Phillips* v. *Eyre* (9).]

It is contended for the respondent that an action for a tort will not lie in Victoria unless the very Act which is alleged to be a tort would, if committed in Victoria, be actionable ; that, as the patent is limited to the territory of New South Wales, an act which infringed it cannot be committed in Victoria ; and therefore that no action will lie in Victoria for infringement of a New South Wales patent. The question is what are the limits in English law within' which a Court of Victoria will entertain actions for wrongs committed outside Victoria ? If the Courts of Victoria enforce liability for wrongs of a particular sort if committed in Victoria—if the enforcing such liability is not contrary to the policy of Victorian law—then an action for a wrong of the same kind committed

(1) 3 Ves., 170, at p. 182.
(2) 2 Q.B.D., 210.
(3) (1891) 1 Q.B., 793 ; (1891) 2 Q.B., 263.
(4) (1902) 2 Ch., 132.

(5) 15 Fed. Cas., 660.
(6) 23 Fed. Cas., 1061.
(7) 2 Wm. Bl., 1068.
(8) 2 Bur., 834, at pp. 837, 859, 861.
(9) L.R., 6 Q.B., 1, at p. 28.

H. C. of A.
1906.
~~
POTTER
v.
BROKEN HILL
PROPRIETARY
Co. LTD.

abroad will lie in Victoria. In *The "Halley"* (1), the ground of the decision was that the English law does not and will not recognize any principle by which a man will be held liable for the act of another man who is not his agent. See also *Foote's Private International Jurisprudence*, 3rd. ed., p. 387; *Madrazo* v. *Willes* (2); *Santos* v. *Illidge* (3). In America the Courts go further and will enforce liability for a tort committed outside a State unless the defendant shows that such a liability is forbidden by public policy or by something express or implied in the laws of the State. See *Minor's Conflict of Laws*, pp. 9, 479; *Huntington* v. *Attrill* (4); *Herrick* v. *Minneapolis and St. Louis Railway Co.* (5); *Dennick* v *Railroad Co.* (6). [Counsel also referred to *The "M. Moxham"* (7); *"Morrocco Bound" Syndicate Ltd.* v. *Harris* (8); *Connell* v. *Neill* (9); *Moore* v. *Moodyville Lands and Saw Mills Co.* (10).]

*Isaacs* A.-G., *Coldham* and *Cussen*, for the respondent. A patent is an immoveable: *Steers* v. *Rogers* (11). A grant of a patent is not a grant of property. It is a grant exclusive of other people, and can only relate to a certain area. The grant must be local and it is inconceivable that there can be a breach of it in another country: *Bloomer* v. *McQuewan* (12); *Fuller* v. *Berger*(13). The right to use a patented article or process does not arise out of the grant of the patent, but merely the right to exclude others from using it. In *Patterson* v. *Kentucky* (14), it was held that a State law prohibiting the use of a patented article is not in derogation of a federal grant of a patent. Being a power to exclude others from using, a patent is necessarily local. The rule as to venue relied on by the appellant related merely to procedure and has been done away with, and the locality of an action upon which that rule depended is a different sort of locality from that which attaches to a patent right. The former merely applied between different parts of England, but the latter applies between

(1) L.R. 2 P.C., 193.
(2) 3 B. & Al., 353.
(3) 6 C.B. N.S., 841.
(4) 146 U.S., 657, at p. 670.
(5) 47 Am. Rep., 771.
(6) 103 U.S., 11.
(7) 1 P.D., 107.

(8) (1895) 1 Ch., 534.
(9) 7 N.S.W. W.N., 6.
(10) 26 V.L.R., 296; 22 A.L.T., 72.
(11) (1893) A.C., 232.
(12) 14 How., 539, at p. 549.
(13) 120 Fed. Rep., 274, at p. 278.
(14) 97 U.S., 501.

H. C. OF A.
1906.

POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

different countries. In *Badische Anilin Fabrik* v. *Basle Chemical Works* (1), Lord *Halsbury* L.C., said : " What jurisdiction have we over an act which is done in Switzerland by a Swiss subject, and which, in all that is done, is (it cannot be doubted) an act within the jurisdiction of the Swiss Courts, if there were any patent law applicable to it, but is not within our jurisdiction at all ? " This principle of locality is not limited to land which, of course, is necessarily local. In *Doulson* v. *Matthews* (2) the test was not whether the action was as to land but whether the action was local. See also *Stephen on Pleading*, 6th ed., p. 224; *Stephen's Commentaries*, 10th ed., vol. III., p. 388; *Smith's Action at Law*, 8th ed., p. 79; *Hindmarch on Patents*, pp. 409, 708; *Brooke's Abridgment,* " *Scire facias*," p. 189; *Minor's Conflict of Laws*, p. 475. The question is not whether the Court can give a remedy, but whether the Court can try the action, that is, whether it has jurisdiction : *British South Africa Co.* v. *Companhia de Moçambique* (3). A judgment here on the ground that the patent is bad could not be pleaded as *res judicata* in New South Wales. The Court is asked to restrain the doing of something in New South Wales : See " *Morrocco Bound* " *Syndicate Ltd.* v. *Harris* (4). As to foreign torts two questions must be answered in the affirmative in order that the plaintiff may succeed, viz., (I.) Taking the foreign law as a fact would the act complained of be unlawful ? (II.) Taking the facts and applying the English law to them, would the act complained of be unlawful ? *Pollock on Torts*, 6th ed., p. 200. The very act, if done in Victoria must be unlawful. An act in breach of a New South Wales patent could not be done in Victoria. It is not sufficient that an act of a similar character in relation to a Victorian patent would be unlawful in Victoria. See *Dicey's Conflict of Laws*, p. 659; *The* " *M. Moxham* " (5); *Carr* v. *Fracis Times & Co.* (6); *Machado* v. *Fontes* (7). In *Huntington* v. *Attrill* (8), the Judges recognized that the American law is in conflict with the English law on this point.

[Counsel also referred to *Jackson* v. *Spittall* (9) ; *Attorney-*

(1) (1898) A.C., 200, at p. 205.
(2) 4 T.R., 503.
(3) (1893) A.C., 602, at p. 618.
(4) (1895) 1 Ch., 534.
(5) 1 P.D., 107.
(6) (1902) A.C., 176.
(7) (1897) 2 Q.B., 231.
(8) 146 U.S., 657, at p. 670.
(9) L.R., 5 C.P., 542.

H. C. or A.
1906.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
Co. LTD.

*General* v. *Churchhill* (1); *Patents Act* 1899 (N.S.W.) (No. 19 of 1899), secs. 17, 19 (3).]

*Higgins* K.C., in reply, referred to *Robinson on Patents*, p. 508; *Hesse* v. *Stevenson* (2); *II. Harrison's Digest*, 5062; *Comyns' Digest*, "*Action*," p. 270; *Shoe Machinery Co.* v. *Cutlan* (3); *Godard* v. *Gray* (4).]

27th Feb., 1906.

The matter was, at the desire of the Court, further argued on the point whether the Courts of one State can inquire into the propriety or validity of an attempted exercise of the sovereign power of another State.

*Higgins* K.C., and *Mitchell* K.C. In a concrete form the question is whether letters patent granted in New South Wales can be impugned in Victoria? The grant of a patent right in New South Wales is not an exercise of the prerogative, but is a grant by virtue of an Act of Parliament. It is not a grant by the King himself.

[GRIFFITH C.J.—Can it not be attacked by *scire facias*?]

No. But under the law of New South Wales the grounds on which a patent might have been attacked by *scire facias* are made grounds for seeking a revocation and defences to an action for infringement: *Patents Act* 1899 (N.S.W.) (No. 19 of 1899) sec. 19 (3). So far as the issuing a patent is within the competency of New South Wales officials, it cannot be attacked in Victoria. But so far as the letters patent carry with them, by virtue of the law of New South Wales, an exception to the operation of those letters, they can be attacked in Victoria. It is the New South Wales Act of Parliament which enables letters patent to be issued, and by virtue of that Act and of the letters themselves there is an express exception in the case of want of novelty, &c. The form of letters patent in Victoria contains the same exception: See *Patents Act* 1890, Seventh Schedule. If a patent is void as between the Crown and the patentee it is void also as between the patentee and other persons: *Morgan* v. *Seaward* (5); *Lawson on Patents*,

(1) 8 M. & W., 171.
(2) 3 B. & P., 565.
(3) (1896) 1 Ch., 108.

(4) L.R., 6 Q.B., 139.
(5) 2 M. & W., 544.

3rd. ed., p. 125. The defendant company does not impugn the grant of the letters patent, but it attempts to show that the grant contains within its own boundaries an exception which protects it. It is always open to a defendant in an action for infringement to show that the condition subject to which the patent was granted has happened. If it can be shown that the grant is within the statutory powers conferred by the New South Wales Act, no Court can impugn the validity of the grant. Even the Court of New South Wales cannot go into the question of the propriety of the grant, but it can go into the question whether the patentee has brought himself within the condition which makes the exception to the grant. There is an ambiguity in the word "validity." It may be admitted that the grant is valid to the extent to which it goes. The Court of one State must see who is the sovereign of another State.

[GRIFFITH C.J.—Must not the Governor of an Australian State be considered as representing the sovereignty of the State?]

No. The Governor of a State is a special agent, and you may in the Courts of another State inquire whether a particular matter is within the special agency. The principles as to sovereign powers are inapplicable to a Governor with special powers. The quotation in *British South Africa Co.* v. *Companhia de Mocambique* (1), from Vattel, is incorrect. For "the right of granting *property*" should be substituted "the right of granting *possession*," which is a very different thing. The continental Courts do not go so far as the British and American Courts in inquiring into foreign title to land: See *Story's Conflict of Laws*, p. 544. The Courts of England will go into the title of foreign land when it is incidental to some other matter. Those Courts also will inquire what the foreign power has really done. The whole test is can the Court make its judgment effective: *Baron de Bode's Case* (2). In *Nelson* v. *Bridport* (3) an inquiry was ordered before the chief clerk as to the title to land in Sicily. See also *Massie* v. *Watts* (4); *Mead* v. *Merritt* (5); *Mitchell* v. *Bunch* (6). The reason this point was not raised on the previous argument

H. C. OF A.
1906.
~~~
POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

(1) (1893) A.C., 602, at p. 629.
(2) 8 Q.B., 208, at p. 245.
(3) 10 Jur., 871.

(4) 6 Cranch., 148.
(5) 2 Paige Ch., N.Y., 402.
(6) 2 Paige Ch., N.Y., 606.

H. C. of A.
1906.

POTTER
v.
BROKEN HILL
PROPRIETARY
Co. Ltd.

was that the question for decision was, assuming that the plaintiff's patent is valid, can the question of infringement be tried in Victoria? If it cannot be it must be because the patent has some mysterious effect which it has not in the Courts of New South Wales. Whatever may be pleaded against the patent in New South Wales may be pleaded in Victoria: *Good* v. *Good* (1). The letters patent are not impugned here. It is one thing to say that the Crown ought not to have granted letters patent, and it is another to say that the meaning of the grant is that the patentee shall have the right upon a condition. That condition has attached to patents ever since the *Statute of Monopolies* (21 Jac. I. c. 3). A grant of a patent under the *Patents Act* 1883 (46 & 47 Vict. c. 57), is not a prerogative grant. The order for letters patent is made by the Comptroller. The grant does not purport to be in exercise of the prerogative power of the sovereign. If it is granted by the Governor in Council it is not by virtue of his commission but by virtue of the Statute law of New South Wales. See *R.* v. *Clarke* (2); *R.* v. *Hughes* (3). [Counsel also referred to *Robinson on Patents*, p. 608; *Robertson* v. *Pickrell* (4); *Kynnaird* v. *Leslie* (5); *Huntington* v. *Attrill* (6); *Dicey's Conflict of Laws*, pp. XLIII., 235; *Musgrave* v. *Pulido* (7); *Cameron* v. *Kyte* (8); *Black's Constitution*, 2nd ed., p. 56; *Railroad Co.* v. *Georgia* (9); *Edmunds on Patents*, 1st ed., p. 546; *Dill* v. *Murphy* (10); *Osborne* v. *Morgan* (11); *Encyclopædia of Laws of England*, vol. x., p. 311; *Chitty on Prerogative*, p. 25; *Patents Act* 1890 (Vict.), secs. 16, 73.]

*Isaacs* A.-G. and *Cussen*, (with them *Coldham*). If the State acts, it is immaterial by what instruments it acts so far as other States are concerned. There is no higher act of State than an Act of Parliament. The *Statute of Monopolies* (21 Jac. I. c. 3), is only a statement of the common law, and enacted that the prerogative should be exercised under certain restrictions. The prerogative passes wherever the British Dominions extend. A

(1) 9 Jur., N.S., 1335.
(2) 7 Moo. P.C.C., 77, at p. 84.
(3) L.R. 1 C.P., 81.
(4) 109 U.S., 608.
(5) L.R. 1 C.P., 389.
(6) (1893) A.C., 150.

(7) 5 App. Cas., 102.
(8) 3 Knapp., 332.
(9) 98 U.S., 359.
(10) 1 Moo. P.C.C., 487.
(11) 13 App. Cas., 227.

grant of letters patent is a grant by the Crown through the legis-
lature: *Frost on Patents*, p. 288. Under the New South Wales Act,
letters patent are issued in the name of the Governor, that is, of
the Governor in Council, and he does not sign in his individual
capacity.    They are headed "Letters Patent" showing that
the grant is intended to be a regal act.    In *In re Betts' Patent*
(1), it was held that the grant of letters is an act of State.    There
is no distinction between New South Wales and France so
far as the jurisdiction of Victorian Courts to inquire into
an act of State is concerned.    Within the scope of his delegation,
the Governor is a sovereign power: *R.* v. *Burah* (2); *Rattigan's
Private International Law*, p. 174; *Underhill* v. *Hernandez*
(3).    The Governor of New South Wales assumes to act law-
fully; whether he is so acting is a question for the Courts
of that State.    A patent is equivalent to a statutory injunction:
*Steers* v. *Rogers* (4); *Boesch* v. *Gräff* (5).    In the United States,
where patents are granted under the federal law, the jurisdiction
of the federal Courts is exclusive; *Robinson on Patents*, 3rd vol.,
pp. 9, 703, and an action for infringement directly affects the
monopoly: *Ibid.*, p. 16.    See also *Gaines* v. *Fuentes* (6).    A Court of
Equity would never investigate the title to foreign land unless
there was a contract or trust in reference to the land which made
the question of title incidental: *Lewin on Trusts*, 11th ed., p. 48.
In its nature a patent is an immoveable just as much as land is:
*Dale Tile Manufacturing Co.* v. *Hyatt* (7); *Teas* v. *Albright* (8).
See also *The Municipal Council of Sydney* v. *The Commonwealth*
(9).    A right under a patent granted in a State is only enforcible
in that State: *Danubian Sugar Factories* v. *Commissioners of
Inland Revenue* (10).    See also *Badische Anilin Fabrik* v. *Basle
Chemical Works* (11); *Gladstone* v. *Ottoman Bank* (12).    An
action for infringement of a patent is an action for trespass,
*Pollock on Torts*, 7th ed., p. 369, the essence of a patent, like that

H. C. of A.
1906.
~~
POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

(1) 1 Moo. P.C.C. (N.S.), 49; 9 Jur.
N.S., 137; 7 L.T. N.S., 377.
(2) 3 App. Cas., 889.
(3) 65 Fed. Rep., 677; 168 U.S., 250.
(4) (1893) A.C., 232, per Lord
*Herschell*, at p. 235.
(5) 133 U.S., 697, at p. 702.
(6) 92 U.S., 10.

(7) 125 U.S., 46.
(8) 13 Fed. Rep., 406.
(9) 1 C.L.R., 208, at p. 231.
(10) (1901) 1 K.B., 245, at 259.
(11) (1898) A.C., 200, at p. 205, per
Lord *Halsbury*, L.C.
(12) 1 H. & M., 505.

Case 1:08-cv-02272    Document 27    Filed 06/16/2008    Page 13 of 39

H. C. or A.
1906.

POTTER
v.
BROKEN HILL
PROPRIETARY
Co. LTD.

of other franchises, being its exclusiveness, and trespass is the proper remedy for the disturbance of the right. Goodwill also cannot exist apart from locality: *Inland Revenue Commissioners v. Muller & Co.'s Margarine Ltd.* (1). In *Hertzog v. Heyman* (2) it was held that the jurisdiction of a State Court in an action upon a contract is not precluded by the fact that the right of the plaintiff to succeed depends upon the construction or validity of a patent. Whether the grant of letters patent is an exercise of the prerogative or is by virtue of an Act of the Legislature is unimportant. As a matter of law it is an exercise of the prerogative, and that exercise is regulated by Act of Parliament. Sec. 24 of the *Patents Act* 1890 (Victoria) does not exist in the New South Wales Statute, and its effect is merely that there is no obligation on the Crown to grant a patent. The prerogative exists in New South Wales just as it does in England: *In re Bateman's Trust* (3); *Feather v. The Queen* (4). In every sense the grant of letters patent is an act of sovereignty. In *Doss v. Secretary of State for India in Council* (5), it was held that a debt contracted by a sovereign was an act of sovereignty for which no action would lie. The allegation that the appellant makes is that the respondent has infringed his patent by using a process for which the respondent has been granted a patent. The Court must therefore decide which of the two patents is valid, and in deciding that, it must decide that the other is invalid.

It appears to have been assumed from the beginning that the State Courts of the United States have no jurisdiction as to patents; that as to matters as to which Congress has power to legislate it has power to give exclusive jurisdiction to the Federal Courts, and that it has given that jurisdiction in patent matters. See *Walker on Patents*, p. 274; *Parsons v. Barnard* (6); *Kent's Commentaries*, vol. I., p. 444; 18 *Statutes at Large* (U.S.), Part 3, c. 137. The validity of the patent is involved in every action for a patent: *Hindmarch on Patents*, p. 265. The New South Wales Statute provides a complete procedure for dealing with the validity of a patent, and several of the provisions are inapplicable

(1) (1901) A.C., 217, at p. 237.          (4) 6 B. & S., 257.
(2) 151 N.Y. Rep., 587.                   (5) L.R. 19 Eq. 509.
(3) L.R. 15 Eq., 355, at p. 361.          (6) 7 Johns N.Y., 144.

to an action in Victoria.  For instance, there may be a petition for revocation, or the Court may allow a disclaimer during the course of the case.  A statutory tort must be taken as it is found, and if it appears that the intention of the Statute it to make the enforcement of the remedy exclusive of the Courts of other States, then a foreign State will not entertain an action for that tort. [Counsel also referred to *Chitty on Prerogative*, p. 330; *Hindmarch on Patents*, pp. 378, 666; *Dudley* v. *Mayhew* (1); *De Witt* v. *Elmira Nobles Manufacturing Co.* (2); *Minor's Conflict of Laws*, pp. 479, 490; *Pollock on Torts*, 7th ed., p. 113; *Liquidators of Maritime Bank of Canada* v. *Receiver General of New Brunswick* (3); *Rodd* v. *Municipality of Hamilton* (4).

*Higgins* K.C., in reply.  The defendant by its defence does not allege that the plaintiff's letters patent ought not to have been granted.  It alleges that by virtue of the *Patents Act* under which the letters patent were granted there is a condition which has not been fulfilled.  So far from the letters patent being impeached, if the plaintiff failed in this action, an action could at once be brought against another infringer.  The grant of letters patent is not an act of state.  That phrase has a technical meaning, and is applicable only to an act done as between a foreigner and one of His Majesty's subjects: *Stephen's History of the Criminal Law*, vol. II., pp. 61, 65; *Ah Toy* v. *Musgrove* (5).

[GRIFFITH C.J.—The term is applicable to any act done by the State in the execution of its sovereign power.]

A patent is a personal chattel, and is not an "immoveable" in the technical sense which is limited to real property.  It is always competent for a British Court to examine into the validity of an Act bearing the imprimatur of a colony, to look into what has been expressed on the face of a judgment or an Act of Parliament of that colony, and see whether the Act exceeds the power: *In re Watson* (6); *Ray* v. *M'Mackin* (7).  A judgment of a Court is as much an exercise of the sovereign power as is the granting of letters patent, and the argument of the respondent must go to

H. C. OF A.
1906.
⌐⌐
POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

(1) 3 N.Y., 9.
(2) 86 N.Y., 460.
(3) (1892) 2 A.C., 437, at p. 443.
(4) 14 N.S.W. L.R. (Eq.), 221, at p. 223.
(5) 14 V.L.R., 349 ; 10 A.L.T., 80.
(6) 9 A. & E., 731.
(7) 1 V.L.R. (L.), 274.

H. C. of A.
1906.
POTTER
v.
BROKEN HILL
PROPRIETARY
Co. LTD.

the extent of saying that a judgment of one State is not, as to its validity, examinable in another State.  [Counsel also referred to *Attorney-General* v. *Brown* (1); *Black's Constitutional Law,* 2nd ed., p. 248; *Kent's Commentaries,* p. 474; *Gibson* v. *Woodward* (2); *Page* v. *Dickerson* (3); *Slemmer's Appeal* (4); *Thompson* v. *Whitman* (5).

*Cur. adv. vult.*

The following judgments were read :—

March 20.

GRIFFITH C.J.  This is an action brought in the Supreme Court of Victoria by the appellant against the respondent, who is a company incorporated and registered in Victoria, for (*inter alia*) the infringement in New South Wales of a New South Wales patent.  The respondent by its defence denies the novelty and utility of the alleged invention in respect of which the patent was granted.  It also denies the infringement.  The defences of want of novelty and want of utility are, of course, pleaded with an implied reference to the law of New South Wales, of which the Courts of Victoria are required to take cognizance, and which is in this respect the same as that of England.  The defence thus raised is therefore, in substance, that the New South Wales patent is invalid.  The respondent also sets up that the alleged cause of action for infringement is not justiciable in Victoria.  This latter question was ordered to be argued before the Full Court.  The points argued before that Court were, as stated by *Hodges* J., (a) That the Court had no jurisdiction over the cause of action, and, (b) That, if it had jurisdiction, the facts disclose no cause of action, inasmuch as to entitle the plaintiff to succeed he must show not only that the act was wrongful in New South Wales, but also that that very act, if it had been done in Victoria, would have been actionable.  The learned Judges differed in opinion.  *Hodges* J. thought that an action for the infringement of a patent is a local action as distinguished from a transitory action, since a violation of the right of monopoly claimed could only take place within the territory where the monopoly existed.

(1) 2 S.C.R. (N.S.W.), 30, at p. 37.
(2) 8 Paige Ch., N.Y., 131.
(3) 9 Amer. Rep., 632.
(4) 58 Pa. St., 155.
(5) 18 Wall., 457.

*Hood* J. concurred in this view, and held also that the action failed on the ground that the act complained of, *i.e.*, the violation of a New South Wales monopoly, would not have been unlawful if done in Victoria.  *à Beckett* J. was of a contrary opinion on both points. After the appeal had been argued before us on these points, we requested further argument on the question whether it is competent for the Courts of a State to examine into the validity of an act purporting to be done by the supreme authority of another State in the exercise of its sovereign or quasi-sovereign powers.  This question assumes, of course, that the grant of a patent is such an act.  The matter has been very fully and ably argued, and we are much indebted to counsel for the assistance which they have given us.  There is apparently no decision either of the English or American Courts directly in point, and the question must be determined on principle.

I will consider first what is the nature of a patent for an invention.  It is sometimes described as incorporeal personal property, a description which is sufficiently accurate for some purposes.  It is, no doubt, personal property as distinguished from real property, and in that sense it may be described as a chattel. In *Steers* v. *Rogers* (1), Lord *Herschell* L.C., said: "What is the right which a patentee has or patentees have?  It has been spoken of as though a patent were a chattel, or analogous to a chattel.  The truth is that letters patent do not give the patentee any right to use the invention—they do not confer upon him a right to manufacture according to his invention.  That is a right which he would have equally effectually if there were no letters patent at all; only in that case all the world would equally have the right.  What the letters patent confer is the right to exclude others from manufacturing in a particular way, and using a particular invention."

The same doctrine has been laid down in the Supreme Court of the United States.  "The franchise which the patent grants consists altogether in the right to exclude every one from making, using or vending the thing patented without the permission of the patentee.  This is all he obtains by the patent.  And when he sells the exclusive privilege of making or vending it for use in

(1) (1893) A.C., 232, at p. 235.

H. C. of A.
1906.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
Co. LTD.

Griffith C.J.

494                               HIGH COURT                          [1906

H. C. of A.    a particular place, the purchaser buys a portion of the franchise
1906.       which the patent confers.  He obtains a share in the monopoly,
POTTER      and that monopoly is derived from, and exercised under, the pro-
v.          tection of the United States."  (*Per Taney C.J.*, in *Bloomer* v.
BROKEN HILL
PROPRIETARY *McQuewan* (1), cited by the Court in *Boesch v. Gräff* (2) ).  There
Co. LTD.    is no doubt, also, that this franchise or monopoly has no effective
Griffith C.J. operation beyond the territory of the State under whose laws it is
granted and exercised.  In this respect it partakes of the nature of
an immoveable as distinguished from a moveable.  It is true that the
distinction taken between moveables and immoveables by writers
on international law has never, so far as I know, been expressly
applied to the case of patent rights.  Yet there can be no doubt
that, as the right is the creation of the State, the title to it must
devolve, as in the case of land, according to the laws imposed by
the State.  In two important particulars, therefore, it is analogous
to an immoveable.  It differs from an immoveable in that it is
neither itself visible nor appurtenant to any particular thing that
is visible and fixed within the State.  It may perhaps be regarded
as, in a sense, appurtenant to the whole territory.

Such then being the nature of the right, how is it created?  In
my opinion there can be only one answer to this question:—By the
exercise of the sovereign power of the State.  The grant of
monopolies was originally regarded as an exercise of the Royal
Prerogative.  In England this exercise of the sovereign power is
now in effect (whether it is or is not in form) exclusively regulated
by Statute.  And in New South Wales, whether the Royal
Prerogative could or could not have been exercised without
legislation, the power of creating monopolies is now, and has been
since 1852, regulated by Statute.  Nor can there be any doubt
that the creation of such a monopoly is within the powers of
sovereignty conferred upon the State of New South Wales by its
Constitution.  We were invited to hold that, since the Australian
States are not Sovereign States in the full sense of the term, *i.e.*,
as between themselves and foreign Powers, their sovereignty
should be regarded as of a different and inferior nature, and that
the exercise of it might be examined by the tribunals of another
State to the same extent as the tribunals of the State itself might

(1) 14 How., 539, at p. 549.          (2) 133 U.S., 697, at p. 702.

make such examination. I cannot accept this distinction. In my
judgment it is competent for any tribunal before which the
question is raised to inquire as to the limits of the rights of
sovereignty possessed by another State whose acts are called in
question. But there the inquiry must stop. If the act in question
purports to be done within those limits, the case is in principle
the same as that of acts done in the exercise of an unlimited
sovereignty. This case must therefore, in my opinion, be con-
sidered on precisely the same basis as if the patent in question
had been granted by the Government of the French Republic or
of the United States of America. Now, it is the settled law of all
civilized countries that the acts of the Government of a State
done within its own territory are not examinable at all in the
Courts of another State. Whether they are examinable in the
Courts of the State itself depends upon municipal law. In
England many such acts are examinable, though not all. In some
countries they are not examinable at all, and in some only by
special tribunals.

In *Underhill* v. *Hernandez* (1), *Fuller* C.J., delivering the
judgment of the Supreme Court of the United States, said—
"Every sovereign State is bound to respect the independence of
every other sovereign State, and the Courts of one country will
not sit in judgment on the acts of the government of another done
within its own territory. Redress of grievances by reason of
such acts must be obtained through the means open to be availed
of by sovereign powers as between themselves."

This is undoubtedly a correct statement of English law. Does
then the exercise of the sovereign power involved in the grant of
a monopoly fall within this doctrine ? Mr. Higgins contended
that the grant of a patent right is not an act of government
within the rule just quoted, and, further, that even if it were an
act of government when made under the prerogative powers of the
sovereign, still the grant in New South Wales, which purports to
be made by the Governor, although under the Great Seal of the
State, is not such an act. On the latter objection it is sufficient
to say that, in my opinion, it is not competent for the Courts of
another country, when considering the exercise of the powers of

(1) 168 U.S., 250, at p. 252.

H. C. OF A.
1906.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.

Griffith C.J.

496                              HIGH COURT                      [1906.

H. C. of A.
1906.

Potter
v.
Broken Hill
Proprietary
Co. Ltd.

Griffith C.J.

a State, to draw any distinction as to the branch of sovereignty under which the exercise is made, or as to the mode in which, or the instrument by which, the power is exercised. Such matters are of purely internal and municipal concern, and are not open to review or inquiry by any external tribunal. Regarded from outside the State, the sovereignty is one and indivisible, by whatever hands it may be exercised.

The first objection requires more serious attention. There is, no doubt, for some purposes a great difference between an act of State, such as that involved in *Underhill* v. *Hernandez* (1) (which was an exercise of physical force) and the grant of a monopoly. But I apprehend that any exercise by a *de facto* repositary of any power of sovereignty, which results in the creation of a right of property that can only be created by such an exercise, must be regarded as an act of the State itself. This appears to be the foundation of the doctrine referred to in the passage cited by *Story* J. from *Vattel*, and quoted both by Lord *Herschell* L.C. and Lord *Halsbury* in *British South Africa Co.* v. *Companhia de Moçambique* (2). " The defendant's judge (that is, the competent judge), says he," referring to *Vattel*, " is the judge of the place where the defendant has his settled abode, or the judge of the place where the defendant is when any sudden difficulty arises, provided it does not relate to an estate in land, or to a right annexed to such an estate. In such a case, inasmuch as property of this kind is to be held according to the laws of the country where it is situated, and as the right of granting it is vested in the ruler of the country, controversies relating to such property can only be decided in the State in which it depends." (*Story, Conflict of Laws*, sec. 553). In *Chitty's* edition of *Vattel*, p. 173, the words "as the right of granting it is vested" are translated " as the right of granting the possession is vested." We have not had an opportunity of consulting the original text of *Vattel*, but I conceive that the variation in language makes no difference to the argument, which is, that the right of creating a title to such property as land, being vested in the ruler, that is in the sovereign power, of the country, controversies relating to such property can only be decided in the State in which the property is

(1) 168 U.S., 250.              (2) (1893) A.C., 602, at pp. 623, 631.

3 C.L.R.]        OF AUSTRALIA.        497

situated. The reason appears equally applicable to patent rights, which, as already pointed out, are created by a similar exercise of the sovereign power. In *In re Bett's Patent* (1), it was held that an instrument of grant made by the sovereign authority of Belgium, and purporting to confer a monopoly within that State, was an act of State within the meaning of the Statute (14 & 15 Vict. c. 99 s. 7), which allows "Proclamations  .   .   .  and other acts of State" to be proved by sealed copies. The grant was, as said by their Lordships of the Judicial Committee, "an act of the governing power of the country." And, applying the rule, which I have cited from *Underhill* v. *Hernandez* (2), the Courts of another country ought not to sit in judgment upon such an act. In *British South Africa Co.* v. *Companhia de Moçambique* (3), when before the Court of Appeal, Lord *Esher* M.R., in his judgment considered at length the reasons why the Courts of any country do not assume jurisdiction in matters that occur beyond their own territory, and, after pointing out that by general consent the law *rei sitae* does not govern moveables, and the reason for the adoption of that rule, he said :—" These are the reasons for the general consent as to personal property that it follows the person, and it is the general consent which gives the general jurisdiction. The jurisdiction is prior to any rule of venue made with regard to the method of exercising the jurisdiction.   We then have to consider the question, whether, by general consent, the only valid ground on which it can rest, a similar jurisdiction has been given in respect of real or immoveable property." In the same case in the House of Lords Lord *Halsbury* L.C. said (4): "No two questions can be more distinct than the question whether a matter is within the jurisdiction of the English Courts at all, and whether a matter undoubtedly within the jurisdiction of the Courts shall be assigned for trial to particular Courts in England. There is a concurrence of opinion of most jurists, if not all, as to the difference between what we call realty and personalty, by whatever words those things are designated in the jurisprudence of foreign countries, which affects very materially the right to try." He then refers to the passage from *Vattel* already quoted. In my judgment these principles

H. C. of A.
1906.
~~
POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.
——
Griffith C.J.

(1) 1 Moo. P.C.C. N.S., 49 ; 9 Jur. N.S., 137.
(2) 168 U.S., 250.
(3) (1892) 2 Q.B., 368, at p. 397.
(4) (1893) A.C., 602, at p. 631.

498                    HIGH COURT                    [1906.

H. C. of A.  are equally applicable when the Courts of one country are called
1906.        upon to inquire into the validity of the exercise of the powers of
POTTER       government of another country in the creation of a right of
v.           property which can only be enjoyed within the territory of the
BROKEN HILL
PROPRIETARY  latter country.
Co. LTD.
                 I will next consider what is involved in denying the validity of
Griffith C.J.  a patent right or monopoly purporting to be created by an act of
             the Government of a country having power to create it.  It is
             not in controversy that by the law of New South Wales such a
             right can only be created in respect of a new invention.  If the
             Government of that State assumes to grant a monopoly in respect
             of an alleged invention which is not new, the Government must
             have been misled.  For it cannot be supposed that it would have
             assumed to create a right when the facts were such that it could
             not lawfully do so.  By the law of New South Wales the grant
             may be recalled by the proper tribunal on proceedings properly
             instituted, and the objection of want of novelty may be taken by
             any person against whom the alleged right is sought to be
             enforced.  It was contended that, as in the latter case the decision
             of the tribunal is only binding as between the parties, the abstract
             validity of the grant is not put in question, but only its validity
             as between the parties to the action.  But this argument, in my
             opinion, rests upon a confusion between a fact and the evidence
             of the fact.  Whether the patent is valid or invalid by the law of
             New South Wales is a single question, just as the validity or
             invalidity of a marriage between A and B is a single question.
             Different decisions may be given by different tribunals before
             whom the fact is called in controversy, as in the Yelverton case,
             but the fact is single.  The fundamental question is whether
             the tribunal has jurisdiction to inquire into the fact.  The
             matter of parties is subsidiary only, and, if the Court cannot
             inquire into the fact, no person can be allowed to raise the ques-
             tion in any form of proceedings.  It is settled law that an English
             Court cannot entertain a suit in which the question of title to
             foreign land is directly in controversy : *British South Africa Co.
             v. Companhia de Moçambique* (1).  The Courts will no doubt
             entertain such a question of title if it arises merely incidentally

                          (1) (1893 A.C., 602.

in a case in which the foundation of the jurisdiction is a personal obligation arising from contract or quasi-contractual relationship between the parties. But this is the only exception. In the United States of America it has always been held that questions directly arising under patents, which are granted in the exercise of the federal power, are cognizable only in federal Courts. The reasons assigned for this rule do not appear to throw much light upon the question now in debate, since they seem to rest upon an exercise of the assumed power of Congress to confer exclusive jurisdiction upon federal Courts in proper cases, or else upon the nature of the right created by the Acts of Congress under which the grant is made, one of the incidents of which right is that in an action for infringement certain powers, which from the nature of them can only be exercised by a federal Court, may be exercised by the Court in which the action is pending. But, while this rule is well settled, it is also settled that if the validity of a patent arises merely incidentally in an action otherwise within the cognizance of a State Court that Court will not refuse to entertain the question. The rule followed seems to be in principle identical with that followed by the English and American Courts with regard to the title to foreign land.

In my opinion the same rule must be applied to foreign patents that is applied to foreign lands. The reasons upon which the rule in the one case are founded are, I think, equally applicable to the other.

It is, however, contended for the plaintiff that the case of a grant of a patent is peculiar in this respect, that the grant is made on the condition that the right granted cannot be enforced against anyone who can prove that the invention was not novel, that it is therefore a conditional and not an absolute grant, since the person claiming rights under it may be put to proof of performance of the condition. And it is said that to put him to such proof does not involve an examination into the validity of the exercise of the powers of government by the State by which the patent is granted. The same arguments would apply to a grant of land made on the faith of representations of fact, if by the law of the country its validity might be impeached in a suit by the grantee against a stranger to enforce his rights under the

H. C. of A.
1906.

POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

Griffith C.J.

500                           HIGH COURT                    [1906.

H. C. of A.    grant. This argument is, in my opinion, founded upon a mistaken
1906.       use of the word "condition." When a grant is made upon a
Potter      condition, properly so termed, it is necessary to inquire whether
v.          the condition exists in order to discover whether the grant has
Broken Hill
Proprietary come into operation. It is an incident of every contract or grant
Co. Ltd.    that if it is obtained by misrepresentation it may be avoided by the
Griffith C.J. person deceived. But this incident is not properly called a condi-
tion. In the case of an ordinary contract or grant it is clear that
the objection can only be taken by the person deceived, and the
circumstance that in the case of patents the English law allows
the objection to be taken by anyone of the inhabitants of the
country, all of whom are prejudicially affected by the deceit
practised on the Crown, does not alter the nature of the objection
itself. The distinction is analogous to that between what is void
and what is voidable. An inquiry into the performance of a
condition assumes that the grant is a valid instrument, and deals
only with the question whether the prescribed event or condition
has or has not happened, while an inquiry into the validity of the
grant itself stops short at the period when the instrument is
executed.

For these reasons I am of opinion that the substantial question
sought to be raised by the defendant is the validity of the act of
the governing power of New South Wales in granting the patent
sued on, and that such a question can only be dealt with by the
proper Courts of that State.

Barton J. Though many cases were cited in which the dis-
tinction between local and transitory actions had been closely
discussed, in my view, decisions as to what actions are local and
what are transitory are not on the question really involved,
although much learning may be found in the reports of such
cases helping to throw light on the present question. That
question, namely, whether the validity of a patent granted by
the government of one country can be directly tested in the
Court of another, is in this Empire one the answer to which
depends, so far as we are concerned, on the limits which in the
absence of legislative mandate, the Courts impose on their own
jurisdiction in recognition of international comity. On the other

hand, the extent to which that comity leads Governments to tolerate any pronouncement, judicial or otherwise, upon the validity of their acts by Courts of other nations, is not the subject of judicial inquiry. In *Companhia de Moçambique* v. *British South Africa Co.* (1), Lord *Esher* M.R. was the dissenting Judge of the Court of Appeal, *Fry* and *Lopes* L.JJ. being the majority. On appeal to the House of Lords his view was adopted, and it was held that an action would not lie in England for trespass to land committed in a foreign country. In that case, notwithstanding the difference between the questions for decision, Lord *Esher's* reasoning is interesting and helpful in the consideration of the present dispute. He said: "The main point in the case seems to me to be, whether the English Courts have ever, for the purpose of granting any relief whatever, entertained any action founded directly on an injury to the plaintiff in respect of his right to land or other immoveable property situated abroad, and, if not, what has been the real ground of their refusal to do so. Has the refusal been rested on the purely municipal difficulty with regard to the venue of the place where the action is to be tried, or upon a prior and larger difficulty, that the law of England has declined from the beginning to assume jurisdiction?" . . . . "The question, whether the Courts of a nation will or will not entertain jurisdiction of any dispute, is to be determined exclusively by the nation itself—*i.e.*, by its municipal law. If by express legislation the Courts are directed to exercise jurisdiction, the Courts must obey. If there is a proper inference to the same effect, the result is the same. But there are certain rules which have by universal consent indicated the circumstances from which the inference may properly be drawn. We have to consider what is the inference in respect of matters arising abroad. The first cardinal rule, agreed upon by all jurists, is one arising necessarily from the division of mankind into nations. 'It is plain that the laws of one country can have no intrinsic force, *proprio vigore*, except within the territorial limits and jurisdiction of that country . . . Whatever extra-territorial force they are to have is the result, not of any original power to extend them abroad, but of

(1) (1892) 2 Q.B., 358, at p. 394.

H. C. OF A.
1906.

POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

Barton J.

H. C. OF A.
1906.

PORTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

Barton J.

that respect which from motives of public policy other nations are disposed to yield to them,' etc. : *Story's Conflict of Laws*, sec. 7. 'This is the natural principle flowing from the equality and independence of nations' (sec. 8)." . . . . "With regard, then, to acts done within the territory of a nation, all are agreed that such nation has without more jurisdiction to determine the resulting rights growing out of those acts; but, with regard to acts done outside its territory it has no jurisdiction to determine the resulting rights growing out of those acts, unless such jurisdiction has been allowed to it by the comity of nations." The principles there laid down are most material to the proper determination of this case.

Although it may not be quite accurate to call the States of this Commonwealth sovereign in the literal and extensive meaning of that term, still they may justly be so termed, as to the entire ambit of the legislative powers conferred on them, and of the executive powers either expressly conferred or necessary for the complete enjoyment of their legislative rights or the complete effect and execution of their laws. In the exercise of that defined sovereignty, apart from the powers and laws of the Imperial Government and Parliament, on the one hand, and those of the Australian people in their federal or national capacity, on the other, they are as independent of each other and as much entitled to freedom from interference as any nations in Europe. Their right of making patent laws and of saying in such laws, for example, how their patents should be granted, by whom and to whom, was part of this defined sovereignty, and so remains except so far as it has been affected by the exercise of the federal legislative power as to patents. It is only within the particular State that in the nature of things the patent right granted before 1903 could operate by virtue of a State Statute. For, to quote Lord *Herschell* L.C., in *Steers* v. *Rogers* (1), "What is the right which a patentee has or patentees have? It has been spoken of as though a patent right were a chattel, or analogous to a chattel. The truth is that letters patent do not give the patentee any right to use the invention—they do not confer upon him a right to manufacture according to his invention. That is a right which

(1) (1893) A.C., 232, at p. 235.

he would have equally effectually if there were no letters patent
at all; only in that case all the world would equally have the right.
What the letters patent confer is the right to exclude others from
manufacturing in a particular way, and using a particular inven-
tion." That is a right exercisable only within the territory of the
Government which grants it. If Mr. Potter, for instance, wished
to exercise such a power of exclusion within Victoria, it would
be preposterous for him to ask the Government of South Aus-
tralia to grant it to him. He must go to the authorities of this
State. Is it not then a strange proposition that a right which
cannot exist outside New South Wales territory should be
enforceable extra-territorially by a branch of the governing power
of every other country? The proposition, if true at all, is as
large as that. The governing power of New South Wales, in the
execution of its Statute, has granted by its patent this right of
exclusion from manufacturing and using this invention within
the limits of that State. As already pointed out, that is a right
which cannot possibly exist outside the limits of New South
Wales. In the absence of legislative power to interfere with the
right of any other State to exclude its own subjects from the use
of a manufacture, the whole subject matter is excluded from the
cognizance or competence of the State itself, and its Courts
cannot sit in judgment to determine whether such rights are
validly granted. Holding that opinion, I concur with the learned
Chief Justice in the conclusion to which he has come, that is to
say, that the validity of this patent cannot be passed upon in the
way proposed.

It was argued that the validity of the grant might be drawn
in question here because of a class of cases of which several
examples were cited. These are cases such as *Davis* v. *Cornue*
(1), though that case itself was not cited. There the New York
Court of Appeals held that a Court of one State may, where it has
jurisdiction over the parties, determine the question whether a
judgment between them, rendered in another State, was obtained
by fraud, and if so, may, *acting in personam*, enjoin the enforce-
ment of it, although its subject matter is situated in such other
State. In delivering the judgment of the Court to this effect,

(1) 151 N.Y.R., 172, at p. 178.

H. C. OF A.
1906.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.

Barton J.

H. C. or A.
1906.
⏝
POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.
—
Barton J.

*Martin* J., referred to the familiar rule that a Court of Equity may render a decree in regard to contractual rights, even when the property the subject of contract is in another State or country, and in effect stay the execution of a foreign judgment, or, in the United States, of a judgment recovered in a federal Court, when the parties are within the jurisdiction of the Court. He quotes with approval the following statement of the law by Pomeroy, in his Equity Jurisprudence, III., sec. 1318: The jurisdiction to grant such remedies is well settled. Where the subject matter is situated within another country or State, but the parties are within the jurisdiction of the Court, any suit may be maintained and remedy granted *which directly affect and operate upon the person of the defendant and not upon the subject-matter,* although the subject matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts towards it, and it is thus ultimately, though indirectly, affected by the relief granted.

But it is clear that these exceptional cases go to prove the rule, for unless the inquiry is incident to the exercise of the jurisdiction *in personam,* it may be inferred that the jurisdiction does not exist, that the subject matter must not be dealt with, and that the validity of the records, judgments and acts of State of another Power is not otherwise examinable.

As to the quality of the grant of the patent in this case, it seems to me to be quite immaterial whether it is called an act of State or not, or whether the term "act of State" is properly reserved for certain occasions such as those mentioned by *Sir J. F. Stephen* in his History of the Criminal Law, as cited by Mr. Higgins. The question for us is whether this was an act in exercise of the supreme governing power, and that is a question to be determined not merely by considering whether, for instance, there is a prerogative in existence, a subject to which Mr. Mitchell devoted some time in his argument, or whether the act in question is legislative, judicial, or executive. But the question to which an answer must be given is this:—Is the thing you propose to examine, and of which you propose to test the validity, an act of the supreme governmental power in any of its branches of another State in respect of a matter which is within its jurisdic-

tion and committed to it for the exercise of that governmental
power ?  There can only be one answer to that question in respect
of the grant of this patent, and whether the thing done is called
an act of State or not seems to me totally immaterial.  The
legislature of New South Wales having certain powers of law
making, has exercised them for the purpose of regulating the
grant of patents.  Under that legislation what purports to have
been an act of the Governor in Council in the issue of letters
patent is put forward as a matter to be examined here.  It seems
to me the inquiry stops on the threshold.  If a grant is put
forward as an act of the supreme governmental power of New
South Wales in respect of a matter in which this State has no
share, in respect of which its rights and duties are totally distinct,
then it cannot be sustained that, whether it was an act of State
of those two States or anything else, the validity of that grant
can be inquired into by the Courts of this State.  Mr. Mitchell
was strongly impressed with the view that this matter can only
be dealt with by an exercise of the executive power, and there-
fore he argued very earnestly that, if that were so, it could only
be dealt with by an exercise of the prerogative, and he said that,
as the commission of the Governor of New South Wales gave no
delegated right to him in respect of the prerogative to deal with
letters patent, so this was an act which could not be looked upon
as a prerogative act in the usual sense of the term, but was merely
some act derivative from the terms of the Statute.  It seems to
me that that inquiry is immaterial as between separate States,
and the States of the Commonwealth are separate in this
respect, that they have separate powers, distinct and operating
upon different territories and rights.  They are so distinct from
each other that the aspect in which their respective exercise of
power is to be regarded is not that of municipal but that of
international law.  In that aspect it is to no purpose to inquire
whether an act is executive or legislative or otherwise, so long as
it is an active exercise of the supreme governmental power.  So I
think the inquiry about the prerogative leads to no practical
result in this case.  As dealing with acts of a government *de facto*,
the case of *Underhill* v. *Hernandez* (1), which was much dis-

(1) 168, U.S., 250.

H. C. OF A.
1906.
⁓⁓
POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.
⁓
Barton J.

506                          HIGH COURT                          [1906.

H. C. OF A.
1906.

POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.

Barton J.

cussed during argument, seems to require some consideration.
The acts complained of as tortious, were acts of military govern-
ment committed by the defendant as the head of a revolutionary
army in Venezuela, after defeating the troops of the administration,
which the revolutionists avowed had ceased to be the legitimate
government. Ultimately the revolutionists prevailed, the capital
was taken, and a new civil government was installed and was
formally recognized by the United States as the legitimate
government of Venezuela. The plaintiff, Underhill, was a citizen
of the United States. Having failed in his action in the Circuit
Court, he took his case to the Circuit Court of Appeals. His
appeal was rejected by that Court, on the ground "that the acts
of the defendant were the acts of the government of Venezuela,
and as such are not properly the subject of adjudication in the
Courts of another government" (1). On certiorari, the Supreme
Court of the United States held that the Circuit Court of Appeals
was justified in that conclusion. Now, the proposition laid down was
that the Courts of the United States could not hold the defendant
to account, as he had acted in exercise of the sovereign power of
Venezuela. The decision was unquestionably right, and rests on
a principle acknowledged and applied in English law. But in
the present action, the acts of the Government of another State
are challenged, as between subjects of this State, and not by
way of impleading the other State or the representative of its
sovereign power. It is undeniable that, as *Fuller* C.J., put it,
"Every sovereign State is bound to respect the independence
of every other sovereign State, and the Courts of one country
will not sit in judgment on the acts of another done within its
own territory." But the decision in Underhill's case was given
in the assertion of "the immunity of individuals from suits
brought in foreign tribunals for acts done" by them "within
their own States, in the exercise of governmental authority,
whether as civil officers or as military commanders." And it
may be urged that in the two propositions quoted, the Circuit
Court of Appeals on the one occasion or the Supreme Court on
the other, did not mean to go beyond the maintenance of that
immunity, and that to the extent that the declarations are pushed

(1) 26, U.S. App., 573.

beyond that meaning they become *obiter dicta*, because there was nothing more to be decided in the case. All this is true. It does not follow, however, that they are not of wider application in reason.

The principles upon which they depend are plainly applicable not only to acts of military administration in time of war, but also, as declared in that case, to acts of civil administration in time of peace. Also I am of opinion that those principles apply where the direct purpose of the litigation is to establish the invalidity of an act of the government of a State notwithstanding it is not the sovereign or governmental power of that State that is impleaded, as was the case in *Underhill* v. *Hernandez* (1).

I conclude by adopting the words of *Sir Frederick Pollock* (*Pollock on Torts*, 6th ed., p. 113):—" If we may generalize from the doctrine of our own Courts, the result seems to be that an act done by the authority, previous or subsequent, of the government of a sovereign state in the exercise of *de facto* sovereignty, is not examinable at all in the Courts of justice of any other state. So far forth as it affects persons not subject to the government in question, it is not examinable in the ordinary Courts of that state itself. If and so far as it affects a subject of the same state, it may be, and in England it is, examinable by the Courts in their ordinary jurisdiction."

O'CONNOR J. In the course which the case has taken, and in the view which I hold as to the last point argued, I find it necessary to deal with one question only, namely whether it is within the power of the Supreme Court of Victoria to try an issue involving the validity of a patent granted by the Governor of New South Wales under his sign manual and the seal of that State in accordance with the provisions of the New South Wales *Patent Act* of 1899. It would be impossible to escape from that issue in the trial of the case. The action is for infringement of the rights of the patentee. The rights conferred by a patent are well described by Lord *Herschell* L.C., in *Steers* v. *Rogers* (2). "What is the right which a patentee has or patentees have? It has been spoken of as though a patent right were a chattel or

(1) 168 U.S., 250.          (2) (1893) A.C., 232, at p. 235.

H. C. OF A.
1908.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.

Barton J.

508                         HIGH COURT                        [1906.

H. C. of A.  analogous to a chattel.  The truth is that letters patent do not
1906.    give the patentee any right to use the invention—they do not
POTTER   confer upon him a right to manufacture according to his invention.
v.
BROKEN HILL  That is a right which he would have equally effectually if there
PROPRIETARY  were no letters patent at all; only in that case all the world would
Co. LTD.
         equally have the right.  What the letters patent confer is the right
O'Connor J.  to exclude others from manufacturing in a particular way, and
using a particular invention."  The defence necessarily involves
a denial of that exclusive right, first, on the ground that no valid
patent was issued to the plaintiff, and secondly, on the ground that
the defendant did what is complained of by virtue of the rights
conferred upon it by another patent issued by the same
authority and under the same Statute.  The New South Wales
*Patent Act*, which regulates the rights of the parties, expressly
declares that every ground which was formerly available as a
ground for repeal of a patent by *scire facias* shall be available by
way of defence to an action of infringement.  Before the passing
of the *Patents Act* in England the King issued patents for inven-
tions by virtue of his common law right controlled by the
*Monopolies Act*.  He had no power to grant a patent unless in the
circumstances set forth in sec. 6 of that Statute.  If, for instance,
it were proved in the proceedings for *scire facias* that the patentee
was not the "true and first inventor," or that the subject of the
patent was not novel, it was adjudged that the grant was void
and the King had been deceived into issuing it.  Various Statutes
relating to patents have in modern times regulated the exercise
of prerogative in the issue of patents in England, but, as pointed
out by Edmunds in his book on Patents, at p. 3, the grant of
letters patent is still a power within the prerogative of the Crown
regulated as to procedure by the *Patents Act*.  The prerogative
spoken of in this connection of course is not the personal preroga-
tive of the monarch.  The grant of a patent is an executive act,
and done, as other executive acts are done, on the advice of res-
ponsible officers of the Crown.  Thus the exercise of the
prerogative to grant a patent is an exercise of the executive power
of the community in the manner provided by Statute.  Mr.
Higgins has contended that no such prerogative power is vested
in the Governor of New South Wales, and that the grant of a

OF AUSTRALIA.

patent in that State is merely the exercise of a statutory power under the *Patents Act* by the authority designated in the Act for that purpose. I do not think that the distinction is of much moment, but, if it is important, I think it is beyond question that, whatever prerogative power to grant patents is in England vested in the King, is in New South Wales for the purpose of New South Wales patents vested in the Governor. It is not necessary to consider whether such a power existed in the Governor before the passing of the New South Wales Statutes regulating patents, but it is clear that the *Patents Act* of 1899 recognizes its existence. The important question however is whether the grant of a patent is an exercise of the executive power of the State of New South Wales. The procedure under the Act is as follows—a petition from the applicant to the Governor setting forth certain particulars is lodged with a Minister of the Crown, and is then referred by the Minister to the examiner. The examiner reports thereon to the Minister. The Minister, after considering the petition and the report of the examiner, may or may not in his discretion report his approval of the prayer of the petition to the Governor, the latter on receipt of the Minister's report may or may not in his discretion grant the letters patent under his sign manual and the seal of New South Wales. It seems to me of little moment whether the grant so issued is described as an exercise of prerogative power regulated by Statute, or as an exercise of the power of the Executive Government conferred upon it by Statute. It is in either view an exercise according to its discretion of the supreme executive power of the State. If there were any reason to doubt the power of the State by its Governor to grant patents within New South Wales, there would be good ground for the contention that its claim to exercise that power would be examinable in a Victorian Court, because the State is sovereign only as to matters within its jurisdiction. But there is no reason to doubt the jurisdiction of the State in this respect. The power is directly recognized, and its exercise regulated by the Statute. Under these circumstances the matter for our consideration may be thus stated—Is it within the competency of a Victorian Court to inquire whether the Executive Government of New South Wales has properly or improperly exercised an executive power which it

H. C. OF A.
1906.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.

O'Connor J.

510                                    HIGH COURT                              [1906.

H. C. of A.
1906.
Potter
v.
Broken Hill
Proprietary
Co. Ltd.

O Connor J.

has jurisdiction to exercise according to its discretion, or, putting the question in another form, has a Victorian Court jurisdiction to determine whether the Governor in exercising that power has or has not been deceived into issuing a grant in respect of which the conditions precedent for its lawful issue did not exist? It has been conceded throughout the argument that, for the purposes of the question now under consideration, the several States of Australia stand towards each other in the position of foreign States. The question whether a Court can or cannot inquire into the validity of the executive acts of a foreign State depends principally upon the application of a well known principle of international law. The Courts of a country have and must exercise the jurisdiction within their own territory which their laws give them. If their laws gave them express jurisdiction to inquire into the validity of the acts of a foreign Government, their right to do so and to bind persons subject to their jurisdiction by their decisions could not be questioned. But the Courts of every country are bound to give effect to the principles of international law unless to do so would be to decline the exercise of jurisdiction expressly conferred on them by their own laws. The principles of international law, which systematizes the comity of nations, generally recognize that the Courts of a country will not inquire into the validity of the acts of a foreign State, except subject to certain well-known limitations. The principles upon which the limitations rest are concisely stated as follows in the *Companhia de Moçambique* v. *British South Africa Co.* (1), by Lord *Esher* M.R. in his judgment in the Queen's Bench Division—a judgment which was afterwards upheld in the Court of appeal. "With regard, then, to acts done within the territory of a nation, all are agreed that such nation has without more jurisdiction to determine the resulting rights growing out of those acts; but, with regard to acts done outside its territory it has no jurisdiction to determine the resulting rights growing out of those acts, unless such jurisdiction has been allowed to it by the comity of nations." For instance, the Courts of most nations will refuse to adjudicate upon claims of title to foreign land in proceedings founded upon an alleged invasion of the proprietary rights attached to it. It

(1) (1892) 2 Q.B., 358, at p. 395.

was on that ground that the House of Lords in the *British South Africa Co.* v. *Companhia de Moçambique* (1) held that the Supreme Court of Judicature in England had no jurisdiction to entertain an action to recover damages for trespass to land situate in a foreign country. Similarly the Courts of most nations will refuse to inquire into the validity of the acts of a Foreign Government done within the territory of that Government. I do not know that the principle has been better stated anywhere than in the following words of Chief Justice *Fuller* in delivering the opinion of the Court in *Underhill* v. *Hernandez* (2):—"Every sovereign State is bound to respect the independence of every other sovereign State, and the Courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves." That was a case in which Hernandez, in command of a revolutionary army in Venezuela, committed, as commander, certain acts of trespass and other wrongs to the plaintiff then living in the city of Bolivar. The revolutionary government under which Hernandez was acting was recognized by the United States as the government of Venezuela. Judgment having been given for the defendant in the Circuit Court, the Circuit Court of Appeal affirmed the judgment, holding that "the acts of the defendant were the acts of Venezuela and as such were not properly the subject of adjudication in the Courts of another Government." The Supreme Court of the United States held that the Circuit Court of Appeal was justified in that conclusion and upheld the verdict. Another illustration may be taken from the English Courts. In *Gladstone* v. *Ottoman Bank* (3), it appeared that the government of the Sultan of Turkey had granted to the plaintiffs, under the name of the "Bank of Turkey," the exclusive right of issuing bank notes in Turkey. Subsequently the Sultan's government, in derogation of that grant, made a similar concession to the defendants under the name of the Ottoman Bank, the defendants then being a company incorporated by charter carrying on business in London. A bill was

H. C. OF A.
1906.
⌇
POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.
⌇
O'Connor J.

(1) (1893) A.C., 602.          (2) 168 U.S., 250, at p. 252.
          (3) 1 Hem. & M., 505.

H. C. OF A.
1906.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.

O'Connor J.

filed by the plaintiff on behalf of the Bank of Turkey, against the Ottoman Bank its directors and the Sultan, praying a declaration of the plaintiff's exclusive right and an injunction against the Ottoman Bank and its directors. The Vice-Chancellor, *Sir W. Page-Wood*, decided on demurrer that the Court had no jurisdiction to interfere, holding that an engagement entered into with a foreign government such as that upon which the plaintiff's rights depended was not an engagement which the Court could enforce or against the breach of which it could give any relief. In the course of his judgment he says (1):—"Now, unless the Court is prepared to hold that this is a contract which it can enforce against the principal, it seems to me impossible (inasmuch as all the rights of the plaintiffs stand upon the contract) to hold that, if the same sovereign power chooses to act in derogation of the right granted by the first sovereign act, I can interfere with the sovereign power itself to prevent an act in derogation of it. But if I cannot interfere with the principal, how can I interfere with the accessory, namely, the person who is alleged to be aiding in defeating the rights which the sovereign power has granted by the first concession. That the grant operates through the medium of the sovereign power of the *Ottoman* Empire acting for state purposes there can be no question. Mr. *Rolt* attempted to draw a distinction between the act of a sovereign doing something for his own benefit, and the act of what is called the legislature, where a legislature exists; but the fact that the sovereign has the control of the money current in his kingdom only amounts to this; that it is a privilege enjoyed by him for the public purposes of his country. The right of ascertaining what shall be the current coin of the kingdom is vested in the sovereign of the country, but that right, like every other right which he holds *qua* sovereign, is presumed to be exercised for the benefit of the community upon public grounds. This is not a contract for the private benefit of the sovereign, of which this Court might take cognizance, but simply a grant of the sole right of issuing notes as part of the current coin of his realm, made by the Sultan in his public capacity as the sovereign of the country."

The two cases quoted are cases in which the principle of inter-

(1) 1 Hem. & M., 505, at pp. 510-11.

national law stated by Chief Justice *Fuller* in *Underhill* v. *Hernandez* (1), was applied. But illustrations of the principle might be multiplied indefinitely. Foreign Governments from time to time in all parts of the world grant railway concessions or mining concessions to persons living within the jurisdiction of the English Courts. The concessions are conferred sometimes by act of the legislature where legislatures exist, sometimes by act of an executive government responsible to the legislature, or sometimes, as in the case of Russia, by the personal act of the Sovereign exercising the executive power of the community. In the case of States or Colonies whose sovereign power is limited, the limits of jurisdiction are matter for inquiry by any Court, but, when once it is clear that the act done is within their jurisdiction, they stand for this purpose in the same position as sovereign States. One can hardly imagine anything more against the principle of the comity of nations than that an English Court should take it upon itself to decide, for instance, upon the validity of a concession granted by the Czar of Russia to an English company, or to determine, as between two concessions granted by him in reference to the same subject matter, which should prevail. Once admitting, as it must be admitted, that the grant of the patent in question here was within the jurisdiction of the executive government of New South Wales, I find it impossible to distinguish in principle that executive act from the executive acts under consideration in *Underhill* v. *Hernandez* (1), in the Ottoman Bank, or in the granting by foreign Governments of railway and mining concessions.

I have purposely avoided using the expression "act of State." That expression is no doubt often used in the special sense explained by *Sir James Stephen* in his History of the Criminal Law of England in the passage quoted by Mr. Higgins from p. 61. It is at best a vague and unsatisfactory term, and I assent to Mr. Higgins' argument that it cannot be applied to the grant of a patent. The authority therefore cited by the Attorney-General in *In re Betts' Patent* (2) cannot be taken as establishing that the grant of a patent is an "act of State" in any technical sense of

H. C. OF A.
1906.

POTTER
*v.*
BROKEN HILL
PROPRIETARY
CO. LTD.

O'Connor J.

(1) 168 U.S., 250.          (2) 9 Jur. N.S., 137.

H. C. of A.
1906.

POTTER
v.
BROKEN HILL
PROPRIETARY
Co. Ltd.

O'Connor J.

the term. The decision merely interpreted the words "act of State"
used in the 7th section of the *Evidence Act* (14 & 15 Vict. c. 99), as
applied to the document of grant of a Belgian patent. But I think
that case may be taken as establishing that the grant of a foreign
patent is a document evidencing an act of the foreign State, that is
the executive government representing the Sovereign Power of the
State, and therefore that the granting of the patent is an exercise
of that power. Mr. Mitchell relied upon *R.* v. *Clarke* (1) and *R.*
v. *Hughes* (2), as establishing the position that the validity of
grants by a State Governor under the authority of a State Statute
will be inquired into. In those cases the Courts of the State were
inquiring into the validity of the executive acts of its own State. A
State may give its Courts what jurisdiction it pleases to inquire
into the executive acts of the State. Its laws may give its Courts
the fullest jurisdiction to inquire into any act of its executive
government, and in the case of British Possessions that inquiry
may be further considered on appeal by the Privy Council.
International law or the comity of nations has no concern with
cases of that kind. In *Clarke's Case* (1), the validity of a New
Zealand grant was inquired into by the New Zealand Courts and
on appeal by the Privy Council. In *Hughes' Case* (2) a similar
inquiry took place in the South Australian Courts into the
validity of a grant of the Governor of South Australia, and went
on appeal to the Privy Council. In neither of those cases could
the principle now under consideration have any application.

It is true that the principle of international law with which I
am dealing is subject to certain modifications. For instance, it
has been generally recognized that the Courts of a State may
inquire into matters, which by comity of nations would other-
wise be outside their jurisdiction, where the act or transaction in
the foreign country is not directly but only indirectly the subject of
inquiry. Again, there are cases in which a Court of Equity in the
exercise of its jurisdiction *in personam* will investigate acts and
transactions which have taken place in a foreign country, which
would otherwise by comity of nations be outside their field of
inquiry. It is unnecessary to do more than mention these modifi-

(1) 7 Moo. P.C.C., 77.                    (2) L.R. 1 P.C., 81.

cations of the general principle because there are no circumstances in this case which make them applicable.  Mr. Higgins' strongest contention was based upon an ingenious and somewhat new view of the nature of the grant of a patent.  The grant he urges is a conditional grant—the conditions being that the applicant is the first and true inventor, that the invention is a novelty, and that the other circumstances exist which make the issue of the grant valid under the Statute of Monopolies.  He says that the matter therefore for inquiry by the Victorian Court is not the validity of the patent, but whether the applicant has duly fulfilled the conditions upon which the grant was made by the Governor of New South Wales, and that such an inquiry can be made without any breach of the principles of international law.  If the grant of the patent is a conditional grant that would be so.  But the answer to the contention is obvious.  The grant, we have had the terms of it before us, is not a conditional, but an absolute grant.  No conditions can be implied from its terms, nor can any conditions be implied from its nature and incidents.  The whole purport of the *Patents Act* of New South Wales is, while recognizing patent grants as under the old law, to provide machinery for inquiry and investigation by officers of the government before a patent is issued, and the cancellation of the grant when it ought not to have issued.  But the nature of the grant is not altered.  Its incidents are well known, and are the same now as they were when the Statute of Monopolies was passed.  The declaration in the Act, that although *scire facias* is abolished as a method of procedure, the grounds of *scire facias* will be grounds of defence to an action of infringement, indicate that the legislature did not intend to alter the nature of the grant of a patent, but intended it to remain, what it always has been, the absolute grant of a monopoly made by the sovereign executive power to a subject, but liable to be declared void by the Courts, and withdrawn and cancelled if it should at any time be proved that the sovereign power was misled into issuing it by incorrect representations of the applicant.  As the grant therefore is not conditional on its face, and cannot from its nature be held to be conditional, the contention of Mr. Higgins must fail.  For these reasons I am of opinion that the Supreme Court of Victoria could not try this case

H. C. or A
1906.
~~~~
POTTER
v.
BROKEN HILL
PROPRIETARY
CO. LTD.
~~~~
O'Connor J.

516                            HIGH COURT                        [1906.

H. C. of A.
1906.

Potter
v.
Broken Hill
Proprietary
Co. Ltd.

O'Connor J.

without inquiring into the validity of the patent grant, and could not make that inquiry without violating a fundamental principle of the comity of nations which is binding on the Victorian Courts in the absence of any Victorian law authorizing them to make such inquiry. The case, therefore, not being justiciable in the Victorian Courts, I am of opinion that the decision of the Supreme Court was right, and the appeal should be dismissed.

*Appeal dismissed with costs.*

Solicitors, for appellant, *Braham & Pirani*, Melbourne.

Solicitors, for respondent, *Moule, Hamilton & Kiddle*, Melbourne.

B. L.


HIGH COURT OF AUSTRALIA.]

AUSTIN AND OTHERS    .    .    .    .    APPELLANTS ;
            PLAINTIFFS,
                          AND

AUSTIN AND OTHERS    .    .    .    .    RESPONDENTS.
            DEFENDANTS,

ON APPEAL FROM THE SUPREME COURT OF
VICTORIA.

H. C. of A.
1906.

Melbourne,

*March* 6, 8, 9,
12, 13, 14.

Griffith C.J.,
Barton and
O'Connor JJ.

*Trustee—Breach of trust—Negligence—Duty of one of two executors—Custody of documents of title—Mortgage deed left in hands of solicitor—Solicitor one of executors—Mortgage not registered—Receipt of mortgage money by solicitor-executor.*

It is the duty of a trustee, in managing the trust affairs, to take those precautions which an ordinary man of business would take in managing similar affairs of his own.

Executors omitted to register a mortgage given to their testator during his lifetime. They also left documents, which in the absence of registration operated as an equitable mortgage only, in the possession of a firm of solicitors acting for the estate by express authority of the will, and of which one of them was a