# DECLARATION OF JOHN V. SWINSON

# EXHIBIT D

[HIGH COURT OF AUSTRALIA.]

NORBERT STEINHARDT AND SON LIMITED . PLAINTIFF;

AND

METH AND ANOTHER . . . . . DEFENDANTS.

H. C. OF A.
1960-1961.
⎯⎯
MELBOURNE,
1960,
*May* 16-18,
*Oct.* 24:

SYDNEY,
*Nov.* 8;
⎯⎯
MELBOURNE,
1961,
*June* 6.
⎯⎯
Fullagar J.

*Patents—Groundless threats of legal proceedings—When threat regarded as made—Threat made in England—Not justiciable in Australia—Strict territoriality of patents—Threat allegedly made in Australia—Established to satisfaction of Court—Whether remedy discretionary or as of right—Patents Act 1952-1955 (Cth), s. 121.*

An action under s. 121 of the *Patents Act* 1952-1955 (Cth) is not maintainable in Australia in respect of a threat of proceedings for infringement of an Australian patent made in England.

For the purposes of s. 121 a threat is to be regarded as made at the time when, and at the place where, it is received by the person to whom it is addressed.

Where in an action under s. 121 of the *Patents Act* it is established that the defendant has threatened the plaintiff with an action for infringement of the patent and the defendant has failed to satisfy the court that the acts in respect of which the action was threatened would constitute an infringement of any patent rights possessed by him, the court has no discretion but is bound to make the declaration and grant the relief referred to in sub-s. (1) of the section.

ACTION under the *Patents Act* 1952-1955 (Cth).

Norbert Steinhardt and Son Limited brought proceedings in the High Court pursuant to s. 121 of the *Patents Act* 1952-1955 (Cth) against Max Meth and Meth Patents Pty. Limited in respect of certain threats to institute legal proceedings for the infringement of letters patent allegedly made to it by the individual defendant and to a potential customer of the plaintiff by the defendant company.

The relevant facts and the provisions of s. 121 of the Act are fully set out in the judgment of *Fullagar* J. hereunder.

*G. H. Lush* Q.C. and *A. C. King*, for the plaintiff.

*R. J. Ellicott*, for the defendants.

*Cur. adv. vult.*

105 C.L.R.]    OF AUSTRALIA.    441

FULLAGAR J. delivered the following written judgment:—

In this action the plaintiff claims a declaration and an injunction in respect of certain alleged threats to institute legal proceedings for the infringement of letters patent. The cause of action asserted is that which is given by s. 121 of the *Patents Act* 1952-1955 (Cth). Section 121 (1) provides: " Where a person, by means of circulars, advertisements or otherwise, threatens a person with an action or proceeding for infringement of a patent, or some other like proceeding, then, whether the person making the threats is or is not entitled to or interested in a patent, or is or is not interested in an application for a patent, a person aggrieved may bring an action against the first-mentioned person and may obtain a declaration to the effect that the threats are unjustifiable, and an injunction against the continuance of the threats, and may recover such damages (if any) as he has sustained, unless the first-mentioned person satisfies the court that the acts in respect of which the proceedings were threatened constitute, or, if done, would constitute—(a) an infringement of a patent in respect of a claim in the specification which is not shown by the plaintiff to be invalid; or (b) an infringement of rights arising from the publication of the complete specification of a claim in the specification which is not shown to be one which would be invalid if a patent had been granted in respect of the complete specification."

The plaintiff is a company incorporated in the United Kingdom. The individual defendant, Max Meth, of Atlantic City, New Jersey in the United States, is the owner of Australian patent No. 204989 and of a number of other patents in various countries. It is sufficient at the moment to refer to the general nature of the invention the subject of patent No. 204989, which is, I think, the only patent ultimately relevant in this case. The complete specification on which that patent was granted states: " This invention relates to an improved method of applying a layer of metallic copper to a surface or base and more particularly to an improved galvanic method of applying a protective copper coating to the silvered reflecting surface of a mirror in such manner that the copper will be hardened with resultant improved protective and appearance qualities." The application for that patent was lodged on 14th September 1955, but it was a " convention application ", and it was granted with 9th December 1954 (the date of application in the United States) as the priority date of all the claims. This patent was not actually sealed until after the commencement of the action on 8th November 1956, but it had been published

H. C. OF A.
1960-1961.
NORBERT
STEINHARDT
AND SON
LTD.
v.
METH.

Nov. 3.

442        HIGH COURT        [1960-1961.

H. C. of A.
1960-1961.

NORBERT
STEINHARDT
AND SON
LTD.
v.
METH.

Fullagar J.

under s. 43 of the Act on 15th March 1956. The defendant company, Meth Patents Pty. Ltd., is a company incorporated in the State of New South Wales, of which Max Meth is a director. Another director is John Windsor Davies of Bethesda, Maryland, a patent attorney.

The alleged threats of which the plaintiff complains are contained in two letters, dated respectively 8th May 1956 and 3rd October 1956. The first is written by John Windsor Davies on behalf of the defendant Max Meth to the plaintiff company. The second is written by the defendant company to a potential customer of the plaintiff company in South Australia. The plaintiff is thus suing in respect of two separate and distinct causes of action—one against Max Meth, and the other against the defendant company. The first of these cannot, in my opinion, be maintained.

I would think it clear that a "threat" of the kind referred to in s. 121 is to be regarded as made at the time when, and at the place where, it is received by the person to whom it is addressed. The letter of 8th May 1956 was written in the United States, and was addressed to, and received by, the plaintiff company in England. It is unnecessary to set it out. It does, in my opinion, threaten to institute proceedings for infringements of patents in various countries, including Australia. But these threats were made not in Australia but in England. And, in my opinion, an action cannot be maintained in an Australian court for threats made in another country: cf. *Egg Fillers & Containers (Aust.) Pty. Ltd.* v. *Holed-Tite Packing Corporation* (1).

It is true, of course, that the Australian Courts, following the English Courts, will in many cases entertain an action in respect of a "foreign tort" or a wrong committed outside the territorial jurisdiction. But such an action can be maintained only if two conditions are fulfilled, and one of those conditions is not fulfilled in this case. It is no more necessary in this case than it was in *Koop* v. *Bebb* (2) to express a concluded opinion upon the controversy which surrounds *Machado* v. *Fontes* (3). The position may be stated by adapting to the present case what was said by the Court in *Koop* v. *Bebb* (4). An act which would have been actionable in Australia if committed in Australia, is actionable in Australia though committed in England, if it is actionable in England. The second condition is not fulfilled here.

In *Koop* v. *Bebb* (2) an action was brought in the Supreme Court of Victoria by two infant plaintiffs, who alleged that the death

(1) (1933) 51 R.P.C. 9.      (3) (1897) 2 Q.B. 231.
(2) (1951) 84 C.L.R. 629.    (4) (1951) 84 C.L.R., at p. 644.

of their father had been caused by the negligent driving of a motor car by the defendant. The accident in which the father had suffered fatal injuries had occurred in New South Wales, but his death took place in Victoria. The case was decided on the basis that the same act—the negligent driving causing death—was actionable in New South Wales by virtue of a New South Wales statute corresponding to the English *Fatal Accidents Act* 1846, and would, if it had been committed in Victoria, have been actionable in Victoria by virtue of a Victorian statute in similar terms. Because s. 65 of the English *Patents Act* 1949 gives (in terms similar to, though by no means identical with, those of our s. 121) a right of action for unjustified threats to sue for infringement of a patent, it might be suggested that the position in the present case is analogous to that which subsisted in *Koop v. Bebb* (1). But, by reason of what *Wolff, Private International Law* (1950) 2nd ed., p. 487 calls "the strict territoriality of patents", there is, in my opinion, no analogy. No action could be maintained in England for an infringement of an Australian patent, or in Australia for an infringement of an English patent: *Wolff, op. cit.,* pp. 486, 487; *Potter v. Broken Hill Proprietary Co. Ltd.* (2). It is true that this is referred to in *Dicey, Conflict of Laws,* 7th ed., (1958) p. 951, as "an open question". *Hancock, Torts in the Conflict of Laws* (1942) pp. 89, 90, seems to prefer the dissenting view of *a'Beckett* J. that it is enough if the "foreign" law would afford redress "for a wrong of the same character" as that which is the subject matter of the action. But this is not, I think, the sense in which the rule laid down in *Phillips v. Eyre* (3) has generally been understood, and it could lead to great uncertainties. Suppose that slander is actionable in the country of the *forum* but only libel in the *locus delicti commissi*. If the question were an open question for me, I should decide it as it has been decided, though I would not regard a patent as an "immovable": see *In re Usines de Melle's Patent* (4). But it is not, I think, an open question for me.

A patent for an invention gives a monopoly within the territory of the country which grants it. Outside that territory it has no force or effect. The English *Patents Act* relates exclusively to English patents, and the infringements which it makes unlawful are infringements of English patents only. In the same way, the Australian *Patents Act* relates exclusively to Australian patents, and the infringements which it makes unlawful are infringements

H. C. of A.
1960-1961.

NORBERT
STEINHARDT
AND SON
LTD.
v.
METH.

Fullagar J.

(1) (1951) 84 C.L.R. 629.
(2) (1905) V.L.R. 612; (1905) 3 C.L.R. 479.
(3) (1870) L.R. 6 Q.B. 1.
(4) (1954) 91 C.L.R. 42, at p. 48.

H. C. OF A.
1960-1961.

NORBERT
STEINHARDT
AND SON
LTD.
v.
METH.

Fullagar J.

of Australian patents only. If, therefore, an Australian patentee sues in Australia for an infringement alleged to have been committed in England, and it is asked whether the act complained of was actionable in England, the answer must be: No. For his Australian patent gives him no monopoly in England, and what the defendant has done in England is perfectly lawful according to English law. There can, in truth, be no such thing as an infringement in England of an Australian patent: see *Potter's Case* (1), per *Hodges* J. (2).

I have been speaking of actions for infringement. But the position must be the same with regard to an action for "threats". If such an action takes its normal course, it develops into what is practically an action for infringement with the roles of plaintiff and defendant reversed. It is with English patents only that s. 65 of the English Act is concerned, and with Australian patents only that s. 121 of the Australian Act is concerned. It is not unlawful to threaten in England to infringe an Australian patent, or to threaten in Australia to infringe an English patent.

For these reasons I am of opinion that the first of the two letters on which the plaintiff in this action relies affords no cause of action justiciable in this Court.

With regard to the second letter, the question which I have been discussing does not arise. That letter was written on 3rd October 1956 by the defendant company in Sydney to Messrs. Symons and Symons, who are a firm of glass manufacturers carrying on business in South Australia. The plaintiff company is not, so far as appears, the owner of any relevant patent, but it is in possession of a secret process for the copper backing of silvered mirrors, and its practice is to grant licences to manufacturers for the use of this process. In October 1956 it was negotiating with Symons and Symons for the licensing of that firm to use its process. It is not necessary to set out the letter in full. It refers to "the silver spray process" and to "the silver process", and it proceeds: "We are not prepared to sell guns for any opposition spray process whatsoever. I must also advise you that copper spray process which agitates the metal solution, and uses any form of metal dust, infringes the patent of Mr. Max Meth, which is patented throughout the world, and any infringement of this patent will be dealt with at law. As you advised that you anticipated purchasing a copper patent which we know is an infringement, I feel it my duty to advise you." The reference to "guns" is to spray guns supplied by the defendant

(1) (1905) V.L.R. 612.  (2) (1905) V.L.R., at p. 638.

Case 1:08-cv-02272  Document 28  Filed 06/16/2008  Page 7 of 12

company to licensees for use in the process the subject of patent No. 204989, to which reference has been made.

The letter to Symons and Symons is expressed in wide, vague and ambiguous terms. But I have no doubt that it contains a "threat" within the meaning of s. 121. And, because the threat is addressed to a potential customer of the plaintiff company, I have no doubt (although the threat was not in fact effective, since Symons and Symons in fact accepted a licence from the plaintiff company) that the plaintiff company is a "person aggrieved" within the meaning of s. 121. The plaintiff, therefore, is entitled to succeed against the defendant company in this action unless the defendant company can establish that the acts in respect of which the proceedings were threatened constitute, or, if done, would constitute an infringement of a valid patent. The defendant company maintains that the acts which are the subject of the threat would, if done, constitute an infringement of Australian patent No. 204989. No question of validity is now raised.

In order to decide the issue thus raised, it is necessary to examine and compare two documents: first, the complete specification of patent No. 204989, in order to ascertain what "acts" are covered by it, and, secondly, the letter of 3rd October 1956, in order to ascertain to what "acts" the threat is directed.

The general nature of the invention covered by the specification has already been stated, and it is necessary only, I think, to set out the first two of the eight claims which it contains. The first claim is for: "The method of copper plating a silvered surface by galvanic action which consists in simultaneously spraying a solution composed of 6 to 40 ounces of copper sulphate and $\frac{1}{4}$ to 2 ounces of phosphoric acid per gallon of water, and a mixture of water and metallic dust onto said surface, the dust being in a concentration of 1 to 6 ounces per gallon of water and homogeneously suspended in the water, said dust being selected from the group of metals consisting of zinc, iron, cadmium, nickel, cobalt and chromium." The second claim is for: "The method of copper plating a silvered surface by galvanic action which consists in providing a solution composed of 6 to 40 ounces of copper sulphate and $\frac{1}{4}$ to 2 ounces of phosphoric acid per gallon of water, in providing a container of water having 1 to 6 ounces per gallon of metallic dust therein, said dust being selected from the group of metals which consists of zinc, iron, cadmium, nickel, cobalt and chromium, in vigorously and continuously agitating said metallic dust and water to the point of causing said dust to be suspended

H. C. of A.
1960-1961.

NORBERT
STEINHARDT
AND SON
LTD.
v.
METH.

Fullagar J.

H. C. of A.
1960-1961.

Norbert Steinhardt and Son Ltd.
v.
Meth.

Fullagar J.

homogeneously in said water, and in then spraying said solution and said water mixture simultaneously onto said silvered surface."

When we turn to the letter, we find that the "act" to which the threat is directed is the use of "any copper spray process which agitates the metal solution and uses any form of metal dust." It appears to me to be plain, on the face of the documents, that the scope of what is threatened is vastly wider than the scope of what is protected by the specification.

I would readily agree with Mr. *Ellicott* that the letter cannot be treated as entirely self-explanatory. It is not written to a person entirely ignorant of the art of manufacturing mirrors. Both the writer and the addressee are moving in a commercial, not an academic, world. I am quite prepared to read— and I think we ought to read—the critical passage in the letter as dealing with, and limited to, processes of spraying copper and an agitated solution of dust of some other metal on the silvered back of a mirror. But the threat is directed at any and every process which involves these elements. The claims in the specification are much narrower: probably of necessity, lest they be too wide and invalid. Any spraying of copper is involved in the threat: the specification speaks only of the spraying of a solution of copper and phosphoric acid. (It is not, I think, to the point to say that there may be obvious chemical equivalents of phosphoric acid.) The spraying of any metal solution is involved in the threat: the specification speaks only of the spraying of six specified metals. Any agitation of the metal solution at any stage is covered by the threat: the specification speaks only of agitation during the actual process of spraying. The threat covers sprayings of copper and of a metal solution which are separate in point of time: the specification speaks only of simultaneous sprayings of copper and of a metal solution or mixture. There are minor differences between what is threatened and what is claimed by the specification, but those which I have stated appear to me to be vital differences, and to make it impossible to say that the doing of the acts threatened must constitute an infringement of Mr. Meth's patent No. 204989.

It should be mentioned that Mr. *Ellicott* put in evidence, in addition to patent No. 204989 and its complete specification, two applications, with their complete specifications, on which patents have not yet been granted, though both have been published under s. 43. The first (No. 208362) was published on 9th August 1956, i.e. after the first, but before the second, of the two letters on which the plaintiff has relied. I do not think that it carries the matter any further. The other (No. 212973) was not published until 16th May 1957.

|  |  |
|---|---|
| This was after the writing of the second letter, and it is therefore, I think, as Mr. *Lush* submitted, inadmissible. | H. C. of A. 1960-1961. |
|  | NORBERT STEINHARDT AND SON LTD. *v.* METH. |
|  | Fullagar J. |

This was after the writing of the second letter, and it is therefore, I think, as Mr. *Lush* submitted, inadmissible.

It must also be mentioned that Mr. *Ellicott* tendered evidence, the effect of which, as recorded by the shorthand notes, was as follows. He said: " I wish to call Mr. Meth to show how this invention came about, and of course qualifying him as an expert to do so, to explain the invention, to tell your Honour something of the art in other parts of the world and in Australia, to illustrate the inventive step between each of these specifications. I would also seek to bring evidence to show what the plaintiff's process is and what it involves. I wish to call evidence from persons skilled in the art, to explain the state of knowledge at the priority date of the first patent and since then in relation to each patent, having in mind its priority date, to show the true nature of the inventive step—to show, in other words, by way of illustration, in relation to the first patent, that it is not true to say, as the plaintiff has sought to say elsewhere, that it only involves the addition of phosphoric acid, but to show that this was an entirely new process. That is the sort of evidence I would seek to put before your Honour; and evidence from other people, independent experts, to show the true nature of the chemical reaction and the electrolytic action involved in this invention." Mr. *Lush* objected. Since the case did not raise any question of subject matter or novelty, and did not appear to me to raise any question of the construction of the specification to which such evidence could be relevant, I upheld counsel's objection and ruled that the evidence tendered was inadmissible.

It has not seemed to me to be anything to the point in this case to say or prove either that the persons to whom the threat was addressed were in fact using a process which infringed a patent owned by the defendant, or that the most effective, or the only effective, way of carrying out the process described in the letter containing the threat is to carry it out in accordance with the specification of the defendant's patent. Section 121 says nothing about such matters. It presents superficial difficulties, but on examination its effect seems to appear clearly enough. It is intended, I think, to have a strict and drastic effect—to supplement a less effective common law remedy and to take the place of a less effective statutory predecessor (s. 91A of the *Patents Act* 1903-1935). Irreparable damage may be caused by groundless threats of legal proceedings in relation to alleged monopolies. I am not, of course, suggesting for a moment that the threat in this case was groundless in any real sense: an action for infringement is already pending. I am merely suggesting a reason why no surprise should

H. C. of A.
1960-1961.

NORBERT
STEINHARDT
AND SON
LTD.
*v.*
METH.

Fullagar J.

be felt at the enactment of a strict provision with regard to "threats". Any unduly drastic operation is, I think, intended to be avoided by sub-s. (3) of s. 121, which provides that "Nothing in this section renders a legal practitioner or a patent attorney liable to an action under this section in respect of an act done by him in his professional capacity on behalf of a client." The solicitor or attorney is presumed to have satisfied himself that the case is a proper one for the threatening of legal proceedings. The defendant company has, in my opinion, brought itself within the strict terms of s. 121 (1). It has threatened the plaintiff with an action for infringement of a patent, and it has not been able to satisfy me that the acts in respect of which the action was threatened would constitute an infringement of any patent rights possessed by it.

The only remaining question (apart from costs) is, I think, whether the remedies given by s. 121 are discretionary or as of right. This is, I think, a difficult question. The corresponding English section (s. 65 of the *Patents Act* 1949) says that, unless the act threatened would be an infringement, the person aggrieved "shall be entitled" to the remedies of declaration, injunction and damages (if any damages have been sustained), but the difference of language in our s. 121 does not suggest to my mind that any different meaning was intended, and the "unless" clause strongly suggests that the only answer the defendant may make to the action for threats is by way of proof of infringement of a patent. On the whole, I am of opinion that, having reached the conclusion which I have reached, I am bound to make a declaration and grant an injunction. I can see no strong affirmative reason why I should not do so, but, if I had thought that these remedies under the section were discretionary in the sense in which they are discretionary in equity, I should have had to take into account my belief that an injunction is entirely unnecessary, and that the truth most probably is that it was merely *per incuriam* that the "threat" was expressed too widely.

I feel great difficulty with regard to costs. There are, as I have pointed out, two distinct causes of action against different defendants—in effect two actions, one of which fails, and the other of which succeeds. In these circumstances there seems to be something to be said for an order that, so far as the defendant Max Meth is concerned, the action against him be dismissed with costs, and that, so far as the defendant company is concerned, there should be as against it a declaration and an injunction and an order that it pay the costs of the plaintiff so far as they are referable to the

105 C.L.R.]          OF AUSTRALIA.                                449

action as against it. But such an order would create great difficulties, both because the defendants have throughout been represented by the same solicitors and counsel and for other reasons. It has to be remembered that the plaintiff obtained leave to amend its statement of claim in not unimportant respects after the commencement of the hearing. And, on the appeal from *Menzies* J. with regard to answers to interrogatories, the costs of the proceedings were made defendants' costs in the cause: *Meth* v. *Norbert Steinhardt & Son Ltd.* (1). That appeal was decided on the pleadings as they stood before amendment. It may be that the best course is to cut the knot, instead of trying to untie it, by making some such order as that the plaintiff have one half of its costs of the action. On the whole, I do not think that I should make an order as to costs without hearing counsel further. It will be convenient if counsel make their submissions in writing.

H. C. of A.
1960-1961.

NORBERT
STEINHARDT
AND SON
LTD.
v.
METH.

Fullagar J.

Having considered the submissions of counsel FULLAGAR J. delivered the following written judgment on the question of costs:—

1961, June 6.

I have considered the submissions made by counsel with regard to the difficult question of costs. Having regard to the relation between the two defendants and to the fact that they have shared a common representation and have presented a common defence, I agree with counsel for the plaintiff that there is a degree of unreality in the view (which I was at first inclined to take) that the case should be regarded as if the plaintiff, having brought two actions, had succeeded in one and failed in the other. For practical purposes I think that the two defendants may properly be treated as defending jointly. They were so treated in the interlocutory proceedings relating to interrogatories.

So approaching the matter, I think that the plaintiff is prima facie entitled to the costs of the action, but there are two matters which must be taken into consideration against it. In the first place, the costs must have been increased to some extent by the joinder of Mr. Meth as a defendant. This is perhaps a matter of no great moment. Of much greater importance is the amendment of the statement of claim, which the plaintiff at the first hearing in May 1960 applied for leave to make, and which I gave it leave to make. The amendment was important, and fully justified the application by the defendants for the adjournment which was granted. In consequence a considerable sum in costs must have been thrown away. On the other hand, what would be allowable under this head is likely to be difficult of anything approaching

(1) (1959) 33 A.L.J.R. 78, at p. 83.

Case 1:08-cv-02272   Document 28   Filed 06/16/2008   Page 12 of 12

H. C. OF A.
1960-1961.

NORBERT
STEINHARDT
AND SON
LTD.
v.
METH.

Fullagar J.

precise ascertainment, and the defendants elected to proceed after the amendment of the statement of claim had been made. In all the circumstances I think, on the whole, that the fairest order to make is simply to allow the plaintiff a fixed proportion of its costs, and the order which I will make is that the defendants pay to the plaintiff three-fourths of its taxed costs of the action.

*As against defendant Max Meth action dismissed. Declare that the threats contained in the letter dated 3rd October 1956 from defendant Meth Patents Pty. Ltd. to Messrs. Symons & Symons of 53 L'Estrange Street, Glenside, South Australia, are unjustifiable. Injunction restraining said defendant Meth Patents Pty. Ltd. from continuing the said threats. Order that defendants pay three-fourths of plaintiff's taxed costs of action including any reserved costs.*

Solicitor for the plaintiff, *Maurice Cohen*.
Solicitors for the defendants, *Lane & Lane*.

R. A. H.