IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DREW HERIOT and<br>DREW PICTURES PTY LTD.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>RHONDA BYRNE, THE SECRET LLC (AKA TS HOLDINGS LLC), PRIME TIME US INC., TS PRODUCTION HOLDINGS LLC, TS PRODUCTION LLC,<br>TS MERCHANDISING LTD., and ROBERT E. RAINONE, JR.,<br><br>    Defendants. | Civil Case No. 08CV2272<br><br>The Honorable Suzanne B. Conlon |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

David S. Elkins
Joseph A. Meckes
Joseph P. Grasser
SQUIRE, SANDERS & DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043
Telephone:  (650) 856-6500
Facsimile:   (650) 843-8777

Jack J. Carriglio
James G. Arigionis
MECKLER BULGER & TILSON
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  (312) 474-7900
Facsimile:   (312) 474-7898

Attorneys for Defendants
RHONDA BYRNE, TS RER LLC (erroneously named as "THE SECRET LLC" and "TS HOLDINGS LLC"), PRIME TIME US INC., TS PRODUCTION HOLDINGS LLC, TS PRODUCTION LLC,
TS MERCHANDISING LTD., and ROBERT E. RAINONE, JR.

**TABLE OF CONTENTS**

                                                                                                                                      **Page**

I.     SUMMARY OF REPLY ARGUMENT ........................................................................... 1

II.    ARGUMENT ..................................................................................................................... 2

        A.     The Court Should Dismiss This Action For Forum Non Conveniens .................. 2

                1.     The Federal Court of Australia Is Available And Adequate ..................... 2

                2.     The Private Factors Support Dismissal ...................................................... 4

                3.     The Public Factors Tip The Scales Further In Favor Of Requiring That The Parties' Dispute Be Determined In The Federal Court Of Australia ..................................................................................................... 6

                      a.     Choice of Law Principles Dictate that Australian Law Controls ............. 6

                      b.     Relative Congestion of the Courts Favors Dismissal ............................. 10

                      c.     Illinois Has Little or No Interest in Resolving An Ownership Dispute Arising Out Of The Creation Of A Film In Australia, By Australians For Broadcast on Australian Television .............................. 11

        B.     The Court Should In The Alternative Dismiss Or Stay This Action Under The Abstention Doctrine ..................................................................................... 11

        C.     All Claims By Heriot And All Claims Against Rainone Must Be Dismissed As A Matter Of Law ........................................................................... 13

III.   CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Automation by Design, Inc. v. Raybestos Products Co.*,
    463 F.3d 749 ............................................................................................................. 4

*Chelios v. Nat'l Hockey League Players' Ass'n*,
    2007 U.S. Dist. LEXIS 4260 (N.D. Ill., Jan. 18, 2007) ............................................. 4, 10

*In re Chicago Flood Lit.*,
    819 F. Supp. 762 (N.D. Ill 1993) ............................................................................. 11

*Cler v. Ill. Educ. Ass'n*,
    423 F.3d 726 (7th Cir. 2005) ..................................................................................... 4

*Finova Cap. Corp v. Ryan Helicopters U.S.A., Inc.*,
    180 F.3d 896 (7th Cir. 1999) ................................................................................11, 12

*Itar-Tass Russian News Agency v. Russian Kurier*,
    153 F.3d 82 (2d Cir. 1998) ..................................................................................... 6, 8

*Kamel v. Hill-Rom Co., Inc.*,
    108 F. 3d 799 (7th Cir. 1997) .................................................................................. 2, 5

*Lahiri v. Universal Music & Video Dist., Inc.*,
    513 F. Supp. 2d 1172 (C.D. Cal. 2007) ..................................................................... 6

*Markovitz v. Camiros, Ltd.*,
    67 U.S.P.Q.2d 1635, 1637 (N.D. Ill. 2003) ............................................................... 4

*Richlin v. MGM Pictures, Inc.*,
    2008 U.S. App. LEXIS 12917 (9th Cir. June 19, 2008) ............................................ 7

*Royal Sun Alliance Ins. of Canada v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006) ........................................................................................ 11

*Wilson v. Humphreys (Cayman) Ltd.*,
    916 F.2d 1239 (7th Cir.1990) ..................................................................................... 4

## FEDERAL STATUTES

17 U.S.C. §104(c) ............................................................................................................... 8

17 U.S.C. §411 .................................................................................................................... 4

## MISCELLANEOUS

*Nimmer on Copyright* (2007) §17.05 ............................................................................... 6, 7

I. **SUMMARY OF REPLY ARGUMENT.**

Defendants' Opening Brief, in conjunction with plaintiffs' Complaint, makes clear that the central issue of this action is ownership of *The Secret* movie (original edition) and the book of the same name that followed. Untangling ownership in turn revolves around a fundamental legal issue: which country's law applies? The answer is the law of the country with the most significant relationship to creation of the work at issue—Australia. Plaintiffs' Response Brief attempts to subtly shift the focus of the action away from the central issue of ownership to one of infringement (expressly pled as an alternative claim in the Complaint) and damages. But defendants' distribution of and receipt of revenue from *The Secret* movie and book are not disputed. Nor are these issues relevant to the ownership issue at the heart of this case.

When they do address facts relevant to creation of the movie, plaintiffs dispute none of the pivotal facts set forth in the Opening Brief. Rather, they raise some new facts incidental to the equation. For example, plaintiffs' Response Brief steers clear of the undisputed fact that only about 1.7% of the total hours invested in creating *The Secret* movie took place in the U.S., while the remaining 98.3% of work took place in Australia. Rather, plaintiffs rely on Heriot's study of the movie and resulting irrelevant contention that about 60% of the movie's running time reflects interviews of U.S.-based experts on the philosophies underlying *The Secret*.

Plaintiffs' avoidance of the central issue of ownership, failure to address the pivotal facts demonstrating that Australia is the country with the most significant relationship to the creation of *The Secret*, and emphasis on insignificant facts simply signals the weakness of their position. And, indeed, the Response Brief fails to offset defendants' showing that (i) Australia is an adequate alternative forum and (ii) the private and public factors both favor dismissal in consideration of the eight-month old Australian proceeding. The Court should thus dismiss for forum non conveniens. Likewise, plaintiffs wholly fail to address the factors for determining abstention. They instead rely on thematic statements from decisions noting, in dicta, that abstention is a doctrine to be invoked in exceptional circumstances. True enough. But the factors that must be applied here demonstrate that abstention is appropriate here.

Plaintiffs barely address the alternative motions to dismiss each of Heriot's claims and all claims against defendant Robert E. Rainone, Jr. The sole argument made to preserve Heriot's claim is that, for some reason, he is entitled to assert unjust enrichment (plaintiffs drop any pretense that Heriot possesses any other claim). But plaintiffs do not deny that Heriot lacks any ownership interest in the works at issue, nor do they explain how he is entitled to any remedy given the Complaint's assertion that all of Heriot's work on *The Secret* was through plaintiff Drew Pictures. Similarly, plaintiffs fail to explain how they have an unjust claim against Rainone. Plaintiffs allege that he is a shareholder of defendant entities, but advance no alter ego theory or any other basis for holding Rainone responsible for damages. In the event the Court denies the motion to dismiss for forum non conveniens or motion to dismiss or stay for abstention, these alternative motions to dismiss under Rule 12(b)(6) should be granted.

## II.     ARGUMENT.

### A.     THE COURT SHOULD DISMISS THIS ACTION FOR *FORUM NON CONVENIENS*.

The Opening Brief shows presents a classic case for dismissal of this action for forum non conveniens. The Australian action, where the parties have been litigating for eight months, is an available, adequate alternative forum. *See Kamel v. Hill-Rom Co., Inc.*, 108 F. 3d 799, 802 (7th Cir. 1997) (citation omitted). The balance of private and public interest factors likewise favors dismissal of the present action in favor of the Australian action. Plaintiffs naturally contend otherwise, but their arguments fall demonstrably short. Those shortcomings are examined in turn.

#### 1.     THE FEDERAL COURT OF AUSTRALIA IS AVAILABLE AND ADEQUATE.

Plaintiffs advance three reasons why the Federal Court of Australia is not an available, adequate alternative forum. First, plaintiffs contend that Australia is not an available forum "because Plaintiffs consent to Australian jurisdiction only as to plaintiff Drew Pictures, not to plaintiff Drew Heriot." Response at 8. This contention is plainly incorrect. Each individual and entity defendant submitted a declaration under penalty of perjury with defendants' present motion stating that she, he or it "will submit to personal jurisdiction in the courts of Australia in

connection with the claims alleged in the Complaint in this action." Byrne Decl. ¶2; Rainone Decl. ¶10; Zyck Decl. ¶2. Each *also* consents to Australian jurisdiction in connection with "any other claims based on alleged ownership by Drew Pictures Pty. Ltd. in *The Secret* or any part thereof." *Id.* This latter, additional consent apparently leads plaintiffs to argue that the consents do not cover claims by Heriot. The first part of the consent shows otherwise. In any event, because plaintiffs' Complaint only alleges co-ownership in *The Secret* by Drew Pictures,[1] the language of the latter, additional consent was merely crafted to track plaintiffs' allegations; no nefarious intent exists.

Plaintiffs next weakly contend that defendants have not shown that the consents are acceptable to the Australian court. But plaintiffs then admit (Response at 9) that the Australian court can accept the consents. This argument, too, thus fails.

Finally, plaintiffs argue that the Australian court cannot exercise jurisdiction over their claim of infringement under the U.S. Copyright Act. *Id.* This argument is a red herring. The parties' dispute—in both countries—revolves around the same issue of ownership of the copyrights to *The Secret* movie and book. As plaintiffs' Australian counsel admitted under oath in an affidavit submitted to support plaintiffs' pending motion the Australian proceeding in favor of this action, the Complaint in this action "raises the same issues for determination as were raised" by TS Production in the Australian Action filed last October. Rainone Decl. Ex. F ¶5(c). In any event, plaintiffs' infringement claim not only is expressly alleged in the alternative, it cannot be maintained as a matter of law. The infringement claim is brought in the alternative to allegations of joint ownership based on whatever "independently copyrightable contributions to the Works" plaintiffs think they have. Complaint ¶77. Plaintiffs have not alleged, however, that they obtained registrations for such "independently copyrightable contributions."[2] Absent

---

[1] Plaintiffs allege that "[b]y virtue of its employment of Heriot, Drew Pictures is the owner of Heriot's interest in the Works," (Complaint ¶2), and they only seek a declaration of Drew Pictures' co-ownership in *The Secret*. *Id.* ¶68.

[2] Plaintiffs contend that Heriot is a co-author of the purported "screenplay" for *The Secret* and co-author and direction of the movie, and that these interests belong to Drew Pictures by virtue of their employee-employer relationship. Complaint ¶¶1-2. The copyright registration obtained by Drew Pictures is to *The Secret* movie as a

registration to these alternatively alleged "independently copyrightable contributions," no infringement claim can be maintained. 17 U.S.C. §411(a); *Markovitz v. Camiros, Ltd.*, 67 U.S.P.Q.2d 1635, 1637 (N.D. Ill. 2003) ("The failure to obtain copyright registration bars a plaintiff from bringing suit under the Copyright Act."); *see also Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 n.1 (7th Cir. 2006) ("Registration is not a condition of copyright protection, but is necessary before an infringement suit may be filed in court.").[3]

### 2. THE PRIVATE FACTORS SUPPORT DISMISSAL.

Because the Federal Court of Australia is an available, adequate forum, the Court must weigh the private and public factors. In doing so, "the court has substantial flexibility in conducting its analysis and considering these factors." *Chelios v. Nat'l Hockey League Players' Ass'n*, 2007 U.S. Dist. LEXIS 4260, *8 (N.D. Ill., Jan. 18, 2007) (citing *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir.1990)).[4]

The private factors include

- Ease of access to sources of proof;
- Availability of compulsory process for the attendance of unwilling witnesses;
- The cost of obtaining the attendance of willing witnesses;
- The possibility of viewing the premises, if necessary; and
- All other practical problems that make trial of a case easy, efficient and economical.

---

whole, and not to any "independently copyrightable contributions." *Id.* ¶¶2, 55. In particular, plaintiffs do not allege copyright registration of the "tranSCRIPT" that "constitutes the screenplay for *The Secret*." *Id.* ¶30.

[3] Plaintiffs may be tempted to assert at any hearing that only this Court may determine their claim to an accounting based on Drew Pictures' alleged co-ownership of the copyright to *The Secret*. *See* Complaint ¶63. Such an assertion would be incorrect, as the Australian court would be empowered to order such an accounting if appropriate. Australian Copyright Act § 115(2) ("the relief that a court may grant in an action for an infringement of copyright includes an injunction (subject to such terms, if any, as the court thinks fit) and either damages or ***an account of profits***." (emphasis added)).

[4] Plaintiffs erroneously contend that the Court here "must accept all well-pleaded allegations as true." Response at 9 (citing *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005)). This rule applies to motions to dismiss under Rule 12(b)(6), as *Cler* makes clear. Motions to dismiss for forum non conveniens necessarily rest on facts outside the pleadings. *See generally Chelios* at *14-22 (relying on extrinsic evidence to balance public and private factors).

*Kamel*, F. 3d at 803 (citations omitted). The Opening Brief shows that *The Secret* movie was made in Australia (except for interviews in the United States that comprised less than 2% of the total production time), by an Australian production company (Prime Time Productions Pty. Ltd.), by an Australian director (Heriot, then living there), with an Australian crew (except for some U.S. personnel for interviews there), using Australian equipment, for an Australian television network (Nine Network). As a consequence, the vast majority of the sources of evidence—whether witness testimony, documents or film—are located in Australia.

In response, Plaintiffs scrounge for whatever U.S.-based sources of evidence they can identify. Response at 9. Heriot apparently lives in Los Angeles (on a temporary work visa). Byrne also lives in California for the time being, also on a temporary visa. But everyone else meaningfully involved in the production of *The Secret* movie, however, is in Australia. Plaintiffs cite the need for the depositions of current California residents Leni Mex (Heriot's ex-girlfriend and an Australian national) and Skye Byrne (defendant Byrne's daughter and an Australian national) to "confirm Mr. Heriot's role." *Id.* Plaintiffs also point to the need to depose some of the "teachers" interviewed for the movie. *Id.* Plaintiffs name Simon & Schuster, publisher of *The Secret* book, as a deponent. *Id.* And they want depositions of a person who worked on *The Secret* website (Dan Hollings) and four or so employees of the defendant entities. *Id.* at 10. But plaintiffs do not explain how these depositions are critical given that the key dispute is whether Australia or the U.S. has the most significant relationship to *The Secret* movie's **creation**.[5]

None of these proposed deponents, apart from Byrne and Herior, possess information relevant to the central issue of creation. Defendants acknowledge that Heriot was the director of *The Secret* movie. They admit that he was in the United States for eleven of the twenty filming days in this country (a fact plaintiffs do not dispute). Harrington Decl. ¶8. Plaintiffs acknowledge in their Complaint (and do not contend otherwise in their Response) that Heriot's various alleged contributions—including the promotional trailers, the "Rundowns," the

---

[5] As explained in the Opening Brief, this is key because the answer determines which country's law applies as to the central issue of ownership.

"Questions for Interview Subjects," the "2hr Paper Edit," the "tranSCRIPT" and various other "creations"—all occurred in Australia, not the United States. Complaint ¶¶22, 24, 25, 29, 30. No one needs depositions of Heriot's ex-girlfriend and defendant Byrne's daughter to confirm these facts. Nor will depositions of Simon & Schuster, or an individual who worked on the website for *The Secret*, or employees of the defendant distributing entities, shed light on which country has the most significant relationship with the movie's creation.

Focusing attention on the key issues confirms that the private factors tip in favor of litigating in the Federal Court of Australia. The public factors, addressed next, tip the balance further in that direction.

> **3.   THE PUBLIC FACTORS TIP THE SCALES FURTHER IN FAVOR OF REQUIRING THAT THE PARTIES' DISPUTE BE DETERMINED IN THE FEDERAL COURT OF AUSTRALIA.**
>
> **a.   Choice of Law Principles Dictate that Australian Law Controls.**

One of the reasons that this Court should not wade into this dispute is that Australian law will determine whether Drew Pictures has any ownership interest in the Film. Without citation to any authority, plaintiffs argue that this Court should ignore the Second Circuit's decision in *Itar-Tass Russian News Agency v. Russian Kurier*, 153 F.3d 82 (2d Cir. 1998), holding that copyright ownership is to be determined according to the law of the country with the "most significant relationship" to the works.[6] Although plaintiffs' criticize defendants for supposedly "ignoring" a single commentator, plaintiffs tellingly are unable to find any support for the notion that U.S. law governs ownership of a film (or the materials underlying the film) when the film is

---

[6] Plaintiffs complain that that *Itar-Tass* is an "outlier" case that has not been followed outside the Second Circuit. Response at 11. But the Central District of California recently adopted the case. *Lahiri v. Universal Music & Video Dist., Inc.*, 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007) ("Initial ownership of a copyrighted work is determined by the laws in the work's country of origin" (citing *Itar-Tass*)). Moreover, the American Law Institute last year advanced a "proposed final draft" of Section 313 of the Restatement on Intellectual Property that would require application of the law of the residence of the majority of the purported co-creators' to determine ownership. A copy of the proposed final draft Section 313 is attached. Apart from Nimmer, whose views are not endorsed by any court, plaintiffs have no support for their illogical argument that copyrighted works can have different owners in different countries depending entirely on nuances of the law where enforcement is sought.

created in Australia by Australians for broadcast on Australian television.[7] Both law and logic dictates that two or more foreign nationals' dispute over ownership of a work should be determined according to the law of their home country. They should not be permitted (as plaintiffs seek to do) to export their dispute to the United States in the hopes of taking advantage of law here that plaintiffs apparently deem more favorable to their cause.

Surprisingly, plaintiffs argue that the U.S. Copyright Act should govern ownership of all foreign films because Article 14bis(2)(a) of the Berne Convention provides that "[o]wnership of copyright in a cinematographic work shall be a matter for legislation in the country where protection is sought." The logical extension of this argument is that any country that simply passes some copyright laws has therefore enacted legislation regarding "ownership of copyright in a cinematographic work," rendering Article 14bis(2)(a) meaningless. The article is not meaningless. Unlike some other Berne Convention countries, Congress has not imbued the Copyright Act with any provision specifically governing ownership of the copyright in cinematographic works. *See Richlin v. MGM Pictures, Inc.*, 2008 U.S. App. LEXIS 12917, *17 (9th Cir. June 19, 2008) ("The plain language of § 101 does not shed light on whether Richlin was a coauthor of the Motion Picture" *The Pink Panther*.). Australia has such specific legislation: "the maker of a cinematograph film is the owner of any copyright subsisting in the film by virtue of this Part." Australian Copyright Act § 98(2)[8]; *see also* Australian Copyright Act § 22(4) (providing that "the maker of the cinematograph film is the person by whom the arrangements necessary for the making of the film were undertaken.") Because the U.S. has not enacted "legislation" specifically governing ownership of copyright in "cinematographic works," as contemplated in Article 14bis(2)(a), that article is of no help to plaintiffs.

---

[7] Moreover, although the Nimmer treatise critiques the foundational reasoning of the *Itar-Tass* court, nothing the relevant section of the treatise (section 17.05) suggests that U.S. law should govern determination of ownership in a work created in a foreign country. Additionally, none of the issues identified in the Nimmer critique are particularly applicable in the instant litigation because when "the issue is the relatively straightforward one of which of the two contending parties own a copyright, the issue is unquestionably an ownership issue, and the law of the country with the closest relationship to the work will apply to settle the ownership dispute." *Itar-Tass*, 153 F.3d at 91; *cf. Nimmer on Copyright* (2007) §17.05.

[8] Available at http://www.austlii.edu.au/au/legis/cth/consol_act/ca1968133/.

Plaintiffs' Berne Convention-based effort to "bootstrap" an ownership right under U.S. law for a work that plainly originated in Australia is also directly contrary to the U.S. Copyright Act itself. The U.S. Copyright Act expressly states that "[n]o right or interest in a work eligible for protection under this title may be claimed by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto." 17 U.S.C. §104(c). If plaintiffs would not have an ownership interest in The Secret under applicable choice of law principles (i.e., following the "substantial relationship test" articulated in *Itar-Tass*), they would not have an interest by application of the Berne Convention—even if their misinterpretation of Article 14bis were correct. Using Article 14bis to argue that Drew Pictures has rights under U.S. law that it otherwise would not have is directly contrary to Section 104(c).

Finally, even if plaintiffs could overcome these substantial obstacles, Australian law would still govern the determination of copyright ownership. The "works" at issue allegedly include various written works (to which Article 14bis does not relate). Indeed, plaintiffs' entire claim to ownership of an interest in *The Secret* book is based on the notion that Byrne allegedly copied written works (the "treatment" and "screenplay") purportedly authored or co-authored by Heriot. Complaint ¶46. Plaintiffs allege that Heriot created or jointly created these works in Australia, both before and after his trip to the U.S. for eleven days of filming interviews. Complaint ¶¶21-26, 29-30. Whether Heriot has an underlying ownership interest in any of these written works (and thus, any interest in the movie or the book) is thus a matter of Australian law—including whether Heriot was acting as an employee of Prime Time Productions ("PTP") at the time of their creation for purposes of the Australian work-for-hire doctrine. This is precisely the issue pending before the Federal Court of Australia.

Although plaintiffs try to manufacture a "significant factual dispute" over whether the Australia or the United States has the most substantial relationship to The Secret, the facts and evidence presented by the parties reveal no genuine dispute. The Secret was conceived by an Australian production company, written in Australia, filmed primarily in Australia, funded by an Australian network (and by PTP, an Australian company, and defendant Bryne, an Australian

national and resident at the time), edited in Australia and first exhibited in Australia. See Harrington Decl. ¶¶3, 6, 8, 17 and 18. None of these facts is disputed. Consequently, except for 1.7% of the total production man-hours spent filming interviews in the U.S., all of the work that purportedly giving rise to plaintiffs' claims took place in Australia.[9] The plaintiffs are an Australian company and an Australian national who were hired to work on *The Secret* by an Australian production company. Plaintiffs efforts to manufacture a link between the making of The Secret and the United States are weak at best. Only 20 days (out of a year in production) were spent in the United States—and then it was by an Australian film crew. Harrington Decl. ¶¶7-9. Plaintiffs do not deny defendants' evidence that the first performances of *The Secret* to audiences took place in Australia. Harrington Decl. ¶¶17-18. Instead, they contend (erroneously and without foundation) that the *first commercial sale* of the movie took place in the U.S.[10] In fact, the first commercial sales were truly international. Within the first ten minutes after *The Secret* was first available for paid viewing over the Internet on March 23, 2006, the movie was streamed to viewers in Australia, Austria, Canada, Germany, India, Italy, the Netherlands, Norway, Poland, Spain, Sweden, Switzerland, the United Kingdom and the United States, and by the end of the first hour the movie had also been purchased and viewed in Belgium, Denmark, Ireland and Israel. Reply Rainone Decl. (filed concurrently) ¶2. Within the first 24 hours of being offered for distribution, *The Secret* movie was purchased and viewed in 34 countries. *Id.*

---

[9] Plaintiffs sole rejoinder is a declaration of Drew Heriot claiming "just over 60% of the content of *The Secret* (Original Edition) is American and just under 40% is Australian." Response at 13 n.12. That a film is partially made "on location" overseas does not transform that movie into a foreign film. Under plaintiffs' analysis, the American science fiction classic *Star Wars* would be considered a Tunisian film, which is where a great deal of the action in *Star Wars* was filmed, or a U.K. film, given that most of the movie's frames were filmed on British sound stages. http://www.americanheritage.com/entertainment/articles/web/20060525-star-wars-george-lucas-movies-hollywood-luke-skywalker-darth-vader-american-graffiti-science-fiction-special-effects.shtml

[10] Defendants object to paragraph 16 of the Declaration of Drew Heriot, alleging that *The Secret* was first published in the United States, on the ground that the statement is without foundation for his personal knowledge. In fact, *The Secret* was first published in Australia through various screenings—including multiple screenings hosted by Heriot. Harrington Decl. ¶¶17-18. Plaintiffs do not deny these facts. In addition, the movie was offered for sale over the Internet in multiple countries at the same time, including the United Kingdom, the Netherlands and others, a fact that Defendants offer to prove if the Court considers such information relevant to its analysis.

Put simply, "the vast majority of the events described in the complaint occurred or originated in" Australia (*see Chelios v. NHL Players' Ass'n*, 2007 U.S. Dist. LEXIS 4260, *19). Plaintiffs simply offer no genuine basis from which to conclude that U.S. has a more substantial relationship to *The Secret* than Australia does.

The foregoing demonstrates that foreign law will control. This public factor weighs heavily in favor of dismissal (or, in the alternative, in favor of abstention).

### b. Relative Congestion of the Courts Favors Dismissal

Defendants' Opening Brief and accompanying evidence establish that the relative congestion of the two courts favors litigation of the dispute in Australia, the less congested forum. Plaintiffs' only response is an offhanded comment that "[t]he Court is in a superior position than the parties to evaluate the congestion of its own docket." Response at 14. They then point to the declaration of their New York lawyer, Jonathon Reichman, who opines without the benefit of any personal or expert knowledge that "procedurally, there is no difference between the Australian proceeding and the present one." Reichman Decl. ¶18. Such baseless assertions, made without any apparent foundation, are entitled to no weight.

Plaintiffs' Australian counsel notably avoids making such baseless assertions—because significant procedural developments have occurred, including transfer up from the Federal Magistrate's Court to the Federal Court, steps by plaintiff's Australian counsel to seek security for costs, amendments of the pleadings, and motion practice by both parties in relation to the instant action. *See* Swinson Decl. ¶3. To the extent the Australian proceedings are moving at a "glacial" pace (as plaintiffs characterize them), it is because plaintiffs have made substantial efforts in Australia to slow things down.

Other than argument and hyperbole, plaintiffs have no response to the compelling evidence that the Federal Court in Australia is far less congested than courts in this district. This factor favors dismissal.

       **c.**      **Illinois Has Little Or No Interest In Resolving An Ownership Dispute Arising Out Of The Creation Of A Film In Australia, By Australians For Broadcast On Australian Television.**

Plaintiffs assert (without citation to any authority) that Illinois has a "paramount interest in resolving disputes involving Illinois residents." Response at 14. Plaintiffs' bald assertion ignores that the crux of this dispute is whether Drew Pictures, an Australian company, has rights in *The Secret* that derive from its business relationship to Prime Time Productions Holdings Pty Ltd., the Australian production company that produced *The Secret* movie, and which then transferred the rights to TS Production LLC, a Hungarian limited liability company.

The fact that any Chicago-based entities are involved in the *marketing* of *The Secret* is beside the point and hardly creates a "paramount interest" as plaintiffs contend. The fact remains that juries in this District should not be burdened with resolving this almost entirely Australian issue, particularly when the Australian court was first vested with jurisdiction and is better equipped—both in terms of docket size and familiarity with the applicable law—to determine whether Drew Pictures owns any rights in *The Secret*.

**B.**    **THE COURT SHOULD IN THE ALTERNATIVE DISMISS OR STAY THIS ACTION UNDER THE ABSTENTION DOCTRINE.**

Plaintiffs' sole argument against staying or dismissing this case under the abstention doctrine is the fantasy that the Australian Action and this action are not "parallel." To support their argument, plaintiffs point to various differences between the parties and claims asserted in the Australian action and those asserted here. Response at 15. As noted in the Opening Brief, however, "parallel" does not necessarily mean "identical." *Royal Sun Alliance Ins. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006). Rather, "[s]uits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Finova Cap. Corp v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999); *In re Chicago Flood Lit.*, 819 F. Supp. 762, 764 (N.D. Ill 1993) ("identity of parties in both forums" is not needed for the action to be parallel). Here, the critical parties and critical claims are all at stake in Australia. And the sworn statement by plaintiffs' Australian counsel, filed in the Federal

Court of Australia to support plaintiffs' motion to stay that proceeding in favor of the one they filed here, tacitly admits that the cases meet the Seventh Circuit's definition of parallel in *Finova*:

> 5   Having reviewed the Complaint filed by Sayles Werbner PC in the USA, I note that:
>
>   (a)  the plaintiffs named in the Complaint are the Respondents in this proceeding;
>
>   (b)  the defendants named in the Complaint are: Rhonda Byrne, The Secret LLC, Prime Time US Inc, TS Production LLC (the Applicant in this proceeding), TS Production Holdings LLC, TS Merchandising Ltd and Robert Rainone Jr; and
>
>   (c)  the Complaint raises the same issues for determination as are raised in this proceeding (as well as a variety of further or additional matters).
>
> AFFIRMED by PETER JOHANNES TIBOR SELVAY
> at Melbourne in the State of Victoria
> this 23rd day of April 2008
>
> Before me:
> Rebecca Taube
> Level 50, 600 Bourke Street, Melbourne, Vic. 3000
> An Australian Legal Practitioner within the meaning of the Legal Profession Act 2004.

Rainone Decl. Ex. F ¶5.

While trying to twist the definition of "parallel" into something it is not, plaintiffs neglect the forest for the trees. Here, the "forest" is comprised of the abstention factors articulated by Seventh Circuit in *Finova*:

> (1) the identity of the court that first assumed jurisdiction over the property; (2) the relative inconvenience of the federal forum; (3) the need to avoid piecemeal litigation; (4) the order in which the respective proceedings were filed; (5) whether federal or foreign law provides the rule of decision; (6) whether the foreign action protects the federal plaintiff's rights; (7) the relative progress of the federal and foreign proceedings; and (8) the vexatious or contrived nature of the federal claim.

*Finova*, 180 F.3d at 898-899 (citations omitted). Each factor is met: (1) the Australian court first assumed jurisdiction; (2) plaintiffs are Australian residents and nationals, with little genuine

interest of proceeding here[11]; (3) resolution by a single court is critical to avoid piecemeal (and conceivably inconsistent) rulings; (4) Australian law governs Drew Pictures' ownership claims; (5) Australian law will protect the rights of plaintiffs (who are, after all, Australian); (6) the Australian litigation is advanced in the pleading stage and has been progressing since October 2007; (7) plaintiffs' U.S. claims appear contrived to avoid the principles of Australian law by which a motion picture is owned by the production company. Accordingly, this Court can readily apply the abstention doctrine to ensure that Drew Pictures' claims are resolved by the Australian court—the court best equipped to deal with claims of ownership that will most certainly be governed by Australian law.

    C. **ALL CLAIMS BY HERIOT AND ALL CLAIMS AGAINST RAINONE MUST BE DISMISSED AS A MATTER OF LAW.**

  Defendants moved to dismiss all claims asserted by Drew Heriot on the ground that he admittedly does not own (or even claim) any rights to *The Secret* and that his only interest is that of a shareholder of Drew Pictures. Defendants also moved to dismiss all claims alleged against defendant Robert Rainone on the ground that his only alleged involvement is as a shareholder of the defendant entities.

  Plaintiffs do not deny that Heriot has no personal interest in any of the intellectual property in dispute. Without citation to any authority, however, plaintiffs argue that the Rule 12(b)(6) motions as to Heriot should be denied because he has a claim for "unjust enrichment" against all Defendants "on the basis of 'Heriot and Defendant Byrne's understanding and representations that Heriot was entitled to a net percentage of profits.'" Response at 15. The argument makes neither legal nor common sense.

  The argument as to Heriot's purported claim of unjust enrichment is significant for what is not argued: that Heriot has standing to bring any other claim. The unjust enrichment claim,

---

[11] Heriot contends that litigating in his native Australia would be extraordinarily burdensome because he can only communicate with his counsel by email and could attend trial only at "enormous financial and personal expense." Heriot Decl. ¶27. Apart from somewhat less expensive airfare, Heriot does not explain, however, how any purported burden is substantially decreased by litigating in Chicago with lead counsel from Dallas.

while argued, is so legally infirm to barely merit discussion. Plaintiffs cite no authority for the proposition that a plaintiff has a claim for unjust enrichment against numerous defendants because one defendant did not perform an allegedly gratuitous promise. In fact, plaintiffs cite no authority at all, which is not surprising as no apparent authority supports a claim for unjust enrichment "on the basis of" an unperformed, unilateral promise.

Plaintiffs' unjust enrichment theory as against Rainone does not even claim a pretense at logic. How could Drew Heriot have a claim for unjust enrichment against Robert Rainone on the "basis of" a promise made by someone else? This is especially true when the person supposedly "enriched" allegedly benefited only by virtue of his position as a shareholder in defendant entities. Plaintiffs cite no authority for the proposition that a plaintiff can pierce the corporate veil by couching his claims on vague notions of "unjust enrichment" on "the basis of" a third persons' promise.

Heriot has no ownership stake in any of the claims asserted in the Complaint, and his "unjust enrichment" claim based on a unilateral promise to make an apparent gift fails to state a claim on which relief may be granted. In the event the Court declines to dismiss or stay this action in its entirety, all of Heriot's claims should be dismissed without leave to amend. Likewise, no claim is stated against defendant Robert Rainone, requiring that all claims against him be dismissed without leave to amend.

### III.  CONCLUSION

The central issue of this action is the ownership or co-ownership of rights in and to *The Secret*. That same issue was and is presented for resolution in the earlier-filed Australian Federal Court proceeding. Plaintiffs can adequately litigate whatever genuine claims they have against defendants in that older proceeding. Defendants respectfully request that the Court dismiss this

action so that the collateral litigation is put to an end and the parties' ownership dispute can be resolved without further distraction.

Dated:   June 25, 2008                               Respectfully submitted,

By:  /s/ David S. Elkins
    David S. Elkins
    Joseph A. Meckes
    Joseph P. Grasser
    SQUIRE, SANDERS & DEMPSEY L.L.P.

    Jack J. Carriglio
    James G. Arigionis
    MECKLER BULGER & TILSON

    Attorneys for Defendants
    RHONDA BYRNE, TS RER LLC
    (erroneously named as "THE SECRET LLC"
    and "TS HOLDINGS LLC"), PRIME TIME
    US INC., TS PRODUCTION HOLDINGS
    LLC, TS PRODUCTION LLC,
    TS MERCHANDISING LTD., and
    ROBERT E. RAINONE, JR.

> As of the date of publication, this Draft has not been considered by the members of The American Law Institute and does not represent the position of the Institute on any of the issues with which it deals. The action, if any, taken by the members with respect to this Draft may be ascertained by consulting the Annual Proceedings of the Institute, which are published following each Annual Meeting.

# The American Law Institute

## INTELLECTUAL PROPERTY: PRINCIPLES GOVERNING JURISDICTION, CHOICE OF LAW, AND JUDGMENTS IN TRANSNATIONAL DISPUTES

*Proposed Final Draft*

(March 30, 2007)

**SUBJECTS COVERED:**

Revisions to:
| | |
|---|---|
| Part I. | Definitions and Scope of the Principles |
| Part II. | Jurisdiction |
| | Chapter 1. Personal Jurisdiction over the Defendant |
| | Chapter 2. Jurisdiction over the Subject Matter |
| | Chapter 3. Jurisdiction over Simplification: Coordinating Multiterritorial Actions |
| Part III. | Applicable Law |
| | Chapter 1. In General |
| | Chapter 2. Title to and Transfer of Rights |
| | Chapter 3. Residual Principles Regarding Choice of Law |
| Part IV. | Recognition and Enforcement of Foreign Judgments in Transnational Cases |
| | Chapter 1. In General |
| | Chapter 2. Remedies |
| Glossary | |

Submitted by the Council to the Members of
The American Law Institute
for Discussion at the Eighty-Fourth Annual Meeting
on May 14, 15, and 16, 2007

The Executive Office
THE AMERICAN LAW INSTITUTE
4025 Chestnut Street
Philadelphia, Pa. 19104-3099
Telephone: (215) 243-1600 • Telecopier: (215) 243-1636
E-mail: ali@ali.org • Website: http://www.ali.org

©2007 BY THE AMERICAN LAW INSTITUTE
ALL RIGHTS RESERVED

**§ 313. Initial Title to Other Rights That Do Not Arise out of Registration**

(1) Initial title to other rights that do not arise out of registration is governed by:

    (a) If there is one creator, the law of the creator's residence at the time the subject matter was created;

    (b) If there is more than one creator:

        (i) the law of a creator's residence as designated by contract between or among the creators;

        (ii) if no contract resolves the issue, the law of the State in which the majority of the creators resided at the time of the creation of the subject matter;

        (iii) if no contract resolves the issues and a majority of the creators did not reside in the same State, the law of the State with the closest connection to the first exploitation of the subject matter; or

    (c) If the subject matter was created pursuant to an employment relationship, the law of the State that governs the relationship; or

    (d) If the subject matter created pursuant to a mass-market agreement containing a choice-of-law provision, the law designated in the contract, but only if the provision is valid under § 302(5).

(2) If the State whose law would govern under subsection (1) does not extend protection to the subject matter, then initial title is governed by the law of the State in which the right is first exploited and recognized.