IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| DREW HERIOT and<br>DREW PICTURES PTY LTD.,<br><br>       Plaintiffs,<br><br>       vs.<br><br>RHONDA BYRNE, THE SECRET LLC<br>(AKA TS HOLDINGS LLC), PRIME TIME<br>US INC., TS PRODUCTION HOLDINGS<br>LLC, TS PRODUCTION LLC,<br>TS MERCHANDISING LTD., and<br>ROBERT E. RAINONE, JR.,<br><br>       Defendants. | Civil Case No. 08CV2272<br><br>The Honorable Suzanne B. Conlon |

**DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION TO PRELIMINARILY ENJOIN DEFENDANT TS PRODUCTION LLC**

David S. Elkins
Joseph A. Meckes
Joseph P. Grasser
SQUIRE, SANDERS & DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043
Telephone:  (650) 856-6500
Facsimile:   (650) 843-8777

Jack J. Carriglio
James G. Arigionis
MECKLER BULGER & TILSON
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  (312) 474-7900
Facsimile:   (312) 474-7898


Attorneys for Defendants
RHONDA BYRNE, TS RER LLC
(erroneously named as "THE SECRET LLC"
and "TS HOLDINGS LLC"), PRIME TIME
US INC., TS PRODUCTION HOLDINGS
LLC, TS PRODUCTION LLC,
TS MERCHANDISING LTD., and
ROBERT E. RAINONE, JR.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 2

III.   ARGUMENT ................................................................................................................. 3

      A.    The Court Should Not Entertain This Motion Until After The Court First Determines Defendants' Fully Briefed And Pending Motions To Dismiss ......... 3

      B.    The Correct Standards Governing Plaintiffs' Motion ............................................ 3

            1.    Plaintiffs Bear A Heavy Burden In Showing Entitlement To The Extraordinary Remedy They Seek ........................................................ 3

            2.    Plaintiffs' Motion Seeks To Prevent TSP From Pursuing Its Rights In The Federal Court Of Australia And Thus Must Be Analyzed Under The Unique Standards Governing Anti-Suit Injunctions ............... 4

            3.    The Australian Action Is Not "Gratuitously Duplicative." ...................... 5

                  a.    The Present Action, Not The Pre-Existing Action In The Federal Court of Australia, Is Gratuitously Duplicative ............... 5

                  b.    Principles of International Comity Militate In Favor Of Denying Plaintiffs' Motion ........................................................... 7

      C.    Even If The Court Were To Apply The Incorrect Standards Advanced By Plaintiffs, Their Motion Still Fails ........................................................................ 8

            1.    Plaintiffs Have Not Shown They Are Reasonably Likely To Succeed On The Merits ............................................................................ 8

            2.    Plaintiffs Have Not Shown They will be Irreparably Harmed ................. 9

            3.    Plaintiffs Fail To Show No Adequate Remedy At Law ........................ 10

            4.    Plaintiffs Fail To Show That The Public Interest Will Not Be Harmed .................................................................................................... 11

            5.    On Balance, Plaintiffs Are Not Entitled To A Preliminary Injunction ............................................................................................... 12

IV.    CONCLUSION ............................................................................................................ 12

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Affymax, Inc. v. Johnson & Johnson*,
    420 F. Supp. 2d 876 (N.D. Ill. 2006) ........................................................................4, 5, 6

*Allendale Mutual Insurance Co. v. Bull Data System, Inc.*,
    10 F.3d 425 (7th Cir. 1993) ....................................................................................4, 5, 7

*Asset Allocation & Management Co. v. Western Employers Insurance Co.*,
    892 F.2d 566 (7th Cir. 1989) ...........................................................................................6

*Cadle Co. v. Whataburger of Alice*,
    174 F.3d 599 (5th Cir. 1999) ...........................................................................................6

*Celebration International, Inc. v. Chosun International, Inc.*,
    234 F. Supp. 2d 905 (S.D. Ind. 2002) .......................................................................9, 10

*Christian Legal Society v. Walker*,
    453 F.3d 853 (7th Cir. 2006) .............................................................................3, 4, 8, 12

*Deweese v. Reinhard*,
    165 U.S. 386 (1897)........................................................................................................11

*Gage v. Riverside Trust Co., Ltd.*,
    86 F. 984 (C.C.S.D. Cal. 1898)........................................................................................5

*Ideal Industrial, Inc. v. Gardner*,
    612 F.2d 1018 (7th Cir. 1979) .........................................................................................9

*Laker Airways, Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C. Cir. 1984) ....................................................................................5, 7

*Martin v. O'Grady*,
    738 F. Supp. 1191 (N.D. Ill. 1990) .................................................................................4

*Philips Medical Systems International B.V. v. Bruetman*,
    8 F.3d 600 (7th Cir. 1993) ...........................................................................................4, 7

*Porto Rico Tel. Co. v. Puerto Rico Communications Authority*,
    189 F.2d 39 (1st Cir. 1951)............................................................................................11

# TABLE OF AUTHORITIES
(continued)

**Page**

*Renegotiation Board v. Bannercraft Clothing Co., Inc.*,
    415 U.S. 1 (1974) ................................................................................................. 9

*Roland Machinery Co. v. Dresser Industrial, Inc.*,
    749 F.2d 380 (7th Cir. 1984) ............................................................................ 10

*Seattle Totems Hockey Club, Inc. v. National Hockey League*,
    652 F.2d 852 (9th Cir. 1981) ............................................................................. 5

*Ty, Inc. v. Publics International, Ltd.*,
    81 F. Supp. 2d 899 (N.D. Ill. 2000) ................................................................ 10

*Underwood v. Hilliard*,
    98 F.3d 956 (7th Cir. 1996) ......................................................................... 7, 11

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) .......................................................................................... 10

## FEDERAL STATUTES

28 U.S.C. §934 .......................................................................................................... 11

## OTHER

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995) ......................... 3, 11

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT.**

     Plaintiffs and Australian citizens Drew Pictures Pty. Ltd. ("Drew Pictures") and Drew Heriot ("Heriot") seek an anti-suit injunction to preclude defendant TS Production LLC ("TSP") from pursuing its legal rights in an action that TSP commenced in Australia against plaintiffs on October 18, 2007 (the "Australian action"), over eight months ago.  In particular, plaintiffs seek to enjoin TSP from maintaining a motion for anti-suit injunction that seeks to preclude plaintiffs from maintaining the present action, which is duplicative of and collateral to the much-earlier filed action in Australia.

     The Court should not entertain plaintiffs' motion at all.  Already fully briefed and pending before the Court are defendants' motions to dismiss for forum non conveniens and to dismiss or stay on abstention grounds.[1]  The Court should consider those motions before the present one and, as demonstrated by the papers in filed in support of defendants' motions, this entire action should be dismissed, or at the very least stayed.  Doing so would moot plaintiffs' present motion for extraordinary relief.

     The present motion lacks any merit to the extent considered.  Although plaintiffs have urged that their motion be considered with great urgency, TSP's motion in the Australian action (which plaintiffs seek to enjoin here) was noticed on April 23, 2008 for hearing on July 11.  The fact that plaintiffs waited two months to file their present motion belies plaintiffs' claim of urgency.  But their motion fails for other reasons.

     The first reason is that plaintiffs cannot meet the applicable standards for anti-suit injunctions (or, what is here an "anti-anti-suit injunction").  The applicable standard is whether the Australian action is "gratuitously duplicative" of the present action.  Given that the Australian action is one half-year older that the present case, this requirement is not met—indeed, the reverse is true.  Second, principles of international comity provide that this Court should avoid, if possible, enjoining proceedings in a foreign court, particularly where, as here,

---

[1] Defendants also move in the alternative to dismiss all claims by Heriot and all claims against defendant Robert E. Rainone, Jr. for failure to state a claim on which relief may be granted.

the foreign action was commenced first and the foreign court is more than adequate to adjudicate the rights of the moving party.  Finally, while not applicable, even the traditional four-part injunction test relied on by plaintiffs requires that the motion be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

TSP filed the "Australian action" on October 18, 2007 in response to assertions by Drew Pictures that it co-owns, through Heriot, copyrights to *The Secret*.  Cmplt. ¶57.  The Australian action thus seeks to establish TSP's sole ownership of all copyrights to *The Secret* movie and book.  *Id*.  Six months later, on April 21, 2008, plaintiffs filed the present action, essentially seeking the reverse of what TSP seeks in the Australian action.  *See, e.g.*, Cmplt. ¶68 ("Plaintiffs seek a Declaratory Judgment . . . that Plaintiff Drew Pictures is a joint owner of the Works").  In response, TSP immediately (on April 23, 2008) noticed a motion before the Federal Court of Australia for hearing on July 11 of an anti-suit injunction to prevent this collateral action from going forward in light of the pre-existing Australian action.  Declaration of David S. Elkins in Opposition to Motion for Preliminary Injunction ("Elkins Decl.") Ex. A.  Drew Pictures and Heriot simultaneously moved the Australian court to stay the Australian action in favor of this one.  That motion, too, is set for hearing on July 11.  *Id.* Ex. B.  Since then the parties have been briefing their respective cross-motions to the Australian court.

Meanwhile, this Court set an initial status hearing for June 16 (later moved to June 17 to coincide with defendants' noticed presentment of their motions to dismiss).  Minute Order of May 7, 2008 (docket no. 10).  Late in the afternoon of June 16, plaintiffs filed their motion to preliminarily enjoin TSP from proceeding with the anti-suit injunction motion in the Australian action.  In essence, plaintiffs seek an "anti-anti-suit injunction."  Although they had known about TSP's motion and the July 11 hearing in Australia since April 23, plaintiffs sought to present the present motion on June 17 (on barely more than twelve hours' notice) because of a professed great urgency:  the July 11 hearing in the Australian court, which plaintiffs had already known about for two months.

- 2 -

III.    **ARGUMENT.**

Plaintiffs' motion contends that an injunction is necessary to prevent defendants from using the Australian court to "strip this Court of its jurisdiction." Opening Brief at 8. Apparently aware of the prevailing "gratuitously duplicative" standard governing motions to enjoin foreign proceedings, plaintiffs seek instead to couch their motion as one to "prevent [TSP] from attempting to interfere with this Court's jurisdiction under the guise of an anti-suit injunction." *Id.* at 8 n.1. No matter how plaintiffs attempt to paint their motion, however, it seeks to enjoin proceedings in a foreign court. As shown below, plaintiffs' present motion itself seeks an anti-suit injunction. Plaintiffs thus must meet their heavy burden of satisfying the standards governing such motions. As demonstrated below, plaintiffs fall far short.

A.    THE COURT SHOULD NOT ENTERTAIN THIS MOTION UNTIL AFTER THE COURT FIRST DETERMINES DEFENDANTS' FULLY BRIEFED AND PENDING MOTIONS TO DISMISS.

As set forth in the Introduction and Summary of Argument, the Court should not reach plaintiffs' motion at all. Defendants' fully briefed, pending motions to dismiss establish that this action should be dismissed for forum non conveniens or, in the alternative, dismissed or stayed on grounds of abstention. Granting either motion moots the present one. In the event that the Court denies both of those motions and considers plaintiffs' motion for an anti-suit injunction, however, the motion should be denied for each of the reasons below.

B.    THE CORRECT STANDARDS GOVERNING PLAINTIFFS' MOTION.

1.    PLAINTIFFS BEAR A HEAVY BURDEN IN SHOWING ENTITLEMENT TO THE EXTRAORDINARY REMEDY THEY SEEK.

As movants, plaintiffs bear the burden of showing they are entitled to the injunction they seek. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The burden is heavy:

> "As the Supreme Court has observed, '[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion.' *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2948 at 129-30 (2d ed. 1995) ["WRIGHT & MILLER"]."

*Walker* at 870 (quoting *Goodman v. Ill. Dep't of Fin. and Prof'l Reg.,* 430 F.3d 432 (7th Cir. 2005) (original emphasis)); *see also Martin v. O'Grady*, 738 F. Supp. 1191, 1195 (N.D. Ill. 1990) (noting that an injunction is an extraordinary remedy that should not be granted routinely). Plaintiffs fail to meet their heavy burden, as shown below.

> **2.   PLAINTIFFS' MOTION SEEKS TO PREVENT TSP FROM PURSUING ITS RIGHTS IN THE FEDERAL COURT OF AUSTRALIA AND THUS MUST BE ANALYZED UNDER THE UNIQUE STANDARDS GOVERNING ANTI-SUIT INJUNCTIONS.**

Plaintiffs' motion advances the wrong standard for the type of relief they seek.  They seek to enjoin defendants' prosecution of their legal rights before a foreign tribunal.  The motion thus seeks an anti-suit injunction, regardless of whether plaintiffs seek to enjoin defendants from pursuing all or only some of their rights in the action, or whether plaintiffs claim they are acting to "protect" the Court's jurisdiction.  *See, e.g., Allendale Mutual Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425 (7th Cir. 1993) (applying the anti-suit injunction standard in affirming an injunction preventing the defendant from seeking to lift a stay in a parallel French court proceeding).

The determination of whether an international anti-suit injunction should be granted does not rest on the traditional four-part test for preliminary injunctions.  The Seventh Circuit "allows an injunction against litigating in a foreign forum upon a finding that letting the two suits proceed would be gratuitously duplicative, or as the cases sometimes say 'vexatious and oppressive.'"  *Id.* at 431 (citing *Philips Med. Sys. Int'l B.V. v. Bruetman*, 8 F.3d 600, 604-05 (7th Cir. 1993)); *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 883 (N.D. Ill. 2006) (citing *Allendale*).  Threats to international comity will weigh against issuance of an anti-suit injunction.  *See Allendale*, *supra*.  Applying these factors to plaintiffs' motion reinforces the common sense conclusion that the Australian action, commenced six months before plaintiffs brought the present one, is not—and cannot be—"gratuitously duplicative."

### 3.     THE AUSTRALIAN ACTION IS NOT "GRATUITOUSLY DUPLICATIVE."

#### a.     The Present Action, Not The Pre-Existing Action In The Federal Court of Australia, Is Gratuitously Duplicative.

The Australian action is not "gratuitously duplicative" of the present action because the Australian action is the first, or original, action between the parties regarding ownership of the copyright for *The Secret*.  Moreover, the Australian action is no mere preemptive action, filed first only in a race to the courthouse steps.  Rather, the Australian action was filed in October 18, 2007, ***187 days*** before plaintiffs commenced the present action.

The original of anything cannot, by definition, be "duplicative."  *See, e.g.*, *The American Heritage Dictionary of the English Language* (4th ed. 2000) (defining the adjective form of "duplicate" as "Identically copied from an original.").  This common sense principle is reflected in the decisions addressing anti-suit injunctions.  Plaintiffs have not identified (and defendants cannot find) a single instance in which a first-filed action was deemed "duplicative" of a later one, let alone "gratuitously duplicative."  Rather, decisions granting or affirming anti-suit injunctions concern injunctions against later-filed suits.  *See*, *e.g.*, *Allendale*, 10 F.3d 425 (affirming an injunction preventing the defendant from lifting a stay in a French lawsuit that was filed after Plaintiffs instituted a declaratory relief action in the United States); *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 853 (9th Cir. 1981) (affirming an injunction preventing the plaintiff from prosecuting an action filed "twenty-seven months after the filing of [the original action]"); *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984) (affirming the granting of an injunction preventing Plaintiffs from filing actions in the United Kingdom to enjoin the plaintiff from prosecuting its case); *Gage v. Riverside Trust Co., Ltd.*, 86 F. 984, 998 (C.C.S.D. Cal. 1898) (granting an injunction preventing the defendant from prosecuting a proceeding against that plaintiff in England because the U.S. court was the first to acquire jurisdiction over the action).[2]

---

[2] The only case Defendants' research uncovered enjoining a party from pursuing an earlier, parallel foreign action is *Affymax, supra*.  In that case Judge Kennelly enjoined a prior-filed German suit *after* having first granted a motion to compel arbitration of the parties' dispute.  420 F. Supp. 2d at 884.

(continued on next page)

The only gratuitously duplicative action is the present one.[3]  Plaintiffs filed their complaint in this Court more than six months after the Australian action.  And, as demonstrated in defendants' Opening and Reply Briefs filed in support of their motion to dismiss for forum non conveniens and abstention (filed June 4 and 25, respectively), this action is parallel to the Australian action.

In analogous situations when courts are faced with two parallel suits filed in different venues, the Court generally applies a rebuttable presumption that the first-filed action should proceed over the second.  *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989); *see also Cadle Co. v. Whataburger of Alice,* 174 F.3d 599, 603-04 (5th Cir. 1999) (noting that under the "first-to-file rule," the second-filed court may refuse to hear the case if issues of the two actions substantially overlap).

The same presumption should apply here.  The first-filed Australian action is pending in a common law jurisdiction that is competent to resolve the parties' dispute over ownership of the copyright in *The Secret*.  Plaintiffs are both citizens of that jurisdiction, have appeared in that action and have been actively litigating it for the past eight months.  All of the defendants here have consented to personal jurisdiction and service in that action.

Applying either the applicable legal standard or common sense results in the same conclusion:  this action is gratuitously duplicative of the Australian action, not the other way around.  Accordingly, plaintiffs' motion to enjoin proceedings in that case should be denied for this reason alone.

---

Judge Kennelly stayed the action in this Court, too, pending the arbitration.  *Id.* at 885.  In essence, therefore, the injunction in *Affymax* was really a global stay in aid of arbitration, something far from the circumstances here.

[3] To avoid dismissal for forum non conveniens and/or abstention, plaintiffs contend that the two pending actions are not parallel at all.  Plaintiffs' Opp. to Motion to Dismiss (June 16, 2008) at 15 ("this proceeding and the Australian proceeding are not 'parallel.'"); Opening Brief (filed June 16, 2008) at 8 n.1 ("Plaintiffs do not consider the Australia action and the present one to be parallel."). By contending that the two actions are not parallel, plaintiffs cannot meet the "gratuitously duplicative" standard that applies to their motion.  Of course, the actions are indeed parallel, which is why defendants fully analyze the standard in this brief.

**b.**     **Principles of International Comity Militate In Favor Of Denying Plaintiffs' Motion.**

Plaintiffs do not seek an injunction against the Federal Court of Australia itself.  But the injunction nevertheless would "interfere with a proceeding before a foreign court, and the doctrine of international comity (the mutual respect of sovereigns) requires the courts of one nation to avoid, where possible, interfering with the courts of another."  *Underwood v. Hilliard*, 98 F.3d 956, 963 (7th Cir. 1996) (citing *Allendale*, 10 F.3d at 431-33; *Philips*, 8 F.3d at 604-05; *Laker Airways Ltd.*, 731 F.2d at 939-40.  Seventh Circuit decisions suggest the desirability of empirical evidence to show that the injunction would adversely affect foreign relations.  *See Allendale*, 10 F.3d at 431.  Nevertheless, as *Underwood* warns, the proposed interference with the proceedings before the Federal Court of Australia should be avoided if possible.  Given the utter absence of the "gratuitously duplicative" prong of the anti-suit injunction analysis, this Court's obligation "to avoid, where possible, interfering with the courts of another" (*Underwood, supra*) reinforces the inescapable conclusion that plaintiffs' motion should be denied.

While not suggested by the relevant cases, weighing the two courts' relative interests in determining the dispute at hand further underscores the impropriety of plaintiffs' motion.  The crux of this action and the one in Australia is the ownership interest in the copyright to *The Secret*.  Although several Chicago-based entities are defendants in this action, they are not parties to the ownership dispute.  As again demonstrated in the parties' briefing on the pending motion to dismiss for forum non conveniens or to dismiss or stay on abstention grounds, the ownership issue involves only the three parties to the Australian action:  (1) TSP, the Hungarian company that is the copyright holder of *The Secret* movie (extended edition) and book (which obtained those copyrights via assignment from Prime Time Production Holdings Pty Ltd., the Australian production company responsible for *The Secret*); (2) Drew Pictures, the Australian corporation that registered the copyright to *The Secret* movie (original edition) and which asserts co-ownership rights in the extended version of the movie and book through the purported contributions of its employee, Drew Heriot; and (3) Drew Heriot himself, an Australian citizen who is living in Los Angeles on a temporary visa.  As also shown by defendants' motion to

dismiss, the issue of copyright ownership is controlled by Australian law.  Consequently, whatever interest this Court might have in determining this dispute—even in light of the joinder of local parties whose presence has no bearing on the ownership issue—is greatly outweighed by the Federal Court of Australia's interest in adjudicating a dispute among its citizens over intellectual property rights that emanate from that country and are controlled by that country's laws concerning copyright ownership.

Plaintiffs' motion should be denied for all of these reasons.

**C.    EVEN IF THE COURT WERE TO APPLY THE INCORRECT STANDARDS ADVANCED BY PLAINTIFFS, THEIR MOTION STILL FAILS.**

Plaintiffs incorrectly contend that the standard four-factor test for preliminary injunctions applies here.  Under that standard, plaintiffs must satisfy a heavy burden of showing that:

> (1) they are "reasonably likely to succeed on the merits" of their case;
> (2) they are suffering "irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted;"
> (3) "there is no adequate remedy at law"; and
> (4) "an injunction would not harm the public interest."

*Walker*, 453 F.3d at 859.  Plaintiffs' one-page legal argument (Opening Brief at 9) fails to carry their heavy burden as to any of the four factors.

**1.    PLAINTIFFS HAVE NOT SHOWN THEY ARE REASONABLY LIKELY TO SUCCEED ON THE MERITS.**

In support of this factor, plaintiffs' sole "argument" is that their opposition to defendants' motions to dismiss demonstrates that plaintiffs are likely to succeed on the merits.  With due respect and recognition that this Court will ultimately decide the issue, defendants disagree. First, the briefing on those motions demonstrates that this action should be dismissed in favor of the earlier-filed Australian action.  Second, plaintiffs' opposition presents, at most, arguments why the doctrines of forum non conveniens or abstention do not apply (defendants of course contend that these arguments are insufficient to withstand dismissal).  Plaintiffs, however, must establish a likelihood of success on the merits of their action, something they have not done.

2.    PLAINTIFFS HAVE NOT SHOWN THEY WILL BE IRREPARABLY HARMED.

Plaintiffs contend that they will be irreparably harmed if TSP's anti-suit injunction motion is not enjoined because plaintiffs might be "denied their choice of forum." Opening Brief at 9.[4]  Given that plaintiffs filed this action more than six months after commencement of the Australian action—in which plaintiffs have actively engaged—plaintiffs have not really "chosen" a forum.  Rather, they plainly are shopping for one that they believe, apparently after much deliberation, may be more favorable to them.  The denial of forum shopping is not a recognized form of "irreparable harm."

In any event, if the Australian court grants TSP's motion and grants the anti-suit injunction, at most plaintiffs will have been denied the opportunity to maintain a parallel action in this Court.  They have not shown that their claims cannot be determined properly by the Federal Court of Australia, or that any remedy they seek cannot be had in that court.[5]  In the absence of any showing of harm, let alone irreparable harm, the motion must be denied.

Finally, in considering whether the harm suffered would be "irreparable," courts in the Seventh Circuit consider any delay in seeking injunctive relief.  *Ideal Indus., Inc. v. Gardner*, 612 F.2d 1018, 1025 (7th Cir. 1979); *Celebration Int'l, Inc. v. Chosun Int'l, Inc.*, 234 F. Supp. 2d 905, 920 (S.D. Ind. 2002) (citing *Gardner*).  "The tardiness weighs against a plaintiff's claim of

---

[4] Plaintiffs somewhat illogically contend in their opposition to the pending motions to dismiss that they brought this action because they find the economic demands of litigation in Australia—their place of citizenship and Drew Pictures' only location—too burdensome.  To the extent that plaintiffs contend on reply that the cost associated with litigating in Australia is another form of "irreparable harm" justifying their present motion, the contention is doomed to fail.  As the U.S. Supreme Court has held, "[m]ere litigation expense, even substantial and unrecoupable cost does not constitute irreparable injury."  *Renegotiation Board v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974).

[5] Plaintiffs contend that they cannot pursue their U.S. copyright infringement claim in Australia.  As shown at pages 3-4 of Defendants' Reply Brief in support of their motions (filed June 25), this argument is a red herring.  The parties' dispute—in both countries—revolves around the same issue of ownership of the copyrights to *The Secret* movie and book.  Plaintiffs' infringement claim not only is expressly alleged in the alternative, it cannot be maintained as a matter of law because it is based on whatever "independently copyrightable contributions to the Works" plaintiffs think they have. Cmplt. ¶77.  Because they have not registered copyrights for any of these "independently copyrightable contributions to the Works," plaintiffs lack standing to sue for copyright infringement.

irreparable harm when the delay is not excused for a good reason or when the defendant has relied on the inaction." *Celebration Int'l*, *supra* (citing *Ty, Inc. v. Pubs. Int'l, Ltd.*, 81 F. Supp. 2d 899 (N.D. Ill. 2000) (ongoing settlement discussions a good reason for delay). As in *Celebration Int'l*, although defendants have perhaps not relied on plaintiffs' inaction, plaintiffs have not proffered a good reason—or any reason—for delaying their present motion until the eleventh hour and then asserting some great urgency. In the context of their knowledge and the schedule in Australia, the delay belies any irreparable harm. For this reason alone the injunction should be denied.

### 3. PLAINTIFFS FAIL TO SHOW NO ADEQUATE REMEDY AT LAW

The Supreme Court has repeatedly held that no party will be entitled to an injunction where there is an adequate remedy at law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). In other words, if adequate remedy at law exists, an injunction in unavailable and the court's inquiry ends there. *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) ("absence of an adequate remedy at law is a precondition to any form of equitable relief").

Plaintiffs omit any showing that they have no adequate remedy at law. Their only mention of it comes at the end of their one-paragraph analysis of the four injunction factors: "Plaintiffs have no other adequate remedy at law and a preliminary injunction will not harm the public interest." Opening Brief at 9. Merely reciting it does not satisfy plaintiffs' "heavy burden." In any event, plaintiffs do have an adequate remedy at law: their opposition in the Australian action to TSP motion for an anti-suit injunction and the concurrent motion by Drew Pictures and Heriot there to stay that action. As the Supreme Court explained over a century ago:

> Where a party, if his theory of the controversy is correct, has a good defence at law to 'a purely legal demand,' he should be left to that means of defence, as he has no occasion to resort to a court of equity for relief, unless he is prepared to allege and prove some

> special circumstances to show that he may suffer irreparable injury
> if he is denied a preventive remedy.[6]

*Deweese v. Reinhard*, 165 U.S. 386, 389 (1897) (citations omitted).  Accordingly, a court will refuse to enjoin a legal proceeding "if it appears that the party will have an adequate opportunity in the legal action itself to interpose by way of defense and fully to avail himself of the grounds upon which he seeks to enjoin the prosecution of the action."  *Porto Rico Tel. Co. v. Puerto Rico Commc'ns Auth.*, 189 F.2d 39, 41 (1st Cir. 1951).  If, as plaintiffs contend, this District is truly the proper forum for the resolution of this dispute among Australians, then plaintiffs may present that defense to the Australian court on July 11, and it will decide whether TSP's motion has merit.  This adequate remedy at law precludes equitable relief here.

### 4.    PLAINTIFFS FAIL TO SHOW THAT THE PUBLIC INTEREST WILL NOT BE HARMED.

Plaintiffs offer no support for the contention that the preliminary injunction will not harm the public interest.  Opening Brief at 9.  Given their heavy burden of persuasion, the absence of any showing for this factor dooms their motion.  In any event, plaintiffs cannot show the absence of harm to the public interest.  As noted above, this country has a policy of respecting the sovereign power of foreign governments and refraining from interfering in their judicial proceedings if doing so can be avoided.  *See Underwood*, 98 F.3d at 963; WRIGHT & MILLER §2945 at 105 ("courts typically have been reluctant to issue decrees enjoining the parties from suing in the courts of another forum because of a respect for a court's power to adjudicate a proceeding that has been brought before it.").  Plaintiffs offer no evidence or argument for how their motion to enjoin TSP from pursuing its own motion in the Australian court will not adversely affect this nation's public interest in maintaining international comity.

Because plaintiffs have failed to meet their burden on this injunction factor—or on any of the other three factors—their motion for an "anti-anti-suit injunction" should be denied.

---

[6] The Court's decision was based on the now-obsolete 28 U.S.C. §934, which conferred equitable jurisdiction on the Federal courts.

**5.     ON BALANCE, PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION.**

"If the moving party meets this threshold burden [of satisfying each of the four injunction factors], the district court weighs the factors against one another in a sliding scale analysis . . . to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Walker*, 453 F.3d at 859.  Because plaintiffs have not met their threshold burden, no weighing of the factors is appropriate.  Plaintiffs have not shown a reasonable likelihood of success on the merits.  They have shown no irreparable harm; indeed, their unexplained delay shows the opposite.  They do not attempt to show the absence of an adequate remedy at law, nor can they.  Plaintiffs' opportunity to oppose the Australian proceeding they seek to enjoin and their concurrent motion to stay in that case both demonstrate that plaintiffs in fact have an adequate remedy at law, thus precluding the relief they seek here.  And they fail to make any attempted showing that the public interest will not be harmed.  No further analysis is needed or appropriate.

## IV.     <u>CONCLUSION</u>

Plaintiffs delayed bringing this motion for a drastic, extraordinary remedy for two months.  Their tactical decision to delay raising the issue until the eve of a status conference belies any claim that they will be harmed at all by letting the Australian action proceed on its own course.  In any event, plaintiffs cannot meet the gratuitously duplicative standard; it does not apply in reverse so that plaintiffs can commence the gratuitously duplicative proceeding and then argue that the original proceeding is the duplicate.  As to the traditional injunction factors, none are satisfied.  The most significant among them, however, is the existence of an adequate remedy at law:  plaintiffs are free to make before the Federal Court of Australia whatever arguments they believe appropriate to resist TSP's motion for an anti-suit injunction, including any arguments plaintiffs' raise in the present motion or in their response to defendants' motions to dismiss.  For

all of these reasons, plaintiffs' motion should be denied in the event the Court elects to hear it at all.

Dated:  July 1, 2008                          Respectfully submitted,

                                              By:  /s/ David S. Elkins
                                                   David S. Elkins
                                                   Joseph A. Meckes
                                                   Joseph P. Grasser
                                                   SQUIRE, SANDERS & DEMPSEY L.L.P.

                                                   Jack J. Carriglio
                                                   James G. Arigionis
                                                   MECKLER BULGER & TILSON

                                                   Attorneys for Defendants
                                                   RHONDA BYRNE, TS RER LLC
                                                   (erroneously named as "THE SECRET LLC"
                                                   and "TS HOLDINGS LLC"), PRIME TIME
                                                   US INC., TS PRODUCTION HOLDINGS
                                                   LLC, TS PRODUCTION LLC,
                                                   TS MERCHANDISING LTD., and
                                                   ROBERT E. RAINONE, JR.