**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Drew Heriot and Drew Pictures Pty Ltd., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Civil Case No. 08cv2272 |
| | § | |
| Rhonda Byrne, | § | The Honorable Suzanne B. Conlon |
| The Secret LLC (AKA TS Holdings LLC) | § | |
| Prime Time US Inc., | § | |
| TS Production Holdings LLC, | § | |
| TS Production LLC, | § | |
| TS Merchandising Ltd., And | § | |
| Robert E. Rainone Jr. | § | |
| | § | |
| *Defendants.* | § | |

<u>**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SURREPLY
IN RESPONSE DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO STAY PROCEEDINGS**</u>

Mark S. Werbner
Darren P. Nicholson
Sayles | Werbner, P.C.
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Phone: 214.939.8700
Fax: 214.939.8787
*Admitted pro hac vice*

Paul L. Price
Hepler, Broom, MacDonald, Hebrank,
True & Noce, LLC
150 N. Wacker Drive, Suite 3100
Chicago, Illinois 60606
Phone: 312.230.9100
Fax: 312.230.9201

Attorneys of Plaintiffs Drew Heriot and
Drew Pictures Pty Ltd

.

Plaintiffs Drew Heriot and Drew Pictures Pty. Ltd ("Plaintiffs"), by their attorneys, hereby move this Honorable Court for Leave to File a Surreply in Response to Defendants' Motion to Dismiss or, in the Alternative, to Stay Proceedings.  A copy of the Surreply is attached to this Motion as Exhibit A, a copy of the Declaration of John Swinson is attached as Exhibit B, and a copy of the Declaration of Darren Nicholson is attached as Exhibit C.  In support of this motion, Plaintiffs state as follows:

1.    On June 25, 2008, Defendants filed a Reply in support of their Motion to Dismiss or, in the Alternative, to Stay Proceedings.  Defendants' Reply submitted new evidence – the Declaration of Robert E. Rainone, Jr. – and advanced new legal arguments not present in Defendants' initial Motion and not raised in Plaintiffs' Response.

2.    The Declaration of Robert E. Rainone, Jr. purports to establish, for the first time, that one of the works at issue, *The Secret* (Original Edition), was first published and sold in Australia, among other places.  As demonstrated in the attached Surreply and Declaration of Darren Nicholson, Rainone's Declaration is misleading and can be easily rebutted.  The country of first publication is a factor the Court must consider, should it adopt Defendants' choice of law theory.

3.    Defendants' Reply asserts, for the first time, that the Australian litigation "is advanced in the pleading stage and has been progressing since October 2007" and that Plaintiffs' Australian counsel "have made substantial efforts in Australia to slow things down."  As demonstrated in the attached Surreply and Declaration of John Swinson, those statements are false and cross the line from zealous advocacy to misrepresentation.  The status of the Australian proceeding is one of the factors the Court must consider in evaluating Defendants' abstention arguments.

4.    Almost half of the cases cited in Defendants' Reply are new, and Defendants' Reply relies on a draft Restatement on Intellectual Property from the American Law Institute.

Those authorities were not contained in either Defendants' Motion or Plaintiffs' Response. Defendants' Motion seeks the ultimate relief – dismissal of Plaintiffs' claims. Due Process and principles of fair play dictate that Plaintiffs should be afforded the opportunity to respond to new arguments, new authority, and new "facts" raised in a Reply.

5.   Plaintiffs are cognizant of the burden that additional briefing places on the Court and its staff. Plaintiffs file this Motion reluctantly but out of absolute necessity and in an effort to narrow the issues before the Court. Plaintiffs' Surreply complies with this Court's 15 page limitation on submissions.

6.   Plaintiffs have sought the consent of Defendants to file this Motion for Leave. Counsel for Defendants has advised that they will oppose this Motion.

For these reasons and for any that appear to the Court, Plaintiffs' Motion for Leave should be granted, and the attached Surreply and accompanying declarations should be docketed and considered by the Court.

Dated: July 2, 2008

Respectfully submitted,

 /s/ Darren P. Nicholson
Darren P. Nicholson
Counsel for Plaintiffs

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Drew Heriot and Drew Pictures Pty Ltd., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Civil Case No. 08cv2272 |
| | § | |
| Rhonda Byrne, | § | The Honorable Suzanne B. Conlon |
| The Secret LLC (AKA TS Holdings LLC) | § | |
| Prime Time US Inc., | § | |
| TS Production Holdings LLC, | § | |
| TS Production LLC, | § | |
| TS Merchandising Ltd., And | § | |
| Robert E. Rainone Jr. | § | |
| | § | |
| *Defendants.* | § | |

**<u>SUR-REPLY IN RESPONSE DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO STAY PROCEEDINGS</u>**

Mark S. Werbner
Darren P. Nicholson
Sayles | Werbner, P.C.
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Phone: 214.939.8700
Fax: 214.939.8787
*Admitted pro hac vice*

Paul L. Price
Hepler, Broom, MacDonald, Hebrank, True &
Noce, LLC
150 N. Wacker Drive, Suite 3100
Chicago, Illinois 60606
Phone: 312.230.9100
Fax: 312.230.9201

Attorneys of Plaintiffs Drew Heriot and Drew
Pictures Pty Ltd.

## I.    INTRODUCTION AND BACKGROUND

Defendants' Reply in Support of their Motion to Dismiss is both confused and contradictory. Defendants ignore the essential facts set forth in Plaintiffs' Response and hope that, through sheer repetition, they can convince the Court that this is simply an "Australian dispute" between "Australian parties." That is not true. The Court should rest assured of the following:

- Plaintiffs reside in the United States. Plaintiff Drew Pictures is Australian on paper, not in fact. There is no discovery needed in Australia regarding Drew Pictures because all of its documents and other records are in the possession of Drew Pictures' sole shareholder, Drew Heriot, in the United States.

- Defendants reside in the United States. Indeed, the only Defendant who is not physically located in Chicago is Defendant Byrne, who travels to Chicago on a regular basis to supervise the business activities of *The Secret*.[1]

- Defendants have initiated litigation in this very Court relating to *The Secret* and, in front of Judge Guzman, have vigorously contested challenges to jurisdiction here. *TS Merchandising, et al. v. Dan Hollings, et al.,* Docket No. 1:07-cv-6518 (N.D. Ill.).

- In other litigation involving *The Secret*, Defendants have sought transfer of venue to this Court, arguing that this Court is the appropriate venue. *Dan Hollings v. Rhonda Byrne, et al.,* Docket No. 08-cv-03024 (C.D. Cal.).

- Defendants' own website, under the heading *Applicable Law and Jurisdictional Matters*, expressly provides that "any action" related to the *The Secret* website "shall be brought only in either the state or federal courts located in Chicago, Illinois."[2]

There is no case where a Defendant, who resides in the forum, who has affirmatively invoked the jurisdiction of the forum, who seeks transfer of other litigation to the forum, and who publicly declares the exclusive jurisdiction of the forum, has been permitted to argue that the forum was inconvenient or that the court should abstain from exercising its jurisdiction. Yet that is precisely what Defendants attempt to do here.

With extensive briefing, it is often easy to lose the context of a dispute. Plaintiffs contend, in essence, they have been defrauded by Defendants, who misappropriated Plaintiffs' intellectual property using false promises, side-deals, self-transfers of ownership, and a web of domestic and

---

[1] *See* Plaintiffs' Response at 1, n.1.

[2] *See* http://www.thesecret.tv/terms_of_use.html.

foreign "shell" companies.  Defendants vehemently disagree and contend that Plaintiffs are entitled

to nothing.  Defendants do not contend that Plaintiffs owe Defendants a dime.  Rather, the dispute is

about what, if anything, Defendants owe Plaintiffs.

As U.S. residents, Plaintiffs engaged the services of a U.S. attorney, Jon Reichman, to

register their copyright interests with the U.S. Copyright Office, to negotiate a settlement (if any),

and to initiate litigation in the U.S. against these U.S. Defendants.  Defendants' U.S. Counsel, Squire

Sanders & Dempsey, protested this registration in a letter to Mr. Reichman, who, in turn, requested

an accounting from Defendants and advised that Plaintiffs "would prefer to resolve this matter

amicably."  Defendants anticipated (correctly) that Plaintiffs would be asserting their rights and filed

a classic "pre-emptive strike" seeking a declaratory judgment as to copyright ownership and an order

requiring Plaintiffs to withdraw their U.S Copyright registration.  But Defendants did not seek such a

declaration and injunctive order in Los Angeles (where Plaintiffs reside) or in Chicago (where

Defendants reside and normally litigate), but in Australia.  Defendants, whose resources vastly

exceed Plaintiffs, selected Australia not because this is an "Australian dispute" (it is not) but to seek

tactical advantage by forcing Plaintiffs to litigate in Australia at enormous expense.

How can the Court be sure?  For one, Defendants' arguments continually shift.  Defendants'

Motion (at 6) argues that dismissal is warranted because "voluminous records and testimony" are

needed in Australia to rebut Plaintiffs "spurious claims of ownership," and this essential discovery

would be an "enormous expense."[3] Yet when Plaintiffs identify the U.S. discovery substantiating

Plaintiffs' creative contributions, authorship, and ownership of the works at issue (Response at 9-10),

Defendants deride such discovery as unnecessary because "Defendants acknowledge that Heriot was

---

[3] With no sense of irony, Defendants tout the "enormous expenses" of conducting discovery (from themselves) in Australia as a reason to grant their motion while simultaneously dismissing Plaintiffs' financial burden at having to try a case there because "[a]part from somewhat less expensive airfare" the expenses incurred cannot be any different.  *Compare* Defendants' Motion at 4 *with* Defendants' Reply at 13, n.11.

the Director of *The Secret* movie,"[4] and "No one needs depositions . . . to confirm these facts." Defendants' Reply at 5-6.  Both of those representations cannot be true.

In addition, Defendants' Australian counsel has had difficulty prosecuting the Australian case – causing repeated delay – *precisely because Defendants are located in the U.S.*[5]  On October 30, 2007, Defendants' Australian counsel advised that "[t]he circumstances which have given rise to the issue of the proceedings has been your clients' wrongful action in applying for registration of copyright in the US with respect to the Film and the screenplay for the Film."  Exhibit A, Swinson Decl. ¶ 7, Ex. A ("Swinson II").  Defendants initial Statement of Claim, however, was insufficiently pleaded as a matter of Australian law and the Australian court set an order allowing Defendants to Amend their Statement of Claim by November 15, 2007.  *Id.* ¶ 8.  On November 14, 2007, however, Defendants Australian counsel wrote:

> In circumstances where we have only recently received instructions to act in this matter, we will not be in a position to finalise any Amended Statement of Claim within that time.  We propose that the date be extended until 22 November 2007 . . . *Id.*¶ 10, Ex. B

Of course, Defendants missed the new deadline.  On November 29, 2007 they advised:

> Unfortunately, we are having difficulty obtaining instructions required to finalise the Amended Statement of Claim.  **This is primarily due to the fact that our client's representatives are in the United States.**  We understand that our client will provide the necessary instruction in the next days. Proceeding on that basis, the Amended Statement of Claim will be filed and served early next week. *Id.*¶ 12, Ex. C

But Defendants did not file their Amended Statement of Claim "early next week."  *Id.* ¶ 13. By January 14, 2008, Defendants had still not complied and again asked for more time:

> Due to the time of year and **the fact that our client is located in the United States** we have not yet been able to obtain final instructions in order for us to file and serve the Amended Statement of Claim.  *Id.* ¶ 14, Ex. D

---

[4] This statement stands in stark contrast to Defendants' prior position.  Ms. Kelter's letter to Mr. Reichman pretended that Mr. Heriot was just "one of four directors" of the movie rather than the principal director, as reflected in the credits.  Reichman Decl., Ex. C.

[5] Defendant TS Production LLC is the sole plaintiff in the Australian proceeding and Drew Heriot and Drew Pictures are the defendants.  For consistency and to avoid confusion, this brief refers to Plaintiffs and Defendants as defined in this case when discussing the Australian proceeding.

It was not until after Plaintiffs' Australian counsel transferred the case to the Australian Federal Court (the proper Australian venue) that Defendants filed their Amended Statement of Claim on February 11, 2008. *Id.* ¶¶ 16-17. The case was then set for a "directions hearing" on April 24, 2008, where the Australian court would order a timetable for Plaintiffs to file any defense or cross-claim. *Id.* ¶ 20. Plaintiffs filed this action on April 21, 2008, before the directions hearing in Australia. Thus, procedurally there is no difference between the Australian proceeding and the present one. In both, a Complaint or Statement of Claim has been filed, but no Answer, Defense, or Cross Claim has been filed, no discovery has been started, no trial date has been set, and motions to stay are now pending before both courts, with a hearing in Australia set for July 11, 2008. *Id.* ¶ 24.

Thus, Defendants' assertions in their Reply that "the Australian litigation is advanced in the pleading state and has been progressing since October 2007" and that Plaintiffs "have made substantial efforts in Australia to slow things down" are blatantly false. *Id.* ¶¶ 4, 23. Nor have Plaintiffs ever consented to or accepted that the Australian court's jurisdiction. *Id.* ¶ 25.

Defendants did not initiate the Australian proceeding because extensive Australian discovery is needed to refute Plaintiffs' contributions (Defendants now claim this is undisputed), or because Australian law governs the issue of ownership (Defendants assert that Australian law governs here), or because Australia is a more convenient forum (Defendants physical presence in the U.S. has delayed that case). **Defendants initiated the Australian litigation precisely because Plaintiffs are <u>not</u> in Australia.** Sadly, this is part of a pattern of forum shopping and pre-emptive litigation that Defendants employ to harass opponents and leverage their financial advantage. The Court need only take judicial notice of Defendants' own pleadings before Judge Guzman (Docket No. 07-CV-6518), which invoke this Court's jurisdiction, to recognize the duplicitousness of Defendants' contentions here. Defendants' Motion and Reply is a litigation tactic in search of a legal rationale.

Of course, Australia gives Defendants the added benefit of denying Plaintiffs an available and adequate forum to get the relief they seek from this Court. Defendants have given the Court

purported "consents" to Australian jurisdiction to establish that Australia is an available forum but have given the Court no substantive basis on which to conclude that these consents will be accepted by the Australian court. It is Defendants' burden, not Plaintiffs', to establish that the Australian court is available and adequate and such a showing must be more than simply an exercise in the conceivable. In fact, it is highly unlikely that the Australian court will accept these consents because an Australian court, limited by the jurisdiction conferred in its own Copyright Act, lacks the jurisdiction over the claims Plaintiffs assert here. The Declaration of John Swinson attached to Defendants Response ("Swinson I") is un-rebutted evidence of precisely why Australia is neither available nor adequate. That alone is a basis to deny Defendants' Motion under either doctrine.

Defendants, however, seize upon one factor under both – the application of foreign law – and argue that the central issue before the Court is really "which country's law applies?" That, of course, is backwards. To the extent that it is relevant at all to the pending Motion, the issue before the Court is which *choice of law rule* the Court must apply. Plaintiffs contend that under the U.S. Copyright Act and treaty obligations, the choice of law rule is that United States law governs. Defendants argue, however, that the correct choice of law rule is the *Itar-Tass* test*, which differentiates copyright "ownership" with "substantive rights" and identifies *two* choice of law rules for copyright cases. Under *Itar-Tass*, the choice of law rule for ownership is the law of the country with the "most significant relationship" to the work as a whole (analyzing numerous factors, including the country of first publication), and the choice of law rule for everything else is that U.S. law governs.

As discussed below, *Itar-Tass's* artificial distinction should not be followed for a variety of reasons. But even if the Court adopts *Itar-Tass*, that adoption cannot be a basis to grant either a dismissal under *forum non conveniens* or the abstention doctrine because *Itar-Tass always requires the application of U.S. law for substantive rights*. Indeed, the very rationale behind *Itar-Tass* is antithetical to such a result, which is precisely why there is no federal court case where a court uses

the *Itar-Tass* choice of law rule as a basis to grant dismissal for *forum non conveniens* or abstention. Yet that is what Defendants ask this Court to do.

## II.    ARGUMENT

### A.    Defendants Have Not Met Their Burden of Proving that Australia is an Adequate Alternate Forum Justifying Dismissal Under *Forum Non Conveniens*.

Defendants Reply does not contest that their residence in Chicago "weighs heavily against dismissal on grounds of *forum non conveniens,*" or that Plaintiffs are entitled to a "strong presumption" against dismissal because they reside in the U.S. *Magellan Real Estate Inv. Trust v. Losch*, 109 F.Supp.2d 1144, 1151 (D. Ariz. 2000); *Macedo v. Boeing Co.,* 693 F.2d 683, 688 (7th Cir. 1982). Dispensing with the need to provide the Court with any evidence at all, Defendants Reply assumes they have no burden whatsoever.

As the Seventh Circuit has held, "[t]he defendant carries the burden of persuading the district court that a lawsuit should be dismissed on *forum non conveniens* grounds." *In re Ford Motor Co.,* 344 F.3d 648, 652 (7th Cir. 2003). It is for this reason that defendants are required to submit affidavits or other evidence to substantiate their claims that dismissal is warranted. *Compare Kamel v. Hill-Rom Co., Inc.,* 108 F.3d 799, 803 (7th Cir.1997) (finding a consent to jurisdiction valid where defendant submitted the affidavit of an expert on Saudi law to substantiate that Saudi law recognizes consents to jurisdiction) *with Macedo v. Boeing Co.,* 693 F.2d 683, 691 (7th Cir.1982) (finding abuse of discretion and reversing order of dismissal under *forum non conveniens* because of "the weakness of the showing made by defendants" and noting that "the parties offered affidavits of Portuguese lawyers" to support their contentions); *see also Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1550 (5th Cir. 1991) (the doctrine of *forum non conveniens* "require[s] a defendant to put forth unequivocal, substantiated evidence presented by affidavit testimony in order for the district court to satisfy the standard enunciated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).")*; Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45 (3d Cir. 1988) (noting that defendants' "failure to provide any

6

record support for their contentions precluded the district court from scrutinizing the substance of the dispute between the parties" and that the defendants had therefore failed to carry their burden).

Defendants have given the Court no evidence to establish that Australia is an available or adequate alternate forum. Although they have provided purported consents to Australian jurisdiction, they have not even attempted to meet their burden of establishing, through "unequivocal, substantiated evidence," that these consents will be accepted by an Australian court and, if accepted, will provide Plaintiffs with adequate alternate remedies. As established in the un-rebutted affidavit of John V. Swinson, an Australian intellectual property lawyer, it is "unlikely that an Australian court will accept jurisdiction" in this case because infringement is alleged to have occurred outside of Australia and because the Australian Copyright Act specifically limits jurisdiction to activities "in Australia." Swinson I ¶¶ 10-11. Moreover, under binding precedent, "Australian courts do not have jurisdiction over foreign intellectual property rights."[6] *Id.* ¶ 13. Nor could an Australian court provide the relief that Plaintiffs seek here. *Id.* ¶ 25. It is for this reason that "Australia is not an adequate or appropriate forum for decision of matters raised in the U.S. Complaint." *Id.* ¶ 26.

Defendants' sole rejoinder is that infringement is, somehow, a "red herring" because Plaintiffs' Australian counsel "admitted under oath" that this action "raises the same issues for determination as were raised" in the Australian litigation and, in any event, infringement "cannot be maintained as a matter of law." This is sophistry. First, Defendants misquote Mr. Selvay, who advised the Australian court that "the [U.S.] Complaint raises the same issues for determination as are raised in this proceeding (*as well as a variety of further or additional matters*)." *See* Rainone Decl. Ex. F ¶ 5(c) (emphasis added to wording omitted from Defendants' brief). Those "additional matters" would be, among other things, Plaintiffs' infringement, equitable accounting, and unjust enrichment claims, which are not available remedies for Plaintiffs in Australia and are not part of the

---

[6] Although the parties dispute whether the movie *The Secret* (Original Edition) is a U.S. work, there is no dispute that the book *The Secret* was created entirely in the U.S. and is a U.S. work.

Australian case. Second, a motion to dismiss as a matter of law must be raised pursuant to Federal Rule 12(b)(6) (entitling Plaintiffs to a response) not as part of a reply in support of a motion to dismiss for *forum non conveniens*.[7] Because Defendants have given the Court no evidence, the record is devoid of any basis on which this Court can conclude that Australia provides an available and adequate alternate forum. Thus, Defendants' Motion must be denied.

**B.        Defendants Have Not Established That the Private and Public Factors Support Dismissal Under *Forum Non Conveniens*.**

Even assuming, *arguendo*, that Australia is available and adequate, Defendants have not met their burden of establishing that the private and public factors weigh in favor of dismissal. Where the private factors are concerned, again, Defendants give the Court nothing.

In support of the five factors identified by the Seventh Circuit in *Wilson v. Humphreys*, 916 F.2d 1239, 1245 (7th Cir. 1990), Plaintiffs have identified for the Court the names and locations of the numerous witnesses and documents in the United States, which are required for Plaintiffs to establish their case (including jurisdiction, liability, and damages). Many of those witness are located in Chicago, and there are more witnesses located here than in any other jurisdiction or venue. (For that reason, the cost associated with either obtaining compulsory process or attendance of willing witnesses is the least expensive in Chicago.) Moreover, Plaintiffs submitted the Declaration of Drew Heriot in support of these factors, who further advised the Court of the extreme personal and financial burden that the Australian litigation places upon him.

Defendants Motion and Reply, in contrast, rely on platitudes like "the sources of evidence – whether witness testimony, documents or film – are located in Australia," without actually identifying anything. With the exception of the testimony of Paul Harrington (who has already

---

[7] Defendants have made no such motion because (1) Plaintiffs have registered their copyright as author of the screenplay and film with the Copyright Office, as alleged in the complaint, (2) Plaintiffs' Complaint contests (and seek amendments to) the registrations filed by Defendants and (3) Defendants theory is that this is a foreign work, not United States work, in which case registration is not a pre-requisite to suit. *See* 17 U.S.C. § 411(a). In any event, Plaintiffs will be submitting additional registrations with the U.S. Copyright Office relating to Plaintiffs' written works and will be seeking leave to amend their complaint in short order.

submitted a Declaration to the Court and has agreed to testify), Defendants identify no actual witness, document, or discovery that is needed in Australia. Forgetting that the burden is theirs, not Plaintiffs', Defendants instead seek to establish that the private factors are met by dismissing Plaintiffs' discovery as unnecessary because "Defendants acknowledge that Heriot was the Director of *The Secret* movie" and "No one needs depositions . . . to confirm these facts." Defendants' Reply at 5-6. That, of course, is the exact opposite of what Defendants told the Court in their Motion (at 6) which asserted that "voluminous records and testimony" are needed in Australia to rebut Plaintiffs "spurious claims of ownership." Defendants cannot have it both ways.

Defendants' further complain that the Plaintiffs' discovery is not "critical given that the key to the dispute is whether Australia or the U.S. has the most significant relationship to *The Secret* movie's *creation*." Defendants are confused on two fronts. First, Defendants confuse choice of law and liability. If the Court adopts the *Itar-Tass* test, discovery may indeed be needed to establish which country's law applies to ownership. But that choice-of-law rule doesn't obviate the need for discovery relating to Plaintiffs' creative contributions, ownership, Defendants' ultimate liability, and damages owed to Plaintiffs. This U.S. discovery still weighs against dismissal. Second, as discussed below, Defendants misstate the *Itar-Tass* test, which is not limited to "creation." In fact, the witnesses Plaintiffs identified are necessary to establish the country with the "most significant relationship" to each work.

Defendants' analysis of the public interest factors fares no better. Defendants spend almost five pages discussing choice of law. For the reasons set forth in Section D, that analysis is both misplaced and wrong. Defendants also argue that that relative congestion of the courts favors dismissal by submitting the Declaration of Joseph Meckes. Mr. Meckes has no personal knowledge but simply gives the court copies of articles he found on the internet. As this court noted just last year "[c]ourt congestion is not a factor." *Chelios v. Nat'l Hockey Leage Players' Ass'n*, 2007 WL 178326, *7 (N.D.Ill. Jan. 18, 2007). Moreover, Defendants provide no declaration in response to the

declarations of Jon Reichman and John Swinson about the pace and status of the Australian

proceeding.  Once again, Defendants have not met their burden, and their Motion must be denied.

C.     **Defendants Have Not Met Their Burden of Proving that Abstention is Warranted.**

Defendants do not dispute that abstention must only be granted in "exceptional

circumstances" and that "the presumption is against abstention . . . the general rule being that a

federal court has a duty to exercise the jurisdiction that Congress has given it."  *Allendale v. Bull*

*Data Systems*, 10 F.3d 425, 430 (7th Cir. 1993).  Plaintiffs do not dispute that it is their heavy

burden, not Plaintiffs', to establish that (1) these actions are parallel and (2) that the *Finova* factors

weigh in favor of dismissal.  Once again, Defendants give the Court no actual evidence.

To prove that these actions are "parallel," Defendants only argument is to point to the

Affidavit of Plaintiffs' Australian counsel as an "admission" that the proceedings are parallel.  But

Defendants misquote the affidavit, which advised the Australian court that "the [U.S.] Complaint

raises the same issues for determination as are raised in this proceeding (*as well as a variety of*

*further or additional matters*)."  *See* Rainone Decl. Ex. F ¶ 5(c) (emphasis added).  As explained by

Mr. Swinson, those additional matters are the causes of action in *this* case that the Australian court

lacks jurisdiction over.  Swinson I. ¶¶ 10-26.  Defendants do not even attempt to explain how the

parties are litigating "substantially the same issues" when the Australian court lacks jurisdiction to

hear the very claims Plaintiffs assert here.  *Finova Capital,* 180 F.3d at 898.

Even assuming that these actions are parallel, Defendants have not met their burden of

establishing that the eight abstention factors weigh in their favor.  *Id.*  First, although Defendants

were first to file their "pre-emptive strike" in Australia, pre-emptive declaratory judgment actions are

not accorded any deference under the "first to file" rule.  *Tempco Elec. Heater Corp. v. Omega*

*Eng'g, Inc.,* 819 F.2d 746, 749-50 (7th Cir. 1987) ("This circuit has never adhered to a rigid "first to

file" rule . . . As we have noted before, 'The wholesome purpose of declaratory acts would be

aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum.'") Second, Plaintiffs have demonstrated the convenience of this forum and the inconvenience of Australia. In fact, Defendants' own Australian counsel has used their client's presence in the U.S. as a basis to delay the Australian litigation. Third, there is little risk of piecemeal litigation since Plaintiffs have moved to stay the Australian case. Fourth, there is no dispute that U.S. law governs Plaintiffs' substantive rights in this case. The only dispute is whether U.S. or Australian law governs the issue of ownership. As explained in Section D, U.S. law applies to that issue as well. Fifth, Australia is not an adequate alternate forum, protecting Plaintiffs' rights here. *See* Swinson I ¶ 26. Sixth, the Australian action and the U.S. action are in identical procedural positions, with no answer on file. Swinson II ¶ 24. Seventh, as demonstrated above, it is the Australian action that is vexatious and contrived, not this action. For these reasons, Defendants have not met their burden of establishing that "exceptional circumstances" warrant abstention.

### D. **Defendants' Reliance on *Itar-Tass* is Misplaced and Wrong.**

In thirty pages of briefing, Defendants devote almost eight to a discussion of the Second Circuit's decision in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998). Although this discussion is designed to support their arguments for dismissal under *forum non conveniens* or abstention, Defendants do not cite (and Plaintiffs cannot find) one case where a court follows *Itar-Tass* on the one hand and then grants dismissal on these grounds in another. The reason is obvious. No court has used the potential application of foreign law under *Itar-Tass* as a basis to grant dismissal because *Itar-Tass requires the application of U.S. law to substantive rights.*

The court in *Itar-Tass* held that, in a copyright case involving works with arguable connections to more than one country (in that case, Russian newspaper articles republished in the U.S.), the court should determine copyright ownership by following the copyright law of that country which has the "most significant relationship" to such works as a whole. *Id.* at 90. The court, noting the definition of "country of origin" in Article 5(4) of the Berne Convention, took particular note of

11

the country of first publication to determine the country with the "most significant relationship" to the work. *Id.* ("Since the works at issue were created by Russian nationals and first published in Russia, Russian law is the appropriate source of law to determine issues of ownership of rights."); *see also* Berne Convention Art. 5(4) ("The country of origin shall be considered to be: (a) in the case of works first published in a country of the Union, that country"). However, with respect to other issues unrelated to ownership (*e.g.,* standards for determining infringement or equitable accounting), the *Itar-Tass* court held that U.S. law governs. *Id.* at 91. Thus, even assuming Australia is the true country of origin (i.e. first publication) for any of the works in this case, U.S law still governs Plaintiffs' substantive rights. Thus, Defendants reliance on *Itar-Tass* for dismissal is misplaced.

Although the analysis is unnecessary (and would be more appropriately addressed with briefing at the close of discovery), Plaintiffs contend that: (1) the court should not adopt *Itar-Tass* and (2) should the court adopt *Itar-Tass*, discovery will be required to determine the country with the most significant relationship to the works.

### 1.    The Court Should Not Adopt *Itar-Tass.*

There are several reasons why the Court should not adopt the *Itar-Tass* test. First and foremost, the application of U.S. law to issues of copyright ownership follows directly from the Copyright Act itself, which identifies when foreign law should be applied. The Act's only choice of law rule is Section 104A[8], which expressly states: "A restored work vests initially in the author or initial rightholder of the work as determined by the law of the source country of the work." 17 U.S.C. § 104A(b). Notably, this choice of law rule is absent from the remainder of the Copyright Act, including 17 U.S.C. §§ 101 and 201, which governs copyright ownership generally. "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another," *Chicago v. Envtl. Defense Fund*, 511 U.S. 328, 338

---

[8] Section 104A is a special section dealing only with the restoration of copyright for foreign works whose copyright under U.S. law had previously expired under certain circumstances. It has no application in the present case.

(1994); *U.S. v. Carr*, 965 F.2d 176, 178 (7th Cir. 1992) ("[W]here Congress includes language in one section of a statute but omits it in another . . . it is generally presumed [to have] act[ed] intentionally and purposefully in the disparate inclusion or exclusion.").  This presumption applies unless such a reading would render the text "absurd" or "difficult to fathom."  *Id.*  That is not the case here. Congress included a choice of law provision in Section 104A, but not in Sections 101 and 201, because U.S. law governs the entirety of the Act, except where Congress specifically authorizes a different rule.  In the absence of Congressional authorization to the contrary, U.S. law controls.  *Id.*

Second, as discussed in Plaintiffs' Response, even the Court in *Itar-Tass* recognized that there is a special "choice of law" rule applicable to films under the Berne Convention, which provides that "[o]wnership of copyright in a cinematographic work shall be a matter for legislation in the country where protection is claimed." 153 F.3d at 91 (quoting Berne Convention Art. 14*bis* (2)(a)).[9]  As the WIPO *Guide to the Berne Convention* (at 85-86) makes plain, where protection is claimed in the U.S., U.S. law governs ownership.  Defendants only response is that the U.S. has not "enacted 'legislation' specifically governing ownership of copyright in 'cinematographic works'" and therefore "that article is of no help to plaintiffs."  That argument is wrong for two reasons. Defendants simply ignore the legislation in Sections 101, 102, and 201 of the Copyright Act, which govern ownership of films.  Moreover, the legislative history of the Berne Convention Implementation Act of 1988 explicitly states that: "The term 'legislation' as used in the Berne Convention includes the common law." H.R. Rep. No. 100-609, 100th Cong., 2d Sess. 37, n.86 (1988).  Thus, no specific legislation invoking Article 14*bis*(2)(a) is required.

Third, the Court should weigh carefully whether *Itar-Tass* should be followed, given that no other Circuit Court of Appeals has expressly adopted the *Itar-Tass* test on ownership.  In fact, that

---

[9]  In a footnote, Defendants cite to Section 313 of the un-adopted draft of the Restatement on Intellectual Property from the American Law Institute.  The comments to that section, however, explicitly state: "The Principles' approach may be inconsistent with art. 14bis(2)(a) of the Berne Convention . . . **This is the only provision of the Berne Convention to specify a rule of copyright ownership.**" (emphasis added).  A copy is attached.

decision is squarely at odds with prior Ninth Circuit precedent.[10]  *See Subafilms, Ltd. v. MGM-Pathe Communications Co.*  24 F.3d 1088, 1097 (9th Cir. 1994) ("Although the treaties do not expressly discuss choice-of-law rules . . . it is commonly acknowledged that the national treatment principle implicates a rule of territoriality. . . 'The applicable law is the copyright law of the state in which the infringement occurred, not that of the state of which the author is a national or in which the work was first published.'") (quoting *Nimmer*); *Creative Tech., Ltd. v. Aztech System Pte., Ltd.*,  61 F.3d 696, 700-01 (9th Cir. 1995) (reasserting that "the applicable law is the copyright law of the state in which the infringement occurred" but dismissing the case for *forum non conveniens*).  Moreover, contrary to Defendants' assertions, numerous courts have applied the United States work-for-hire doctrine to works of foreign employees to determine ownership.[11]

Fourth, *Itar-Tass* has been highly criticized by the seminal treatise *Nimmer on Copyright*. 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 17.05 (2007).  *Nimmer* notes that although the *Itar-Tass* court applied foreign law to the issue of ownership, it still applied U.S. law to the related issue of standing, which provides that only owners and exclusive licensees hold the authority to sue an infringer.  Thus, while the issue of ownership in *Itar-Tass* was governed by Russian law, the connected issue of whether or not a plaintiff held an *exclusive interest* in the work, thereby vesting such plaintiff with standing to sue, was governed by U.S. law.  Second, *Nimmer* notes that the court's artificial distinction between "ownership" and "substantive rights" was porous at best.  For example, an assignment of copyright ownership in a work could always occur in a third

---

[10] Defendants cite to a footnote in *Lahiri v. Universal Music & Video Distribution*, 513 F.Supp.2d 1172, 1176 n.4 (CD Cal. 2007), to argue that *Itar-Tass* has gained widespread adoption.  That case, which did not discuss *Itar-Tass*, was not appealed, and is inconsistent with prior Ninth Circuit case law.

[11] *See, e.g., Autoskill Inc. v. National Educational Support Systems, Inc.*  994 F.2d 1476, 1489 (10th Cir. 1993) (applying U.S. employment and work for hire factors to Canadian employer);  *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d 548, 551-53 (2d Cir.1984) (U.S. law applied to determine if statuettes crafted abroad were works for hire); *Dae Han Video Productions, Inc. v. Kuk Dong Oriental Food, Inc.*, 19 U.S.P.Q. 2d 1294 (D. Md. 1990) (U.S. law applied to determine if scripts written abroad were works for hire); *P & D International v. Halsey Publishing Co.*, 672 F. Supp. 1429, 1435-36 (S.D.Fla. 1987) (U.S. work-for-hire law applied to foreign work);  *Sygma Photo News, Inc. v. Globe Intern., Inc.*  616 F. Supp. 1153, 1156 (D.C.N.Y. 1985) (applying U.S. employment and work for hire factors to copyright case involving pictures taken in Buckingham palace).

country, but *Itar-Tass* does not address how a contested assignment would or should be treated.[12]

Third, *Nimmer* notes that *Itar-Tass* is flatly inconsistent with prior Second Circuit precedent.  For example, in *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189 (2d Cir. 1985), the Second Circuit accorded U.S. copyright protection to toys which were designed in Japan, notwithstanding the fact that Japanese copyright law did not afford copyright protection for toys.  The *Itar-Tass* decision failed to distinguish its analysis from the Second Circuit's earlier *Hasbro* decision, and the *Itar-Tass* analysis fails on the facts of *Hasbro* because Japanese law does not speak to the ownership of a right which it does not recognize.  For these reasons, *Itar-Tass* should be rejected.

### 2.     Discovery is Required under *Itar-Tass*.

Even if the Court adopts *Itar-Tass* and rejects the application of Art. 14*bis*(a)(2) of Berne, at a minimum, further discovery is required.  For example, Defendants have submitted a new Declaration of Robert Rainone to argue that *The Secret* (Original Edition) was first published in Australia and to rebut the Declaration of Drew Heriot.  But Defendants' own copyright registration for *The Secret* (Original Edition) states that the country of first publication is the United States.  Exhibit B, Nicholson Decl. ¶ 5, Ex. A.  Moreover, Plaintiffs believe that information regarding the country of first publication (including security measures that were taken to prohibit sales in Austrlia are in the possession of Dan Hollings, who was the web designer during this time period and who lives in the United States.  *Id.* ¶¶ 3-4.  Plaintiffs cannot adequately respond to Rainone's Declaration absent the testimony of Dan Hollings and cross-examination of Rainone.

Dated:  July 2, 2008

                                                 Respectfully submitted,

                                              /s/ Darren P. Nicholson
                                              Darren P. Nicholson
                                              Counsel for Plaintiffs

---

[12] Thus, the *Itar-Tass* test does not tell the Court what law governs the copyright assignments in this case.

15

As of the date of publication, this Draft has not been considered by the members of The American Law Institute and does not represent the position of the Institute on any of the issues with which it deals. The action, if any, taken by the members with respect to this Draft may be ascertained by consulting the Annual Proceedings of the Institute, which are published following each Annual Meeting.

# The American Law Institute

### INTELLECTUAL PROPERTY: PRINCIPLES GOVERNING JURISDICTION, CHOICE OF LAW, AND JUDGMENTS IN TRANSNATIONAL DISPUTES

*Proposed Final Draft*

(March 30, 2007)

**SUBJECTS COVERED:**

Revisions to:
Part I.       Definitions and Scope of the Principles
Part II.      Jurisdiction
              Chapter 1. Personal Jurisdiction over the Defendant
              Chapter 2. Jurisdiction over the Subject Matter
              Chapter 3. Jurisdiction over Simplification: Coordinating Multiterritorial
                         Actions
Part III.     Applicable Law
              Chapter 1. In General
              Chapter 2. Title to and Transfer of Rights
              Chapter 3. Residual Principles Regarding Choice of Law
Part IV.      Recognition and Enforcement of Foreign Judgments in Transnational Cases
              Chapter 1. In General
              Chapter 2. Remedies
Glossary

Submitted by the Council to the Members of
The American Law Institute
for Discussion at the Eighty-Fourth Annual Meeting
on May 14, 15, and 16, 2007

The Executive Office
THE AMERICAN LAW INSTITUTE
4025 Chestnut Street
Philadelphia, Pa. 19104-3099
Telephone: (215) 243-1600 • Telecopier: (215) 243-1636
E-mail: ali@ali.org • Website: http://www.ali.org

©2007 BY THE AMERICAN LAW INSTITUTE
ALL RIGHTS RESERVED

Collaborative Research: Conflicts on Authorship, Ownership, and Accountability, 53 Vand. L. Rev. 1161 (2000). Thus, the rules used for goods are not apposite.

*3. Relationship to Berne Convention, art. 14$^{bis}$(2)(a).* The Principles' approach may be inconsistent with art. 14$^{bis}$(2)(a) of the Berne Convention, which generally submits "[o]wnership of copyright in a cinematographic work" to the laws of the "countr[ies] where protection is claimed." This is the only provision of the Berne Convention to specify a rule of copyright ownership. The rule, however, is more complicated than first appears, for subsections (b) and (c) impose a complex presumption conferring on the producer the control over the film's exploitation even with respect to countries in which contributing coauthors are deemed copyright owners. (The presumption does not apply in countries in which the producer is already vested with copyright ownership.) As a practical matter, these provisions displace the role of the law in certain States of exploitation in order to achieve a result to which the Principles also aspire: the efficient multiterritorial exploitation of the work. The Principles do not attempt to replicate the Berne solution, which is widely viewed as incoherent and unworkable: it "does very little to achieve the uniform system for the exploitation of cinematographic works that was desired by its originators," Sam Ricketson & Jane C. Ginsburg, International Copyright and Neighbouring Rights: The Berne Convention and Beyond ¶ 7.41 (2006).

*4. Other points of attachment.* Four other points of attachment, each in some way compatible with the principle of territoriality, can be considered in order to establish the law applicable to the initial title to unregistered rights. Each of them, ultimately, must be rejected for the reasons indicated below.

First, initial title can be deemed to be governed by the lex fori, i.e., the law of the jurisdiction seized. This solution, however, would encourage forum shopping, and would be unpredictable. A licensee needs to know, at the time of negotiating the license, if the party with whom she is negotiating in fact is the owner of the rights it purports to license. The law applicable to determining ownership therefore must be ascertainable at the time of licensing.

# SURREPLY EXHIBIT A

# DECLARATION OF
# JOHN V. SWINSON

Attached Exhibits:

Ex. A – October 30, 2007 letter from Marshalls & Dent

Ex. B – November 14, 2007 letter from Arnold Bloch Leibler

Ex. C – November 29, 2007 letter from Arnold Bloch Leibler

Ex. D – January 14, 2007 letter from Arnold Bloch Leibler

Ex. E – February 27, 2007 letter from Mallesons Stephen Jaques

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Drew Heriot and Drew Pictures Pty Ltd., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Civil Case No. 08cv2272 |
| | § | |
| Rhonda Byrne, | § | The Honorable Suzanne B. |
| Conlon | | |
| The Secret LLC (AKA TS Holdings LLC) | § | |
| Prime Time US Inc., | § | |
| TS Production Holdings LLC, | § | |
| TS Production LLC, | § | |
| TS Merchandising Ltd., And | § | |
| Robert E. Rainone Jr. | § | |
| | § | |
| *Defendants.* | § | |

## DECLARATION OF JOHN V. SWINSON

I, John V. Swinson, declare under penalty of perjury, under the laws of the

United States of America, that the following is true and correct, and is based upon my

personal knowledge or upon information which has been provided to me by others

and which I am informed and believe to be true, and to which I am competent to

testify:

1.      I am an intellectual property lawyer and partner at the law firm Mallesons

Stephen Jaques located at Level 30, Waterfront Place, 1 Eagle Street, Brisbane,

Queensland, Australia.  I have obtained law degrees from the University of

Queensland and Harvard Law School.  In Australia, I am admitted to practise in the

Federal Court of Australia and the High Court of Australia, as well as in various State

jurisdictions.  In the United States of America, I am admitted to practise in New York

State, as well as in United States District Courts for the Southern District of New

York, the Eastern District of New York and the Northern District of California.

2.      I have been admitted to practise law for 20 years, during which time I have primarily focussed on intellectual property disputes.  I have acted in a number of cross-jurisdictional intellectual property disputes.

3.      Mallesons Stephen Jaques (Mallesons) represents Plaintiffs Drew Heriot and Drew Pictures Pty Ltd in legal proceedings known as *TS Productions LLC v. Drew Pictures Pty Ltd and Drew Heriot*, No. VID 122 of 2008 ("Australian Proceedings").

4.      I have reviewed the Reply submitted by Defendants in support of their Motion to Dismiss in this case.  This Declaration is to respond to Defendants assertion in their Reply Brief that "the Australian litigation is advanced in the pleading stage and has been progressing since October 2007," and that Mallesons Stephen Jaques "have made substantial efforts in Australia to slow things down" in the Australian Proceedings.  Neither of these statements is accurate.

5.      The Australian Proceedings have been moving at a very slow pace.  This is in no small part because TS Productions LLC (the Plaintiff in the Australian Proceeding) has not complied with past court timetable orders.  Counsel for TS Productions LLC have sought numerous extensions of time and have used their clients presence in the United States and the difficulties of coordinating with them as a basis to seek extensions.

6.      TS Production LLC filed its first Statement of Claim against Drew Pictures Pty Ltd and Drew Heriot on 18 October 2007 in the Victorian Registry of the Federal Magistrates' Court of Australia.

7.      In a letter dated 30 October 2007, I was advised by Marshalls & Dent, the then Australian counsel for TS Production LLC, that "The circumstances which have given rise to the issue of the proceedings has been your client's wrongful action of applying

for registration of copyright in the US with respect to the Film and the screenplay for the Film." Attached hereto as Exhibit A is a true and correct copy of that letter.

8.      TS Production LLC's Statement of Claim was insufficiently pleaded as a matter of Australian law. Accordingly, on 8 November 2008, Federal Magistrate O'Dwyer made Orders which provided TS Production LLC with the opportunity to file and serve an Amended Statement of Claim by 15 November 2007.

9.      TS Production LLC did not comply with Magistrate O'Dwyer's Orders.

10.      In a letter dated 14 November 2007, I was advised by Arnold Bloch Leibler (ABL), the new Australian counsel for TS Production LLC, that "In circumstances where we have only recently received instructions to act in this matter, we will not be in a position to finalise any Amended Statement of Claim within that time. We propose that the date be extended until 22 November 2007..." Attached hereto as Exhibit B is a true and correct copy of that letter.

11.      TS Production LLC did not file an Amended Statement of Claim by 22 November 2007.

12.      In a letter dated 29 November 2007, I was advised by ABL that "Unfortunately, we are having difficulty obtaining instructions required to finalise the Amended Statement of Claim. This is primarily due to the fact that our client's representatives are in the United States. We understand that our client will provide the necessary instruction in the next days. Proceeding on that basis, the Amended Statement of Claim will be filed and served early next week." Attached hereto as Exhibit C is a true and correct copy of that letter.

13.      TS Production LLC did not file an Amended Statement of Claim "early next week" as promised in the 29 November letter.

14.    In a letter dated 14 January 2008, ABL again advised that "Due to the time of year and the fact that our client is located in the United States we have not yet been able to obtain final instructions in order for use to file and serve the Amended Statement of Claim." ABL proposed a new consent order providing that their Amended Statement of Claim would be filed by 25 January 2008. Attached hereto as Exhibit D is a true and correct copy of that letter.

15.    TS Production LLC did not file an Amended Statement of Claim by 25 January 2008.

16.    On 8 February 2008, we filed on behalf of Drew Heriot and Drew Pictures an application to transfer the Australian Proceedings from the Federal Magistrates Court of Australia to the Federal Court of Australia, because the Federal Magistrates Court was plainly the wrong Court to adjudicate an intellectual property dispute involving challenges to jurisdiction and questions of United States law. TS Production LLC consented to the transfer of the Australian Proceedings.

17.    On 11 February 2008, after the application for transfer was made, TS Production LLC submitted an Amended Statement of Claim (almost three months late).

18.    On 27 February 2008, I caused a letter to be sent to ABL which stated that "As you know, we consider this to be an appropriate matter for the fast track list of the Federal Court … Please let us know whether or not your client consents to this course of action." Attached hereto as Exhibit E is a true and correct copy of that letter.

19.    The "fast track list" is a specialist docket in the Federal Court of Australia that is specifically designed to expedite the trial and resolution of proceedings. Nevertheless, by letter dated 5 March 2008, TS Production LLC refused to consent to

the transfer of the Australian Proceedings to the fast track list. Attached hereto as Exhibit F is a true and correct copy of a letter received from ABL in that regard.

20.    On 28 March 2008, the Australian Proceedings were listed for a "directions hearing" before Justice Sundberg on 24 April 2008. At the directions hearing, the Court would ordinarily set a timetable order for the filing of any defense or cross-claim to the Amended Statement of Claim.

21.    Plaintiffs Complaint in this case was filed in United States District Court for the Northern District of Illinois on 21 April 2008, in advance of the directions hearing before Justice Sundberg.

22.    On 24 April 2008, Justice Sundberg set a timetable for the parties to file any motions in light of the initiation of the U.S. Complaint. TS Production LLC has filed a Motion seeking an anti-suit injunction. Heriot and Drew Pictures have filed a motion to stay for *forum non conveniens*. The matter is set for hearing of these motions on 11 July 2008.

23.    Aside from the pending motion under *forum non conveniens*, at no time has Mallesons ever sought to delay the Australian Proceeding or to otherwise attempted to "slow things down."

24.    Procedurally, there is no difference between the Australian proceeding and the present one. In both, a Complaint or Statement of Claim has been filed, but no Answer, Defense, or Cross Claim has been filed, no discovery has been started, no trial date has been set, and motions to stay are pending before both.

25.    Drew Heriot and Drew Pictures have never consented to or accepted that the Federal Court of Australia is the appropriate court to determine matters in dispute in

this case.

Signed this 2nd day of July, 2008, in Brisbane, Australia.

John V. Swinson



**Marshalls & Dent** *Lawyers*

Our Ref:    JMH: 050340

Your Ref:

30 October 2007

John Swinson
Mallesons Stephen Jaques
Level 30 Waterfront Place
1 Eagle Street
BRISBANE QLD 4000

By facsimile: (07) 3244-8999

Dear Mr Swinson,

**TS Production LLC –v– Drew Pictures Pty Ltd & Anor**
**Federal Magistrates' Court Proceedings – File No. 1435 of 2007**

We refer to your letter dated 26 October 2007 in which you demand that our client provide security for costs with respect to the above proceedings of $100,000.00. We hereby reject that our client ought provide security of the sum of $100,000.00 or at all at this time for the following reasons:

1.  Our client's claim against your client is a relatively straightforward claim, namely for a declaration that it is the owner of the copyright in the film titled "The Secret (Original Edition)" and associated orders arising from such a Declaration.

2.  At this time your client has not filed any material in defence of the orders sought by our client in this proceeding and accordingly there is no evidence that your client has any credible defence to our client's claims.

3.  Further your client has advised that it intends to file a cross claim against our client not only as to copyright ownership in the Film but also for breach of contract and misleading and deceptive conduct presumably in breach of the *Trade Practices Act 1974 (Cth)*.

4.  Accordingly, the matters to be agitated by your client go beyond our client's claim and warrant your client being treated as a plaintiff for the purposes of seeking security for costs.

| Senior Associates: | Consultants: | Level 13 | Tel: | 03  9670 5000 |
| --- | --- | --- | --- | --- |
| Mark Finn | Judy Heeps | 459 Little Collins Street | Fax: | 03  9642 0409 |
| Jennifer Mooney | Jan Slattery | MELBOURNE  VIC  3000 | Int: | 61 3 9670 5000 |
| Margaret Leech | John Boyle | AUSTRALIA | | |
| Karen Standal | | DX 213 Melbourne | | |
| Darren Saniski | | PO Box 316 Collins Street West | | |
| Anna Marshall | | MELBOURNE  VIC  8007 | Web: | www.mdlaw.com.au |
| Georgia Hargreaves | General Manager: | ABN: 66 706 713 927 | Email: | office@mdlaw.com.au |
| | Harvey Ashton | | | |

Associates
Margaret Neal
Guy Israeli
Shaun Miller
Aaron van der Heyden
Helen Suke
William T Marshall R.F.D. (1975-2004)

EXHIBIT

A

John Swinson                            - 2 -                         30 October 2007

5.    The circumstances which have given rise to the issue of the proceedings has been
      your client's wrongful action of applying for registration of copyright in the US with
      respect to the Film and the screenplay for the Film.

6.    In view of the above the Court ought exercise its discretion

In summary your clients' demands for the provision of security for costs are premature given
that no material has been filed by your clients in the proceedings. Therefore there is no basis
at this stage to assess what amount, if any, would be reasonable. Further we maintain that
the sum demanded of $100,000.00 is in any case excessive.

In conclusion we advise that any application for security for costs at this time shall be
opposed. We advise however that our client will consider any reasonable request for security
for costs upon receipt of your client's material to be filed in the proceedings and upon receipt
of a detailed breakdown as to the costs which they assert are reasonable and are costs for
which it can be substantiated security ought be given. Please note our client has no difficulty
either financial or otherwise to the provision of security for costs if it is established that
security ought properly be given.

Yours faithfully
MARSHALLS & DENT

Judy Heeps

# Arnold Bloch Leibler

Lawyers and Advisers

Level 21
333 Collins Street
Melbourne
Victoria 3000
Australia
DX38455 Melbourne
www.abl.com.au

Telephone
61 3 9229 9999
Facsimile
61 3 9229 9900

14 November 2007

**By Post and E-mail**

John Swinson/Cate Nagy/Natalie Hickey
Mallesons Stephen Jaques
30/1 Eagle Street
Brisbane QLD 4000

Our Ref  LZ/VED
File No.  011451706

**Partner**
Leon Zwier
Direct 61 3 9229 9646
Facsimile 61 3 9229 9603
lzwier@abl.com.au

**Contact**
Vicki Donnenberg
Direct 61 3 9229 9632
Facsimile 61 3 9916 9551
vdonnenberg@abl.com.au



MELBOURNE
SYDNEY

Partners
Mark M Leibler AC
Robert J Heathcote
Henry D Lanzer
Joseph Borensztajn
Leon Zwier
Philip Chester
Ross A Paterson
Stephen L Sharp
Kenneth A Gray
Kevin F Frawley
Michael N Dodge
Jane C Sheridan
Paulina Grodski
Steven Klein
Leonie R Thompson
Zaven Mardrossian
Jonathan M Wenig
Paul Sokolowski
Paul Rubenstein
Peter M Seidel
Gise Selikowitz
Alex King
John Mitchell
Dany Merkel
Nicole Gordon
Ben Mahoney
Sam Dollard
Lily Tell
Henry Skene

Senior Associates
Kirsten Frew
Kishane Wijewickrema
Lisa Ashcroft
Fiona Trueman
Jonathan Milner
Jillian Saint
Annabel Bainbridge
Danuta Czuchwicki
Katie Drinkwater
John Mengolian
Melanie Alderson
Justin Vaatstra
Ashley Lewis
Sue Kee
Leigh De Jong

Consultants
Allan Fels AO
Steven M Skala

Dear Mr Swinson, Ms Nagy and Ms Hickey

**TS Productions LLC v Drew Pictures Pty Ltd & Anor**
**Federal Magistrates' Court Proceeding No. 1435 of 2007**

We **enclose** by way of service a Notice of Change of Solicitors.

The Orders of Federal Magistrate O'Dwyer dated 8 November 2007 require our client to file and serve any Amended Statement of Claim by 15 November 2007. In circumstances where we have only recently received instructions to act in this matter, we will not be in a position to finalise any Amended Statement of Claim within that time. We propose that the date be extended until 22 November 2007 and that the rest of the timetable be extended consequentially as follows:

1    The date by which the Respondents shall file and serve a Defence to the Statement of Claim or Amended Statement of Claim (if any) and any Cross-Claim be extended to 21 December 2007.

2    The date by which the Applicant shall file and serve any Reply and Defence to Cross-Claim be extended to 5 February 2008.

3    The date by which the Respondents shall file and serve any Reply to the Applicant's Defence and any application to transfer the proceeding to the Federal Court of Australia or to strike out the proceeding, together with any affidavits in support be extended to 12 February 2008.

4    The Applicant shall file and serve any affidavits in opposition to the application to transfer the proceeding or to strike it out by 20 February 2008.

5    Any application to transfer the proceedings to the Federal Court and/or to strike out the proceeding remain fixed for hearing 22 February 2008 at 9.30 am.

::ODMA\PCDOCS\ABL\562988\1



**EXHIBIT**

B

John Swinson/Cate Nagy/Natalie Hickey
Mallesons Stephen Jaques

Arnold Bloch Leibler
Page:      2
Date:      14 November 2007

6      The directions hearing to remain adjourned until 22 February 2008 at
9.30 am.

Could you please confirm whether you consent to extending the timetable as set
out above.

Finally, please note that while Arnold Bloch Leibler are the solicitors on the
record, the Applicant will continue to consult with Marshalls & Dent Lawyers in
relation to these proceedings.

Yours sincerely

**Leon Zwier**
Partner

Enc

# Arnold Bloch Leibler
### Lawyers and Advisers

29 November 2007

Level 21
333 Collins Street
Melbourne
Victoria 3000
Australia

DX38455 Melbourne
www.abl.com.au

Telephone
61 3 9229 9999
Facsimile
61 3 9229 9900

John Swinson/Cate Nagy/Natalie Hickey
Mallesons Stephen Jacques
30/1 Eagle Street
Brisbane QLD 4000

Our Ref  VED LZ
File No.  011451706

Contact
Vicki Donnenberg
Direct 61 3 9229 9779
Facsimile 61 3 9916 9551
vdonnenberg@abl.com.au

Partner
Leon Zwier
Direct 61 3 9229 9646
lzwier@abl.com.au



MELBOURNE
SYDNEY

Partners
Mark M Leibler AC
Robert J Heathcote
Henry D Lanzer
Joseph Borensztajn
Leon Zwier
Philip Chester
Ross A Paterson
Stephen L Sharp
Kenneth A Gray
Kevin F Frawley
Michael N Dodge
Jane C Sheridan
Paulina Grodski
Steven Klein
Leonie R Thompson
Zaven Mardrossian
Jonathan M Wenig
Paul Sokolowski
Paul Rubenstein
Peter M Seidel
Glen Salikowitz
Alex King
John Mitchell
Dany Merkel
Nicole Gordon
Ben Mahoney
Sam Dollard
Lily Tell
Henry Stone

Senior Associates
Kirsten Frew
Kisharia Wijwekrama
Lisa Ashcroft
Fiona Trueman
Jonathan Milner
Jillian Saint
Annabel Bainbridge
Danuta Czuchwicki
Katie Morrison
John Mengolian
Melanie Atherton
Justin Vaatstra
Ashley Lewis
Sue Kee
Leigh De Jong

Consultants
Allan Fels AO
Steven M Skala

Dear Mr Swinson, Ms Nagy and Ms Hickey

**TS Productions LLC v Drew Pictures Pty Ltd & Anor**
**Federal Magistrates' Court Proceeding No. 1435 of 2007**

We refer to our letters dated 14 November 2007 and 22 November 2007.

Unfortunately, we are having difficulty obtaining instructions required to finalise the Amended Statement of Claim. This is primarily due to the fact that our client's representatives are in the United States. We understand that our client will provide the necessary instructions in the next days. Proceeding on that basis, the Amended Statement of Claim will be filed and served early next week.

In order to minimise any inconvenience, we propose that the timetable be further amended to provide as follows.

1.  The date by which the Respondents shall file and serve a Defence to the Statement of Claim or Amended Statement of Claim (if any) and any cross claim be extended to 21 January 2008.

2.  The Applicant shall file and serve any Reply and Defence to Cross-Claim by 5 February 2008.

3.  The Respondents shall file and serve any Reply to the Applicant's Defence and any application to transfer the proceeding to the Federal Court of Australia or to strike out the proceeding, together with any affidavits in support by 12 February 2008.

4.  The Applicant shall file and serve any affidavits in opposition to the application to transfer the proceeding or to strike it out by 20 February 2008.

5.  Any application to transfer the proceedings to the Federal Court and/or to strike out the proceeding remain fixed for hearing 22 February 2008 at 9:30 am.

6.  The directions hearing to remain adjourned until 22 February 2008 at 9:30 am.



EXHIBIT

C

John Swinson/Cate Nagy/Natalie Hickey
Mallesons Stephen Jacques

Arnold Bloch Leibler
Page:     2
Date:     29 November 2007

As will be observed, the only change in the above from the timetable the subject
of our 14 November 2007 letter and your 23 November 2007 response is the
extension of time for your client to file and serve its Defence and any cross
claim, consequent on the change in timing on our client's Amended Statement
of Claim.  Please confirm whether you consent to amending the timetable as set
out above.

Yours sincerely
**Arnold Bloch Leibler**

for **Vicki Donnenberg**
Lawyer

# Arnold Bloch Leibler

Lawyers and Advisers

14 January 2008

Level 21
333 Collins Street
Melbourne
Victoria 3000
Australia

DX38455 Melbourne
www.abl.com.au

Telephone
61 3 9229 9999
Facsimile
61 3 9229 9900

John Swinson/Cate Nagy/Natalie Hickey
Mallesons Stephen Jaques
30/1 Eagle Street
Brisbane QLD 4000

Our Ref   VED LZ
File No.   011461706

Contact
Vicki Donnenberg
Direct 61 3 9229 9779
Facsimile 61 3 9916 9551
vdonnenberg@abl.com.au

Partner
Leon Zwier
Direct 61 3 9229 9646
lzwier@abl.com.au



MELBOURNE
SYDNEY

Partners
Mark M Leibler AC
Robert J Heathcote
Henry D Lanzer
Joseph Borensztajn
Leon Zwier
Philip Chester
Ross A Paterson
Stephen L Sharp
Kenneth A Gray
Kevin F Frawley
Michael N Dodge
Jane C Sheridan
Steven Klein
Leonie R Thompson
Zaven Mardrossian
Jonathan M Wenig
Paul Sokolowski
Paul Rubenstein
Peter M Seidel
Glen Sekkowitz
Alex King
John Mitchell
Dany Merkel
Nicole Gordon
Ben Mahoney
Sam Dollard
Lily Tell
Henry Skene

Senior Associates
Kirsten Frew
Kishanta Wijewickrama
Lisa Ashcroft
Fiona Trueman
Jonathan Milner
Jillian Saint
Annabel Bainbridge
Danuta Czuchwicki
Katie Morrison
John Mesgolan
Melanie Alderton
Justin Vaatstra
Ashley Lewis
Sue Kee
Leigh De Jong

Consultants
Allan Fels AO
Steven M Skala

Dear Mr Swinson, Ms Nagy and Ms Hickey

**TS Productions LLC v Drew Pictures Pty Ltd & Anor**
**Federal Magistrates' Court Proceeding No. 1435 of 2007**

We refer to your letter dated 21 December 2007.

We confirm that our client still intends to file and serve an Amended Statement of Claim, which is substantially complete.

Due to the time of year and the fact that our client is located in the United States we have not yet been able to obtain final instructions in order for us to file and serve the Amended Statement of Claim.

We agree that the Court ordered timetable will now need to be revised. **Enclosed** are consent orders revising the timetable. Would you please sign and return them at your earliest convenience.

Yours sincerely
**Arnold Bloch Leibler**

for *[signature]*

**Leon Zwier**
Partner

**EXHIBIT**

D

IN THE FEDERAL MAGISTRATES
COURT OF AUSTRALIA
AT MELBOURNE

File No. (P)MLG1435/2007

TS PRODUCTION LLC
Applicant

DREW PICTURES PTY LTD
(ACN 088 783 000)
First Respondent

ANDREW HERIOT
Second Respondent

## MINUTES OF CONSENT ORDER

BEFORE:

DATE:                January 2008

MADE AT:             MELBOURNE

## BY CONSENT THE COURT ORDERS THAT:

1    Paragraphs 2 to 8 of the Orders dated 8 November 2007 be vacated.

2    The Applicant shall file and serve an Amended Statement of Claim (if any) by
     25 January 2008.

3    The Respondent shall file and serve a Defence to the Statement of Claim or
     Amended Statement of Claim (if any) and any Cross-Claim by 22 February 2008.

4    The Applicant shall file and serve any Reply and Defence to Cross-Claim by
     28 March 2008.

---

Filed on behalf of the Applicant

**ARNOLD BLOCH LEIBLER**
Lawyers and Advisers
Level 21
333 Collins Street
Melbourne VIC 3000
DX 38455 Melbourne

Tel: 9229 9999
Fax: 9229 9900
Ref: LZ:011451706
Email: lzwier@abl.com.au
(Leon Zwier)

2

5    The Respondents shall file and serve any Reply to the Applicant's Defence and any
     application to transfer the proceeding to the Federal Court of Australia or to strike
     out the proceeding, together with any affidavits in support by 7 March 2008.

6    The Applicants shall file and serve any affidavits in opposition to the application to
     transfer the proceeding or to strike it out by 14 March 2008.

7    Any application to transfer the proceedings to the Federal Court of Australia and/or
     to strike out the proceeding is fixed for hearing on                2008 at           .

8    The directions hearing is adjourned to               2008 at           .

Dated:

......................................

**ARNOLD BLOCH LEIBLER**
Solicitors for the Applicant

......................................

**MALLESONS STEPHEN JAQUES**
Solicitors for the First and Second Respondents

# MALLESONS STEPHEN JAQUES

FAXED

**Confidential communication**

Attention: Mr Leon Zwier / Mr
Justin Vaatstra

Arnold Bloch Leibler
Level 21
333 Collins Street
Melbourne Vic 3000
**Fax (03) 9229 9900**

27 February 2008

Peter Selvay
Solicitor
Direct line
+61 3 9643 4363

Natalie Hickey
Partner

Dear Sirs

**Drew Pictures Pty Ltd & Anor ats TS Productions LLC**
**Federal Magistrates' Court Proceeding No. 1435 of 2007**

Pursuant to the orders made by Federal Magistrate O'Dwyer on 21 February 2008, this
proceeding has been transferred to the Melbourne Registry of the Federal Court of Australia.

As you know, we consider this to be an appropriate matter for the fast track list of the Federal
Court. We are instructed to apply to have this matter entered into the fast track list.

Please let us know whether or not your client consents to this course of action. The Federal
Court Registry has informed us that this proceeding will be allocated directly to the fast track
list should there be such consent. We would appreciate your response by no later than **4:30pm**
on **Wednesday, 5 March 2008.**

Should our client need to apply to have this matter entered into the list, and assuming such an
application is successful, we will rely on this correspondence on the question of costs.

Yours faithfully

*Mallesons Stephen Jaques*

Level 50 Bourke Place 600 Bourke Street Melbourne VIC 3000 Australia    T +61 3  9643 4000
DX 101 Melbourne ABN 22 041 424 954  mel@mallesons.com  www.mallesons.com    F +61 3  9643 5999

9327501_1 / <NEW> 000 / PJSELVAY                                        Page 1 of

EXHIBIT

E

tabbies

# Arnold Bloch Leibler

### Lawyers and Advisers

Level 21
333 Collins Street
Melbourne
Victoria 3000
Australia
DX38455 Melbourne
www.abl.com.au
Telephone
61 3 9229 9999
Facsimile
61 3 9229 9900

5 March 2008

**By Post and E-mail**

Our Ref  JTV LZ
File No.   011451706

Mallesons Stephen Jaques
30/1 Eagle Street
Brisbane QLD 4000

Contact
Justin Vaatstra
Direct 61 3 9229 9765
Facsimile 61 3 9916 9358
jvaatstra@abl.com.au

**Attention: John Swinson / Natalie Hickey / Peter Selvay**

Partner
Leon Zwier
Direct 61 3 9229 9646
lzwier@abl.com.au



MELBOURNE
SYDNEY

Dear Sirs and Madam

**TS Productions LLC v Drew Pictures Pty Ltd & Anor**
**Federal Magistrates' Court Proceeding No. 1435 of 2007 (the Proceeding)**

We refer to your facsimile dated 27 February 2008.

Our client would much prefer to have the dispute resolved expeditiously. At this time we cannot determine the ambit of the dispute.

Our client does not currently consent to the Proceeding being entered into the Federal Court's Fast Track List. It will reconsider its position after your clients file and serve their Defences and Cross-Claims (if any).

Yours sincerely
**Arnold Bloch Leibler**

for

**Leon Zwier**
Partner

Partners
Mark M Leibler AC
Robert J Heathcote
Henry D Lanzer
Joseph Borensztajn
Leon Zwier
Philip Chester
Ross A Paterson
Stephen L Sharp
Kenneth A Gray
Kevin F Frawley
Michael N Dodge
Jane C Sheridan
Steven Klein
Leonie R Thompson
Zaven Mardirossian
Jonathan M Wenig
Paul Sokolowski
Paul Rubenstein
Peter M Seidel
Glen Sollkovitz
Alex King
John Mitchell
Davy Merkel
Nicole Gordon
Ben Mahoney
Sam Dollard
Lily Tell
Henry Skene
Andrew Silberberg

Senior Associates
Kirsten Fraw
Kisharie Wijewikrama
Lisa Ashcroft
Fiona Trueman
Jonathan Milner
Jillian Salot
Annabel Bainbridge
Danula Czuchwicki
Katie Morrison
John Mengolian
Melanie Alderton
Justin Vaatstra
Ashley Lawla
Sue Kee
Leigh De Jong

Consultants
Allan Fels AO
Steven M Skala

EXHIBIT

F

# SURREPLY EXHIBIT B

# DECLARATION OF
# DARREN P. NICHOLSON

Attached Exhibits:

Ex. A – U.S. Copyright Office Certificate of Registration – PA 1-355-452

Ex. B – U.S. Copyright Office Certificate of Registration – PA 1-355-437

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Drew Heriot and Drew Pictures Pty Ltd., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | Civil Case No. 08cv2272 |
| | § | |
| Rhonda Byrne, | § | The Honorable Suzanne B. Conlon |
| The Secret LLC (AKA TS Holdings LLC) | § | |
| Prime Time US Inc., | § | |
| TS Production Holdings LLC, | § | |
| TS Production LLC, | § | |
| TS Merchandising Ltd., And | § | |
| Robert E. Rainone Jr. | § | |
| | § | |
| *Defendants.* | § | |

## DECLARATION OF DARREN P. NICHOLSON

I, Darren P. Nicholson, declare under penalty of perjury, under the laws of the United States of America, that the following is true and correct, and is based upon my personal knowledge or upon information which has been provided to me by others and which I am informed and believe to be true, and to which I am competent to testify:

1.      I am an attorney with the law firm of Sayles Werbner PC. I am admitted to practice before the courts of the State of Texas, the District of Columbia, the United States District Court for the District of Columbia, the United States Court of Appeals for the District of Columbia Circuit, and the United States District Courts for the Northern and Eastern Districts of Texas. I am one of the attorneys of record for Plaintiffs in this case and have been admitted in this case *pro hac vice*.

2.      I have reviewed the new Declaration submitted by Robert E. Rainone, Jr. Mr. Rainone's Declaration states that "The Secret movie was made available worldwide for

retail viewing" on March 23, 2006, and that on March 23rd "the movie was streamed to viewers in Australia . . ."

3.     Mr. Rainone's Declaration does not state that the streams to Australia were the result of purchases made by anyone located in Australia.

4.     In my capacity as counsel for Plaintiffs, I have coordinated with others in my firm to investigate the claims made by Plaintiffs in this action.  That investigation has revealed that information regarding the first sales that occurred on March 23, 2006, is in the possession of Dan Hollings, who was the web designer for *The Secret* website during that time period and is located in Arizona.

5.     If called to testify, I believe that Mr. Hollings would refute the assertions made (and implications of) the Rainone Declaration.  Specifically, based on my investigation in this case, I believe Mr. Hollings would testify based on his personal knowledge as follows:

a.   That, on March 23, 2006, and thereafter, there were security measures taken to prevent sales of the movie *The Secret* to anyone residing in Australia.  These measures were taken both as to "streams" of the movie as well as DVD sales.

b.   That specific, limited, streams were allowed to the servers of Prime Time Productions in Australia, to allow employees of Prime Time to view the streams and test the technology.  These streams, however, were not the result of purchases made by anyone in Australia.  No other streams were allowed to residents of Australia.  Sales of DVDs and internet streams were strictly prohibited to residents of Australia.

    c.   That all sales for the movie *The Secret* originated in the United States and

were paid for in United States dollars.

6.      Attached hereto as Exhibit A is a true and correct copy of the certificate of

copyright registration filed by TS Production LLC for the motion picture "The Secret

(Original Edition)," Registration Number: PA 1-355-452. That registration states

"Nation of 1st Publication: United States."

7.      Attached hereto as Exhibit B is a true and correct copy of the certificate of

copyright registration filed by Drew Pictures Pty Ltd. for the motion picture "The

Secret," Registration Number: PA 1-355-437. That registration states "Nation of 1st

Publication: United States."

Signed this 2nd Day of July, 2008, in Dallas, Texas.

Darren P. Nicholson

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## PA 1-355-452

**Effective date of registration:**

**August 1, 2007**

### Title

| | |
|---|---|
| **Title of Work:** | The Secret (Original Edition) |
| **Nature of Work:** | Motion picture |

### Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2006 |
| **Date of 1st Publication:** | March 23, 2006 |

**Nation of 1st Publication:** United States

### Author

| | |
|---|---|
| ■ **Author:** | Prime Time Production Holding Pty Ltd. |
| **Author Created:** | Entire motion picture |
| **Work made for hire:** | Yes |
| **Citizen of:** | Australia |
| **Anonymous:** | No |

**Domiciled in:** Australia

**Pseudonymous:** No

### Copyright claimant

| | |
|---|---|
| **Copyright Claimant:** | TS Production LLC |
| | Eros Ugyvedi Iroda, Roosevelt Irodahaz, Roosevelt ter 7-8, Budapest H-1051, Hungary |
| **Transfer Statement:** | By assignment |

### Limitation of copyright claim

| | |
|---|---|
| **Previously registered:** | No |

### Certification

| | |
|---|---|
| **Name:** | Suzanne K. Ketler, Esq. |
| **Date:** | July 30, 2007 |

| | |
|---|---|
| **Correspondence:** | Yes |

**EXHIBIT**

tabbies®

*A*

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## PA 1-355-437

**Effective date of registration:**

September 10, 2007

## Title

| | |
|---|---|
| **Title of Work:** | The Secret |
| **Nature of Work:** | Motion Picture |

## Completion/Publication

| | | | |
|---|---|---|---|
| **Year of Completion:** | 2006 | | |
| **Date of 1st Publication:** | March 26, 2006 | **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| ■ **Author:** | Drew Pictures Pty. Ltd. |
| **Author Created:** | screenplay and motion picture production |
| **Work made for hire:** | Yes |
| **Domiciled in:** | Australia |
| **Anonymous:** | No **Pseudonymous:** No |

## Copyright claimant

| | |
|---|---|
| **Copyright Claimant:** | Drew Pictures Pty. Ltd. |
| | Unit 1/9 Ashby Grove, Ivanhoe 3079, Victoria, Australia |

## Limitation of copyright claim

| | |
|---|---|
| **Previously registered:** | No |

## Certification

| | |
|---|---|
| **Name:** | Drew Heriot |
| **Date:** | August 23, 2007 |

| | |
|---|---|
| **Correspondence:** | Yes |



EXHIBIT

B

Page 1 of 1