UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Drew Heriot and Drew Pictures Pty Ltd., § § *Plaintiffs,* § § vs. § § Rhonda Byrne, § The Secret LLC (AKA TS Holdings LLC) § Prime Time US Inc., § TS Production Holdings LLC, § TS Production, LLC, § TS Merchandising Ltd., And § Robert E. Rainone Jr. § § *Defendants.* § | Civil Case No. 08cv2272 The Honorable Suzanne B. Conlon |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO
PRELIMINARILY ENJOIN DEFENDANT TS PRODUCTION, LLC**

Mark S. Werbner
Darren P. Nicholson
Sayles | Werbner, P.C.
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Phone: 214.939.8700
Fax: 214.939.8787
*Admitted pro hac vice*

Paul L. Price
Hepler, Broom, MacDonald, Hebrank, True & Noce, LLC
150 N. Wacker Drive, Suite 3100
Chicago, Illinois 60606
Phone: 312.230.9100
Fax: 312.230.9201

Attorneys of Plaintiffs Drew Heriot and Drew Pictures Pty. Ltd.

I.     **INTRODUCTION**

Defendant TS Production LLC's Response is long and empty. In twelve pages, Defendant cannot bring itself to mention the two words that are most relevant to Plaintiffs' pending Motion – **Paul Geller**. Nor does Defendant devote a single word to explain why (or how) it can seek injunctive relief in Australian on behalf of defendants in this action who are not parties to the Australian proceeding. Rather, Defendant's Response ignores the central issue and engages in shadow-boxing, vigorously arguing against motions not made and relief not sought, without ever addressing its own conduct, which attempts to take two bites at the dismissal apple.

After the commencement of the instant action, on April 24, 2008, the Australian court held a directions hearing where it set a briefing schedule for the parties to submit any motions in light of the instigation of this case. The only parties in the Australian case are Drew Heriot, Drew Pictures Pty Ltd., and TS Production LLC. A hearing on any such motions would be heard on July 11, 2008. Pursuant to that order, on May 23, 2008 (not April 23, 2008, as Defendant's Response states[1]) Defendant submitted a Notice of Motion seeking an order enjoining Plaintiffs prosecution of this case, not just against TS Production LLC, but against the six other Defendants in this action *who are not parties before the Australian Court.* Under the Australian court's briefing schedule, the parties were to submit supporting affidavits and additional briefing in the coming weeks.

On June 4, 2008, Defendants filed Motion to Dismiss in this case, which is currently pending. In that motion Defendants argue, *inter alia*, that Plaintiffs' case should be

---

[1] The Elkins Declaration, attached to Defendant's Response, erroneously states that Plaintiffs submitted their Motion to Stay and Defendant TS Production submitted its Motion to Enjoin to the Australian court on "April 23, 2008." In fact, the Motion to Stay states on its face that it was filed on "23 May 2008." The Motion to Enjoin attached to the Elkins Affidavit contains a typographical error that says "23 April 2008." As evidenced by TS Productions LLC's Australian counsel's May 23, 2008 letter, this Notice of Motion was "dated 23 May 2008" and was "filed with the Federal Court Registry today." Nicholson Decl., Ex. A.

dismissed under both *forum non conveniens* and abstention because this Court will be required to apply Australian law to the issue of copyright ownership under the choice of law theory proposed by Defendants (the *Itar-Tass*[2] test). Aside from Plaintiffs' pending Motion for Leave to File a Surreply, Defendants' Motion has been fully briefed and is awaiting this Court's ruling.

On June 13, 2008, however, TS Production LLC submitted to the Australian court the affidavit of Paul E. Geller in support of its motion to enjoin Plaintiffs' prosecution here. *See* Reichman Declaration, Ex. H (Docket Entry 23, Exhibit D) (The "Geller Affidavit"). Using the Geller Affidavit, Defendant advised the Australian court that it should enjoin Plaintiffs prosecution of this case because "**the district court would apply the *Itar-Tass* rule**" and that "**a U.S. district court, in Illinois, is likely to apply Australian law to determine ownership of copyright, and perhaps of concomitant interests, in the case posited here.**" *Id.* at 9 (emphasis added). That, of course, is the precise issue Defendants raise in their pending Motion to Dismiss and is a blatant attempt to interfere with this Court's jurisdiction. Rather than wait for this Court to rule on Defendant's own motion, Defendant seeks an end-run around the entire process by obtaining a preemptive ruling from a foreign tribunal on the very issues raised in their Motion to Dismiss.

On June 16, 2008, just **three days** after receiving the Geller Affidavit, Plaintiffs noticed its Motion for Preliminary Injunction for presentment at the status conference on June 17, 2008. When the Court cancelled the status conference, Plaintiffs re-noticed the motion for presentment and the Court entered a briefing schedule.

---

[2] *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998).

Plaintiffs' Motion explicitly states that Plaintiffs are not asking this Court to enjoin TS Production LLC's prosecution of the Australian action.[3] Rather, Plaintiffs seek a preliminary injunction to prevent TS Production LLC from taking actions that interfere with and attempt to improperly strip this Court's jurisdiction *while the Court is considering Defendants' own Motion to Dismiss*. Thus, Plaintiffs ask this Court to preliminarily enjoin TS Production LLC from (1) improperly arguing to a foreign tribunal that Plaintiffs should be enjoined because this Court "would apply the *Itar-Tass* rule" without waiting for a ruling from this Court on the issue and (2) arguing for an injunction on behalf of the other Defendants in this case who are not parties to the Australian action.

In short, Plaintiffs' Motion seeks enforcement of several fundamental propositions:

- That this Court has an obligation to protect the jurisdiction Congress has conferred upon it.
- That this Court has exclusive jurisdiction over motions pending before it, which must be protected.
- That Defendant, having *invoked* this Court's jurisdiction in a Motion to Dismiss, should not be permitted to undermine the Court's exercise of that jurisdiction by simultaneously asking a foreign court to preemptively rule on the Motion and enjoin this case.

Plaintiffs respectfully request the Court preliminarily enjoin Plaintiffs under the All Writs Act from interfering with this Court's jurisdiction. Because Defendants will be attempting to enjoin this case at the July 11, 2008 hearing, Plaintiffs respectfully request a ruling on this Motion before July 11.

## II.   ARGUMENT

The All Writs Act empowers this Court to enter all writs as necessary to preserve the jurisdiction of the Court. 28 U.S.C. § 1651(a) (federal district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages

---

[3] Indeed, Defendant would be expressly permitted to continue to prosecute its case, including taking discovery and seeking a trial on the merits.

and principles of law"). As the Seventh Circuit has noted, the All Writs Act is "an effective tool for preserving the status quo." *In re Uranium Antitrust Litigation,* 617 F.2d 1248, 1259 (7th Cir. 1980) (citing *F. T. C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966)). Thus, the Act is "relied on for the entry of injunctive relief when necessary to preserve the jurisdiction of the district court…" *Id*. (citing *United States v. Western Pa. Sand and Gravel Association*, 114 F. Supp. 158 (W.D. Pa. 1953)).

### A.     Standard for Preliminary Injunctions Under the All Writs Act

In *Lambert v. Buss*, the Seventh Circuit stated in *dicta* that a preliminary injunction sought under the All Writs Act must be analyzed under the "factors associated with the issuance or denial of a preliminary injunction" generally. 498 F.3d 446, 454 (7th Cir. 2007). In that case, involving a death penalty appeal, the Court found that the appellant's invocation of the Act was "entirely misplaced, because the All Writs Act is a provision which effectuates the court's jurisdiction, not a separate grant of jurisdiction." *Id.* Thus, it is not clear that the four-part preliminary injunction test is required for all preliminary injunction motions under the All Writs Act (especially in circumstances presented in this case), though that is certainly one reading of *Lambert. See also In re Uranium Antitrust Litigation,* 617 F.2d 1248, 1260 (7th Cir. 1980) (discussing traditional four-factor test for injunction under the All Writs Act). Accordingly, Plaintiffs discussed the traditional preliminary injunction standard it its Motion, which seeks an All Writs Act injunction to protect this Court's jurisdiction.

There are numerous cases, however, that hold that the traditional preliminary injunction standard do not apply when seeking an All Writs Act preliminary injunction. As the Eleventh Circuit has explained:

> Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction. Thus, while a party must "state a claim" to

>obtain a "traditional" injunction, there is no such requirement to obtain an All Writs Act injunction-it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior. **The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.** *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100-01 (11th Cir. 2004) (emphasis added).

The Second and Fourth Circuits have also expressly held that All Writs Act injunctions are not subject to the preliminary injunction standard. *See In re Baldwin-United Corp.,* 770 F.2d 328, 330 (2nd Cir.1985) (holding that injunctions under the All Writs Act are not subject to the standards for preliminary injunction under Fed.R.Civ.P. 65.); *Scardelletti v. Rinckwitz*, 68 Fed.Appx. 472, 477, 2003 WL 21513035, 4 n.3 (4th Cir. 2003) ("Contrary to Devlin's contention on appeal, this All Writs Act injunction is not subject to the four-factor balancing test ordinarily applicable to preliminary injunctions."); *see also In re Macon Uplands Venture,* 624 F.2d 26, 28 (5th Cir.1980) (affirming grant of injunction under the All Writs Act without regard to traditional four factors); *Harris v. Wells,* 764 F.Supp. 743, 745 (D. Conn.1991) (stating that availability of an All Writs Act injunction is determined by the standards under the Act and not by the traditional standards for preliminary injunctive relief); *Bryan v. BellSouth Telecommunications, Inc.* 2006 WL 1540644, *3 (M.D.N.C. 2006) (holding that the All Writs Act is not subject to the four-factor balancing test).

Moreover, prior Supreme Court precedent implies that, where a court is attempting to protect its jurisdiction, a different standard is imposed. *See Wisconsin Right to Life, Inc. v. Federal Election Com'n,* 542 U.S. 1305, 1306, (2004) (holding that a preliminary injunction under the All Writs Act is "only appropriately exercised where (1) 'Necessary or appropriate in aid of [our] jurisictio[n],' . . . and (2) the legal rights at issue are 'indisputably clear'" without referencing the traditional four-part test) (internal citations omitted); *United States v. New York Tel. Co.,* 434 U.S. 159, 174 (1977) (affirming grant of injunction under the All

Writs Act without regard to traditional four factors); *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 219 (1945) (stating, in reviewing a lower court's ruling concerning an injunction under the All Writs Act, that it is necessary to ascertain "what is the usage, and what are the principles of equity applicable in [this] case," without mentioning the traditional four injunction requirements).

Under this line of cases, Plaintiffs need only "point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior" for the Court to issue an injunction under the Act, provided that the injunction is "necessary or appropriate and in aid of its jurisdiction." *Klay*, 376 F.3d at 1100-01. Further, the injunction is necessary when someone else's conduct "[if] left unchecked . . . would have had the practical effect of diminishing the Court's power to bring the litigation to a natural conclusion." *ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978). Defendant's actions here undoubtedly threaten the integrity of this Court's jurisdiction over the pending Motion to Dismiss, because Defendant is attempting to obtain a preemptive ruling from the Australian court, the effect of which would be to strip this Court of its jurisdiction. Moreover, Defendant is seeking to enjoin Plaintiffs prosecution as to the other Defendants in this case, who are not parties to the Australian litigation. Because this Court has a duty to "exercise the jurisdiction that Congress has given it" and Defendants actions expressly threaten that jurisdiction, a preliminary injunction under the All Writs Act is warranted. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 430 (7th Cir. 1993).

B. **Application of the Preliminary Injunction Factors to the Present Case**

Even if the Court rejects these cases and applies the traditional four-part test for preliminary injunctions, an injunction here is still warranted. *Christian Legal Society v.*

*Walker*, 453 F.3d 853 (7th Cir. 2006) (discussing four part preliminary injunction test).

Under the *Walker* factors, to win a preliminary injunction, a party must show:

> [1] that it is reasonably likely to succeed on the merits, [2] it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, [3] there is no adequate remedy at law, and [4] an injunction would not harm the public interest. *Id.* at 859.

Each of these factors is present here.

### 1. Likelihood of Success on the Merits

As demonstrated below, Plaintiffs are reasonably likely to succeed on the merits of the pending Motion to Dismiss, and this Court will retain jurisdiction over this action.[4]

> (i) **Defendants Did Not Meet Their Burden of Proving that Australia is an Adequate Alternate Forum Justifying Dismissal Under *Forum Non Conveniens*.**

Defendants did not contest that their residence in Chicago "weighs heavily against dismissal on grounds of *forum non conveniens*," or that Plaintiffs are entitled to a "strong presumption" against dismissal because they reside in the U.S. *Magellan Real Estate Inv. Trust v. Losch*, 109 F.Supp.2d 1144, 1151 (D. Ariz. 2000); *Macedo v. Boeing Co.,* 693 F.2d 683, 688 (7th Cir. 1982). Nor did Defendants explain how they could possibly be entitled to dismissal under *forum non conveniens* when they have already initiated litigation in this very Court relating to *The Secret* and, in front of Judge Guzman, have vigorously contested challenges to jurisdiction here. *TS Merchandising, et al. v. Dan Hollings, et al.,* Docket No. 1:07-cv-6518 (N.D. Ill.). Indeed, in other litigation involving *The Secret*, Defendants have sought transfer of venue to this Court, arguing that this Court is the appropriate venue. *Dan*

---

[4] Defendants argue that Plaintiffs' must show ultimate success on the merits of their case in chief. That argument makes no sense. Plaintiffs are not asking the Court for a preliminary injunction preventing the distribution of the works at issue. Rather, Plaintiffs are only seeking to prevent Defendant's blatant interference with this Court's jurisdiction. If the preliminary injunction factors have any meaning at all in the All Writs context (and the above case law suggests that they may not), then there must be some nexus between the injury complained of and the injunctive relief sought. Defendant's argument would divorce those factors, requiring a plaintiff to show ultimate "success on the merits" in order to prevent a defendant from interfering with the exercise of the Court's jurisdiction. It is the success in establishing the Court's jurisdiction and the threat Defendant's pose to that jurisdiction, which is key.

*Hollings v. Rhonda Byrne, et al.,* Docket No. 08-cv-03024 (C.D. Cal.).  Dispensing with the need to provide the Court with any evidence at all, Defendants assumed they had no burden.

As the Seventh Circuit has held, "[t]he defendant carries the burden of persuading the district court that a lawsuit should be dismissed on *forum non conveniens* grounds."  *In re Ford Motor Co.,* 344 F.3d 648, 652 (7th Cir. 2003).  It is for this reason that defendants are required to submit affidavits or other evidence to substantiate their claims that dismissal is warranted. *Compare Kamel v. Hill-Rom Co., Inc.,* 108 F.3d 799, 803 (7th Cir. 1997) (finding a consent to jurisdiction valid where defendant submitted the affidavit of an expert on Saudi law to substantiate that Saudi law recognizes consents to jurisdiction) *with Macedo v. Boeing Co.,* 693 F.2d 683, 691 (7th Cir.1982) (finding abuse of discretion and reversing order of dismissal under *forum non conveniens* because of "the weakness of the showing made by defendants" and noting that "the parties offered affidavits of Portuguese lawyers" to support their contentions);  *see also Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1550 (5th Cir. 1991) (the doctrine of *forum non conveniens* "require[s] a defendant to put forth unequivocal, substantiated evidence presented by affidavit testimony in order for the district court to satisfy the standard enunciated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).")*; Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45 (3d Cir. 1988) (noting that defendants' "failure to provide any record support for their contentions precluded the district court from scrutinizing the substance of the dispute between the parties" and that the defendants had therefore failed to carry their burden).

Defendants gave the Court no evidence to establish that Australia is an available or adequate alternate forum.  Rather, the un-rebutted affidavit of John V. Swinson established that it is "unlikely that an Australian court will accept jurisdiction" in this case because infringement is alleged to have occurred outside of Australia and because the Australian Copyright Act specifically limits jurisdiction to activities "in Australia."  Swinson Decl. ¶¶

10-11.  Moreover, under binding precedent, "Australian courts do not have jurisdiction over foreign intellectual property rights."[5]  *Id.* ¶ 13.  Nor could an Australian court provide the relief that Plaintiffs seek here.  *Id.* ¶ 25.  It is for this reason that "Australia is not an adequate or appropriate forum for decision of matters raised in the U.S. Complaint."  *Id.* ¶ 26.  Because Defendants gave the Court no evidence, Plaintiffs are reasonably likely to succeed on the merits of Defendants' Motion to Dismiss.[6]

### (ii) Defendants Did Not Establish That the Private and Public Factors Support Dismissal Under *Forum Non Conveniens*.

Nor did Defendants meet their burden of establishing that the private and public factors weigh in favor of dismissal. In support of the five factors identified by the Seventh Circuit in *Wilson v. Humphreys*, 916 F.2d 1239, 1245 (7th Cir. 1990), Plaintiffs identified for the Court the names and locations of the numerous witnesses and documents in the United States, which are required for Plaintiffs to establish their case (including jurisdiction, liability, and damages).  Many of those witness are located in Chicago, and there are more witnesses in Chicago than in any other jurisdiction or venue.  (For that reason, the cost associated with either obtaining compulsory process or attendance of willing witnesses is the least expensive in Chicago.)  Moreover, in support of these factors, Plaintiffs submitted the Declaration of Drew Heriot, who further advised the Court of the extreme personal and financial burden that the Australian litigation places upon him.

---

[5] Although the parties dispute whether the movie *The Secret* (Original Edition) is a U.S. work, there is no dispute that the book *The Secret* was created entirely in the U.S. and is a U.S. work.

[6] Defendants' only response was that infringement was, somehow, a "red herring" because Plaintiffs' Australian counsel "admitted under oath" that this action "raises the same issues for determination as were raised" in the Australian litigation and, in any event, infringement "cannot be maintained as a matter of law."  That argument is sophistry.  First, Defendants misquoted Mr. Selvay, who advised the Australian court that "the [U.S.] Complaint raises the same issues for determination as are raised in this proceeding (*as well as a variety of further or additional matters*)."  *See* Rainone Decl. Ex. F ¶ 5(c) (emphasis added to wording omitted from Defendants' brief).  Those "additional matters" would be, among other things, Plaintiffs' infringement, equitable accounting, and unjust enrichment claims, which are not available remedies for Plaintiffs in Australia and are not part of the Australian case.  Second, a motion to dismiss as a matter of law must be raised pursuant to Federal Rule 12(b)(6) (entitling Plaintiffs to a response) not as part of a reply in support of a motion to dismiss for *forum non conveniens.*

Defendants, in contrast, gave the Court nothing.  With the exception of the testimony of Paul Harrington (who has already submitted a Declaration to the Court and has agreed to testify), Defendants identified no actual witness, document, or discovery that is needed in Australia.  Forgetting that the burden is theirs, not Plaintiffs', Defendants instead sought to establish that the private factors were met by dismissing Plaintiffs' discovery as unnecessary because "Defendants acknowledge that Heriot was the Director of *The Secret* movie" and "No one needs depositions . . . to confirm these facts."  Defendants' Reply at 5-6.  That, of course, is the exact opposite of what Defendants told the Court in their Motion (at 6) which asserted that "voluminous records and testimony" are needed in Australia to rebut Plaintiffs "spurious claims of ownership."  Defendants cannot have it both ways.[7]

Defendants' analysis of the public interest factors fared no better.  Defendants provide no declaration in response to the declarations of Jon Reichman and John Swinson about the pace and status of the Australian proceeding.  Moreover, as this court noted just last year "[c]ourt congestion is not a factor."  *Chelios v. Nat'l Hockey Leage Players' Ass'n*, 2007 WL 178326, *7 (N.D.Ill. Jan. 18, 2007).  Because Defendants failed to establish that the public and private factors weighed in favor of dismissal, Plaintiffs are reasonably likely to succeed on the merits of Defendants' Motion to Dismiss

### (iii) Defendants Did Not Meet Their Burden of Proving that Abstention Was Warranted.

Defendants did not dispute that abstention must only be granted in "exceptional circumstances" and that "the presumption is against abstention . . . the general rule being that

---

[7] Defendants further complained that the Plaintiffs' discovery was not "critical given that the key to the dispute is whether Australia or the U.S. has the most significant relationship to *The Secret* movie's *creation*."  Defendants are confused on two fronts.  First, Defendants confuse choice of law and liability.  If the Court adopts the *Itar-Tass* test, discovery may indeed be needed to establish which country's law applies to ownership.  But that choice-of-law rule doesn't obviate the need for discovery relating to Plaintiffs' creative contributions, ownership, Defendants' ultimate liability, and damages owed to Plaintiffs.  This U.S. discovery still weighs against dismissal.  Second, Defendants misstate the *Itar-Tass* test, which is not limited to "creation."  *Itar-Tass,* 153 F.3d 82, at 90-91. In fact, the witnesses Plaintiffs identified are necessary to establish the country with the "most significant relationship" to each work.

- 11 -

a federal court has a duty to exercise the jurisdiction that Congress has given it." *Allendale*, 10 F.3d at 430.  Plaintiffs did not dispute that it was their heavy burden, not Plaintiffs', to establish that (1) these actions are parallel and (2) that the *Finova* [8] factors weigh in favor of dismissal.  Once again, Defendants gave the Court no actual evidence.

To prove that these actions are "parallel," Defendants' only argument was to point to the Affidavit of Plaintiffs' Australian counsel as an "admission" that the proceedings are parallel.  But Defendants misquoted the affidavit, which advised the Australian court that "the [U.S.] Complaint raises the same issues for determination as are raised in this proceeding (*as well as a variety of further or additional matters*)."  See Rainone Decl. Ex. F ¶ 5(c) (emphasis added).  As explained by Mr. Swinson, those additional matters are the causes of action in *this* case that the Australian court lacks jurisdiction over.  Swinson Decl. ¶¶ 10-26 (Docket Entry 23, Ex. D).  Defendants did not even attempt to explain how the parties are litigating "substantially the same issues" when the Australian court lacks jurisdiction to hear the very claims Plaintiffs assert here.  *Finova Capital,* 180 F.3d at 898.

Even if the actions were parallel, Defendants did not meet their burden of establishing that the eight abstention factors weigh in their favor.  *See id.*  First, although Defendants were first to file their "pre-emptive strike" in Australia, pre-emptive declaratory judgment actions are not accorded any deference under the "first to file" rule.  *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 749-50 (7th Cir. 1987) ("This circuit has never adhered to a rigid "first to file" rule . . . As we have noted before, 'The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum.'")  Second, Plaintiffs have demonstrated the convenience of this forum and the inconvenience of Australia.  Third, there is little risk of piecemeal

---

[8] *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d at 896, 898 (7th Cir. 1999).

litigation since Plaintiffs have moved to stay the Australian case. Fourth, there is no dispute that U.S. law governs Plaintiffs' substantive rights in this case. Fifth, Australia is not an adequate alternate forum, protecting Plaintiffs' rights here. *See* Swinson Decl. ¶ 26. Sixth, the Australian action and the U.S. action are in identical procedural positions, with no answer on file. Reichman ¶ 18. For these reasons, Defendants did not meet their burden of establishing that "exceptional circumstances" warrant abstention, and Plaintiffs are reasonably likely to succeed on the merits of Defendants' Motion to Dismiss.

### 2. Plaintiffs Would Suffer Irreparable Harm

Plaintiffs would suffer irreparable harm if the Court denied its Motion, because Plaintiffs would be denied their choice of forum and the benefit of having the Court rule on the pending motions. Moreover, as demonstrated in Plaintiffs' Response and Surreply to Defendants Motion to Dismiss, the Australian court does not have jurisdiction over the claims asserted in this case, making that injury irreparable. Plaintiffs did not "delay" in bringing this motion, but filed it three days (including the weekend) after receiving the Geller Affidavit. Defendant has no conceivable harm (and identifies no such harm in its Response), and Plaintiffs' harm therefore greatly outweighs any conceivable harm to Defendant.

### 3. Plaintiffs Have No Adequate Remedy At Law

Plaintiffs have no adequate remedy at law, which is to say, the only adequate remedy Plaintiffs can obtain from this Court is an injunction to protect its jurisdiction. Defendant's sole response is that Plaintiffs can "present that defense to the Australian court" which provides an "adequate remedy at law." If that argument were true, however, then no federal court could ever enjoin a state court action under the All Writs Act because a movant could always "present its arguments to the state court." Of course, the All Writs Act is commonly used to enjoin state court proceedings, when necessary to protect a court's jurisdiction. *See, e.g., Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002) (holding that removal

under the All Writs Act was not necessary to aid a court's jurisdiction because the state court action could always be enjoined).

### 4. An Injunction Would Not Harm the Public Interest

Nor is there any harm to the public interest. Plaintiffs are not asking the Court to enjoin Defendant TS Production LLC's prosecution of the Australian action (thereby raising concerns of international comity). Rather, Plaintiffs only seek to enjoin Defendant from interfering with this Court's jurisdiction by obtaining a preemptive ruling from the Australian court on issues that Defendant has raised in its own Motion to Dismiss.

## CONCLUSION

For these reasons and for any that appear to the Court, Plaintiffs' Motion should be granted.

Dated: July 8, 2008

        Respectfully Submitted,

        /s/ Darren P. Nicholson
        Darren P. Nicholson
        Counsel for Plaintiffs