IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DREW HERIOT and DREW PICTURES PTY LTD., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 08 C 2272 |
| v. | ) ) | Suzanne B. Conlon, Judge |
| RHONDA BYRNE, THE SECRET LLC (aka TS HOLDINGS LLC), PRIME TIME US INC., TS PRODUCTION HOLDINGS LLC, TS PRODUCTION LLC, TS MERCHANDISING LTD., and ROBERT E. RAINONE JR. | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Drew Pictures Pty Ltd. ("Drew Pictures") and its sole shareholder Drew Heriot (collectively, "plaintiffs") seek a declaration that Drew Pictures is the co-owner of intellectual property rights in *The Secret*, a self-help documentary film, because Heriot was the co-author of the screenplay. They sue Rhonda Byrne, The Secret LLC, Prime Time US Inc., TS Production Holdings LLC, TS Production LLC, TS Merchandising Ltd., and Robert Rainone (collectively, "defendants") for an accounting of profits arising from *The Secret* (Count I), an equitable accounting (Count II), copyright infringement (Count III), and unjust enrichment (Count IV). Defendants move to dismiss on *forum non conveniens* grounds, on *Colorado River* abstention grounds, and for lack of standing and failure to state a claim. For the reasons set forth below, defendants' motion is granted in part.

### BACKGROUND

The facts are drawn from the complaint. Heriot is an Australian movie director, producer, editor and writer residing in Los Angeles, California. Compl. ¶ 1. He owns and is employed by Drew Pictures, an Australian company. *Id.* ¶ 2. He and Rhonda Byrne co-wrote *The Secret* (original edition), a self-help documentary movie based on a screenplay also co-written by Heriot. *Id.* ¶ 55. Byrne is an Australian television producer residing in Santa Barbara, California. *Id.* ¶ 3. She is the owner of Prime Time Productions Holdings Pty Ltd., TS Production Holdings LLC, The Secret LLC, and the managing director of TS Production LLC and director of Prime Time US Inc. *Id.*

From 2003 to 2004, Heriot worked full time for Byrne's Australian production company, Prime Time Productions, under a consultancy agreement with Drew Pictures. *Id.* ¶ 18. After the agreement expired, Byrne approached Heriot and Australian producer Paul Harrington in 2005 to conceptualize *The Secret*, an idea based upon "self-help" materials Byrne reviewed. *Id.* ¶ 19. Byrne wanted to make a documentary-style series based on the "Law of Attraction," featuring self-help teachers. *Id.* ¶ 20. For several months, Byrne, Heriot and Harrington worked on the concept. *Id.* ¶ 21. Prime Time Productions paid Drew Pictures for work on the project. *Id.* ¶ 22. Byrne acknowledged that Heriot and Drew Pictures would be entitled to resulting profits. *Id.* ¶ 22. Drew Pictures financed $10,000 in the project in June 2005. *Id.* ¶ 23.

Although *The Secret* was originally intended to be a documentary-style series, the plan was abandoned to create a two-hour special for an Australian broadcast. *Id.* ¶¶ 24, 26. Heriot and Byrne co-wrote "Rundowns" for the special, and Heriot contributed to the project while in Australia, writing "Questions for Interview Subjects," and later a "2hr Paper Edit" and "tranSCRIPT" that helped structure the documentary. *Id.* ¶¶ 25, 29, 30. The actual filming was

2

done predominantly in the United States. Heriot and others returned to Australia to complete the film between August 2005 and January 2006. Heriot directed the original edition of *The Secret*. *Id.* ¶¶ 32, 38. He oversaw the creative aspects of the post-production work, including editing, visual effects, music, and the overall style and look of the film. *Id.* Byrne requested Heriot to relocate to California to work on future projects in the United States. *Id.* ¶¶ 28, 36.

*The Secret* was not broadcast in Australia as originally intended. *Id.* ¶ 33. Heriot, Byrne, and Harrington decided to release *The Secret* as a DVD and sell streaming versions on the internet in March 2006. *Id.* Prior to release, Byrne met with Chicago businessman Robert Rainone in the United States to assist with the project's business development. *Id.* ¶ 34. In late 2005, Rainone created The Secret LLC, a Delaware limited liability company based in Chicago to control the project's sales and business development. *Id.* Rainone also created TS Merchandising Ltd, a Chicago-based company overseeing merchandising and contracts with *The Secret*'s distributors. *Id.* ¶ 35.

A few months later, unbeknownst to Heriot, Prime Time Productions transferred its rights in *The Secret* to Byrne, who then transferred her interest to TS Production LLC, a Hungarian shell company owned by its U.S. parent, TS Production Holdings LLC.[1] *Id.* ¶¶ 40-42. TS Production LLC then hired Prime Time US Inc. to create a book based on *The Secret*. *Id.* ¶ 42. The book was written by Byrne and its copyright was transferred to TS Production LLC. *Id.* ¶¶ 45-46. TS Production LLC later engaged Prime Time Production to create an extended version of the movie. Byrne was attributed as the sole creator and author of *The Secret* in both the book and the extended version of the movie. *Id.* ¶ 47.

---

[1] TS Production Holdings LLC is owned, in whole or in part, by Byrne and Rainone.

Internet sales of *The Secret* began in March 2006 and it became an instant worldwide success. *Id.* ¶ 37. *The Secret*'s website was hosted on servers located in the United States, all DVDs were manufactured in the United States, and all sales and revenues were processed in the United States. *Id.*

After release of *The Secret* (original edition), Heriot inquired about unpaid invoices due to Drew Pictures. *Id.* ¶ 39. Byrne informed Heriot that he was "unappreciative of all the opportunities that have been given to you" and that she and Rainone had "some serious thinking to do." *Id.*

TS Production LLC registered copyrights for the book and *The Secret* in the United States. *Id.* ¶¶ 52-54. Drew Pictures also registered a U.S. copyright for the movie *The Secret*. *Id.* ¶ 55.

On October 18, 2007, TS Production LLC filed suit in Australia against Drew Pictures and Heriot to prevent Drew Pictures from claiming ownership rights to *The Secret*. *Id.* ¶ 57. The suit challenges Drew Pictures' registration with the U.S. Copyright office and seeks a declaration that TS Production LLC is the sole owner of *The Secret* book and movie. *Id.*

## DISCUSSION

Defendants move to dismiss on *forum non conveniens* grounds, arguing the Federal Court of Australia is the proper forum. They assert dismissal is warranted because the parties and the dispute are predominantly based in Australia. Alternatively, they argue the court should dismiss or stay the action under the *Colorado River* abstention doctrine. Defendants also assert that Heriot's claims should be dismissed because he lacks standing to sue and Robert Rainone should be dismissed because no colorable claims are raised against him.

4

I.      *Forum Non Conveniens*

    A.      **Legal Standards**

The *forum non conveniens* doctrine allows the court to dismiss a case "if it best serves the convenience of the parties and the ends of justice." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005) (quoting *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997)). When an alternative forum also has jurisdiction, and when a trial in the chosen forum would result in vexation and oppression to the defendants outweighing the plaintiffs' convenience or when the chosen forum would generate administrative and legal engagements for the trial court, the court may dismiss the case. *Kamel*, 108 F.3d at 802. A *forum non conveniens* analysis is a two step process. First, an adequate alternative forum must be available. *Id.* Second, the court must balance the private interests of the litigants and the public's interest in the forum. *Bridgestone/Firestone*, 420 F.3d at 704. The court has substantial flexibility in conducting its analysis and considering these factors. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990). Ultimately, "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256, 102 S.Ct. 252 (1981).

Defendants bear a heavy burden in opposing plaintiffs' chosen forum. When the plaintiffs' choice is not their home forum, as is the case here, the presumption in the plaintiffs' favor applies with less force. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 127 S.Ct. 1184, 1191 (2007) (citing *Piper Aircraft*, 454 U.S. at 255-256). Nevertheless, defendants bear the burden of demonstrating that a lawsuit should be dismissed for *forum non conveniens*.

*See In re Ford Motor Co., Bridgestone/Firestone North Am. Tire, LLC*, 344 F.3d 648, 652 (7th Cir. 2003) (citations omitted).

### B. Adequacy of an Alternative Forum

Defendants argue Australia is an available and adequate alternative forum because the principal parties are presently litigating the same issues in Australia. In the Australian case, TS Production LLC has sued Drew Pictures and Heriot for a declaration that it is the sole owner of copyrights to *The Secret* (movie and book) and is seeking to enjoin Drew Pictures and Heriot from asserting otherwise. *See* Rainone Decl. Ex. C.

A forum is available if all parties are amenable to process and are within the forum's jurisdiction. *Bridgestone/Firestone*, 420 F.3d at 704. Not all defendants in this case are parties to the Australian case. But all defendants have agreed to be subject to personal jurisdiction in Australia for purposes of resolving the parties' dispute, and have authorized TS Production LLC's Australian counsel to accept service on their behalf. *See* Rainone Decl. ¶¶ 10-12; Byrne Decl. ¶¶ 2-3; Zyck Decl. ¶¶ 2-3; *see also Kamel*, 108 F.3d at 803 (finding Saudi Arabia available forum where defendant consented to jurisdiction). Plaintiffs dispute whether these consents are sufficient, arguing that it is unclear whether Australia would even accept these consents to jurisdiction. However, plaintiffs themselves point out that the Federal Court of Australia has discretion to accept consents. *See* Pl. Mem. at 9.

The parties also dispute whether Australia is an adequate forum. A forum is adequate if "the parties will not be deprived of all remedies or treated unfairly." *Bridgestone/Firestone*, 420 F.3d at 704. A forum is inadequate only if the remedy it provides "is so clearly inadequate or unsatisfactory," that "it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254. This is the case

6

when "the alternative forum does not permit litigation of the subject matter of the dispute." *Id.* at 255 n.22. Defendants argue that Australia is an adequate forum because plaintiffs seek the same relief in Australia, a common law country. Plaintiffs dispute this, contending that an Australian court is inadequate because its jurisdiction is limited to adjudicating copyright infringement in Australia alone. *See* Swinson Decl. ¶¶ 9-11. Defendants fail to provide any evidence to rebut this assertion. Instead, they argue plaintiffs' copyright infringement claim is meritless because it is only alleged in the alternative and the claim cannot be maintained as a matter of law. Defendants assert that because plaintiffs have not obtained registrations for independently copyrightable contributions central to their copyright infringement claim, they cannot maintain a claim under the U.S. Copyright Act. This argument is belied by plaintiffs' allegations that they have registered their copyright to *The Secret* movie as author of the screenplay with the U.S. Copyright Office. Compl. ¶ 55. Viewed in a light most favorable to the non-movants, an Australian court may be limited to adjudicating copyright infringement in Australia alone, precluding remedy for infringement alleged to have occurred in the United States. Defendants fail to demonstrate as a matter of law that Australia is an adequate forum to adjudicate plaintiffs' claim of copyright infringement in the United States.

### C.  Private and Public Interest Factors

Even if Australia were an adequate alternative forum, defendants fail to meet their burden to demonstrate that the private and public interest factors weigh in favor of dismissal. Private interest factors include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of willing witnesses; possibility of viewing the premises, if applicable; and all other practical issues that make trial of

a case more efficient and economical. *Bridgestone/Firestone*, 420 F.3d at 704 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839 (1947) (superceded by statute on other grounds)). Public interest factors include administrative difficulties from court congestion; local interests in having localized disputes decided at home; interest in having the trial of a diversity case in a forum that is familiar with governing law; avoidance of unnecessary problems in conflicts of law or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Kamel*, 108 F.3d at 803 (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

### 1.   *Private Interest Factors*

Defendants contend the private interest factors weigh in favor of dismissal because *The Secret* was originally conceived, filmed and finished almost entirely in Australia. They claim virtually all of the witnesses and evidence related to plaintiffs' ownership claim are located in Australia. Plaintiffs dispute this characterization, arguing that with the exclusion of Australian producer Paul Harrington, Heriot and Byrne are located in the United States, as are all documents relevant to Drew Pictures.

Defendants fail to satisfy their burden of demonstrating the private interest factors favor dismissal. *The Secret* was conceptualized in Australia and intended for an Australian audience. Defendants show that most materials used in making the film are located in Australia. *See* Harrington Decl. ¶ 20. However, evidence related to *The Secret*'s creation is not the only evidence material to this case. Plaintiffs claim Heriot was exploited and that defendants were unjustly enriched when they first distributed and published *The Secret* from the United States. Compl. ¶¶ 37, 58, 82-84. Therefore, evidence relating to plaintiffs' equitable accounting, unjust

8

enrichment, and infringement-based claims are likely in the United States, where defendants conduct *The Secret*'s distribution and marketing. Compl. ¶¶ 8, 12, 37.

Litigating this case in Chicago can hardly be inconvenient for defendants. They do not dispute that The Secret LLC, Prime Time U.S. Inc., TS Merchandising, Ltd and TS Production Holdings LLC all have their principal place of business in Chicago. *Id.* ¶¶ 4, 5, 8, 7. In fact, defendants TS Merchandising Ltd and TS Production LLC have filed another lawsuit in this district involving the same works at issue here. *See TS Merchandising Ltd. et al. v. Hollings et al.*, No. 07 C 6518 (Guzman, J.). *The Secret* website, operated by TS Merchandising, Ltd., specifies that any legal action related to the website "shall be brought only in either the State or Federal Courts located in Chicago, Illinois."[2] Additionally, the central actors in this dispute – Heriot, Byrne, and Rainone – currently reside in the United States. *Cf. Chelios v. Nat'l Hockey League*, No. 06 C 5333, 2007 WL 178326, at *5 (N.D. Ill. Jan. 18, 2007) (Conlon, J.) (citation omitted) (courts should go beyond looking at number of witnesses and weigh the quality and nature of the proposed testimony). Heriot attests that litigating in Australia would be economically burdensome compared to litigating in America, since he now resides in California. *See* Heriot Decl. ¶¶ 1-2. Drew Pictures, an Australian company, is also of no concern because all of its records are located in the United States. *Id.* ¶ 3. These circumstances demonstrate it is no more inconvenient for defendants to litigate in Illinois than it is for plaintiffs to litigate in Australia. *See, e.g., Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, No. 04 C 0767, 2005 WL 2387687, at *5 (N.D. Ill. Sept. 26, 2005) (Gettleman, J.) (denying motion to dismiss because there was no showing that it was more inconvenient for defendants to litigate

---

[2] The website is located at http://www.thesecret.tv/terms_of_use.html.

in Illinois than for plaintiff to litigate in South Korea or Japan). Because most defendants reside in Chicago and have a strong connection to this forum, defendants fail to demonstrate that the private interest factors weigh in favor of dismissal. *Cf. Reid-Walen v. Hansen* 933 F.2d 1390, 1395 (8th Cir. 1991) (citations omitted) (where forum residents seek dismissal, this weighs strongly against dismissal).

### 2. *Public Interest Factors*

Defendants fail to demonstrate the public interest factors favor dismissal. They argue that because the issue of copyright ownership is governed by Australian law, Australia is a more appropriate forum to resolve this dispute. However, it is unclear whether Australian law applies to the copyright ownership issue in this case. Defendants cite *Itar-Tass Russian News Agency v. Russian Kurier*, 153 F.3d 82 (2d Cir. 1998), where the Second Circuit held that Russian law determined copyright ownership of Russian news articles. *Itar-Tass*, 153 F.3d at 88-91. In deciding whether to apply Russian or U.S. law to the issue of copyright ownership, the court looked to federal common law and held that the laws of the country with the most significant relationship to the work's creation govern ownership disputes. *Id.* (citing Rest. 2d Conflict of Laws § 222). Defendants assert that because the creation of *The Secret* is most significantly related to Australia, Australian law determines the ownership issue.

For purposes of this motion, defendants fail to show the court should conclusively follow the *Itar-Tass* choice of law rule. *Itar-Tass* analyzed whether the Berne Convention affected the rule.[3] *Id.* at 91. Because the Berne Convention was silent with respect to the ownership of

---

[3]The Berne Convention for the Protection of Literary and Artistic Works was signed by the United States in 1989 and Australia in 1928. *See* 17 U.S.C. § 101; *see also* http://www.ag.gov.au/www/agd/agd.nsf/Page/Copyright_IsAustraliancopyrightmaterialprotected

10

copyrighted news articles, the court did not alter its choice of law analysis. However, the court recognized that the Berne Convention provides a distinct choice of law rule regarding cinematographic works: "[o]wnership of copyright in a cinematographic work shall be a matter for legislation in the country where protection is claimed." *Id.* at 91 n. 12 (citing Berne Convention, Art. 14*bis*(2)(a)). Significantly, the U.S. Copyright Act addresses copyright ownership of cinematographic works in several provisions. *E.g.*, 17 U.S.C. §§ 101 (defining "motion pictures" and "work made for hire"); 102(a)(6) (general subject matter of copyrights); 201(a), (b) (copyright ownership). Plaintiffs respond that the court should bypass the *Itar-Tass* significant relationship choice of law test because under Article 14*bis*(2)(a) of the Berne Convention, copyright ownership of *The Secret* (a cinematographic work) is governed by U.S. law – the law of the country where protection is sought.

Cinematographic works were not at issue in *Itar-Tass*. The *Itar-Tass* court seemed to leave open the possibility that Article 14*bis*(2)(a) of the Berne Convention may obviate the significant relationship choice of law test with respect to cinematographic works. Therefore, it is unclear whether the *Itar-Tass* significant relationship choice of law rule applies here. Because of the uncertainty of *Itar-Tass*' applicability, at this stage in the proceedings defendants fail to show that Australian law determines copyright ownership under the *Itar-Tass* choice of law rule.

But even if Australian law governs copyright ownership, defendants do not dispute that plaintiffs' alleged substantive right to an equitable accounting, and recovery for unjust enrichment and infringement, are governed by U.S. copyright infringement law and state law. *See* Def. Reply 6-10; *see also Itar-Tass*, 153 F.3d at 91-92. Therefore, this case is not one *solely*

---

overseas.

arising under Australian law. The possibility that Australian law *may* apply to the copyright ownership issue does not mandate dismissal. *See, e.g., Williams v. Wilson*, No. 05 C 227, 2005 WL 2100980, at *3-4 (W.D.Wis. Aug. 30, 2005) (fact that court may be required to apply Australian law is not dispositive to weigh in favor of dismissal).

Defendants argue that this district is far more congested than the Federal Court of Australia, and that Illinois has no interest in determining whether plaintiffs co-own copyrights to *The Secret*. Although the number of cases in both fora suggest more congestion here, it does not necessarily follow that the Federal Court of Australia would resolve the case more expeditiously than this court, given that most of the parties reside in this district or in the United States. Additionally, there is a local interest in this case because it involves a dispute regarding a documentary and book that are widely distributed throughout the United States by several Chicago-based defendants. Plaintiffs claim their intellectual property rights were infringed in the United States by Chicago defendants. Australia also has an interest insofar as Heriot and Byrne are Australian citizens who originally authored *The Secret* in Australia and intended to broadcast it there. However, on balance, defendants fail to show that the public and private interest factors weigh in favor of dismissal.

## II. *Colorado River* Abstention

Defendants alternatively move to dismiss or stay the case pending resolution of the Australian case. In exceptional cases, a federal court should stay a suit and await the outcome of parallel proceedings as a matter of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236 (1976) (internal

12

quotation and citation omitted); *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990). Where the alternate forum is in a foreign court, abstention may apply in the interest of international comity. *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (citation omitted). Defendants, as the parties requesting abstention, bear the heavy burden of showing that abstention is warranted. *Morton College Bd. of Trustees of Ill. Cmty. Coll. Dist. No. 527 v. Town of Cicero*, 18 F. Supp. 2d 921, 924 (N.D. Ill. 1998) (Alesia, J.) (internal citations omitted).

The first task is to determine whether the federal and foreign proceedings are in fact parallel. *Finova*, 180 F.3d at 898 (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698 (7th Cir. 1992)). If the cases are parallel, the next task is "to balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure." *Id.* at 898. However, if the two cases are not parallel, the *Colorado River* doctrine does not apply. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). The lawsuits need not be identical to be considered parallel; "[s]uits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Id.* (internal quotations omitted). The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the foreign litigation will dispose of all claims presented in the federal case. *Id.* (internal quotations omitted). Any doubt regarding the parallel nature of the foreign suit should be resolved in favor of exercising jurisdiction. *Id.* at 520.

The parties dispute whether the two cases are parallel. Defendants do not satisfy their burden of showing that they are. In the Australian case, TS Production LLC has sued plaintiffs

13

for a declaration that it is the sole owner of copyrights to *The Secret* and the book. Defendants Rhonda Byrne, The Secret LLC, Prime Time US Inc., TS Production Holdings LLC, TS Merchandising Ltd., and Robert Rainone are not parties to the Australian case. Their absence does not preclude a finding that the parties in the two proceedings are substantially the same. *See Spizzirri v. Mortgage Elec. Registration Sys., Inc.*, No. 03 C 2000, 2003 WL 21640468, at *2 (N.D. Ill. July 11, 2003) (Aspen, J.) (citing *AAR Int'l Inc.*, 250 F.3d at 518). Although the two cases stem from the same works and related copyright ownership, it is not certain that there is a substantial likelihood that the Australian case will dispose of all claims presented in this case.

At issue in each suit is whether TS Production LLC is the sole owner of the copyright to *The Secret* book and movie. But the case before this court also involves claims not raised in the Australian case: claims for an equitable accounting, U.S. copyright infringement, and unjust enrichment. Although resolution of these claims may be closely related to the ownership issue, the additional claims in this court implicate issues regarding whether Heriot was inequitably exploited without just compensation. For example, plaintiffs allege defendants were unjustly enriched by retaining profits that Byrne represented were due to Heriot. Compl. ¶ 83. It is unclear whether the Australian court would reach the issue of defendants' liability under these claims. Defendants have not established that these issues would be resolved in the Australian litigation, or even that plaintiffs' additional claims are counterclaims in the Australian case. The two cases are therefore not clearly parallel. *See AAR Int'l Inc.*, 250 F.3d at 522. Any doubt regarding the parallel nature of the foreign suit is resolved in favor of exercising jurisdiction. *Id.* Because the two cases are not clearly parallel, the *Colorado River* doctrine does not apply. *See id.* at 518; *see, e.g. Eisenmann Corp. v. Tek-Mor, Inc.*, No. 03 C 4375, 2004 WL 547253, at *4

14

(N.D. Ill. Feb. 5, 2004) (Plunkett, J.) (denying motion to stay or dismiss because in part cases were not clearly parallel).

### III.  Drew Heriot's Standing

Defendants argue that Heriot lacks standing because he was merely an employee of Drew Pictures and had no copyright ownership interest in *The Secret*. Because the complaint, construed in Heriot's favor, plainly alleges that Heriot was the co-author of written works underlying *The Secret* copyright, it is premature to dismiss him as having no copyright ownership rights, legal or beneficial. *Cf. Moran v. London Records, Ltd.*, 827 F.2d 180, 182 (7th Cir. 1987) (claim of beneficial ownership may be demonstrated by plaintiff's chain of title to the copyright).

Additionally, 17 U.S.C. § 501(b) provides that "[t]he court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright." Because Heriot is named as a plaintiff, there is no danger of multiple lawsuits involving the same subject matter and resulting in the imposition upon the defendants of the "double, multiple or otherwise inconsistent obligations," which the federal joinder rule seeks to avoid. *See* Fed. R. Civ. P. 19(a). Defendants' motion to dismiss for lack of standing must be denied. *See, e.g., Photofile, Inc. v. Graphicomp Sys.*, No. 92 C 8414, 1993 WL 375769, at *3-4 (N.D. Ill. Sept. 22, 1993) (Grady, J.).

### IV.  Claims Against Robert Rainone

Defendants argue that Robert Rainone should be dismissed because plaintiffs fail to state a claim against him. Plaintiffs respond that they adequately allege an unjust enrichment claim against Rainone. In order to state a claim for unjust enrichment under Illinois law, plaintiffs must allege that Rainone retained a benefit to the plaintiffs' detriment, and that the retention of

15

that benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 545 N.E.2d 672, 679 (Ill. 1989). Plaintiffs allege that Rainone and Byrne colluded to infringe Drew Pictures' copyright ownership rights. They claim it was inequitable for Rainone to profit through his ownership in TS Productions LLC as a consequence of this collusion. Plaintiffs allege that Rainone benefitted at the expense of Heriot, who was entitled to a net percentage of profits from *The Secret*. These allegations are sufficient to state a claim for unjust enrichment in Count IV against Rainone.

Defendants argue that plaintiffs' unjust enrichment claim nevertheless fails because the complaint only suggests that Rainone benefitted as a third party. However, Illinois law recognizes a claim for unjust enrichment where a benefit was transferred to the defendant by a third party in three situations: where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant. *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (citing *HPI Health Care Servs.*, 137 Ill.Dec. 19, 545 N.E.2d at 679 (internal citations omitted)). Plaintiffs allege that Rainone profited by wrongfully colluding with Byrne to infringe Drew Pictures' copyright ownership rights. These allegations sufficiently state a claim for unjust enrichment in Count IV against Robert Rainone. However, plaintiffs do not dispute that Counts I, II and III fail against Rainone. Those counts are dismissed with respect to Rainone.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or in the alternative to stay is granted in part. Counts I, II, and III are dismissed with respect to Robert Rainone. The motion is denied in all other respects

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

July 21, 2008