IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DREW HERIOT and<br>DREW PICTURES PTY LTD.,<br><br> Plaintiffs,<br><br> vs.<br><br>RHONDA BYRNE, THE SECRET LLC<br>(AKA TS HOLDINGS LLC), PRIME TIME<br>US INC., TS PRODUCTION HOLDINGS<br>LLC, TS PRODUCTION LLC,<br>TS MERCHANDISING LTD., and<br>ROBERT E. RAINONE, JR.,<br><br> Defendants. | Civil Case No. 08CV2272<br><br>The Honorable Suzanne B. Conlon |
| TS PRODUCTION LLC,<br><br> Counterclaimant,<br><br> vs.<br><br>DREW HERIOT and<br>DREW PICTURES PTY LTD.,<br><br> Counterclaim Defendants. | |

**DEFENDANTS' ANSWER AND COUNTERCLAIM; JURY DEMANDED**

David S. Elkins
Joseph A. Meckes
Joseph P. Grasser
SQUIRE, SANDERS & DEMPSEY L.L.P.
600 Hansen Way
Palo Alto, CA  94304-1043
Telephone:  (650) 856-6500
Facsimile:   (650) 843-8777

Jack J. Carriglio
James G. Argionis
MECKLER BULGER & TILSON
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Telephone:  (312) 474-7900
Facsimile:   (312) 474-7898

Attorneys for Defendants
RHONDA BYRNE, TS RER LLC
(erroneously named as "THE SECRET LLC"
and "TS HOLDINGS LLC"), PRIME TIME
US INC., TS PRODUCTION HOLDINGS
LLC, TS MERCHANDISING LTD.,
ROBERT E. RAINONE, JR. and Defendant
and Counterclaimant TS PRODUCTION LLC

Defendants Rhonda Byrne, TS RER LLC (erroneously named as "THE SECRET LLC" and "TS HOLDINGS LLC"), Prime Time US Inc., TS Production Holdings LLC, TS Production LLC, TS Merchandising LTD., and Robert E. Rainone, Jr. (collectively "Defendants") hereby answer the Complaint of plaintiffs Drew Heriot ("Heriot") and Drew Pictures Pty Ltd. ("Drew Pictures") (collectively "Plaintiffs"). The numbered paragraphs below correspond to the paragraph numbers contained in Plaintiffs' Complaint. The headings used match those chosen by Plaintiffs, and are included for ease of reference only. Defendants' defenses and counterclaims then follow.

### Plaintiffs

1.  Defendants admit that Heriot is an Australian citizen who was the director of the made-for-television documentary *The Secret*. Defendants deny that a "screenplay" of *The Secret* made-for-television documentary exists, and to the extent one is deemed to exist, Defendants deny that Heriot is its co-author. Defendants deny that Heriot is the co-author of *The Secret* made-for-television documentary. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations of this paragraph and on that basis deny them.

2.  Defendants admit that Drew Pictures is a company organized under the laws of Australia. Defendants deny that Drew Pictures or Heriot has any interest in the "Works" that Drew Pictures wrongfully registered with the United States Copyright Office on September 10, 1997 as reg. no. PA 1-355-437. Defendants lack sufficient knowledge or information to admit or deny the remaining allegation of this paragraph and on that basis deny them.

### Defendants

3.  Defendants admit that Rhonda Byrne ("Byrne") is an individual who presently resides at 900 Hot Springs Rd., Montecito, California, 93108-1111. Defendants admit that Byrne was the sole creator of *The Secret* and executive producer of the made-for-television documentary. Defendants admit that Byrne has an equity interest in and is the manager of TS Production Holdings LLC. Defendants further admit that Byrne is a director of Prime Time US Inc. Defendants deny that Byrne has a direct ownership interest in Prime Time Productions Pty

Ltd or TS RER LLC. Defendants admit that Byrne is an ultimate recipient of profits resulting sales from the "Works." Defendants deny the remaining allegations in this paragraph.

4. Defendants admit that certain copies of *The Secret* made-for-television documentary contain a notice that reads "© The Secret LLC." Defendants deny the remaining allegations in this paragraph.

5. Defendants admit that Prime Time US Inc. is a Delaware corporation with a principal place of business at 1550 N. Cleveland Ave, Chicago, IL 60610. Defendants admit that Prime Time US Inc. conducts business in the United States and that it has a business relationship with Prime Time Productions Holdings Pty Ltd. Defendants admit that Drew Heriot worked for Prime Time Productions Holdings Pty Ltd. Defendants admit that Prime Time US Inc. is a wholly owned subsidiary of TS Production LLC. Defendants admit that the Corporation Trust Company is Prime Time US Inc.'s registered agent for service of process. Defendants deny the remaining allegations in this paragraph.

6. Defendants admit that TS Production LLC is a Hungarian Limited Liability Company and is the sole owner of copyright of in the "Works." Defendants deny the remaining allegations in this paragraph.

7. Defendants admit that TS Production Holdings LLC is a Delaware Limited Liability Company. Defendants admit that TS Production Holdings LLC is an owner of TS Production LLC. Defendants admit that TS Production LLC owns the copyrights in the "Works." Defendants admit that TS Production Holdings LLC is a recipient of profits resulting from sales from the "Works." Defendants admit that Byrne and Robert Rainone, Jr. have equity interests in TS Production Holdings LLC. Defendants admit that TS Production Holdings LLC was originally named Byrne Holdings LLC. Defendants admit that The Corporation Trust Company is TS Production Holdings LLC's registered agent for service of process. Defendants deny the remaining allegations in this paragraph.

8. Defendants admit that TS Merchandising Ltd. is a British Virgin Island company with a principal place of business at 1550 N. Cleveland Ave, Chicago, IL 60610. Defendants

admit that TS Merchandising Ltd. is in the business of selling products related to or derived from the "Works." Defendants admit that TS Merchandising Ltd. operates the websites www.thesecret.tv and www.whatisthesecret.tv (the "websites") with Internet Protocol addresses of 72.3.221.85 and 72.3.221.82, respectively. Defendants admit that the websites are hosted on servers located in many places around the world, including in Dallas, Texas, and that the website at www.thesecret.tv has a "store" through which *The Secret* made-for-television documentary and book, among other things, can be purchased. Defendants admit that the websites exhibit certain images from the "Works" for free. Defendants admit that TS Merchandising Ltd. is owned by the AGW Idea Group, Inc. and that C T Corporation System is its registered agent for service of process. Defendants deny the remaining allegations in this paragraph.

9. Defendants admit that Rainone is president of defendants TS Production Holdings LLC, Prime Time US Inc., and TS RER LLC. Defendants admit that Rainone has an ownership interest TS Production Holdings LLC. Defendants deny that Rainone has a direct ownership interest in TS Merchandising Ltd., TS Production LLC and Prime Time US Inc. Defendants admit that Rainone is an ultimate recipient of certain profits as a result of sales from the "Works." Defendants admit that Rainone resides at 1339 W. St. George St., Chicago, IL 60657-4101. Defendants deny the remaining allegations in this paragraph.

## **Jurisdiction**

10. Defendants admit that Plaintiffs purport to state federal claims that, if colorable, vest this Court with federal question subject-matter jurisdiction under 28 U.S.C. §§1331, 1338(a) and 2201. Defendants admit that Plaintiffs purport to state law claims that, if colorable, allow the Court discretion to assert subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. Defendants deny the remaining allegations in this paragraph.

11. Defendants deny that this Court has exclusive jurisdiction to determine disputes relating to the "Works." Defendants admit that TS Production LLC and TS Merchandising Ltd. previously initiated a prior action in this District (Case No. 1:07-cv-6518). Defendants deny the remaining allegations in this paragraph.

12.        Defendants admit the allegations in this paragraph.

## Venue

13.        Defendants admit the allegation in this paragraph.

## Statement of Facts

14.        Defendants admit that Heriot is a television director, producer and editor. Defendants lack sufficient knowledge or information to admit or deny the allegations of this paragraph and on that basis deny them.

15.        Defendants lack sufficient knowledge or information to admit or deny the allegations of this paragraph and on that basis deny them.

16.        Defendants admit that in or around 2000, Heriot worked as an editor on the Australian television series *Australia Behaving Badly* for Prime Time Productions Holdings Pty Ltd. at the FM-TV facility. Defendants admit that Byrne was the principal and an owner of Prime Time Productions Holdings Pty Ltd. Defendants admit that Harrington was a television producer employed by Prime Time Productions Holdings Pty Ltd. Defendants admit that Heriot was paid, either by FM-TV or by Prime Time Productions Holdings Pty Ltd., for his work on *Australia Behaving Badly*. Defendants deny the remaining allegations of this paragraph.

17.        Defendants admit that Prime Time Productions Holdings Pty Ltd. had a contract with and employed Heriot as an editor on various projects produced by that company. Defendants admit that on or around February 2001, Prime Time Productions Holdings Pty Ltd. began working on a television program called *Marry Me*. Defendants admit that Prime Time Production Pty Ltd. employed Heriot to work on that project and paid him for his time. Defendants admit that Prime Time Production Pty Ltd. employed Heriot as the principle editor and television director for the second season of *Marry Me*. Defendants admit that Heriot did not accept an offer of "formal, salaried employment" with Prime Time Productions Holdings Pty Ltd. Defendants admit that *Marry Me* was renamed *Loves Me, Loves Me Not*. Defendants admit that Prime Time Productions Holdings Pty Ltd. continued to employ Heriot after he declined the

offer of "formal, salaried employment." Defendants deny the remaining allegations in this paragraph.

18.     Defendants deny that the Consultancy Agreement "contained no retirement or other traditional employment provisions." Defendants admit the remaining allegations of this paragraph.

## Development of *The Secret*

19.     Defendants admit the allegations of the first sentence of this paragraph, except that the inspiration Byrne had for the television series based on the Law of Attraction was not limited to materials she had studied during her vacation during the last quarter of 2004. Defendants admit the remaining allegations of this paragraph.

20.     Defendants admit that Byrne conceived of a made-for-television documentary featuring interviews with self-help teachers. Defendants admit that Byrne shared her vision with Heriot and Paul Harrington. Defendants admit that Byrne, after discussing the matter with Paul Harrington and Heriot, decided that the documentary should be called *The Secret*. Defendants admit that Byrne decided, after discussing the matter with Paul Harrington and Heriot, that the documentary should focus on the self-help principle of the "Law Of Attraction." Defendants deny the remaining allegations in this paragraph.

21.     Defendants admit that in putting together a pitch for The Secret, Prime Time Productions Holdings Pty Ltd. put together three promotional trailers. Defendants admit that Prime Time employed Heriot, along with Byrne and Mr. Harrington, to assist in creating these trailers. Defendants deny the remaining allegations in this paragraph.

22.     Defendants admit that in putting together a pitch for *The Secret*, Prime Time Productions Holdings Pty Ltd. created promotional trailers. Defendants admit that Prime Time Productions Holdings Pty Ltd. employed Heriot, along with Byrne and Harrington, to assist in creating these trailers. Defendants admit that Heriot submitted invoices and was paid. Defendants deny the remaining allegations of this paragraph.

23.     Defendants admit that Heriot gave Prime Time Productions Holdings Pty Ltd. a check for $10,000 in or around June 2005, which Prime Time Productions Holdings Pty Ltd. returned to Heriot.  Defendants deny the remaining allegations of this paragraph.

24.     Defendants admit that Prime Time Productions Holdings Pty Ltd. employed Heriot to work on various aspects of *The Secret*.  Defendants admit that Heriot's responsibilities included helping Byrne draft so-called "rundowns."  Defendants admit that *The Secret* was originally planned as a television series and was later changed to be a two-hour documentary for many reasons, including funding issues.  Defendants deny the remaining allegations of this paragraph.

25.     Defendants lack sufficient knowledge or information to admit or deny the allegations of this paragraph and on that basis deny them.

26.     Defendants admit that, after holding negotiations with several television networks, on or around July 5, 2005 the Nine Network entered into a commission agreement with Prime Time Productions Holdings Pty Ltd.  Defendants admit that under the terms of the July 5, 2005 commission, the Nine Network was to provide $600,000 in installments.  Defendants admit that, as part of this agreement, the Nine Network was given certain broadcast rights.  Defendants admit that under the July 5, 2005 commission, the Nine Network was given certain rights to revenue from exploitation of the made-for-television documentary, including a percentage of DVD sales.  Defendants deny the remaining allegations of this paragraph.

### Making *The Secret*

27.     Defendants admit that Prime Time Productions Holdings Pty Ltd. hired an Australian film crew.  Defendants admit that Heriot and Byrne, among others, traveled to the United States with the Australian film crew to begin filming interviews.  Defendants admit that Heriot was responsible for directing the filming of certain interviews.  Defendants admit that the film crew took directions from Heriot while on set when he was directing.  Defendants admit Byrne and Heriot conducted interviews using, at least in some cases, pre-written questions.  Defendants deny the remaining allegations of this paragraph.

28. Defendants admit that Byrne's interview of Esther Hicks in Alaska in July 2005, which Heriot directed, marked the start of filming for *The Secret* made-for-television documentary. Defendants admit that Byrne, Heriot and the film crew traveled to different parts of the United States to film interviews of teachers for *The Secret* made-for-television documentary. Defendants deny the remaining allegations of this paragraph.

29. Defendants admit that, after approximately 40 interviews had been completed, Byrne instructed Heriot to return to Australia to begin editing while Byrne completed additional interviews throughout August 2005. Defendants admit that tapes of the interviews that Byrne conducted were shipped to Prime Time Productions Holdings Pty Ltd.'s offices in Australia, where the audio from the tapes was stripped and transcribed. Defendants admit that Heriot, as part of his employment, reviewed the transcripts. Defendants admit that Prime Time Productions Holdings Pty Ltd.'s editing department compiled the footage of the interviews. Defendants deny the remaining allegations of this paragraph.

30. Defendants admit that a document Heriot called the "tranSCRIPT" was created based on the transcription of the audio from the interviews. Defendants deny that the "tranSCRIPT" is a "screenplay" or that a screenplay of *The Secret* made-for-television documentary exists; to the extent one is deemed to exist, Defendants deny that Heriot is its co-author. Defendants admit that Byrne and others at Prime Time Productions Holdings Pty Ltd., including Heriot and Paul Harrington, extensively and continuously edited and changed the tranSCRIPT. Defendants admit that as part of his employment with Prime Time Productions Holdings Pty Ltd., Heriot was tasked with working with Byrne, Harrington and others to conceive dramatic scenes that would be interspersed between certain interviews in the made-for-television documentary. Defendants admit that the dramatic scenes were primarily re-enactments of stories told in the interviews or visual aids that reinforced what those interviewed were saying. The defendants admit that multiple versions, or revisions, of the tranSCRIPT exist. Defendants deny the remaining allegations of this paragraph.

31.     Defendants admit that filming of the dramatic footage took place in September and October 2005.  Defendants admit that Heriot did not direct all of the dramatic scenes, and that other television directors directed certain scenes or sequences.  Defendants admit that the other television directors' work was supervised by Prime Time Productions Holdings Pty Ltd.'s employees, including Heriot.  Defendants deny the remaining allegations of this paragraph.

32.     Defendants admit that many people, including Heriot, Byrne and Harrington, worked on various aspects of the post-production phase of the made-for-television documentary including editing, visual effects, music and the overall style and look of the made-for-television documentary.  Defendants admit that the post-production phase of the made-for-television documentary was finished in or around January 2006.  Defendants admit that Heriot, Harrington and Byrne recorded commentary for the made-for-television documentary.  Defendants admit that Byrne was credited as *The Secret*'s Executive Producer, Harrington was credited as Producer and Heriot was credited as Director.  Defendants deny the remaining allegations of this paragraph.

## Launching *The Secret*

33.     Defendants admit that the Nine Network did not air *The Secret* made-for-television documentary in 2005.  Defendants admit that Byrne and Harrington decided to release *The Secret* as a DVD and to sell a streamed version over the Internet.  Defendants admit that Australian company Vividas, in conjunction with employees of Prime Time Productions Holdings Pty Ltd., participated in planning the made-for-television documentary's Internet distribution.  Defendants deny the remaining allegations of this paragraph.

34.     Defendants admit that Byrne met with Robert Rainone, Jr. in Chicago.  Defendants admit that Rainone is a former Chief Development Officer of Universal Access Global Holdings, a US network service provider.  Defendants admit that Rainone assisted Byrne in conceptualizing how to share the "Works" with the general public.  Defendants admit that TS RER LLC's principal place of business was 1339 W. George Street, Chicago, IL 60657-4101, which was Rainone's home address, and that Rainone was listed as its Chief Executive Officer.

Defendants admit that the initial member of TS RER LLC included Rainone and Margaret Rainone. Defendants deny the remaining allegations of this paragraph.

35. Defendants admit that TS Merchandising Ltd. has a principal place of business in Chicago, Illinois, and that the company is licensed to distribute products and merchandise related to the "Works." Defendants admit that TS Merchandising Ltd. has contracts with distributors. Defendants deny the remaining allegations in this paragraph.

36. Defendants admit that Byrne and Rainone had a meeting in Chicago regarding the business operations related to the "Works" in or around February 2006. Defendants admit that in or about March 2006, Byrne discussed with Heriot his idea of moving to the United States. Defendants deny the remaining allegations of this paragraph.

37. Defendants admit that *The Secret* was first published on or around March 26, 2006 and was almost immediately viewed by customers in multiple countries around the world, including the United States. Defendants admit that sales of *The Secret* initially averaged five purchases a minute. Defendants admit that the content for *The Secret* websites was hosted in many locations, including in the United States, and that the DVDs of *The Secret* were manufactured in the United States. Defendants admit that certain copies of *The Secret* contained the notice "© The Secret LLC." Defendants deny the remaining allegations in this paragraph.

38. Defendants admit that this paragraph accurately excerpts from the press kit issued by Defendants. Defendants deny the remaining allegations of this paragraph.

39. Defendants admit that Heriot demanded payment for certain invoices on March 27, 2006. Defendants admit that March 27, 2006 is the day after March 26, 2006. Defendants admit that this paragraph contains an accurate paraphrased except of what Byrne told Heriot. Defendants deny the remaining allegations of this paragraph.

**Exploiting *The Secret***

40. Defendants admit that Byrne is the sole creator of *The Secret*. Defendants deny the remaining allegations of this paragraph.

41. Defendants admit the allegations of this paragraph.

42. Defendants admit that TS Production LLC was created with assistance from Byrne Holdings LLC and was originally located at 1062 Budapest, Andrássy út 64, Hungary, which was the then address of Squire, Sanders & Dempsey, L.L.P.'s Budapest office. Defendants admit the TS Production Holdings LLC is an owner of TS Production LLC. Defendants deny the remaining allegations of this paragraph.

43. Defendants admit that on March 22, 2006, Byrne received an assignment of the Intellectual Property rights in *The Secret* from Prime Time Productions Holdings Pty Ltd. Defendants admit that March 22, 2006 is four days before March 26, 2006. Defendants admit that on or around April 11, 2006, Byrne assigned her intellectual property rights in *The Secret* to TS Production LLC. Defendants deny the remaining allegations of this paragraph.

44. Defendants admit the allegations of this paragraph.

45. Defendants admit that on or around June 15, 2006, Byrne signed an agreement with Prime Time US Inc. to provide services, including writing a book, for a fee. Defendants admit that as a part of that agreement, Byrne agreed to assign all intellectual property rights in her creations to TS Production LLC. Defendants deny the remaining allegations of this paragraph.

46. Defendants admit that by August 2006, Byrne had completed writing *The Secret* book and is its sole author. Defendants admit that the book was published on or around November 2006 and that an audio version of the book was created using, among other things, audio from the interviews of the teachers from *The Secret* made-for-television documentary. Defendants admit that this paragraph accurately identifies the titles of Chapters Five, Six and Seven from *The Secret* book. Defendants deny the remaining allegations of this paragraph.

47. Defendants admit that *The Secret* is the sole creation of Byrne. Defendants deny the remaining allegations of this paragraph.

48. Defendants admit that Byrne contacted Ms. Hicks to discuss Ms. Hicks' concerns about promotion and distribution of *The Secret* made-for-television documentary. Defendants admit that Ms. Hicks' interview was edited out of *The Secret* (extended edition). Defendants

admit that this paragraph accurately excerpts what Ms. Hicks and Ms. Nichols state in *The Secret* (original edition) and *The Secret* (extended edition), respectively. Defendants deny the remaining allegations of this paragraph.

49.  Defendants admit that on or around September 29, 2006, *The Secret* (extended edition) was released and that *The Secret* (original edition) was no longer distributed. Defendants admit that *The Secret* (extended edition) is three minutes longer than *The Secret* (original edition). Defendants admit that *The Secret* (extended edition) has a new commentary from Byrne and Harrington. Defendants admit that Byrne is the sole creator of *The Secret*. Defendants deny the remaining allegations of this paragraph.

50.  Defendants admit the allegations of this paragraph.

**Registrations with the US Copyright Office**

51.  Defendants admit the allegations of this paragraph.

52.  Defendants admit the allegations of this paragraph.

53.  Defendants admit the allegations of this paragraph.

54.  Defendants admit the allegations of this paragraph.

55.  Defendants admit that this paragraph accurately describes the copyright registration bearing the No. PA0001355437. Defendants deny the remaining allegations of this paragraph.

56.  Defendants deny the allegation that they did not respond to Plaintiffs demand for an accounting. Defendants admit the remaining allegations of this paragraph.

**Initiation of Foreign Litigation**

57.  Defendants lack sufficient knowledge or information to admit or deny the the allegation that Heriot "is now a resident of the United States," and on that basis deny the allegation. Defendants deny that a "screenplay" to *The Secret* exists. Defendants admit the remaining allegations of this paragraph.

58.  Defendants admit that the filming of the interviews with each of the teachers who appears in *The Secret*, with the exception of David Schirmer, took place in the United States, but

deny that the interview of Mr. Schirmer was the only one that took place outside the United States; other teacher interviews were filmed outside the United States, but ultimately were not used in *The Secret*. Defendants admit that within minutes of *The Secret* being available for sale, it was viewed by customer in numerous countries worldwide, including the United States. Defendants admit that TS Production LLC has registered its copyright interest in *The Secret* made-for-television documentary and book with the United States Copyright Office. Defendants admit that TS Production Holdings LLC and Prime Time US Inc. are United States companies with business operations in Chicago, IL. Defendants admit that TS Merchandising Ltd. is a wholly owned subsidiary of a United States company with a principal place of business in Chicago, IL. Defendants deny the remaining allegations of this paragraph.

59. Defendants admit the allegations of this paragraph except that Byrne lives in Montecito, California.

**Count I**
**(Declarations of Copyright Ownership and Defendant's Duty to Account)**

60. Defendants incorporate by reference each of their responses to the allegations in paragraphs 1-59 above as if fully set forth herein.

61. Defendants admit that in the course of working for Prime Time Productions Holdings Pty Ltd., Heriot worked on *The Secret*. Defendants deny the remaining allegations of this paragraph.

62. Defendants deny the allegations of this paragraph.
63. Defendants deny the allegations of this paragraph.
64. Defendants deny the allegations of this paragraph.
65. Defendants deny the allegations of this paragraph.
66. Defendants deny the allegations of this paragraph.
67. Defendants deny the allegations of this paragraph.
68. Defendants deny the allegations of this paragraph.

## Count II
### (Equitable Accounting)

69. Defendants incorporate by reference each of their responses to the allegations in paragraphs 1-68 above as if fully set forth herein.

70. Defendants deny the allegations in this paragraph.

71. Defendants deny the allegations of this paragraph.

72. Defendants deny the allegations of this paragraph.

73. Defendants deny the allegations of this paragraph.

74. Defendants deny the allegations of this paragraph.

75. Defendants deny the allegations of this paragraph.

## Count III
### (Copyright Infringement)

76. Defendants incorporate by reference each of their responses to the allegations in paragraphs 1-75 above as if fully set forth herein.

77. Defendants deny the allegations of this paragraph.

78. Defendants deny the allegations of this paragraph.

79. Defendants deny the allegations of this paragraph.

80. Defendants deny the allegations of this paragraph.

81. Defendants deny the allegations of this paragraph.

## Count IV
### (Unjust Enrichment)

82. Defendants incorporate by reference each of their responses to the allegations in paragraphs 1-81 above as if fully set forth herein.

83. Defendants deny the allegations of this paragraph.

84. Defendants deny the allegations of this paragraph.

## DEFENSES

### First Defense
#### (Standing)

Plaintiffs lack standing to sue.

## Second Defense
### (Failure to State a Claim)

Each of Plaintiffs' claims fails for failure to state a claim on which relief can be granted.

## Third Defense
### (Implied License)

The relief sought by Plaintiffs is barred, in whole or in part, because they granted Defendants an implied license to use any independently copyrightable works that Plaintiffs created.

## Fourth Defense
### (Laches)

The relief sought by Plaintiffs is barred, in whole or in part, by the doctrine of laches.

## Fifth Defense
### (Waiver and Estoppel)

The relief sought by Plaintiffs is barred, in whole or in part, by the doctrines of waiver and/or estoppel.

## Sixth Defense
### (Accord and Satisfaction)

The relief sought by Plaintiffs is barred, in whole or in part, by the doctrine of accord and satisfaction.

## COUNTERCLAIM

For its Counterclaim against Plaintiffs, Defendant and Counterclaimant TS Production LLC states as follows:

### Jurisdiction and Venue[1]

1. These counterclaims arise under United States Copyright Laws, 17 U.S.C. § 101 et seq. This court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and 2201.

2. Venue is proper in this District Court under 28 U.S.C. § 1391.

---

[1] The assertion of the TS Production LLC's rights in this action should in no way be viewed as a waiver or abandonment of the position that this dispute would be more appropriately and conveniently held in the Federal Court of Australia.

-14-

**Parties**

3.      Counterclaimant TS Production LLC is a Hungarian Limited Liability Company with a principal place of business at H-1074 Budapest, Dohány utca 12, Hungary. TS Production LLC is the owner, by assignment, of the intellectual property in the made-for-television documentary *The Secret*, the book of the same name, and all underlying and related original works of authorship.

4.      Upon information and belief, counterclaim defendant Drew Heriot is an Australian citizen presently living in Los Angeles, California on a temporary visa.

5.      Counterclaimant is informed and believes and therefore alleges that plaintiff and counterclaim defendant Drew Pictures Pty Ltd is a company organized under the laws of Australia, with a principal place of business at the home of Heriot's father near Melbourne, Australia.

**First Counterclaim**
**(Declaratory Judgment that TS Production is Sole Owner of Copyright in the "Works")**

6.      TS Production LLC incorporates by reference the allegations of paragraphs 1 through 5 of this Counterclaim as if fully stated herein.

7.      TS Production LLC counterclaims against Plaintiffs pursuant to the copyright laws of the United States, 17 U.S.C. §101 *et seq.*, and the Declaratory Judgments Act, 28 U.S.C. §§2201-2202.

8.      In their Complaint against Defendants filed on April 21, 2008, Plaintiffs and Counterclaim Defendants allege that they own an interest in the "Works."

9.      An actual controversy exists between TS Production LLC and Plaintiffs and Counterclaim Defendants as to ownership of copyright in the "Works."

10.     TS Production LLC, by virtue of assignment, is entitled to a declaration that it is the sole owner of the copyright in the "Works," including without limitation all versions of *The Secret* made-for-television documentary, *The Secret* book and any documents related to the process of creating *The Secret*. TS Production LLC is also entitled to an injunction requiring that

(a) Plaintiffs and Counterclaim Defendants assign to TS Production LLC any copyright registration(s) that Plaintiffs and Counterclaim Defendants have obtained in the "Works," and (b) restraining Plaintiffs and Counterclaim Defendants from taking any other action inconsistent with TS Production LLC's sole ownership interest in the "Works."

## **PRAYER**

WHEREFORE, Defendants pray for judgment as follows:

1.  That Plaintiffs' Complaint be dismissed with prejudice, that they take nothing thereby and that judgment be entered in favor of Defendants on Plaintiffs' Complaint;

2.  That TS Production LLC be declared the sole owner of copyright for the "Works";

3.  That Plaintiffs be required to assign any copyright registrations related to the "Works" and/or *The Secret* to TS Production LLC;

4.  That the Court enter a permanent injunction preventing Plaintiffs from seeking Copyright registrations in the "Works" or any derivatives thereof in the United States or any other jurisdiction;

5.  That the Court enter a permanent injunction restraining Plaintiffs, and all persons acting on their behalf or in concert with them, from taking any other action inconsistent with TS Production LLC's sole ownership interest in the "Works," including without limitation asserting or threatening to assert any charge of infringement against Defendants' customers, owners or potential customers;

6.  That Plaintiffs be required to pay Defendants' costs of suit;

7.  That Plaintiff be required to pay Defendants' attorneys' fees pursuant to 17 U.S.C. §505; and

8.  That Defendants be award such other relief as the Court may deem just and proper.

## JURY DEMAND

Defendants and Defendant/Counterclaimant hereby demand a trial by jury on all issues and claims so triable.

Dated: August 4, 2008                    By: /s/ David S. Elkins
    David S. Elkins
    Joseph A. Meckes
    Joseph P. Grasser
    SQUIRE, SANDERS & DEMPSEY L.L.P.

    Jack J. Carriglio
    James G. Arigionis
    MECKLER BULGER & TILSON

    Attorneys for Defendants
    RHONDA BYRNE, TS RER LLC
    (erroneously named as "THE SECRET LLC"
    and "TS HOLDINGS LLC"), PRIME TIME
    US INC., TS PRODUCTION HOLDINGS
    LLC, TS MERCHANDISING LTD.,
    ROBERT E. RAINONE, JR. and Defendant
    and Counterclaimant TS PRODUCTION LLC