UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Drew Heriot and Drew Pictures Pty Ltd., § § *Plaintiffs,* § § vs. § § Rhonda Byrne, § The Secret LLC (AKA TS Holdings LLC) § Prime Time US Inc., § TS Production Holdings LLC, § TS Production LLC, § TS Merchandising Ltd., And § Robert E. Rainone Jr. § § *Defendants.* § § TS Production LLC, § § *Counterclaimant,* § § vs. § § Drew Heriot and Drew Pictures Pty Ltd., § § *Counterclaim Defendants* § | Civil Case No. 1:08cv2272 |

**COUNTERCLAIM DEFENDANTS' ANSWER TO
TS PRODUCTION LLC'S FIRST AMENDED COUNTERCLAIM**

Counterclaim Defendants Drew Heriot ("Heriot") and Drew Pictures Pty Ltd. ("Drew Pictures") hereby file this Answer to the First Amended Counterclaim of Counterclaimant TS Production LLC ("TSP").

1. Counterclaim Defendants admit that this Court has jurisdiction over this matter.

2. Counterclaim Defendants admit that venue is proper in this District.

3.  Counterclaim Defendants admit that TSP is a Hungarian limited liability company with a purported principle place of business at H-1074 Budapest, Dohány utca 12, Hungary but deny the remaining allegations of Paragraph 3.

4.  Counterclaim Defendants admit that Heriot is an Australian citizen, who currently lives in Los Angeles, California, on an O-1 Visa.

5.  Counterclaim Defendants admit the allegations in Paragraph 5.

6.  Counterclaim Defendants admit that Rhonda Byrne ("Byrne") co-founded Prime Time Productions Holdings Pty Ltd. ("Prime Time") in or around 1994. Counterclaim Defendants admit that in or around 2000 Byrne and Paul Harrington used Heriot's editing services for a television show called *Australia Behaving Badly* at FM-TV's production facility. Counterclaim Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 6 and therefore deny the same.

7.  Counterclaim Defendants admit that Prime Time's next production was *Marry Me* and that Heriot was not retained as an editor on the project. Counterclaim Defendants deny the remaining allegations of Paragraph 7.

8.  Counterclaim Defendants admit that in 2002 Prime Time contracted with Drew Pictures for Heriot's services as a director and editor for the second season of *Marry Me* which was renamed *Loves Me Loves Me Not*. Counterclaim Defendants deny the remaining allegations of Paragraph 8.

9.  Paragraph 9 contains no allegation directed towards Counterclaim Defendants. To the extent that a response is required, the Counterclaim Defendants deny all allegations in Paragraph 9.

10. Paragraph 10 contains no allegation directed towards Counterclaim Defendants. To the extent that a response is required, the Counterclaim Defendants deny all allegations in Paragraph 10.

11. Counterclaim Defendants deny all allegations in Paragraph 11.

12. Counterclaim Defendants admit that Prime Time and Drew Pictures entered into a Consultancy Agreement in October 2003 for Heriot's services and that the Consultancy Agreement expired in October 2004. Counterclaim Defendants deny the remaining allegations in Paragraph 12.

13. The document referenced in Paragraph 13 speaks for itself and the Counterclaim Defendants deny any attempt to characterize it.

14. Counterclaim Defendants admit that in or around 2003, Prime Time contracted with Drew Pictures for Heriot's services as a producer for the made for television movie *Sensing Murder*, a largely unscripted television documentary dedicated to solving unsolved murder cases in Australia. Counterclaim Defendants admit that *Sensing Murder* was broadcast on Australia's Seven Network and that its success led Australia's Ten Network to commission six additional episodes. Counterclaim Defendants admit that Heriot was credited as Series Producer. Counterclaim Defendants deny the remaining allegations in Paragraph 14.

15. Counterclaim Defendants admit that the Ten Network did not broadcast the entire series of *Sensing Murder*. Counterclaim Defendants deny the remaining allegations in Paragraph 15.

16. Counterclaim Defendants deny the remaining allegations in Paragraph 16.

17. Counterclaim Defendants admit that Byrne was the principal of Prime Time in or around 2004 to 2005. Counterclaim Defendants admit that in January 2005, Byrne told Heriot

and Harrington about an idea she had for a new television series based upon several "self-help" and "success" books and audio CDs she had reviewed while on vacation. One of those CDs was commentary by Esther Hicks, a well-known inspirational speaker. Two of the books were *The Science of Getting Rich* by Wallace D. Wattles, and *The Master Key System* by Charles F. Hannel. Counterclaim Defendants admit that Byrne wanted to make a television series exploring several self-help principles in these materials with various self-help "teachers." Counterclaim Defendants admit that this was the extent of Byrne's idea for the series at the time she raised it with Heriot and Harrington. Counterclaim Defendants deny any remaining allegations in Paragraph 17.

18.    Counterclaim Defendants admit that in January 2005, Byrne told Heriot and Harrington about an idea she had for a new television series based upon several "self-help" and "success" books and audio CDs she had reviewed while on vacation. One of those CDs was commentary by Esther Hicks, a well-known inspirational speaker. Two of the books were *The Science of Getting Rich* by Wallace D. Wattles, and *The Master Key System* by Charles F. Hannel. Counterclaim Defendants admit that Byrne wanted to make a television series exploring several self-help principles in these materials with various self-help "teachers." Counterclaim Defendants admit that this was the extent of Byrne's idea for the series at the time she raised it with Heriot and Harrington. Counterclaim Defendants deny any remaining allegations in Paragraph 18.

19.    Counterclaim Defendants admit that, in January 2005, Byrne wanted to make a television series exploring several self-help principles in these materials with various self-help "teachers." Counterclaim Defendants admit that this was the extent of Byrne's idea for the series at the time she raised it with Heriot and Harrington. Counterclaim Defendants deny that Byrne

had ever met or spoken with Rev. Dr. Michael Beckwith or Jack Canfield in January 2005. Counterclaim Defendants admit that Rev. Dr. Michael Beckwith is a nonaligned religious teacher of mediation and scientific prayer who conducts retreats and speaks at conferences and seminars and that Jack Canfield is the author of the worldwide bestseller *Chicken Soup for the Soul* ® who has been called America's #1 Success Coach. Counterclaim Defendants deny any remaining allegations in Paragraph 19.

20. Counterclaim Defendants deny the allegations in Paragraph 20.

21. Counterclaim Defendants admit that Heriot, Harrington, and Byrne collaborated on *The Secret* in the first few months of 2005. Counterclaim Defendants deny the remaining allegations in Paragraph 21.

22. Counterclaim Defendants deny the allegations in Paragraph 22.

23. Counterclaim Defendants admit that Prime Time engaged a film crew and that Byrne, Harrington, and Heriot traveled to the United States to interview the teachers and conduct principle filming. Counterclaim Defendants admit that Byrne was present for a majority of the interviews. Counterclaim Defendants deny the remaining allegations in Paragraph 23.

24. Counterclaim Defendants admit that only Byrne and Heriot ever interviewed the teachers, that the teachers' responses to questions became the backbone of the movie, and that the questions do not appear and were not intended to appear in the documentary itself. Counterclaim Defendants deny the remaining allegations in Paragraph 24.

25. Counterclaim Defendants deny the allegations in Paragraph 25.

26. Counterclaim Defendants admit that a paper edit is a written document used to plan an edit session, and that interviews were transcribed, under the direction of Heriot, and

arranged into a document called the 2hr Paper Edit, which was authored solely by Heriot. Counterclaim Defendants deny the remaining allegations in Paragraph 26.

27. Counterclaim Defendants deny the allegations in Paragraph 27.

28. Counterclaim Defendants admit that Heriot is one of the co-authors of a document called the tranSCRIPT. The tranSCRIPT continually evolved as additional interviews were reviewed, edited, and rearranged according to Heriot's artistic creation of the film. Heriot, Harrington, and Byrne collaborated on the tranSCRIPT to write dramatic scenes that would overlay and weave through the interviews. These dramatic scenes were primarily re-enactments of stories told in the interviews or visual aids that reinforced what those interviewed were saying. There were approximately 42 versions of the tranSCRIPT created by Heriot, Harrington, and Byrne. Counterclaim Defendants deny the remaining allegations in Paragraph 28.

29. Counterclaim Defendants deny the allegations in Paragraph 29.

30. Counterclaim Defendants admit that the Nine Network decided to defer broadcasting of *The Secret*. Counterclaim Defendants deny the remaining allegations in Paragraph 30.

31. Counterclaim Defendants admit that Byrne struck a friendship with Robert E. Rainone. Counterclaim Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 31 and therefore deny the same.

32. Counterclaim Defendants admit that Byrne attempted to transfer copyright ownership in *The Secret* without the knowledge or consent of Heriot or Drew Pictures. Counterclaim Defendants deny the remaining allegations in Paragraph 32.

33. Counterclaim Defendants admit that *The Secret*'s Internet launch took place on March 26, 2006, and that *The Secret* was first published in the United States. Counterclaim

Defendants admit that Internet sales of *The Secret* initially averaged five purchases per minute. Counterclaim Defendants deny the remaining allegations in Paragraph 33.

34.   Counterclaim Defendants deny the allegations in Paragraph 34.

35.   Counterclaim Defendants admit that Heriot formed a United States limited liability company, which became a distributor of *The Secret* DVDs. Counterclaim Defendants deny the remaining allegations in Paragraph 34.

36.   Counterclaim Defendants admit that in June 2005, Heriot provided Byrne with AUS $10,000 but deny that it was an unsolicited gift. Counterclaim Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 36 and therefore deny the same.

37.   Counterclaim Defendants admit that Byrne was the owner of Prime Time but deny the remaining allegations of Paragraph 37.

38.   Counterclaim Defendants deny the allegations in Paragraph 38.

39.   Counterclaim Defendants admit that Heriot, as an employee of Drew Pictures, worked full time on *The Secret* documentary, and that additional employees of Drew Pictures were engaged in the project as requested by Prime Time. Counterclaim Defendants admit that Drew Pictures did not furnish motion picture or television equipment for the project but that other equipment owned by Drew Pictures was used. Counter Defendants deny the remaining allegations in Paragraph 39 including sub-paragraphs a through h.

40.   Counterclaim Defendants deny the allegations in Paragraph 40 as stated. Counterclaim Defendants admit that Drew Pictures registered its copyright interest in the Works with the United States Copyright Office in September 2007 and that Counterclaim Plaintiff demanded, through U.S. counsel, that the registration be withdrawn. When Counterclaim

Defendants refused to withdrawal their U.S. Copyright registration, TSP initiated preemptive litigation in Australia for the sole purpose of harassing Counterclaim Defendants. On July 30, 2008, the Honorable Justice Sundberg of the Federal Court of Australia Ordered Counterclaim Plaintiff's Australian litigation stayed and awarded costs to Counterclaim Defendants because TSP's litigation was "vexatious and oppressive" and "productive of serious and unjustifiable trouble and harassment" to Counterclaim Defendants. Counterclaim Defendants deny any remaining allegations in Paragraph 40.

41. Counterclaim Defendants deny the allegations in Paragraph 41.

42. Counterclaim Defendants admit the allegations in Paragraph 42.

### First Counterclaim for Relief

43. Counterclaim Defendants incorporate by reference the responses to paragraphs 1 through 42 as if fully state herein.

44. Counterclaim Defendants admit that TSP makes counterclaims under the U.S. Copyright Act and the Declaratory Judgments Act.

45. Counterclaim Defendants admit the allegations in Paragraph 45.

46. Counterclaim Defendants admit the allegations in Paragraph 46.

47. Counterclaim Defendants deny the allegations in Paragraph 47.

### PRAYER

Counterclaim Defendants deny that Counterclaim Plaintiff is entitled to the relief set forth in Paragraphs 1 through 47.

Respectfully submitted,

/s/ Darren P. Nicholson
Mark S. Werbner
Darren P. Nicholson
**SAYLES|WERBNER**

        4400 Renaissance Tower
        1201 Elm Street
        Dallas, TX 75270
        (214) 939-8700
        (214) 939-8787 fax

        Paul L. Price
        Edna McLain
        **HEPLER, BROOM, MACDONALD, HEBRANK, TRUE & NOCE, LLC**
        150 N. Wacker Drive, Suite 3100
        Chicago, Illinois 60606
        (312) 230-9100
        (312) 230-9201 fax
        *Attorneys for Plaintiffs and Counter-Defendants Drew Heriot and Drew Pictures Pty Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the Court on August 25, 2008. Notice of this filing was sent to the following individuals by operation of the Court's electronic filing system:

        David S. Elkins
        (DElkins@SSD.com)
        Joseph A. Meckes
        (JMeckes@SSD.com)
        SQUIRE, SANDERS & DEMPSEY L.L.P.
        600 Hansen Way
        Palo Alto, CA 94304-1043
        Telephone: (650) 856-6500
        Facsimile: (650) 843-87

        Jack J. Carriglio
        (Jack.Carriglio@mbtlaw.com)
        MECKLER BULGER & TILSON LLP
        123 North Wacker Drive, Suite 1800
        Chicago, IL 60606
        Telephone: (312) 474-7900
        Facsimile: (312) 474-7898

        /s/ Darren P. Nicholson