IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DREW HERIOT and DREW PICTURES PTY LTD., | ) ) ) |
| Plaintiffs, | ) Civil Action No. 08 C 2272 ) |
| v. | ) Suzanne B. Conlon, Judge ) |
| RHONDA BYRNE, THE SECRET LLC (aka TS HOLDINGS LLC), PRIME TIME US INC., TS PRODUCTION HOLDINGS LLC, TS PRODUCTION LLC, TS MERCHANDISING LTD., and ROBERT E. RAINONE, JR. | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM OPINION AND ORDER**

Drew Pictures Pty Ltd. ("Drew Pictures") and its sole shareholder and employee Drew Heriot (collectively, "plaintiffs") seek a declaration that Drew Pictures is the co-owner of intellectual property rights in *The Secret*, a self-help documentary film and book, because Heriot was the co-author of the screenplay. They sue Rhonda Byrne, The Secret LLC, Prime Time US Inc. ("Prime Time"), TS Production Holdings LLC, TS Production LLC, TS Merchandising Ltd., and Robert E. Rainone, Jr. (collectively, "defendants") for a declaratory judgment of copyright co-ownership and duty to account (Count I), an equitable accounting (Count II), copyright infringement (Count III), and unjust enrichment (Count IV). Defendants move for partial judgment on the pleadings. All defendants seek judgment on Counts II and IV on preemption

grounds. Prime Time and an entity named TS RER LLC[1] ("TS RER") seek judgment on Counts I and III for failure to state a claim. For the reasons set forth below, defendants' motion is granted in part.

## BACKGROUND

The facts are drawn from the complaint. Heriot is a movie director, producer, editor, and writer. He owns and is employed by Drew Pictures. He and Rhonda Byrne co-wrote *The Secret*, a self-help documentary movie based on a screenplay also co-written by Heriot. Compl. ¶ 55. Byrne is a television producer; managing director of TS Production LLC; director of Prime Time US Inc.; and owner of Prime Time Productions Holdings Pty Ltd. ("Prime Time Productions"), The Secret LLC, and TS Production Holdings LLC.

From 2003 to 2004, Heriot worked for Byrne's production company Prime Time Productions under a consultancy agreement with Drew Pictures. *Id.* ¶ 18. After the agreement expired, Byrne approached Heriot and producer Paul Harrington in 2005 to conceptualize *The Secret*, an idea based upon self-help materials Byrne reviewed. *Id.* ¶ 19. Byrne wanted to make a documentary-style series based on the "Law of Attraction," featuring self-help teachers. *Id.* ¶ 20. For several months, Byrne, Heriot, and Harrington worked on the concept. *Id.* ¶ 21. Prime Time Productions paid Drew Pictures for work on the project pursuant to Drew Pictures' invoices. *Id.* ¶ 22. Byrne told Heriot he could "trust her" by working on the project in this manner, and

---

[1] Defendants state TS RER is misnamed The Secret LLC in the complaint. Plaintiffs do not dispute this, but have not sought leave to amend their complaint to substitute TS RER. TS RER is not a party; its motion for judgment on the pleadings, therefore, will not be addressed. On its own motion, the court issues a rule against plaintiffs to show cause why The Secret LLC should not be dismissed as a defendant.

2

acknowledged that Heriot and Drew Pictures would be entitled to resulting profits. *Id.* ¶ 22. Drew Pictures financed $10,000 in the project in June 2005. *Id.* ¶ 23.

Although *The Secret* was originally intended to be a documentary-style series, the plan was abandoned to create a two-hour special for an Australian broadcast. *Id.* ¶¶ 24, 26. Heriot and Byrne co-wrote outlines of the show called "Rundowns." *Id.* ¶ 24. Heriot wrote "Questions for Interview Subjects," and later a "2hr Paper Edit" and "tranSCRIPT" that was the screenplay for *The Secret*. *Id.* ¶¶ 25, 29, 30. Heriot directed the original edition of *The Secret*. *Id.* ¶¶ 32, 38. He oversaw the creative aspects of the post-production work, including editing, visual effects, music, and the overall style and look of the film. *Id.*

*The Secret* was not broadcast in Australia as originally intended. *Id.* ¶ 33. Heriot, Byrne, and Harrington decided to release *The Secret* as a DVD and sell streaming versions on the internet in March 2006. *Id.* Prior to release, Byrne met with Chicago businessman Robert Rainone to assist with the project's business development. *Id.* ¶ 34. In late 2005, Rainone created The Secret LLC to control the project's sales and business development. *Id.* Rainone also created TS Merchandising Ltd to oversee merchandising and contracts with *The Secret*'s distributors. *Id.* ¶ 35.

A few months later, unbeknownst to Heriot, Prime Time Productions transferred its rights in *The Secret* to Byrne, who then transferred her interest to TS Production LLC, a Hungarian shell company owned by its United States parent, TS Production Holdings LLC. *Id.* ¶¶ 40-42. TS Production Holdings LLC is owned, in whole or in part, by Byrne and Rainone. *Id.* ¶ 7. TS Production LLC then hired Prime Time to create a book based on *The Secret*. *Id.* ¶ 42. Byrne wrote the book, and its copyright was transferred to TS Production LLC. *Id.* ¶¶ 45-46. TS

Production LLC later engaged Prime Time Productions to create an extended version of the movie. Byrne was attributed as the sole creator and author of *The Secret* in both the book and the extended version of the movie. *Id.* ¶ 47.

Internet sales of *The Secret* began in March 2006, and it became an instant worldwide success. *Id.* ¶ 37. After release of *The Secret* (original edition), Heriot inquired about unpaid invoices due to Drew Pictures. *Id.* ¶ 39. Byrne informed Heriot that he was "unappreciative of all the opportunities that have been given to you" and that she and Rainone had "some serious thinking to do." *Id.* TS Production LLC registered copyrights for *The Secret* movie and book. *Id.* ¶¶ 52-54. Drew Pictures also registered a copyright for the movie *The Secret*. *Id.* ¶ 55.

## DISCUSSION

### I. Legal Standard

A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standard applied to Rule 12(b)(6) motions to dismiss for failure to state a claim. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(b)(6). All well-pleaded allegations are accepted as true and all reasonable inferences are drawn in plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Factual allegations must be sufficient to state a claim to relief that is plausible on its face, rather than merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1974 (2007); *Tamayo*, 526 F.3d at 1083.

### II. Preemption

Defendants argue *The Secret* is within the scope of subject matter covered by the Copyright Act, and plaintiffs' purported right to an accounting and reimbursement of unjustly

4

retained profits from *The Secret* are equivalent to rights already protected by federal copyright law. Defendants argue that plaintiffs' state law claims for equitable accounting (Count II) and unjust enrichment (Count IV) are thereby preempted by the Copyright Act, 17 U.S.C. § 301(a).

Section 301(a) expressly preempts state common law claims based upon subject matter and rights equivalent to those addressed in the Copyright Act. 17 U.S.C. § 301(a). Specifically, the Copyright Act preempts state law claims if the work is fixed in a tangible form and within the scope of the subject matter of federal copyright as specified in § 102 (including literary works and movies) and § 103 (compilations and derivative works), and the right asserted is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106. 17 U.S.C. § 301(a); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986).

The exclusive rights set forth in the statute include the right to reproduce the copyrighted work, prepare derivative works, distribute copies of the work, perform the work publicly, and display the work publicly. 17 U.S.C. § 106. A state law claim may be equivalent to a copyright claim even if it requires additional elements, if the additional elements do not differ in kind from those necessary for the copyright claim. *Baltimore Orioles*, 805 F.2d at 677-78 n. 26. To avoid preemption, a state law claim must allege conduct that is qualitatively different from that governed by federal copyright law. *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005).

Plaintiffs claim joint ownership of *The Secret* (including the screenplay and movie) under the Copyright Act. 17 U.S.C. §§ 101, 201(a) and (b). Compl. §§ 61-63, 68. Plaintiffs do not dispute these works are copyrightable subject matter. Nor could they as literary works, movies,

5

and compilations are specifically identified in §§ 102 and 103 of the Copyright Act as within the scope of copyright. Rather, plaintiffs dispute preemption because their claimed right to an equitable accounting and reimbursement of defendants' unjust enrichment are not listed as one of the exclusive rights under § 106 of the Copyright Act. But rights are not exclusively listed in the statute. A right must be *equivalent* to a right set forth in § 106. 17 U.S.C. § 301(a); *Baltimore Orioles*, 805 F.2d at 674.

Plaintiffs inexplicably cite *Gaiman v. McFarlane*, 360 F.3d 644 (7th Cir. 2004), to challenge preemption. Gaiman successfully sought a declaration that he jointly owned copyrights with McFarlane in comic book characters. On appeal, it was held that the Copyright Act's three-year statute of limitations applied, as opposed to the state statute of limitations. 17 U.S.C. § 507(b). *When co-ownership is conceded*, and the only issue is the contractual or equitable division of profits, there is no copyright law issue; a claim for an accounting of profits arises under state, not federal law. *Gaiman*, 360 F.3d at 652. This was not the case in *Gaiman* as McFarlane contested co-ownership. Resolution of Gaiman's co-ownership claim depended on whether his contribution to the comic book characters gave him a copyright interest. *Id.* That issue was resolved under the Copyright Act. *Id.* at 652-53.

According to plaintiffs, *Gaiman* stands for the proposition that an accounting of profits in a joint ownership dispute case arises under state, not federal law. Plaintiffs ignore the explicitly stated predicate of this principle – uncontested co-ownership. *Id.* at 652. Here, defendants contest Drew Pictures' joint ownership. As in *Gaiman*, this issue must be resolved under the Copyright Act.

6

Indeed, plaintiffs explicitly premise their equitable accounting and unjust enrichment claims on their co-ownership claim. According to plaintiffs, Heriot co-authored *The Secret* screenplay, directed the original edition of *The Secret* and oversaw the creative aspects of the post-production work. In Count I (declaration of copyright co-ownership and duty to account), plaintiffs seek a declaration that *The Secret* is a "joint work" under § 101 of the Copyright Act, and Drew Pictures, as Heriot's employer, is the co-owner of *The Secret* under §§ 201(a) and (b) of the Copyright Act. Compl. ¶¶ 61-62, 68. Also in Count I, plaintiffs allege that, as a co-owner, Drew Pictures is entitled to an accounting from defendants for all profits they obtained from exploitation of *The Secret*. *Id.* ¶¶ 63, 68.

Plaintiffs' state law equitable accounting (Count II) and unjust enrichment claims (Count IV) mirror these allegations. Plaintiffs allege they are entitled to a state law equitable accounting from defendants for all income derived from exploitation of *The Secret* by virtue of Drew Pictures' status as a co-owner of *The Secret*. *Id.* ¶¶ 70-71. Plaintiffs claim unjust enrichment to recover their share of the profits in *The Secret* because of Drew Pictures' co-ownership interest. *Id.* ¶ 83.

Regardless of the label, the gist of plaintiffs' equitable accounting and unjust enrichment claims is that defendants owe them profits from exploitation of *The Secret* because Drew Pictures is a co-owner of the copyright. This requires interpretation and application of the Copyright Act. It is only through plaintiffs' co-ownership Copyright Act claim that any accounting is owed, or that any enrichment is unjust. In fact, Count I for a declaratory judgment of co-ownership under the Copyright Act includes an alleged duty to account. Plaintiffs' equitable accounting and

7

unjust enrichment claims seek to vindicate rights equivalent to those already protected by copyright law.

Plaintiffs argue they have pled equitable accounting and unjust enrichment claims that are independent of defendants' duties under the Copyright Act. Plaintiffs cite their allegation in Count II (equitable accounting) that defendants have a duty to account for profits from *The Secret* because of "agreements" between Heriot and Byrne. Compl. ¶ 72. Plaintiffs also cite their allegation in Count IV (unjust enrichment) that they are entitled to recover defendants' profits from *The Secret* because of Heriot and Byrne's "understanding and representations that Heriot was entitled to a net percentage of profits." *Id.* ¶ 83.

The sole allegation of any agreement, understanding, or representation is that Byrne told Heriot he could trust her by invoicing his time on the project, and acknowledged that plaintiffs would be entitled to profits. *Id.* ¶ 22. This is not sufficient to state a plausible claim to relief. *See Twombly*, 127 S. Ct. At 1965, 1974 (2007). It is not even clear if the alleged understanding and representations were Byrne's, or Byrne's and Heriot's. *Cf.* Compl. ¶ 22 *with Id.* ¶ 83. Resolution of plaintiffs' equitable accounting and unjust enrichment claims does not require interpretation of any agreement among the parties. The Copyright Act preempts Counts II (equitable accounting) and IV (unjust enrichment).

## III. Sufficiency of Complaint Against Prime Time

Prime Time argues Counts I (declaration of copyright co-ownership and duty to account) and III (copyright infringement) fail to state claims against it. Plaintiffs allege Prime Time is TS Production LLC's subsidiary, and conducts United States based business operations on behalf of TS Production LLC relating to exploitation of *The Secret*. Compl. ¶¶ 5, 44. Plaintiffs allege TS

Production Holdings and Rainone are the recipients of profits from Prime Time's exploitation of *The Secret* (*id.* ¶¶ 7, 9), and that Prime Time is a recipient of profits resulting from exploitation of *The Secret* (*id.* ¶¶ 70-75). Byrne allegedly signed an independent contractor agreement with Prime Time acting on behalf of TS Production LLC, agreed to write a book based upon *The Secret* and transfer all copyright in the book to TS Production LLC. *Id.* ¶ 45.

Plaintiffs do not allege the existence of any case or controversy with Prime Time regarding ownership of copyright in *The Secret*. Specifically, plaintiffs do not allege Prime Time claims an ownership interest in the copyright. Count I (declaration of copyright co-ownership and duty to account), therefore, fails to state a claim against Prime Time. However, assuming the truth of plaintiffs' allegations, a reasonable inference may be drawn that Prime Time and Byrne infringed plaintiffs' purported exclusive copyright in *The Secret* through an agreement for Byrne to write a book based on *The Secret* and transfer all copyright in the book to TS Production LLC. Count III (copyright infringement) against Prime Time stands.

## CONCLUSION

*The Secret* falls within the scope of the Copyright Act's subject matter. Plaintiffs' equitable accounting and unjust enrichment claims seek to vindicate rights equivalent to those protected by the Copyright Act. Counts II (equitable accounting) and IV (unjust enrichment) are preempted by the Copyright Act. Judgment on the pleadings is granted to defendants on Counts II and IV. Count I (declaration of copyright co-ownership and duty to account) fails to state a claim against Prime Time because plaintiffs do not allege Prime Time claims an ownership interest in *The Secret*. Judgment on the pleadings is granted to Prime Time on Count I. Count III

(copyright infringement) states a claim against Prime Time, and thus withstands its motion for judgment on the pleadings.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

December 23, 2008